**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 15 |
| ) | |
| PERFORADORA ORO NEGRO, S. DE R.L. DE ) | Case No. 18-11094 (SCC) |
| C.V., *et al.*, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| GONZALO GIL-WHITE, PERSONALLY AND ) | Adv. Pro. No. 19-01294 (SCC) |
| IN HIS CAPACITY AS FOREIGN ) | |
| REPRESENTATIVE OF PERFORADORA ORO ) | |
| NEGRO, S. DE R.L. DE C.V. AND ) | |
| INTEGRADORA DE SERVICIOS ) | |
| PETROLEROS ORO NEGRO, S.A.P.I. DE C.V., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| ALP ERCIL, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### THE SINGAPORE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

DECHERT LLP

1095 Avenue of the Americas
New York, New York 10036-6797
Tel: (212) 698-3500
Fax: (212) 698-3599

*Attorneys for Defendants Oro Negro Primus PTE. Ltd.; Oro Negro Laurus PTE. Ltd.; Oro Negro Fortius PTE. Ltd.; Oro Negro Decus PTE. Ltd.; Oro Negro Impetus PTE. Ltd.; Roger Bartlett; Roger Hancock; and Hunter Cochrane, Jr.*

# TABLE OF CONTENTS

Page

I.   THIS COURT LACKS PERSONAL JURISDICTION OVER EACH OF THE FOREIGN SINGAPORE DEFENDANTS WITH RESPECT TO ALL OF PLAINTIFF'S NON-CONTRACT CLAIMS AND AS TO ALL CLAIMS AGINST THE FOREIGN SINGAPORE DIRECTORS ............................................................................................ 6

   A.   The Foreign Singapore Defendants Lack Any Jurisdictional Contacts With This District (Or Anywhere In The United States) ................................................ 7

   B.   None Of The Foreign Singapore Defendants Can Be Subject To The Exercise Of General Personal Jurisdiction By This Court .................................................. 8

   C.   None Of The Foreign Singapore Defendants Can Be Subject To The Exercise Of Specific Personal Jurisdiction By This Court With Respect To Any Of Plaintiff's Non-Contract Claims ....................................................................... 10

   D.   None Of Plaintiff's Alternative Jurisdictional Allegations Gives Rise To Personal Jurisdiction Over The Foreign Singapore Defendants With Respect To Any Of Plaintiff's Non-Contract Claims .................................................................. 12

      1.   The Bareboat Charters' Forum Selection Clause Does Not Confer Personal Jurisdiction Over The Singapore Rig Owners For Any Of Plaintiff's Non-Contract Claims ..................................................................................... 12

      2.   The "New York Litigation" Previously Filed By The Singapore Rig Owners Does Not Establish Consent To Jurisdiction In The Present Case ............................... 14

      3.   Pleadings Filed By Counsel For The Singapore Rig Owners In The Chapter 15 Case Do Not Waive Their Personal Jurisdictional Defense ................................ 15

      4.   The Foreign Singapore Defendants Did Not "Violate A Right In The United States," Nor Did "A Substantial Part Of The Event Giving Rise" To Plaintiff's Claims "Ar[i]se In This District" ......................................................... 18

         a.   Under A Choice Of Law Analysis, The Claims Asserted Are Located In Mexico ..................................................................................... 18

         b.   The Alleged Possessory Rights in the Rigs Are Not Located in the U.S. Under Admiralty Law ................................................................... 20

         c.   Plaintiff's Tort Claims Are Located Outside the United States ............... 21

II.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS ............................................................................................................. 22

III. ALL OF THE CLAIMS AGAINST THE SINGAPORE DEFENDANTS SHOULD BE DISMISSED BASED ON THE "ACT OF STATE" DOCTRINE AND THE DOCTRINE OF *FORUM NON CONVENIENS* .......................................................................... 25

# TABLE OF CONTENTS
(Cont'd)

**Page**

IV.     EACH OF PLAINTIFF'S CLAIMS AGAINST THE SINGAPORE DEFENDANTS
        FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............. 27

    A.     All of Plaintiff's Tort Claims Are Governed by Mexican Law, And Plaintiff Has
        Failed To State Any Cognizable Claim Under Mexican Law Against The Singapore
        Defendants ............................................................................................................. 30

    B.     Group Pleading Is Fatal To All Of Plaintiffs' Non-Mexican Law Claims Against The
        Singapore Defendants ............................................................................................. 31

    C.     Plaintiff Fails To State A Claim Against The Singapore Defendants For Violating 11
        U.S.C. § 1520(a)(1) Or The Comity Order (Count 18) ............................................. 33

        1.     No Automatic Stay Violation.............................................................................. 33

        2.     No Violation of the Comity Order ...................................................................... 38

    D.     Even If New York Law Were To Apply, Counts 9, 12-14, 17, and 19-21 All Fail To
        State A Claim Against The Singapore Defendants.................................................... 40

        1.     Plaintiff Has Not Stated A Claim Against The Singapore Defendants For Abuse
        of Process Claim And/Or Conspiracy To Commit Abuse Of Process (Count 9) . 40

        2.     Plaintiff Has Not Stated A Claim Against The Singapore Rig Owners For Breach
        Of The Implied Covenant of Good Faith and Fair Dealing (Count 12)................ 42

        3.     Plaintiff Has Not Stated A Claim Against The Singapore Directors For Tortious
        Interference Or Conspiracy to Commit Tortious Interference (Counts 13 and 14)
        ....................................................................................................................... 45

        4.     Plaintiff Fails To State A Claim Against The Singapore Rig Owners For Failure
        To Pay Reimbursable Costs (Count 17)............................................................. 47

        5.     Plaintiff Has Not Stated A Prima Facie Tort Claim Against The Singapore
        Defendants (Count 19) ..................................................................................... 48

        6.     Plaintiff Has Not Stated A Negligence Claim Against The Singapore Rig Owners
        (Count 20) ........................................................................................................ 50

        7.     Plaintiff Has Not Stated An Unjust Enrichment Or Conspiracy To Commit Unjust
        Enrichment Claim Against The Singapore Rig Owners (Count 21).................... 51

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015) ................................................................... 46

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ......................................... 15

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
  96 N.Y.2d 280 (2001) ............................................................................. 51

*ABKCO Indus., Inc. v. Apple Films, Inc.*,
  350 N.E.2d 899 (N.Y. 1976) ................................................................... 20

*In re Agrokor d.d.*,
  591 B.R. 163 (Bankr. S.D.N.Y. 2018) ............................................... 26, 33

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
  585 F.3d 696 (2d Cir. 2009) ................................................................... 27

*Allied Mar. Inc. v. Descatrade SA*,
  2009 WL 4884160 (S.D.N.Y. Dec. 16, 2009) ......................................... 20

*Am. Med. Assoc. v. United Healthcare Corp.*,
  2007 WL 683974 (S.D.N.Y. Mar. 5, 2007) ............................................. 52

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  351 F. Supp. 2d 79 (S.D.N.Y. 2004) ....................................................... 29

*In re AMR Corp.*,
  567 B.R. 247 (Bankr. S.D.N.Y. 2017) ..................................................... 29

*In re AOG Entm't, Inc.*,
  569 B.R. 563 (Bankr. S.D.N.Y. 2017) ..................................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 28

*In re B.C.I. Finances Pty Ltd.*,
  583 B.R. 288 (Bankr. S.D.N.Y. 2018) ..................................................... 19

*Baker v. Simpson*,
  613 F.3d 346 (2d Cir. 2010) ................................................................... 23

*Bank of America, N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ................................................................. 32

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*Barsom v. P/V AQUIDNECK FERRY*,
No. CA 12-808 S, 2013 WL 5447551 (D.R.I. Sept. 30, 2013)..............................................21

*Bautista v. Los Angeles County*,
216 F.3d 837 (9th Cir. 2000) .............................................................................................31

*Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012).................................................................................................50

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
347 F. Supp. 2d 1 (S.D.N.Y. 2004) ..............................................................................51, 52

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................27

*In re Berau Capital Res. Pte Ltd*,
540 B.R. 80 (Bankr. S.D.N.Y. 2015)..................................................................................19

*Blum v. Gen. Elec. Co.*,
547 F. Supp. 2d 717 (W.D. Tex. 2008)...............................................................................27

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017).....................................................................................................8, 9

*Bristol-Myers Squibb Co. v. Superior Court of California*,
--- U.S. -----, 137 S. Ct. 1773 (2017) ...........................................................................10, 11

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016)...........................................................................................8, 10

*BSH Hausgerate, GmbH v. Kamhi*,
282 F. Supp. 3d 668, 676 (S.D.N.Y. 2017).........................................................................16

*Calcutti v. SBU., Inc.*,
223 F. Supp. 2d 517 (S.D.N.Y. 2002).................................................................................51

*Calder v. Jones*,
465 U.S. 783 (1984)...........................................................................................................10

*Carvel Corp. v. Noonan*,
818 N.E.2d 1100 (N.Y. 2004).............................................................................................46

*Chardin v. Turkie*,
1998 WL 886986 (S.D.N.Y. Dec. 18, 1998) .................................................................45, 46

*Chen v. United States*,
854 F.2d 622 (2d Cir. 1988)...........................................................................................48, 49

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*In re CIL Ltd.*,
  582 B.R. 46 (Bankr. S.D.N.Y. 2018) ....................................................................10

*In re Cinque Terre Fin. Grp. Ltd.*,
  2017 WL 4843738 (Bankr. S.D.N.Y. Oct. 24, 2017) ............................................19

*Clalit Health Servs. v. Israel Humanitarian Found.*,
  395 F. Supp. 2d 21 (S.D.N.Y. 2005)....................................................................42

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  516 N.E.2d 190 (N.Y. 1987).........................................................................50, 51

*CLdN Cobelfret Pte Ltd v. ING Bank N.V.*,
  2016 WL 6670996 (S.D.N.Y. June 10, 2016) ......................................................15

*Complaint of Kreta Shipping, S.A.*,
  1998 WL 173167 (S.D.N.Y. Jan. 29, 1998) ........................................................ 22

*Connecticut Nat'l Bank v. Germain*,
  503 U.S. 249 (1992).......................................................................................... 35

*CVS Pharmacy, Inc. v. Press Am., Inc.*,
  377 F. Supp. 3d 359 (S.D.N.Y. 2019)................................................................. 51

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)............................................................................................9

*DeJesus v. Sears, Roebuck Co.*,
  87 F.3d 65 (2d Cir. 1996).............................................................................27, 28

*DiVittori v. Equidyne Extractive Indus.*,
  822 F.2d 1242 (2d Cir. 1987)..............................................................................31

*Djordjevich v. Bundesminister Finanzen*,
  124 F.3d 1309 (D.C. Cir. 1997) ..........................................................................16

*Doyle v. Mastercard Int'l Inc.*,
  700 F. App'x 22 (2d Cir. 2017) ..........................................................................42

*Elsevier, Inc. v. Grossman*,
  77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) ..............................................................6

*Erone Corp. v. Skouras Theaters Corp.*,
  19 F.R.D. 299 (S.D.N.Y. 1956) ..........................................................................31

*F.W.F., Inc. v. Detroit Diesel Corp.*,
  494 F. Supp. 2d 1342 (S.D. Fla. 2007) ................................................................42

## TABLE OF AUTHORITIES
(Cont'd)

**Page(s)**

*Fairfield Sentry Limited v. Theodoor GGC Amsterdam*,
  2018 WL 375634 (Bankr. S.D.N.Y. Aug. 6, 2018) ................................................................24

*In re Fairfield Sentry Ltd.*,
  768 F.3d 239 (2d Cir. 2014).................................................................................................18

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  218 F. Supp. 2d 369 (S.D.N.Y. 2002)....................................................................................6

*In re First Texas Petroleum, Inc.*,
  52 B.R. 322 (Bankr. N.D. Tex. 1985).....................................................................................36

*In re Gaston & Snow*,
  243 F.3d 599 (2d Cir. 2001).................................................................................................30

*In re Genco Shipping & Trading Ltd.*,
  No. 14-11108 (SHL), 2015 WL 2444152 (Bankr. S.D.N.Y. May 21, 2015) .........................44

*Gilman v. Marsh & McLennan Companies, Inc.*,
  868 F. Supp. 2d 118 (S.D.N.Y. 2012)....................................................................................40

*Grammenos v. Lemos*,
  457 F.2d 1067 (2d Cir. 1972)...............................................................................................16

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1988).................................................................................31, 32

*Gray v. Wackenhut Servs., Inc.*,
  721 F. Supp. 2d 282 (S.D.N.Y. 2010)....................................................................................50

*In re Gruntz*,
  202 F.3d 1074 (9th Cir. 2000) .........................................................................................35, 36

*Gulf Ins. Co. v. Caldor Corp.*,
  No. 03 CIV. 2894 (LLS), 2006 WL 1586571 (S.D.N.Y. June 9, 2006)................................16

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
  530 U.S. 1 (2000)................................................................................................................35

*In re Hellas Telecommunications (Luxembourg) II SCA*,
  524 B.R. 488 (Bankr. S.D.N.Y. 2015)...............................................................................9, 30

*Hilton v. Guyot*,
  159 U.S. 113 (1895).........................................................................................................25, 26

*HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp., LLC*,
  609 F. App'x 669 (2d Cir. 2015) ..........................................................................................43

## TABLE OF AUTHORITIES
(Cont'd)

Page(s)

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F. 2d 759 (2d Cir. 1991) ................................................................30

*In P.C. Mgmt., Inc. v. Page Two, Inc.*,
    573 N.E.2d 434 (Ind. Ct. App. 1991) ....................................................44

*Indelible Media Corp. v. Meat & Potatoes, Inc.*,
    2012 WL 3893523 (S.D.N.Y. Sept. 7, 2012) ..........................................7

*In re Iroquois Energy Mgmt., LLC*,
    284 B.R. 28 (Bankr. W.D.N.Y. 2002) ..............................................21, 22

*Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*,
    296 A.D.2d 103 (N.Y. App. Div. 1st Dep't 2002) ............................45, 46

*In re JSC BTA Bank*,
    434 B.R. 334 (Bankr. S.D.N.Y. 2010) ........................................... *passim*

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993) ....................................................................19

*Katz v. Travelers*,
    241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017) ..........................................48

*Kelly v. Robinson*,
    479 U.S. 36 (1986) ........................................................................35, 36

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991) ..................................................................15

*In re Koreag, Controle et Revision S.A.*,
    961 F.2d 341 (2d Cir. 1992) ................................................................19

*In re Lehman Bros. Holdings Inc.*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015) ..............................................10, 11

*In re Lehman Bros. Holdings Inc.*,
    544 B.R. 16 (Bankr. S.D.N.Y. 2015) ................................................16, 17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ........................................9

*In re LightSquared Inc.*,
    504 B.R. 321 (Bankr. S.D.N.Y. 2013) ..............................................49, 50

*Loomis v. Hunter, Humphrey & Yavitz, PLC*,
    No. BK-10-1885-RJH, 2012 WL 3064496 (D. Ariz. July 27, 2012) ......17

# TABLE OF AUTHORITIES

(Cont'd)

**Page(s)**

*M/A-COM Sec. Corp. v. Galesi*,
    904 F.2d 134 (2d Cir. 1990).................................................................42

*Macatra B.V. v. Destiny Navigation*,
    2010 WL 339774 (S.D.N.Y. Jan. 27, 2010) ...........................................20

*Mackensworth v. S.S. American Merchant*,
    28 F.3d 246 (2d Cir. 1994).....................................................................21

*Madonna v. United States*,
    878 F.2d 62 (2d Cir. 1989).....................................................................29

*Marcial Ucin, S.A. v. SS Galicia*,
    723 F.2d 994 (1st Cir. 1983)..................................................................16

*Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
    311 F.3d 488 (2d Cir. 2002)...................................................................26

*Murray v. Northrop Grumman Info. Tech., Inc.*,
    444 F.3d 169 (2d Cir. 2006)...................................................................50

*MVP Health Plan, Inc. v. OptumInsight, Inc.*,
    765 F. App'x 615 (2d Cir. 2019) .....................................................50, 51

*In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*,
    580 B.R. 64 (Bankr. S.D.N.Y. 2018).................................................25, 26

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. United Transp. Union Ins. Ass'n*,
    2006 WL 456267 (S.D. Tex. Feb. 23, 2006) ........................................13

*Nursan Metalurji Endustrisi A.S. v. M/V TORM GERTRUD*,
    No. 07 CV 7687(GBD), 2009 WL 536059 (S.D.N.Y. Feb. 27, 2009) ...................10

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*,
    383 B.R. 231 (Bankr. S.D.N.Y. 2008)....................................................31

*Olivo v. Wells Fargo Bank, N.A.*,
    2019 WL 1435010 (E.D.N.Y. Mar. 29, 2019) .......................................44

*Pacnav S.A. v. Effie Bus. Corp.*,
    No. 06 CIV. 13512 (JGK), 2010 WL 2102714 (S.D.N.Y. May 20, 2010)............16

*Papasan v. Allain*,
    478 U.S. 265 (1986)...............................................................................28

*Parmalat Capital Finance Limited v. Bank of America Corp.*,
    639 F.3d 572 (2d Cir. 2011)..............................................................23, 24

# TABLE OF AUTHORITIES

(Cont'd)

**Page(s)**

*Patrick v. Allen*,
   355 F. Supp. 2d 704 (S.D.N.Y. 2005)..................................................................29, 30

*Peacock v. Ins. & Bonds Agency of Texas, PLLC*,
   2012 WL 3702920 (N.D. Tex. Aug. 28, 2012)....................................................13

*Place v. Ciccotelli*,
   121 A.D.3d 1378 (N.Y. App. Div. 3d Dep't 2014) ..............................................40

*Poindexter v. EMI Record Grp. Inc.*,
   2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ......................................................29

*In re Poymanov*,
   580 B.R. 55 (Bankr. S.D.N.Y. 2017)....................................................................26

*In re Partida*,
   862 F.3d 909 (9th Cir. 2017) ................................................................................36

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012)..............................................................................................24

*Ramiro Aviles v. S. & P Global, Inc.*,
   380 F. Supp. 3d 221 (S.D.N.Y. 2019)..................................................................52

*In re Regus Business Centre Corp.*,
   301 B.R. 122 (S.D.N.Y. Bankr. 2003) .................................................................26

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017)......................................................................................8

*Reiss v. Fin. Performance Corp.*,
   764 N.E.2d 958 (N.Y. 2001)................................................................................48

*Restis* v. *Am. Coalition Against Nuclear Iran, Inc.*,
   53 F. Supp. 3d 705 (S.D.N.Y. 2014)...............................................................44, 45

*In re Ritter*,
   No. 05-36150(CGM), 2006 WL 3065518 (Bankr. S.D.N.Y. Oct. 27, 2006) .........36

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)...........................................................................29, 30

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006)..............................................................................26, 38

*Salichs v. Tortorelli*,
   No. 01 CIV. 7288(DAB)THK, 2004 WL 602784 (S.D.N.Y. Mar. 29, 2004) .........4

# TABLE OF AUTHORITIES

(Cont'd)

**Page(s)**

*Schmidt v. Magnetic Head Corp.*,
   97 A.D.2d 151 (N.Y. App. Div. 2d Dep't 1983) ...................................................48

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) .......................................................................6

*Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*,
   585 F.3d 58 (2d Cir. 2009).............................................................................18, 19

*In re Simonini*,
   69 F. App'x 169 (4th Cir. 2003) ...............................................................................35

*In re Sori*,
   513 B.R. 728 (Bankr. N.D. Ill. 2014) .......................................................................35

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)..........................................................................8, 10, 11

*In re Stewart*,
   544 B.R. 859 (Bankr. N.D. Miss. 2015) ..................................................................35

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
   559 B.R. 563 (Bankr. S.D.N.Y. 2016) .....................................................................45

*Sunward Elecs., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004).........................................................................................6

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013).......................................................................................6

*In re U.S. Steel Canada Inc.*,
   571 B.R. 600 (Bankr. S.D.N.Y. 2017) .....................................................................19

*In re Unit Parts Co.*,
   9 B.R. 386 (W.D. Okla. 1981) ..................................................................................24

*United States v. Colasuonno*,
   697 F.3d 164 (2d Cir. 2012)......................................................................................36

*United States v. Johnson*,
   378 F.3d 230 (2d Cir. 2004)......................................................................................36

*UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE. Ltd.*,
   No. 14-CV-9262 VEC, 2015 WL 4005527 (S.D.N.Y. July 1, 2015) ......................21

*In re Verestar, Inc.*,
   343 B.R. 444 (Bankr. S.D.N.Y. 2006) .....................................................................45

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016).......................................................................9

*Ward v. Silverberg*,
    652 N.E.2d 914 (N.Y. 1995).......................................................................41

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*,
    2017 WL 972117 (S.D.N.Y. Mar. 10, 2017) .........................................27

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
    460 F.3d 281 (2d Cir 2006).......................................................................21

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000).......................................................................10

## Statutes

11 U.S.C. § 362....................................................................... *passim*

11 U.S.C. § 1502.......................................................................18, 20

11 U.S.C. § 1520....................................................................... *passim*

11 U.S.C. § 1521....................................................................... *passim*

11 U.S.C. § 1525.......................................................................23, 26

28 U.S.C. § 1334.......................................................................23, 24

Mexcian Civil Code Art. 1910...................................................31

## Other Authorities

16 AM. JUR. 2D CONFLICT OF LAWS § 46 (2019) .......................................22

8 COLLIER ON BANKRUPTCY at 1520-04 ...............................24, 25

Fed. R. Bankr. P. 7008...................................................................28

Fed. R. Bankr. P. 7012...................................................................6, 27

Fed. R. Civ. P. 8...........................................................................28

Fed. R. Civ. P. 12...................................................................... *passim*

Defendants Oro Negro Primus, Oro Negro Laurus, Oro Negro Fortius, Oro Negro Decus, and Oro Negro Impetus (the "**Singapore Rig Owners**" or "**Rig Owners**"), Roger Bartlett and Roger Hancock (the "**Foreign Singapore Directors**," and, together with the Singapore Rig Owners, the "**Foreign Singapore Defendants**"), and Hunter Cochrane, Jr. (together with Messrs. Bartlett and Hancock, the "**Singapore Directors**," and together with the Foreign Singapore Defendants, the "**Singapore Defendants**") respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss the Complaint, pursuant to Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure.

## <u>INTRODUCTION</u>

Plaintiff's sprawling and fanciful complaint—a tall tale that involves overwhelmingly foreign parties, events that occurred exclusively outside of the United States, and claims arising predominantly under foreign law—should not proceed against the Singapore Defendants in this Court. Indeed, Plaintiff's claims as pled against the Singapore Defendants fail as a matter of settled law for several independent, and threshold, reasons.

<u>First</u>, the Court lacks personal jurisdiction against the Foreign Singapore Defendants with respect to any of Plaintiff's non-contract claims (*i.e.*, all but Counts 12 and 17 against the Singapore Rig Owners). Consistent with both Supreme Court and Second Circuit precedent and fundamental due process principles, the Court cannot exercise personal jurisdiction over any of the Foreign Singapore Defendants. None of the Foreign Singapore Defendants is "at home" in the U.S. or has anything approaching the requisite "minimum contacts" that would permit them to be hauled into court in the U.S. consistent with due process. Nor do any of Plaintiff's efforts to plead a jurisdictional basis over any of the Foreign Singapore Defendants in spite of their non-existent "minimum contacts" pass legal muster. *See* Point I, *infra*.

<u>Second</u>, all counts of the Complaint fail because the asserted tort claims as well as the Foreign Debtors' rights under the Bareboat Charters, if any, are not located in the U.S. Under applicable non-bankruptcy law and the governing greatest interest test, the situs of these claims and rights (if any) is either in Mexico or Singapore, not the U.S. As a result, the interests that the Plaintiff seeks to protect are not located "within the territorial jurisdiction of the United States," as required by Sections 1520(a) and 1521(a)(5) of the Bankruptcy Code and this Court lacks subject matter jurisdiction over them. *See* Points I.D.4 and II, *infra*.

<u>Third</u>, all of the claims asserted against the Singapore Defendants should be dismissed pursuant to the "act of state" doctrine and/or the doctrine of *forum non conveniens*. Consistent with the "act of state" doctrine, Plaintiff cannot ask this Court to second-guess, let alone overturn the acts of the Mexican government that are the core of Plaintiff's Complaint. Nor should Plaintiff be permitted proceed in this Court when every *forum non conveniens* factor militates in favor of this lawsuit, and certainly the claims against the Singapore Defendants, being heard (if anywhere) by a Mexican court. *See* Point III, *infra*.

<u>Fourth</u>, Count 18 (alleging violations of Section 1520(a)(1) and the Comity Order) does not state a claim for relief as the complained-about actions were exempt from the U.S. stay outlined in Section 1520(a)(1) by virtue of the police and regulatory exception to the automatic stay. In addition, these actions were authorized by a Mexican criminal court and Mexican criminal law, and were not prohibited by the *Concurso* Court's orders in Mexico for the same reason. As such, they did not violate any *Concurso* Court orders which were granted comity by this Court. *See* Point IV.C., *infra*.

<u>Fifth</u>, should the Court reach the substance of Plaintiff's remaining claims against the Singapore Defendants, none of those claims states a viable basis for relief: (a) while Plaintiff

purports to bring claims under New York law, each of Plaintiff's non-contract claims against the Singapore Defendants (Counts 7-11, 13-16, and 19-21) are governed by Mexican law, and Mexican law does not recognize any of the causes of action pled by Plaintiff; (b) although Plaintiff seeks to shoehorn the facts of this case into a variety of common law claims, his allegations fail to state any actionable claim against the Singapore Defendants; and (c) Count 17 (breach of contract) fails as well since it misstates the terms of the Bareboat Charters and asserts incorrectly that the Charters are valid and enforceable. *See* Point IV, *infra*.

For the reasons set forth herein, the Complaint should be dismissed against the Singapore Defendants in its entirety and with prejudice.

## SUMMARY OF PLAINTIFF'S COMPLAINT

As this Court is already familiar with the gravamen of Plaintiff's allegations, they will not be re-stated at length here. The plaintiff, Gonzalo Gil-White (*i.e.*, individually and in his former capacity as Foreign Representative of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("**Integradora**") and Perforadora Oro Negro, S. de R.L. de C.V. ("**Perforadora**," and together with Integradora, "**Oro Negro**")), has filed a 579-paragraph, 129-page Complaint that generally alleges a vast and unverified conspiracy among 24 different defendants to "destroy[] Oro Negro" by interfering in Oro Negro's relationship with Petróleos Mexicanos ("**Pemex**"), resulting in the loss of Oro Negro's only customer. *See*, *e.g.*, Compl. ¶¶ 1-2, 9, 182-194, 214-241, 272-278, 306-414, 426-436.

The Singapore Rig Owners, which are companies incorporated in and with a principal place of business in the Republic of Singapore (*id*. ¶¶ 77-78), collectively own five "jack-up rigs" located in the Gulf of Mexico (the "**Rigs**"). *Id*. ¶¶ 4, 79. The Singapore Directors, two of whom are United Kingdom citizens/Singapore residents and one of whom is a Florida resident, are responsible for overseeing the affairs of the Singapore Rig Owners. *Id*. ¶¶ 82-87.

3

To operate its drilling business, Oro Negro chartered the Rigs from the Singapore Rig Owners pursuant to contracts referred to in the Complaint as the "**Bareboat Charters**." *Id*. ¶ 79. Oro Negro then leased the Rigs to Pemex, Mexico's sovereign oil company and Oro Negro's sole client, pursuant to drilling contracts for each Rig (the "**Pemex Drilling Contracts**"). *Id*. ¶¶ 1, 4-5. Pemex subsequently terminated the Pemex Drilling Contracts. *Id*. ¶ 214. Thereafter, the Singapore Rig Owners terminated the Bareboat Charters under their terms. *Id*. ¶ 250.[1]

On September 11, 2017, Perforadora filed a *Concurso Mercantile* proceeding in the Mexican courts in order to seek restructuring, consolidate any claims against Perforadora, and preserve the status quo during the *Concurso*. *Id*. ¶¶ 195, 211. Integradora commenced its own *Concurso Mercantile* proceeding on September 29, 2017, which was consolidated with the Perforadora *Concurso* on October 31, 2017. *Id*. ¶ 198. The parties to the *Concourso* proceeding are substantially identical to the parties here. The Mexican *Concurso* proceeding is still pending.

On June 6, 2019, Plaintiff filed the present Complaint in this Court. The Complaint asserts 21 causes of action, including the following claims against the Singapore Defendants (many of which are also brought against some or all of the other defendants):

- Count 7: Intentional Torts under *Mexican* Law in Connection with Integradora's and Perforadora's Reorganization Efforts in *Mexico*, against all of the Singapore Defendants;

- Count 8: Torts under *Mexican* Law in Connection with Integradora's and Perforadora's Reorganization Efforts in *Mexico*, against all of the Singapore Defendants (alternative to Count 7);

---

[1] This description is inaccurate. The Singapore Rig Owners issued notices confirming that the Pemex termination resulted in the termination of the Bareboat Charters. The Court is free to consider documents that are incorporated by reference and documents that are either within plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Salichs v. Tortorelli*, No. 01 CIV. 7288(DAB)THK, 2004 WL 602784, at *2 (S.D.N.Y. Mar. 29, 2004).

- <u>Count 9</u>: Abuse of Process in *Mexico* and Conspiracy to Commit Abuse of Process in *Mexico* against all of the Singapore Defendants;

- <u>Count 10</u>: Intentional Torts under *Mexican* Law in Connection with the *Mexican* Criminal Proceedings, against all of the Singapore Defendants (alternative to Count 9);

- <u>Count 11</u>: Negligent Torts under *Mexican* Law in Connection with the *Mexican* Criminal Proceedings, against all of the Singapore Defendants (alternative to Count 10);

- <u>Count 12</u>: Violation of the Implied Covenant of Good Faith and Fair Dealing in the Bareboat Charters, against the Singapore Rig Owners;

- <u>Count 13</u>: Tortious Interference and Conspiracy to Tortiously Interfere in the Bareboat Charters in *Mexico*, against the Singapore Directors;

- <u>Count 14</u>: Tortious Interference and Conspiracy to Tortiously Interfere in Perforadora's Business Relationship with the Singapore Rig Owners in *Mexico*, against the Singapore Directors;

- <u>Count 15</u>: Intentional Torts under *Mexican* Law in Connection with the Bareboat Charters and the Singapore Rig Owners, against the Singapore Directors (alternative to Counts 16 and 17);

- <u>Count 16</u>: Negligent Torts under *Mexican* Law in Connection with the Bareboat Charters and the Singapore Rig Owners, against the Singapore Directors (alternative to Count 15);

- <u>Count 17</u>: Breach of the Bareboat Charters (for failure to pay Reimbursement Costs), against the Singapore Rig Owners;

- <u>Count 18</u>: Declaratory Judgment and Damages for Violations of 11 U.S.C. § 1520(a)(1) and the Comity Order, against the Singapore Defendants;

- <u>Count 19</u>: Prima Facie Tort, against the Singapore Defendants;

- <u>Count 20</u>: Negligence, against the Singapore Rig Owners; and

- <u>Count 21</u>: Unjust Enrichment and Conspiracy to Commit Unjust Enrichment, against the Singapore Rig Owners.

## ARGUMENT

I.    **THIS COURT LACKS PERSONAL JURISDICTION OVER EACH OF THE FOREIGN SINGAPORE DEFENDANTS WITH RESPECT TO ALL OF PLAINTIFF'S NON-CONTRACT CLAIMS AND AS TO ALL CLAIMS AGINST THE FOREIGN SINGAPORE DIRECTORS**

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), as incorporated by Rule 7012(b) of the Federal Rule of Bankruptcy Procedure, a plaintiff "must make a prima facie showing that jurisdiction exists." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).  Further, when a complaint asserts specific personal jurisdiction, "a plaintiff must establish the court's jurisdiction with respect to *each* claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis in original); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002) ("[I]t is important to remember that a plaintiff must secure personal jurisdiction over a defendant with respect to *each claim* he or she asserts") (quotation and alteration omitted; emphasis in original).  While jurisdictional allegations are construed "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[,]" a court will "not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (citations omitted).

As set forth below, Plaintiff has not alleged, and cannot prove, any basis for the exercise of general or specific personal jurisdiction over any of the Foreign Singapore Defendants with respect to any of the non-contract claims asserted against them, *i.e.*, Counts 7-11 and 18-21

against the Singapore Rig Owners, and Counts 7-11, 13-16, and 18-19 against the Foreign Singapore Directors.[2]

### A.   The Foreign Singapore Defendants Lack Any Jurisdictional Contacts With This District (Or Anywhere In The United States)

Plaintiff conclusorily alleges that this Court has jurisdiction over each Defendant, including each of the Foreign Singapore Defendants, because "each Defendant is found or resides in this District, has or had agents in this District, transacted business throughout the United States, including in this District. . . ."  Compl. ¶ 94.  As concerns the Foreign Singapore Defendants, this allegation is entirely and demonstrably incorrect.

The Foreign Singapore Defendants cannot be found and do not reside in this District, or anywhere in the United States.  *See* Declaration of Roger A. Hancock on behalf of the Singapore Rig Owners filed in conjunction herewith ("**Rig Owners Decl.**") ¶¶ 3-4; Declaration of Roger A. Hancock in his personal capacity filed in conjunction herewith ("**Hancock Decl.**") ¶¶ 3-4; Declaration of Roger Bartlett in his personal capacity filed in conjunction herewith ("**Bartlett Decl.**") ¶¶ 3-4; *see also* Compl. ¶¶ 85, 87.[3]  The Singapore Rig Owners are incorporated in and have a principal place of business in Singapore, not the United States.  Rig Owners Decl. ¶ 4; Compl. ¶ 78.  Neither of the Foreign Singapore Directors is or ever has been a citizen or resident of the United States; rather, both are citizens of the United Kingdom and residents of Singapore.  Hancock Decl. ¶ 4; Bartlett Decl. ¶ 4.  The Foreign Singapore Defendants do not have any office,

---

[2] As demonstrated herein, Counts 7 through and including 16, and 19 through and including 21, should be dismissed for lack of subject matter jurisdiction, pursuant the "act of state" doctrine and the doctrine of *forum non conveniens*, and for failure to state a claim.  Count 17 should be dismissed pursuant to doctrine of *forum non conveniens* and for failure to state a claim.  *See* Argument Points II-IV, *infra*.

[3] The Court may properly consider the Declarations submitted by the Foreign Singapore Defendants.  "A court considering a motion to dismiss for lack of personal jurisdiction may consider all pertinent documentation submitted by the parties."  *Indelible Media Corp. v. Meat & Potatoes, Inc.*, 2012 WL 3893523, at *3 (S.D.N.Y. Sept. 7, 2012) (internal quotation marks and citation omitted).

place of business, leases, or other physical location in this District or anywhere in the United States.  Rig Owners Decl. ¶ 4; Hancock Decl. ¶ 5; Bartlett Decl. ¶ 5.  The Foreign Singapore Defendants also do not have a mailing address in this District or anywhere in the United States, nor do they have any agents in this District or the United States.  Rig Owners Decl. ¶¶ 4-5; Hancock Decl. ¶¶ 4-5; Bartlett Decl. ¶ 4-5.  Nor do the Singapore Rig Owners transact business in the United States; neither the Singapore Rig Owners nor the Foreign Singapore Directors have a bank account of any type in the United States, receive any income or revenue in the United States, or have an investment in the United States.  Rig Owners Decl. ¶ 7; Hancock Decl. ¶ 7; Bartlett Decl. ¶ 7.

### B. None Of The Foreign Singapore Defendants Can Be Subject To The Exercise Of General Personal Jurisdiction By This Court

General personal jurisdiction "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quotation omitted).  "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business."  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).  Similarly, general jurisdiction over an individual exists "in the forum where he is 'at home,' meaning the place of 'domicile.'"  *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir.), *cert. denied*, 138 S. Ct. 282 (2017) (citations omitted).  In contrast, "the Fourteenth Amendment's Due Process Clause does not permit a State to hale an out-of-state corporation before its courts when the corporation is not

'at home' in the State and the episode-in-suit occurred elsewhere." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1554 (2017); *see also Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014).

There can be no real dispute that the Court lacks general jurisdiction over the Foreign Singapore Defendants, as none of the Foreign Singapore Defendants is "at home" in the United States.[4]  Plaintiff concedes that "[t]he Singapore Rig Owners are companies established and with their principal place of business in Singapore," Compl. ¶ 78, and that Directors Bartlett and Hancock are "resident[s] of Singapore." *Id.* ¶¶ 85, 87.  The Foreign Singapore Defendants do not live and are not incorporated in the United States, do not have any assets in the United States, and do not maintain a principal place of business in the United States.  Rig Owners Decl. ¶¶ 3-5; Hancock Decl. ¶¶ 3-5; Bartlett Decl. ¶¶ 3-5.  There is no cognizable basis to conclude that the Court can exercise general jurisdiction over any of the Foreign Singapore Defendants.  *See Bauman*, 571 U.S. at 121 ("[T]he Due Process Clause of the Fourteenth Amendment precludes the District Court from exercising [general] jurisdiction over Daimler in this case, given the absence of any California connection to the atrocities, perpetrators, or victims described in the complaint."); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 333 (2d Cir. 2016) (holding that contacts such as "maintaining an office in Washington, promoting the Palestinian cause in speeches and media appearances, and retaining a lobbying firm" in the United States were insufficient to establish general personal jurisdiction).[5]

---

[4] Because bankruptcy law authorizes nationwide service of process, when determining whether exercising personal jurisdiction would be consistent with the Due Process Clause, "each Defendant's contacts with the U.S. as a whole, rather than with New York specifically, should be evaluated for purposes of personal jurisdiction." *In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. 488, 507 (Bankr. S.D.N.Y. 2015), *adhered to*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015).  Of course, this does not mean, however, that nationwide general jurisdiction exists over any defendant served.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2019 WL 1331830, at *22-23 (S.D.N.Y. Mar. 25, 2019) (rejecting argument that nationwide service of process provision "establishes <u>federal general jurisdiction</u> over all defendants who are domiciled in the United States") (emphasis in original).

[5] Neither the fact that one of the directors of the Singapore Rig Owners is based in the United States, nor that the Singapore Defendants are represented by U.S counsel, is sufficient to establish personal jurisdiction over them.

**C.**    **None Of The Foreign Singapore Defendants Can Be Subject To The Exercise Of Specific Personal Jurisdiction By This Court With Respect To Any Of Plaintiff's Non-Contract Claims**

There is equally no basis for the exercise of specific personal jurisdiction over any of the Foreign Singapore Defendants with respect to any of Plaintiff's non-contract claims asserted against the Singapore Rig Owners or the Foreign Singapore Directors.

"To establish [specific] personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd.*, 882 F.3d at 343 (quotation omitted). "Each defendant's contacts with the forum . . . must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). In addition, "the suit must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers Squibb Co. v. Superior Court of California*, --- U.S. -----, 137 S. Ct. 1773, 1780 (2017). "[T]he foreseeability of causing harm in the forum state, without more, is not enough to establish minimum contacts." *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 620 (Bankr. S.D.N.Y. 2015). "This is to ensure 'that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or

---

Clearly, the existence of one U.S. director, or representation by U.S. counsel in connection with the Chapter 15 case (as to the Singapore Rig Owners), or in moving to dismiss the Complaint (as to the Foreign Singapore Defendants) does not make the Foreign Singapore Defendants "at home" in the U.S. *Compare Brown*, 814 F.3d at 629; *Bauman*, 571 U.S. at 138. It is also insufficient to establish specific personal jurisdiction since it does not come close to satisfying the "continuous and systematic" affiliations with the forum as required for specific personal jurisdiction. *Bauman*, 571 U.S.at 138 ("[T]he words 'continuous and systematic' were used in *International Shoe* to describe instances in which the exercise of specific jurisdiction would be appropriate"). Moreover, even assuming that counsel may be considered an agent of a defendant for purposes of a jurisdictional analysis, in order for actions of a defendant's agent to be imputed to the defendant, "[t]he agent must be primarily employed by the defendant and not engaged in similar services for other clients." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000). Because counsel is "engaged in similar services for other clients," their contacts with the forum may not be imputed to the Singapore Defendants. *See Nursan Metalurji Endustrisi A.S. v. M/V TORM GERTRUD*, No. 07 CV 7687(GBD), 2009 WL 536059, at *2 (S.D.N.Y. Feb. 27, 2009) ("The attorneys and the investor relations firm allegedly retained by Defendant Torm are considered independent contractors for jurisdictional purposes. Their activities may not be deemed, under agency law, to be attributable to Defendant Torm."); *In re CIL Ltd.*, 582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018), *amended on reconsideration on other grounds*, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) ("Mintz Levin and E & Y are not [Defendant] Beith's agents and personal jurisdiction over Beith cannot be based upon actions taken by Mintz Levin and E & Y in the forum.").

10

'attenuated' contacts, or of the unilateral activity of another party or a third person.'" *Id.* at 620-621 (quotation omitted).

Here, none of the Foreign Singapore Defendants has the requisite "minimum contacts" (or indeed any contacts) with the U.S. as concerns any of Plaintiff's non-contract claims. The Foreign Singapore Defendants' complete lack of contacts with the United States is summarized above. And none of Plaintiff's non-contract claims arises out of any alleged conduct or alleged harm in the United States. To the contrary, as the Complaint alleges, each of these claims arises out of conduct alleged to have occurred in Mexico or Singapore. For example, Plaintiff alleges that the Foreign Singapore Defendants participated in instituting criminal proceedings in Mexico, *e.g.*, Compl. ¶¶ 306-397, and that the Singapore Rig Owners filed a complaint in Singapore against Integradora. *Id.* ¶¶ 280-284. Conspicuously, Plaintiff alleges no actions by the Foreign Singapore Defendants in the United States in connection with the events underlying the Complaint.

On this indisputable basis, the exercise of specific personal jurisdiction over any of the Foreign Singapore Defendants with respect to any of Plaintiff's non-contract claims would be entirely inconsistent with fundamental due process. *SPV Osus Ltd.*, 882 F.3d at 344 (affirming dismissal because "the connections between the UBS Defendants, SPV's claims, and its chosen New York forum are too tenuous to support the exercise of specific jurisdiction," and noting that the defendants were not residents of New York and plaintiffs alleged that the injuries suffered were caused by acts other than in-forum conduct of the defendants); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1781-82 (finding lack of specific jurisdiction over product liability claims in California where the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State," plaintiffs "were not prescribed Plavix in California, did not purchase

Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California," and "all the conduct giving rise to the nonresidents' claims occurred elsewhere").

**D.    None Of Plaintiff's Alternative Jurisdictional Allegations Gives Rise To Personal Jurisdiction Over The Foreign Singapore Defendants With Respect To Any Of Plaintiff's Non-Contract Claims**

In the demonstrable absence of any traditional "minimum contacts" between the Foreign Singapore Defendants and this District (or the United States), Plaintiff purports to allege several alternative bases for the exercise of personal jurisdiction over the Foreign Singapore Defendants with respect to all of his non-contract claims.  *See* Compl. ¶¶ 93-94.  However, none of Plaintiff's allegations is legally availing.

**1.    The Bareboat Charters' Forum Selection Clause Does Not Confer Personal Jurisdiction Over The Singapore Rig Owners For Any Of Plaintiff's Non-Contract Claims**

Each of the Bareboat Charters contains an identical forum selection clause, which provides that it applies "solely" to actions "in respect of the interpretation and enforcement of the provisions of this Charter and of the documents referred to in this Charter, and in respect of the transactions contemplated hereby."  *See, e.g.*, Amended and Restated Oro Negro Decus Pte. Ltd. Bareboat Charter ("**Decus Bareboat Charter**") § 19.1 (emphasis added) (*available at*: Chapter 15 Docket, ECF No. 3, Ex. 8.2).[6]  However, in spite of the limited nature of this clause, Plaintiff alleges that the forum selection clause confers personal jurisdiction over the Singapore Rig Owners for all of Plaintiff's claims (Compl. ¶ 93), even those that patently do not arise out of the

---

[6] While this Memorandum will reference the Decus Bareboat Charter, the Bareboat Charters for the remaining four Rigs are substantively identical in all respects material to this Memorandum.  *See* Compl. ¶¶ 124-129.

"the interpretation and enforcement" of the Charters.[7] This allegation is contradicted by both the plain language of the forum selection clause and the applicable case law.

Courts have held that forum selection clauses that restrict their reach to claims "in respect of" a contract are quite narrow, and apply only to claims that seek to challenge or interpret the contract. *See Peacock v. Ins. & Bonds Agency of Texas, PLLC*, 2012 WL 3702920, at *4 (N.D. Tex. Aug. 28, 2012) (forum selection clause governing actions brought "under or in respect of" employment contract did not cover wrongful termination claim under Age Discrimination in Employment Act); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. United Transp. Union Ins. Ass'n*, 2006 WL 456267, at *2-3 (S.D. Tex. Feb. 23, 2006) (forum selection clause governing claims "in respect of" D&O insurance policy did not cover claims under separate agreement between same parties to advance legal fees).

Against this legal framework, with the sole exception of the two contract claims (Counts 12 and 17), none of the remaining claims against the Singapore Rig Owners (*i.e.*, Counts 7-11, 18-21) seeks to "interpret[]" or "enforce[]" the Bareboat Charters:

- Plaintiff alleges tort claims (Counts 7 and 8) asserting that the Singapore Rig Owners (and all of the Defendants) were "colluding with Pemex to cause Pemex to terminate" the Pemex Drilling Contracts, entering into agreements for operation of the Rigs following the termination of that agreement, and "causing Deutsche Mexico to fail to make almost any payments to Perforadora." *See*, *e.g.* Compl. ¶¶ 487, 493.

- Plaintiff alleges that the Singapore Defendants (among other of the Defendants) abused process (Count 9), committed "[i]ntentional [t]orts" (Count 10), and committed "[n]egligent [t]orts" (Count 11) by causing "México to open four criminal investigations against Integradora, Perforadora," and their employees. Comp. ¶¶ 497, 504, 511.

---

[7] Even assuming *arguendo* that only Counts 12 and 17, as alleged, arise out of the "interpretation and enforcement" of the Bareboat Charters, this Court lacks subject matter jurisdiction over these claims pursuant to Chapter 15, among other reasons because Plaintiff identifies no property of the debtor located in the territorial jurisdiction of the United States. *See* Points I.D.4 and II, *infra*.

13

- Count 18 of the Complaint seeks a declaratory judgment proclaiming that all Defendants violated 11 U.S.C. § 1520(a)(1)'s bankruptcy stay and the Comity Order by purportedly interfering in Perforadora's right to possess the rigs, based on Defendants' alleged conduct in filing lawsuits or seeking to repossess the Rigs. Compl. ¶¶ 551-565.

- Plaintiff's remaining claims for prima facie tort (Count 19), "negligence" (Count 20), and unjust enrichment (Count 21) rely on allegations that Defendants purportedly caused Pemex to terminate its agreements with Perforadora, entered into agreements to manage the Rigs, caused Deutsche Mexico to fail to make payments to Perforadora, and caused Mexico to open criminal investigations (Compl. ¶¶ 567, 572, 577).

Finally, the non-contract claims against the Singapore Rig Owners (Counts 7-11 and 18-21) are also not "in respect of the transactions contemplated" by the Bareboat Charters. *See, e.g.*, Decus Bareboat Charter § 19.1. The "transactions" contemplated by the Bareboat Charters are limited to the operation and maintenance of the rigs at issue. *See, e.g.*, *id.* § 7 ("Maintenance and Operation"), § 10 ("Insurance, Repairs and Classification"). The Bareboat Charters do not address any conduct of the Singapore Defendants following the execution of the Charters, such as their alleged role in the termination of the Pemex Drilling Contracts or their alleged conduct in causing the filing of criminal complaints.

Accordingly, the Bareboat Charters' forum selection clause does not give rise to personal jurisdiction over the Singapore Rig Owners for any of Plaintiff's non-contract claims.

### 2. The "New York Litigation" Previously Filed By The Singapore Rig Owners Does Not Establish Consent To Jurisdiction In The Present Case

Plaintiff also alleges that the Court can exercise personal jurisdiction over the Foreign Singapore Defendants[8] because "[t]he Singapore Rig Owners have already availed themselves of the jurisdiction of the federal courts of this District under the Bareboat Charters when they sued

---

[8] In any event, this allegation does not apply to the Singapore Directors individually.

Perforadora in the New York Litigation." Compl. ¶ 93. This allegation misstates the law in this Circuit, however, as "[a] party's consent to jurisdiction in one case"—including by bringing a lawsuit in the forum—"does <u>not</u> confer jurisdiction in other suits." *CLdN Cobelfret Pte Ltd v. ING Bank N.V.*, 2016 WL 6670996, at *2 (S.D.N.Y. June 10, 2016) ("ING has also <u>not</u> waived personal jurisdiction defenses by bringing other cases related to the collapse of OW Bunkering . . . in this district.") (emphasis added); *see Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) (explaining that "[a] party's consent to jurisdiction in one case . . . extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available"). This allegation therefore does not establish personal jurisdiction over any of the Foreign Singapore Defendants.

### 3.    Pleadings Filed By Counsel For The Singapore Rig Owners In The Chapter 15 Case Do Not Waive Their Personal Jurisdictional Defense

Plaintiff alleges that personal jurisdiction is established over the Singapore Rig Owners because "all the Singapore Rig Owners have appeared in the Chapter 15 Proceeding." Compl. ¶ 93. While true that the Singapore Rig Owners filed objections (through counsel) to various relief sought by the foreign representative in the Chapter 15 case, such appearance is in no way an admission of jurisdiction or a waiver of personal jurisdiction arguments. Generally, a party only waives any objection to personal jurisdiction "by not raising it *on a motion to dismiss* under Rule 12(b)." *See 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539, at *5 (S.D.N.Y. Mar. 31, 2015) (emphasis added) (explaining that under Fed. R. Civ. P. 12(h)(1)(A) "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion described in Rule 12(g)(2)"). Of course, the Singapore Rig Owners have not waived their jurisdictional defense, as evidenced by their assertion of their personal jurisdiction defense on the present motion.

In contrast, "[m]erely appearing in court to contest its jurisdiction does not in itself constitute a waiver" of personal jurisdiction defenses. *Djordjevich v. Bundesminister Finanzen*, 124 F.3d 1309 (D.C. Cir. 1997); *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir. 1983) ("It is well settled that general appearance by a defendant does not constitute a waiver of the defense of lack of jurisdiction over the person."); *see also Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) ("Appellants' waiver point is not well taken. The need to file a special appearance in order to object to jurisdiction or venue has vanished. A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer.").

In any event, a party does not subject itself to the court's personal jurisdiction simply by appearing. *See Pacnav S.A. v. Effie Bus. Corp.*, No. 06 CIV. 13512 (JGK), 2010 WL 2102714, at *2 (S.D.N.Y. May 20, 2010) ("the defendants did not forfeit any personal jurisdiction defense by appearing and not previously raising a personal jurisdiction objection. While the defendants' counsel did file a notice of appearance, the Federal Rules of Civil Procedure do not require a special appearance and a party can file a general appearance and object to personal jurisdiction at any time before the answer is filed or in the answer"); *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 676 (S.D.N.Y. 2017) ("Respondent's waiver of service and notice of appearance do not themselves confer jurisdiction over Respondent"); *see also Gulf Ins. Co. v. Caldor Corp.*, No. 03 CIV. 2894 (LLS), 2006 WL 1586571, at *3 (S.D.N.Y. June 9, 2006) ("a party's appearance as petitioner in one proceeding does not necessarily subject it to personal jurisdiction in another matter, even in the same court"), *aff'd*, 273 F. App'x 90 (2d Cir. 2008).

In fact, even filing a proof of claim, which none of the Singapore Defendants did, does not subject a party to personal jurisdiction on matters unrelated to the proof of claim. *See In re*

16

*Lehman Bros. Holdings Inc.*, 544 B.R. 16, 35–36 (Bankr. S.D.N.Y. 2015) (Chapman, J.) ("ANZ Bank's filing of proof of claim number 29532 against LBSF here represents its (and its departments, including ANZ Nominees) submission to the jurisdiction of the Court *only with respect to litigation concerning the claims allowance process*.  As LBSF's adversary proceeding seeks money damages from ANZ Nominees so as to enlarge the estate, and will have no affect on the allowance or priority of claim number 29532, which was disallowed prior to LBSF commencing proceedings against ANZ Nominees, this adversary proceeding does not concern the claims allowance process.  Accordingly, ANZ Bank did not subject itself and its departments to jurisdiction with respect to this adversary proceeding by filing claim number 29532 against LBSF." (emphasis added)).  *See also Loomis v. Hunter, Humphrey & Yavitz, PLC*, No. BK-10-1885-RJH, 2012 WL 3064496, at *2 (D. Ariz. July 27, 2012) ("three of the four defendants named in the Adversary Proceeding, specifically the individual lawyers, did not file proofs of claim and therefore have not subjected themselves to the jurisdiction of the bankruptcy court").

Furthermore, the Singapore Directors have never appeared in this Court, and the Singapore Rig Owners only opposed relief sought by Plaintiff in the Chapter 15 case and never before sought affirmative relief from this Bankruptcy Court.  Plaintiff, and Oro Negro, chose this forum to commence a Chapter 15 case and thus involuntarily forced Oro Negro's Mexican and other foreign creditors to appear in this Court to the extent they wish to take positions on actions taken by the Foreign Debtors in this forum.  The Singapore Defendants are not aware of any precedent finding that in merely opposing relief sought by a foreign debtor, foreign creditors (and their directors) thereby subject themselves to the jurisdiction of this Court in matters unrelated to their objections.

17

**4.    The Foreign Singapore Defendants Did Not "Violate A Right In The United States," Nor Did "A Substantial Part Of The Event Giving Rise" To Plaintiff's Claims "Ar[i]se In This District"**

Plaintiff also conclusorily alleges that this Court has jurisdiction over each Defendant, including each of the Foreign Singapore Defendants, because "each Defendant . . . violated a right in the United States; and a substantial part of the events giving rise to the claims herein arose in this District."  Compl. ¶ 94.  These boilerplate allegations are simply incorrect.  The right that Plaintiff alleges that the Singapore Defendants violated—Perforadora's alleged right to possess the Rigs located in the Gulf of Mexico (*see* Compl. ¶¶ 430-431) —is located in Mexico, not the territorial jurisdiction of the United States.  As a result, Plaintiff's allegations cannot establish personal jurisdiction over the Foreign Singapore Defendants.

**a.    Under A Choice Of Law Analysis, The Claims Asserted Are Located In Mexico**

The right that Plaintiff alleges that the Singapore Defendants violated was Perforadora's purported right to possess the Rigs located in the Gulf of Mexico.  *See*, *e.g.*, Compl. ¶¶ 99, 430-431.  Under Section 1502(8) of the Bankruptcy Code, therefore, Plaintiff must plead that such "intangible property" is "deemed under applicable nonbankruptcy law to be located within" the territorial jurisdiction of the United States.  11 U.S.C. § 1502(8); *In re Fairfield Sentry Ltd.*, 768 F.3d 239, 244 (2d Cir. 2014).  Plaintiff fails to plead facts that could support such a conclusion.

The Bareboat Charters are governed by U.S. maritime law, *e.g.*, Decus Bareboat Charter § 19.1, and because U.S. maritime law is silent on the question of where an intangible right is located, the choice-of-law rules of the forum (*i.e.*, New York) apply.  *See Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009) ("When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights").

Under New York choice of law rules (not New York substantive law, which does not apply here),[9] "the law of the jurisdiction having the greatest interest in the litigation will be applied." *In re Cinque Terre Fin. Grp. Ltd.*, 2017 WL 4843738, at *13 (Bankr. S.D.N.Y. Oct. 24, 2017); *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 297 (Bankr. S.D.N.Y. 2018). Under New York's "greatest interest test," courts look to the specific facts before them to determine the governing substantive law. *Id.* at 297; *see also In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992) ("The goal of this analysis is to evaluate the various contacts each jurisdiction has with the controversy, and determine which jurisdiction's laws and policies are implicated to the greatest extent"); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993).

Here, any possessory interests under the Bareboat Charters, and the principal economic terms of the contracts and the alleged torts, point to Mexico as the jurisdiction with the "greatest interest" in the controversy (and to a lesser extent to Singapore). Both Oro Negro and Pemex are domiciled and located in Mexico, while the Singapore Rig Owners are domiciled and located in Singapore. Compl. ¶¶ 5, 18, 78. The Rigs at issue are located in the Gulf of Mexico. *Id.* ¶¶ 1, 4. In contrast, there are clearly no links to New York other than the forum selection clause, a factor which courts in this District have already found to be legally insufficient when standing alone. *In re B.C.I. Finances Pty Ltd.*, 583 B.R. at 297.

Moreover, even if New York substantive law governed the situs of rights in the Bareboat Charters (if any), any rights under the Bareboat Charters would be located in Mexico or

---

[9] While some courts in this District have found that intangible property was located in New York where <u>both</u> New York forum selection and choice-of-law clauses were present, *see In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017); *In re Berau Capital Res. Pte Ltd*, 540 B.R. 80 (Bankr. S.D.N.Y. 2015)), these cases are inapplicable to the Bareboat Charters since they are governed by U.S. maritime law, not New York law. *See In re B.C.I. Finances Pty Ltd.*, 583 B.R. at 297 (declining to follow *Berau* and *U.S. Steel* where a New York choice-of-law clause was absent; finding that Australian substantive law governed the question of fiduciary duty claims' situs).

19

Singapore, not New York. Under New York law, the situs of intangible property is the location where performance is required. The location where performance under the Bareboat Charters is required is either in Mexico, where the Rigs are physically located, or Singapore, where the Rig Owners are located. *Compare Macatra B.V. v. Destiny Navigation*, 2010 WL 339774, at *1 (S.D.N.Y. Jan. 27, 2010) (finding that the situs of a debt emanating from a transaction among a Chilean company for loading a ship in Chile with a Norwegian company was outside New York because "New York has no relation to the transaction between [the parties] and therefore cannot be the situs of the debt.") *with ABKCO Indus., Inc. v. Apple Films, Inc.*, 350 N.E.2d 899 (N.Y. 1976) (interest of an English company in a distribution agreement with a New York company is New York since that is the location of party from whom performance is required); *see also Allied Mar. Inc. v. Descatrade SA*, 2009 WL 4884160, at *3 (S.D.N.Y. Dec. 16, 2009), *aff'd*, 620 F.3d 70 (2d Cir. 2010) (rejecting an argument that intangible property in a maritime context was located in New York, finding instead that the intangible property was located in France, where performance was required by the terms of the contract). Either way, performance is not required in New York, and thus even under New York substantive law, the situs of any rights under the Bareboat Charters is outside the United States.

### b. The Alleged Possessory Rights in the Rigs Are Not Located in the U.S. Under Admiralty Law

Nor does Perforadora's alleged "right to possess" the Rigs, *see* Compl. ¶ 556, qualify as "property subject to attachment or garnishment that may properly be seized or garnished by an action in a Federal or State court in the United States" under Section 1502(a)(8), because the Rigs are located in Mexican waters, *i.e.*, outside the jurisdiction of the United States.

A possessory right in a vessel or other maritime property can only be enforced by arrest of the vessel and is governed by maritime law. *See*, *e.g.*, *Barsom v. P/V AQUIDNECK FERRY*,

No. CA 12-808 S, 2013 WL 5447551, at *2–3 (D.R.I. Sept. 30, 2013). Under well-settled U.S.

maritime law, a vessel can only be attached or seized in the *district court* where the vessel is

located, but even then, *only* if the vessel is arrested within that jurisdiction. *Mackensworth* v.

*S.S. American Merchant*, 28 F.3d 246, 252 (2d Cir. 1994) ("Subject matter jurisdiction in an *in

rem* action in admiralty lies in the district court where the vessel or other *res* is located"); *UPT

Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE. Ltd.*, No. 14-CV-9262 VEC, 2015 WL

4005527, at *8 (S.D.N.Y. July 1, 2015) ("where a vessel is the target of an *in rem* action in

admiralty, it must be both within the territorial jurisdiction of the court hearing the cause and

subject to the order of the court through process of arrest") (internal quotations omitted), *aff'd

sub nom. Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016).

Since the Rigs are in Mexico, they are not within the territorial jurisdiction of this or any

U.S. court and cannot be subject to an order of a U.S. court through the process of arrest.

### c.    Plaintiff's Tort Claims Are Located Outside the United States

Finally, Plaintiff's tort-based claims, which represent the majority of the claims in the

Complaint, are also located outside the United States. Plaintiff has not made a single non-

conclusory allegation as to specific tortious conduct of the Singapore Defendants that took place

in the United States. Regardless, the situs of a tort under the *lex loci delictus* doctrine, which is

traditionally applied under New York law, is where the last event necessary for liability

occurred, *see White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir

2006) (citing *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 682 (N.Y. 1985)), which from

the face of the Complaint is clearly Mexico. *See also In re Iroquois Energy Mgmt., LLC*, 284

B.R. 28, 31-32 (Bankr. W.D.N.Y. 2002) (determining situs of intangible assets requires court to

"fully consider the concerns for justice and the convenience of all parties who may have an

interest in that asset"; for purposes of choice-of-law determination, situs of claim against the

foreign entity was with the claim's owner); 16 AM. JUR. 2D CONFLICT OF LAWS § 46 (2019) ("The statement is sometimes made that intangible personal property, such as evidences of debt and other choses in action, follows the person, and, in conformity with the maxim 'mobilia sequuntur personam,' *has its situs at the domicil of the owner*") (emphasis added).[10]

*    *    *    *    *

Simply put, Plaintiff cannot allege or demonstrate any basis for the exercise of personal jurisdiction over any of the Foreign Singapore Defendants with respect to Plaintiff's non-contract claims asserted against the Singapore Rig Owners (Counts 7-11 and 17-21) or against the Foreign Singapore Directors (Counts 7-11, 13-16, and 18-19).[11] As a result, each of these claims must be dismissed as against each of these Foreign Singapore Defendants.[12]

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS

In addition, the Complaint must be dismissed for the independent reason that Plaintiff fails to identify any property of the debtor that is located in the territorial jurisdiction of the

---

[10] In addition, Count 18 (for violation of Section 1520(a)(1) and the Comity Order) fails for additional reasons set forth herein. *See* Point IV.C., *infra*.

[11] If Plaintiff were to argue that jurisdiction is established over the Foreign Singapore Defendants because the Ad Hoc Defendants allegedly controlled them, and they allegedly served as the Ad Hoc Defendants' agents (*see* Compl. ¶¶ 415-416), this theory also would not give rise to personal jurisdiction. While a principal may be subject to jurisdiction based on in-forum conduct of the agent, the reverse is not true. *Complaint of Kreta Shipping, S.A.*, 1998 WL 173167, at *8 (S.D.N.Y. Jan. 29, 1998) ("While the acts of the agent may be attributed to the principal for jurisdictional purposes, the converse is not true; a principal's conduct may not supply the jurisdictional basis for an agent.").

[12] In addition, many of Plaintiff's claims are non-core claims as to which Defendants have a right to a jury trial. In the event that the Singapore Defendants' Motion to Dismiss is denied, the Singapore Defendants intend to move to withdraw the reference and assert their jury trial rights.

United States.  As a result, this Court lacks subject matter jurisdiction over Plaintiff's claims, and they should be dismissed with prejudice.[13]

Section 1521(a)(5) provides that upon recognition, the Court may entrust the "administration or realization of all or part of the debtor's assets *within the territorial jurisdiction of the United States* to the foreign representative…" (emphasis added).  11 U.S.C. § 1525(a)(5).  As demonstrated above (Point I.D.4, *supra*), none of Plaintiff's claims against the Singapore Defendants (other than arguably Count 18), is located within the territorial jurisdiction of the United States. Those claims therefore have not and could not have been entrusted by this Court to the Plaintiff for administration in the Chapter 15 case. As such, the claims are simply not part of this Chapter 15 case.

Plaintiff will no doubt argue that this Court has subject matter jurisdiction under 28 U.S.C. § 1334(b).  Clearly, the claims do not "arise under title 11," *see In re AOG Entm't, Inc.*, 569 B.R. 563, 574 (Bankr. S.D.N.Y. 2017) (proceedings "arise under" title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code[,]" (citation omitted)), nor do they "arise in" a case under title 11.  *See Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (proceedings "arise in" a bankruptcy case if they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy") (quotation omitted).

Plaintiff may argue that under *Parmalat Capital Finance Limited v. Bank of America Corp.*, 639 F.3d 572, 579 (2d Cir. 2011), the claims are "related to" a case under title 11. *Parmalat*, however, addresses a case under the old Section 304 and thus, had no opportunity to

---

[13] While the Court may arguably have subject matter jurisdiction over any violation of the automatic stay and its own orders, Count 18, alleging such claims, fails as matter of law and must be dismissed.  *See* Point IV.C., *infra*.

consider the impact of Chapter 15 in general and Section 1521(a)(5) in particular on the analysis. Cases following *Parmalat* felt compelled to follow it as a binding precedent and thus did not analyze the impact of Chapter 15 on the analysis. *See*, *e.g.*, *Fairfield Sentry Limited v. Theodoor GGC Amsterdam*, 2018 WL 375634, at *8 (Bankr. S.D.N.Y. Aug. 6, 2018).

Chapter 15, as the later adopted statute[14] evidences Congressional intent to limit Bankruptcy Court jurisdiction to assets of the foreign debtor "within the territorial jurisdiction of the United States."  Such intent must be harmonized with the more general provision of Section 1334. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general…. To eliminate the contradiction [between conflicting provisions], the specific provision is construed as an exception to the general one") (internal quotation marks omitted)).

Simply put, since Congress elected to include a territorial limitation as to a foreign debtor's assets that may be administered in a Chapter 15 case, a bankruptcy court sitting in an ancillary capacity to the main case has no jurisdiction over assets specifically excluded from the case.  *See*, *e.g.*, *In re JSC BTA Bank*, 434 B.R. 334, 344 (Bankr. S.D.N.Y. 2010) ("[I]n the chapter 15 context, a bankruptcy court's *jurisdiction* over property of the debtor is expressly limited to property located 'within the territorial jurisdiction of the United States'…. In the chapter 15 context…, a bankruptcy court's *limited in rem jurisdiction* requires only that the court possess the power to stay actions against a debtor that could impact property located within the United States"; "No reported case under chapter 15 has ever applied the automatic stay to an action or proceeding in a foreign country...") (emphasis added); *accord* 8 COLLIER ON

---

[14] While Chapter 15 was enacted in 2005, *see* PL 109–8, April 20, 2005, Section 1334(b) traces back decades.  *See*, *e.g.*, *In re Unit Parts Co.*, 9 B.R. 386, 388 (W.D. Okla. 1981) (quoting the nearly-identical former 28 U.S.C. § 1471).

BANKRUPTCY, ¶ 1520.01 at 1520-04 ("The limitation of these powers to property within 'the

territorial jurisdiction of the United States' recognizes that the chapter 15 case is a case ancillary

to a main proceeding pending in another country and should not invoke the universal jurisdiction

over property of an estate created in a case filed under section 301, 302 or 303.").

## III.    ALL OF THE CLAIMS AGAINST THE SINGAPORE DEFENDANTS SHOULD BE DISMISSED BASED ON THE "ACT OF STATE" DOCTRINE AND THE DOCTRINE OF *FORUM NON CONVENIENS*

Even if the Court did have personal jurisdiction over the Foreign Singapore Defendants

or subject matter jurisdiction over Plaintiff's claims, the claims against all of the Singapore

Defendants nonetheless should be dismissed.  The Singapore Defendants join in the arguments

advanced and authority cited by the Ad Hoc Defendants[15] that this case should be dismissed

pursuant to (i) the "act of state" doctrine, and (ii) the doctrine of "*forum non conveniens*."  Ad

Hoc Defendants' Mem. Parts I-II.

As explained by the Ad Hoc Defendants, Plaintiff's Complaint—including his claims

against the Singapore Defendants—rests on challenges (a) to the legality of actions taken by

Pemex, Mexico's sovereign oil company, and (b) the validity of Mexican criminal proceedings

and court orders.  Yet such sovereign "acts of state" are not reviewable by U.S. courts.  *Id.* Part

II.   All of the factors that courts consider when weighing the application of the act of state

doctrine also weigh in favor of dismissal.  *Id.*  The Complaint therefore should be dismissed

pursuant to the act of state doctrine.[16]

In addition, dismissal on the basis of *forum non conveniens* is fully warranted here.

Nearly all the parties are foreign companies or individuals, many key witnesses are located

---

[15] As used herein the term "**Ad Hoc Defendants**" means, collectively, the Ad Hoc Group, AMA, and Paul Leand.

[16] This result also would be consistent with principles of international comity.  Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard

outside the jurisdiction of this Court (including in Mexico and Singapore), and it is likely that

most, if not all, of the evidence is located outside of the United States.  Moreover, the balance of

the public and private interest factors also favors dismissal.  As set forth in the Ad Hoc

Defendants' Memorandum, dismissal based on *forum non conveniens* is appropriate.  Ad Hoc

Defendants' Mem. Part I.  *Accord In re Nat'l Bank of Anguilla*, 580 B.R. at 85-86 (dismissing

complaint on the basis of *forum non conveniens* and international comity where debtors were

"incorporated in Anguilla [and] do not operate in the United States," "the key witnesses in these

cases, reside in Anguilla, the Eastern Caribbean or London," and "all of the evidence and

witnesses for these cases are located in the Eastern Caribbean or elsewhere, but not in the United

States"); *In re Regus Business Centre Corp.*, 301 B.R. 122, 129 (S.D.N.Y. Bankr. 2003) ("[N]o

compelling reason appears for this Court to retain jurisdiction over a dispute between English

parties with respect to property situated in England which must be resolved under English law

and can be resolved promptly and fully by an English court which specializes in the resolution of

such disputes."); *see In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak

Naftogaz of Ukraine*, 311 F.3d 488, 500 (2d Cir. 2002) (affirming dismissal based on *forum non*

---

both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws."  *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).  The Second Circuit has "recognized one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions—foreign bankruptcy proceedings."  *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92-93 (2d Cir. 2006).  "A foreign nation's interest in the 'equitable and orderly distribution of a debtor's property' is an interest deserving of particular respect and deference, and accordingly, the Second Circuit has followed the general practice of United States courts and regularly defers to such actions."  *In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.*, 580 B.R. 64, 95 (Bankr. S.D.N.Y. 2018) (quoting *Royal & Sun Alliance*, 466 F.3d at 93).  Such deference to the Mexican proceeding is due here.  *In re Agrokor d.d.*, 591 B.R. 163, 184 (Bankr. S.D.N.Y. 2018) ("Under the prior section 304 and the current Chapter 15, American courts have recognized the need to extend comity to foreign bankruptcy proceedings. The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding"); *see also In re Poymanov*, 580 B.R. 55, 59 (Bankr. S.D.N.Y. 2017) ("The Court's decision in the Recognition Order, acting as an ancillary court in the context of this Chapter 15 case, to defer construing the extent to which the SDNY Claims constitute property of [the] estate (an issue that turns on application of Russian Law) until after the Russian Court administering the foreign main proceeding ruled on the issue . . .is supported by Bankruptcy Code section 1525(a)").

*conveniens* where the "witnesses are beyond the subpoena power of the district court, [and] the pertinent documents are in the Ukrainian language," and "[i]ssues governed by the law of Ukraine as well as by Russian law already have been raised," and thus "Ukrainian courts are better suited than United States courts for the resolution of these legal questions.").

In fact, the *forum non conveniens* argument is even more compelling as to the Singapore Defendants, who are not residents of and do not do business in the United States. Indeed, as demonstrated above in Point I, the Singapore Defendants have no contacts with the United States, save that a single director of the Singapore Rig Owners resides in the United States. Accordingly, irrespective of whether any portions of the Complaint as against other defendants are not dismissed, dismissal of all of the claims against the Singapore Defendants on the basis of *forum non conveniens* remains appropriate. *See, e.g.*, *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd*., 2017 WL 972117, at *10 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) (severing and granting summary judgment as to claim against Singapore defendant on *forum non conveniens* grounds); *Blum v. Gen. Elec. Co*., 547 F. Supp. 2d 717, 736-37 (W.D. Tex. 2008) (severing and dismissing certain claims that "allege no connection between [Plaintiff's] injuries and the United States" to be brought in Germany).[17]

## IV.    EACH OF PLAINTIFF'S CLAIMS AGAINST THE SINGAPORE DEFENDANTS FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A motion to dismiss under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012(b), is "designed to test the legal sufficiency of the complaint, and thus does not require the court to

---

[17] For similar reasons, the Court should dismiss the non-contract claims against the Singapore Defendants on the basis of *forum non conveniens* regardless of whether Count 12 and/or Count 17 survives this Motion. There is little, if any, overlap between the alleged conduct giving rise to Plaintiff's contract claims and the alleged conduct forming the basis of Plaintiff's non-contract claims. *Cf. Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (retaining jurisdiction over claims where one claim is based on contract containing forum selection clause because the claim "involves issues, witnesses, and documentary evidence that almost fully overlap with the other claims").

examine the evidence at issue." *DeJesus v. Sears, Roebuck Co.*, 87 F.3d 65, 69 (2d Cir. 1996); Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2), incorporated by Bankruptcy Rule 7008, provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678 (citations omitted); *accord Twombly*, 550 U.S. at 570. *Iqbal* provided a two-step approach to evaluate motions to dismiss. *First*, the court may begin by "identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* at 677-78. The court need not credit conclusory statements unsupported by factual allegations or legal conclusions and characterizations presented as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

*Second*, the court may give "well-pleaded factual allegations" an assumption of veracity and determine whether, together, "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The complaint must contain "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face." *Id.* at 678. Plausibility requires more than the "sheer possibility" of wrongdoing—the plaintiff must plead sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  Determining whether a claim is plausible is "a context-specific task that requires
the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

If the allegations of a complaint show that the complained-of conduct was "not only
compatible with, but indeed was more likely explained by," lawful conduct, no claim for relief is
stated.  *Id.* at 680, 682 (allegations are rejected when there is an "obvious alternative
explanation" for the conduct alleged that is more "likely" than the inference drawn in a
complaint).  Nor should a court accept allegations that are contradicted or undermined by other
more specific allegations in the complaint or by written materials properly before the court.  *See
Madonna v. United States*, 878 F.2d 62, 65-66 (2d Cir. 1989).  *See also Poindexter v. EMI
Record Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (When "a document relied
on in the complaint contradicts allegations in the complaint, the document, not the allegations,
control, and the court need not accept the allegations in the complaint as true.").

On a motion to dismiss a complaint, the court is permitted to take judicial notice of the
orders, pleadings, and other documents filed on the docket of the debtor's bankruptcy.  *In re
AMR Corp.*, 567 B.R. 247, 250 (Bankr. S.D.N.Y. 2017) (granting motion to dismiss and stating
that "[t]he record in an adversary proceeding in bankruptcy presumes and in large measure relies
upon the file in the underlying case").  *See Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec.
Corp.*, 351 F. Supp. 2d 79, 96 (S.D.N.Y. 2004) (on a motion to dismiss, "[t]he Court can take
judicial notice of matters of public record . . . including filings in related lawsuits.").  In addition,
"[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed
part of the pleading and may be considered."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)
(citations omitted).  A court may also consider "documents either in plaintiff['s] possession or of
which plaintiff[] had knowledge and relied on in bringing suit."  *Patrick v. Allen*, 355 F. Supp.

2d 704, 709 (S.D.N.Y. 2005) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.

1993)).  Documents that are "integral" to a complaint may also be considered on a motion to

dismiss.  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F. 2d 759, 762 (2d Cir.

1991); *Roth v. Jennings*, 489 F.3d at 509.

As demonstrated below, Plaintiff's claims against the Singapore Defendants suffer from a

series of fatal deficiencies that warrant dismissal, independent of the serious jurisdictional and

threshold issues with Plaintiff's claims as set forth in Points I-III, *supra*.[18]

### A.    All of Plaintiff's Tort Claims Are Governed by Mexican Law, And Plaintiff Has Failed To State Any Cognizable Claim Under Mexican Law Against The Singapore Defendants

As an initial matter, although Plaintiff purports to plead certain causes of action under

New York common law, as set forth in the Memorandum filed by the Ad Hoc Defendants as well

as the Memorandum filed by Seadrill Limited ("**Seadrill**") and Fintech Advisory Inc.

("**Fintech**") ("**Seadrill Mem.**"), a choice of law analysis demonstrates that all of Plaintiff's tort

claims—including all of the tort claims asserted against the Singapore Defendants—are

governed by Mexican, not New York law, because Mexico has the most significant relationship

to those claims.[19]  *See* Ad Hoc Defendants' Mem. Part III; Seadrill Mem. Part III.A.  Because

Mexican law applies to the claims alleged, Plaintiff's tort claims pleaded under New York law

against the Singapore Defendants (Counts 9, 13-14, 19, 20-21) necessarily should be dismissed.

*See, e.g.*, *In re Hellas Telecommunications (Luxembourg) II SCA*, 524 B.R. at 521 (dismissing

---

[18] The Singapore Defendants also incorporate the Ad Hoc Defendants' argument that the Court lacks jurisdiction over Plaintiff's claims because exercising jurisdiction over the claims is inconsistent with the purpose of Chapter 15. *See* Ad Hoc Defendants' Mem. Part VII.

[19]  Because this Court sits in the State of New York, New York's choice of law rules apply to Plaintiff's common law claims.  *In re Gaston & Snow*, 243 F.3d 599, 606 (2d Cir. 2001).

the Plaintiff's fraudulent conveyance claim pled under New York law because the court determined that foreign law applied).

As additionally set forth in the Ad Hoc Defendants' Memorandum and the Seadrill Memorandum, none of Plaintiff's allegations states a claim under Mexican law.  Ad Hoc Defendants' Mem. Part III.B.; Seadrill Mem. Parts II.B-C, III.B.  Mexican Civil Code Article 1910, under which all of Plaintiff's Mexican law claims are pled, imposes liability only on those who "act[] illicitly or against the good customs."  Plaintiff's allegations do not meet this standard.  Ad Hoc Defendants' Mem. Part III.B.  In addition, Mexican law does not recognize tortious interference claims.  Ad Hoc Defendants' Mem. Part III.B.2.; Seadrill Mem. Part II.B.  Moreover, Plaintiff has failed plausibly to allege that Plaintiff's claimed damages were the direct and immediate consequence of any act taken by the Singapore Defendants.  Ad Hoc Defendants' Mem. Part III.B.1.; Seadrill Mem. Part II.C.2.  As a result, no claim under Mexican law is stated.

### B.    Group Pleading Is Fatal To All Of Plaintiffs' Non-Mexican Law Claims Against The Singapore Defendants

Group pleading is not allowed, *see Erone Corp. v. Skouras Theaters Corp.*, 19 F.R.D. 299, 300 (S.D.N.Y. 1956), as each defendant is entitled to know his or hers alleged wrongdoing. *See Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000); *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.*), 383 B.R. 231, 257-58 (Bankr. S.D.N.Y. 2008) ("[G]roup pleading is generally forbidden because each defendant is entitled to know what he is accused of doing."); *DiVittori v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275,  286 (S.D.N.Y. 1988) ("The pleading must give notice to each opposing party of its alleged misconduct.  Thus, a claim may not rely upon blanket

31

references to acts or omissions by all the defendants, for each defendant named is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he is individually charged."); *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("liability is personal. . . .  Each defendant is entitled to know what he or she did that is asserted to be wrongful.  A complaint based on a theory of collective responsibility must be dismissed.").

Plaintiff's Complaint suffers from the fatal flaw of alleging facts in a group pleading fashion.  Despite asserting twelve claims against the Singapore Defendants, the Complaint at no point describes specifically what any one Singapore Defendant is alleged to have done.  Instead, Plaintiff impermissibly relies on "group pleading" that fails to distinguish the conduct of any Singapore Rig Owner or Singapore Director.  *See, e.g.*, Compl. ¶ 385 ("the Ad-Hoc Group and the Singapore Rig Owners violated 11 U.S.C. § 1520. . ."); *id.* ¶ 443 ("the misconduct of the Defendants has caused Integradora and Perforadora to incur tens of millions of dollars in legal fees and costs"); *id*. ¶ 493 ("All the Defendants negligently damaged Integradora and Perforadora by sabotaging their efforts to reorganize").

Similarly, the Complaint conclusorily alleges, again without any supporting basis, that all of the Singapore Rig Owners were acting at the direction and control of unspecified members of the Ad Hoc Group.  *See*, *e.g.*, Compl. ¶ 131 ("under the unlawful control of the Ad-Hoc Group, the Singapore Rig Owners refuse to pay the Reimbursement Costs to Perforadora"); *id.* ¶ 262 ("the Singapore Rig Owners, acting under the unlawful control of the Ad-Hoc Group, have filed dozens of motions and challenges in the *concurso* seeking orders that Deutsche México refrain from disbursing any funds to Perforadora"); *id.* ¶ 280 ("the Singapore Rig Owners, acting under the unlawful control of the Ad-Hoc Group, filed a complaint in Singapore. . .").  As set forth

herein, such allegations are insufficient to state a claim against any of the Singapore

Defendants—let alone all of them under the guise of impermissible "group pleading."

### C.    Plaintiff Fails To State A Claim Against The Singapore Defendants For Violating 11 U.S.C. § 1520(a)(1) Or The Comity Order (Count 18)

Plaintiff has failed to state a claim for violation of the Chapter 15 stay or the Court's

Comity Order.  For the Chapter 15 Stay to apply to a certain act, such act must affect property

located in the United States.  11 U.S.C. § 1520(a)(1); *In re Agrokor d.d.*, 591 B.R. at 187

("Section 1520(a)(1) provides that the automatic stay will apply to all the debtor's property *that

is located within the territorial jurisdiction of the United States*.") (emphasis in original).  The

same is true with respect to the Comity Order, which applies "solely with respect to persons or

property <u>over whom/which this Court has jurisdiction</u>."  *See* Comity Order at 4 (emphasis

added).

Plaintiff alleges that the Singapore Defendants interfered with its rights under the

Bareboat Charters, but its rights under the Bareboat Charters, if any, are not located in the U.S.

*See supra* Point I.D.4.  Thus, neither the Chapter 15 stay nor the Comity Order applies to rights

under the Bareboat Charters.  As set forth herein, Plaintiff's other allegations are also insufficient

to support this claim.

### 1.    No Automatic Stay Violation

To the extent that Plaintiff alleges that criminal proceedings in Mexico violated the

Chapter 15 stay or the Comity Order, those allegations fail to state a claim.  Criminal

proceedings are excepted from the automatic stay.  Plaintiff cannot "convert the recognition of a

foreign main proceeding into the granting, by operation of law, of a worldwide anti-suit

injunction as to any proceeding against the debtor, *regardless of subject matter*, that may be

pending or threatened against the foreign debtor in any country around the globe."  *In re JSC*

*BTA Bank*, 434 B.R. at 346 (emphasis added).  Even if the stay under Section 1520 stayed

actions in Mexico, under Section 362(b)(1) such actions are exempt from the stay as "the

commencement or continuation of a criminal action or proceeding against the debtor."  11 U.S.C.

§ 362(b)(1); *see also* 11 U.S.C. § 1520(a)(1) (providing that "[u]pon recognition of a foreign

proceeding that is a foreign main proceeding . . . sections 361 and 362 apply with respect to the

debtor and the property of the debtor that is within the territorial jurisdiction of the United

States").

On October 18, 2018, the Mexican Criminal Court issued a restitution order that, among

other things, directed, as a provisional remedy, the seizure and return of the Rigs to the Rig

Owners (the "**Criminal Restitution Order**").  *See* Compl. ¶ 372.  The Criminal Restitution

Order resulted from a criminal proceeding commenced and pursued under Mexican criminal law.

In the words of the Mexican Criminal Court itself, the governing criminal law addresses "the

most basic and fundamental rights, not only of private parties, but also of society, through which

a true Rule of Law is guaranteed."  *See* Criminal Court's October 12 Letter, as quoted in Letter

on Behalf of Interested Parties Regarding TRO Motion and TRO Brief [Adv. Pro. 18-01693,

ECF No. 8] at 4 (the "**Rosenberg Resp. Letter**").  Put differently, but again in the Mexican

Criminal Court's own words, "the interests protected by Mexican law, through the regulation of

criminal procedure and the principles governing it, are of the highest order for society in general,

as well as for the public order, since the purpose of criminal law is to protect the interests of

individuals, who constitute legal property, but not all interests, only those of a higher hierarchy,

to which it grants such protection by threatening and enforcing the penalty."  *Id*.

It is true that under Mexican law criminal actions may, and in some cases must, be

commenced by the alleged victim of the crime.  *See* Declaration of Patricia Almada [Chapter 15

Docket, ECF No. 129] ¶¶ 15-17 (the "**Almada Decl.**"). But that feature of Mexican criminal procedure does not remove criminal proceedings from the scope of Section 362(b)(1) of the Bankruptcy Code.

First, a court sitting in ancillary jurisdiction in a Chapter 15 case should not decide how a foreign sovereign should determine the procedure through which it exercises its police and regulatory powers. *In re JSC BTA Bank*, 434 B.R. at 337 ("This broadly expansive interpretation of section 1520(a)(1) would be most unwelcome, both here and in other countries, and would improperly centralize global control of dispute resolution within an ancillary case in the United States that is meant to support, not supplant, a main proceeding in a foreign jurisdiction").

Second, the Rig Owners' supposed motivation in initiating criminal proceedings is irrelevant under Section 362. "The circuit courts that have taken up the issue agree that prosecutorial purpose is not an element under § 362(b)(1)." *In re Stewart*, 544 B.R. 859, 863–64 (Bankr. N.D. Miss. 2015). Indeed, the Courts of Appeals for the Ninth and Fourth Circuits have each held that the stay does not apply to any criminal proceedings, regardless of intent. *In re Gruntz*, 202 F.3d 1074, 1085 (9th Cir. 2000) ("On its face, [Section 362] does not provide any exception for prosecutorial purpose or bad faith. If the statutory command of the Bankruptcy Code is clear, we need look no further: it must be enforced according to its terms"); *In re Simonini*, 69 F. App'x 169, 170 (4th Cir. 2003) (same).[20]

Third, criminal restitution "generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant." *Kelly v. Robinson*, 479 U.S. 36, 52

---

[20] Cases that focus on the motive behind the criminal prosecution are "[t]he minority interpretation." *In re Sori*, 513 B.R. 728, 734 (Bankr. N.D. Ill. 2014). The majority view is in accord with Supreme Court's precedent that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). When "the statute's language is plain, 'the sole function of the courts'—at least where the disposition required by the text is not absurd—'is to enforce it according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotations and citations omitted).

(1986).  For this reason, because restitution orders further the penal goals of the state and function to benefit "society as a whole," they are not dischargeable in bankruptcy.  *Id*.; *see also In re First Texas Petroleum, Inc.*, 52 B.R. 322, 329 (Bankr. N.D. Tex. 1985); *In re Ritter*, No. 05-36150(CGM), 2006 WL 3065518, at *5 (Bankr. S.D.N.Y. Oct. 27, 2006).  In other words, "[b]ecause criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, . . . restitution orders . . . operate 'for the benefit of' the State" and are not assessed "for . . . compensation" of the victim.  *Kelly v. Robinson*, 479 U.S. at 53 (internal quotation marks and citation omitted).  U.S. courts routinely recognize that restitution orders serve a punitive function.  *See, e.g. United States v. Johnson*, 378 F.3d 230, 244-245 (2d Cir. 2004).

The Second Circuit similarly explained that the obligation to pay restitution should not be confused with a creditor's action to collect on a debt:

> We consider it useful at the outset . . . to note that a restitution order is not imposed because a defendant has over-extended himself financially to various creditors.  A restitution order arises from a defendant's commission of a *crime*.  Indeed, "[i]n each order of restitution" for a crime, the court is required to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant".  . . .  Thus, while we have characterized the purpose of restitution as "essentially compensatory,". . . the compensation is for no ordinary debt, **nor is the person compensated simply a creditor.  Rather, restitution compensates a crime victim, to the extent money can do so, for actual injuries sustained, whether to body or property, from a criminal offense**.

*United States v. Colasuonno*, 697 F.3d 164, 175 (2d Cir. 2012) (bold emphasis added). Citing to *Gruntz*, the Second Circuit similarly stated that "[w]e too conclude that the plain language of § 362(b)(1) does not support a restitution exception."  *Colasuonno*, 697 F.3d at 179; *see also In re Partida*, 862 F.3d 909, 914 (9th Cir. 2017) ("We recognize that the exception to the automatic

stay for ongoing criminal actions or proceedings could well apply to criminal restitution collection per se").

The same is true under Mexican law. *See* Almada Decl. ¶¶ 18-19. As the *Concurso* Court explained when denying the Foreign Debtors' request to enjoin the Criminal Court from issuing any "order aimed to detain, freeze, seize, captivate or restitute any assets or rights from any similar order regarding assets or rights [of] Perforadora," a restitution order under these circumstances has as its purpose "preventing the assets that possibly constitute an instrument, object or product of the crime from being altered, being destroyed or disappearing." Order *available at* Rosenberg Resp. Letter, Ex. A.

Plaintiff asserts that the allegations made in the criminal proceedings are baseless. Compl. ¶¶ 324-329, 345, 360-367. Plaintiff, and Oro Negro, have whatever avenues are provided by Mexican law to challenge these allegations. But such challenges must be in Mexico, not in an ancillary proceedings in the U.S. As explained in the Almada Declaration, the Federal Code of Criminal Procedure in Mexico provides for a robust, multi-level investigation into the facts and evidence that support the alleged crime. *See* Almada Decl. ¶¶ 12-17. This process resulted in the issuance of certain orders from the Criminal Court pursuant to the Federal Code of Criminal Procedure. This Court simply has no jurisdiction to interfere in the criminal proceedings of a foreign sovereign for no other reason than the criminal defendant commenced a Chapter 15 proceeding and claims innocence. *In re JSC BTA Bank*, 434 B.R. at 337 ("a recognition order under chapter 15 should not be the indirect means for obtaining global relief that could not otherwise have been achieved by order of the court having jurisdiction of the main foreign proceeding"). Congress did not intend for Chapter 15 to serve either as a safe harbor for

criminals or for the U.S. bankruptcy court to serve as a court of appeals for the criminal courts of foreign sovereigns.

### 2.    No Violation of the Comity Order

Finally, Plaintiff alleges that the Singapore Defendants violated the Comity Order. *See*, *e.g.*, Compl. ¶¶ 553-557. Except for certain issues not relevant here, the Comity Order provided no relief beyond granting comity to the October 5, 2017 and October 11, 2017 Orders issued by the *Concourso* Court. To grant comity is to "abstain in deference" to a foreign court. *See Royal & Sun All. Ins. Co.*, 466 F.3d at 93. Accordingly, this Court's granting of comity to the October 5 and October 11 Orders could not have broadened the scope of the relief granted by those Orders. Critically, neither the October 5 Order nor the October 11 Order includes *any* relief entered *against the Rig Owners*. *See* Declaration of Alonso Del Val-Echeverria [Chapter 15 Docket, ECF No. 3], Exhs. 9-T and 10-T, respectively (together, the "**October Injunctions**"). As the October Injunctions do not even address the Rig Owners, Count 18 cannot sustain a claim against them and must be dismissed.

In any event, it is clear that under Mexican law the complained about actions did not violate the October Injunctions since the *Concourso* Court itself refused the enjoin them and denied the Foreign Debtors' application for such injunction. *See* Rosenberg Resp. Letter, Ex. A. In so ruling the *Concourso* Court followed Mexican law which, like U.S. law, does not provide that criminal restitution is somehow outside the scope of the criminal exception to the stay. *See* Almada Decl. ¶¶ 18-19; Rosenberg Resp. Letter, Ex. A

In addition, in a ruling dated October 19, 2018, the Criminal *Amparo* Court denied the Debtors' request for a provisional stay of the Criminal Court's Restitution Order on public policy grounds. *See* Rosenberg Resp. Letter, Ex. B (publicly available summary of ruling). In October 2018, the Criminal *Amparo* Court entered an order granting an indefinite stay of the Criminal

Court's Restitution Order with respect to four of the five Jack-Up Rigs: the *Fortius, Impetus, Laurus,* and *Primus* (but not the *Decus*) (the "**Criminal *Amparo* Order**"). *See* Letter to Update the Court Regarding the Recent Entry of an Order in Mexico [Adv. Pro. 18-1693, ECF No. 13]. The Criminal *Amparo* Order preserved the status quo pending the Criminal *Amparo* Court's ruling on the merits of the Debtors' appeal challenging the Criminal Restitution Order. *Id.* at 2. No stay, however, was in place at the time the events underlying the Complaint took place.

By requesting this Court to issue an injunction against the Rig Owners beyond the scope of the October 5 and 11 Orders, Plaintiff is asking this Court to, impermissibly "act[] as a court of appeals for the orders entered by the Mexican Court[,]" a result which, in this Court's words, would be "extraordinarily inappropriate." *See* Tr. of June 27, 2018 Hr'g 47:2-5 [Chapter 15 Docket, ECF No. 87]. *See also In re JSC BTA Bank,* 434 B.R. at 337 ("a recognition order under chapter 15 should not be the indirect means for obtaining global relief that could not otherwise have been achieved by order of the court having jurisdiction of the main foreign proceeding").

It is worth emphasizing that section 1521(d) of the Bankruptcy Code, along with sections 362(b)(1) and 1520(a), preclude the absurd result that Plaintiff attempts to achieve here, *i.e.*, that a U.S. bankruptcy court sitting in an ancillary capacity to a Mexican insolvency proceeding enjoin Mexican criminal proceedings against Plaintiff and the Foreign Debtors pending in Mexico—proceedings that are governed by Mexican criminal law, over which the Mexican bankruptcy court *itself* lacks jurisdiction and which are not otherwise stayed as a matter of Mexican law. 11 U.S.C. § 1521(d) ("The court may not enjoin a police or regulatory act of a governmental unit, including a criminal action or proceeding, under this section").

Accordingly, Plaintiff's claim that the Singapore Defendants violated the automatic stay and the Comity Order fails to state a claim.

**D.    Even If New York Law Were To Apply, Counts 9, 12-14, 17, and 19-21 All Fail To State A Claim Against The Singapore Defendants**

Even if New York law were to apply to Plaintiff's tort claims, each of Plaintiff's claims pled against the Singapore Defendants (Counts 9, 12-14, 17, 19-21) should be dismissed for failure to state a claim.

**1.    Plaintiff Has Not Stated A Claim Against The Singapore Defendants For Abuse of Process Claim And/Or Conspiracy To Commit Abuse Of Process (Count 9)**

"To state a claim for abuse of process under New York law, a plaintiff must allege that the defendant '(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of process.'" *Gilman v. Marsh & McLennan Companies, Inc.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y. 2012), *aff'd*, 654 F. App'x 16 (2d Cir. 2016). "The traditional rule in New York has been that 'the pursuit of a collateral objective must occur *after the process is issued*; the mere act of issuing process does not give rise to a claim.'" *Id.* (quotation omitted; emphasis added).

Plaintiff alleges that the Singapore Defendants abused process and/or conspired to abuse process because they "caused . . . Mexico to open four criminal investigations against" Oro Negro, *see* Compl. ¶ 497, but does not allege that the Singapore Defendants abused process <u>after</u> it was issued, as required to state this claim. An abuse of process claim may not be based on the filing of a lawsuit alone. *Place v. Ciccotelli*, 121 A.D.3d 1378, 1380 (N.Y. App. Div. 3d Dep't 2014) (recognizing that abuse of process claim "will only lie for improperly using process after it is issued"). Moreover, where an abuse of process claim is premised on actions taken in a foreign

jurisdiction, New York courts apply the law of that jurisdiction. Because Plaintiff's abuse of process claim is governed by Mexican law, it should be dismissed.[21]

Moreover, because Plaintiff cannot allege or demonstrate that the criminal proceedings were terminated in favor of Oro Negro, no malicious prosecution claim may be stated. *See, e.g.*, *Ward v. Silverberg*, 652 N.E.2d 914 (N.Y. 1995).

Finally, to the extent that Plaintiff purports to plead an abuse of process claim in his individual capacity, that claim also fails for the additional reason that Plaintiff possesses no abuse of process claim in his individual capacity. The Complaint is devoid of any particularized facts concerning what process was abused against Plaintiff Gil, the role the Singapore Defendants played in the purported abuse of process, or how Gil was injured thereby. The few allegations Plaintiff pleads in support of this claim are general in nature, and do not specify the allegedly tortious conduct or the harm suffered as a result. *See, e.g.*, Compl. ¶¶ 307, 310. Even if Plaintiff did have such an individual claim, that claim, brought by a Mexican citizen against Singapore entities arising out of alleged conduct in Mexico, does not belong in this Court on *forum non conveniens* grounds and because the claim is not with the territorial jurisdiction of the U.S.[22]

Plaintiff's abuse of process claims against the Singapore Defendants therefore should be dismissed.

---

[21] The Singapore Defendants join in the arguments advanced and authority cited by the Ad Hoc Defendants in favor of dismissal of Plaintiff's abuse of process claim. *See* Ad Hoc Defendants' Mem. Parts III.A.2, IV.D.

[22] In addition, this Court lacks jurisdiction over, and Plaintiff Gil has no standing to pursue, the Claims brought against the Singapore Defendants in Gil's personal capacity. *See* Compl. ¶¶ 496-514 (Counts 9, 10, and 11) (the "**Personal Claims**"). The Singapore Defendants hereby join in the arguments advanced and authority cited by the Ad Hoc Defendants with respect to their arguments seeking dismissal of the Personal Claims. *See* Ad Hoc Defendants' Mem. Part VI.

2.    **Plaintiff Has Not Stated A Claim Against The Singapore Rig Owners For Breach Of The Implied Covenant of Good Faith and Fair Dealing (Count 12)**

"As a general principle, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1359 (S.D. Fla. 2007), *aff'd*, 308 F. App'x 389 (11th Cir. 2009); *see Doyle v. Mastercard Int'l Inc.*, 700 F. App'x 22, 24 (2d Cir. 2017) (dismissing claim for breach of implied covenant of good faith and fair dealing where plaintiff pled breach of contract claim, even though plaintiff could not identify any particular provision breached); *Clalit Health Servs. v. Israel Humanitarian Found.*, 395 F. Supp. 2d 21, 23 (S.D.N.Y. 2005) (claim that defendant breached implied covenant of good faith and fair dealing by "funding a competing fundraising organization" did not state a claim where the agreement "was a non-exclusive agreement," and "[claimant] cannot complain that [plaintiff] funded a competing fundraiser when the agreement it signed by its terms specifically allowed for that very arrangement").

Here, Plaintiff does not plead any specific conduct that is alleged to be the basis of the claim for breach of the implied covenant of good faith and fair dealing, which itself is sufficient basis to dismiss this claim. *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) ("Integral to a finding of a breach of the implied covenant is a party's action that directly violates an obligation that may be presumed to have been intended by the parties."). To the extent that Plaintiff attempts to plead this claim based on the termination of the Bareboat Charters (Compl. ¶¶ 126, 144, 518-19), that allegation cannot state a claim for breach of the implied covenant, because the termination of the Bareboat Charters was specifically provided for in the Charters in the event the Pemex Drilling Contracts were terminated.

42

Each Bareboat Charter provides that "if the Pemex Drilling Contract [associated with the Charter] is terminated in accordance with its terms or for any other reason prior to the Termination Date [of the Bareboat Charters] . . . such termination will also be applicable" for the Bareboat Charters. *See*, *e.g.*, Decus Bareboat Charter § 3.2. The Pemex Drilling Contracts were terminated by Pemex in approximately October 2017. Compl. ¶¶ 214, 430. Because the Pemex Drilling Contracts terminated, the Bareboat Charters also automatically terminated by their terms. The Singapore Rig Owners cannot be liable for a breach of the implied covenant of good faith and fair dealing based on conduct that is expressly permitted by the Bareboat Charters. *See HLT Existing Franchise Holding LLC v. Worcester Hosp. Grp., LLC*, 609 F. App'x 669, 672 (2d Cir. 2015) ("Because HLT terminated the franchising agreement based on a contractually permitted, rational, and non-arbitrary factor . . . it did not breach the implied covenant of good faith and fair dealing or act arbitrarily or irrationally.").

In an apparent attempt to avoid the fact that the termination of the Bareboat Charters was expressly provided for in the Bareboat Charters themselves, Plaintiff conclusorily alleges that the termination of the Bareboat Charters was not effective because the termination of the Pemex Drilling Contracts was "unlawful, invalid and unenforceable." Compl. ¶ 519. But even if that were true (which it is not), the Bareboat Charters do not terminate solely upon "lawful" termination of the Pemex Drilling Contracts. Rather, the Bareboat Charters terminate "if the Pemex Drilling Contract is terminated in accordance with its terms **or** for any other reason. . . ." Decus Bareboat Charter § 3.2 (emphasis added). The Bareboat Charters thus expressly contemplate that they would terminate even if the Pemex Drilling Contract is terminated ***not*** in accordance with its terms.

43

Courts have upheld this common-sense conclusion.  For example, in *In re Genco Shipping & Trading Ltd.*, No. 14-11108 (SHL), 2015 WL 2444152, at *4 (Bankr. S.D.N.Y. May 21, 2015), the contract provided that "[i]f the [Master Lease] shall terminate for any reason this Sublease shall also terminate as of the date of termination of the [Master Lease]. . . ."  The defendants argued that the provision did not apply because it covered only situations where the Master Lease was terminated "as a result of the exercise of rights and remedies granted to any superior interest holders."  *Id*. at *5.  The Court rejected this theory, explaining that the provision "contains no such limitation," and instead "explicitly states that 'if the [Master Lease] shall terminate *for any reason*' then the Sublease terminates. . . ."  *Id*. (emphasis in original).  Similarly, in *In P.C. Mgmt., Inc. v. Page Two, Inc*., 573 N.E.2d 434 (Ind. Ct. App. 1991), the plaintiff argued that language in a sublease stating that the sublease terminates upon the termination of the relevant master lease "for any cause whatsoever" was ambiguous because the plaintiff "interprets [this language] to mean 'for material breach or default,' whereas the [defendant] and the trial court apparently interpreted them to mean 'for any reason whatsoever.'"  *Id*. at 438*.*  The Court found that the lease was unambiguous and that "[t]he plain meaning of [the provision] is that the sublease would terminate if the master lease terminated for any reason."  *Id*.

Likewise here, because the Bareboat Charters provided that they would terminate if the Pemex Drilling Contracts terminated either consistent with their terms "or for any other reason," Plaintiff cannot state a claim for violation of the implied covenant of good faith and fair dealing based on a purportedly unlawful termination of the Bareboat Charters.[23]

---

[23] In addition, to the extent that Plaintiff purports to state a claim for breach of the implied covenant on behalf of Integradora, that claim also fails because Integradora is not a party to the Bareboat Charters.  *Olivo v. Wells Fargo Bank, N.A*., 2019 WL 1435010, at *4 (E.D.N.Y. Mar. 29, 2019) (dismissing claim for breach of implied covenant because plaintiff was not party to contract).  For the same reason, Plaintiff cannot bring tortious interference claims (Counts 13-14) on behalf of Integradora.  *See Deutsche Bank Nat. Tr. Co*., 757 F.3d 79, 87 (2d Cir. 2014) (non-parties to contract could not state a claim for breach of contract); *Restis* v. *Am. Coalition Against Nuclear Iran, Inc.*,

3.      **Plaintiff Has Not Stated A Claim Against The Singapore Directors For Tortious Interference Or Conspiracy to Commit Tortious Interference (Counts 13 and 14)**

Plaintiff alleges that the Singapore Directors tortiously interfered and/or conspired to tortiously interfere[24] (a) with the Bareboat Charters between Perforadora and the Singapore Rig Owners by causing the Singapore Rig Owners to breach the Bareboat Charters (Count 13), and (b) with the business relationship between the Singapore Rig Owners and Perforadora by causing the Singapore Rig Owners to initiate criminal investigations and causing them to fail to pay reimbursement to Perforadora (Count 14).  Even assuming the truth of the allegations pled (which the Singapore Defendants dispute), Plaintiff cannot state a tortious interference claim premised on such allegations.[25]

"A corporate officer or director generally cannot be liable for tortiously interfering with a contract between the corporation and a third party."  *Chardin v. Turkie*, 1998 WL 886986, at *1 (S.D.N.Y. Dec. 18, 1998); *In re Verestar, Inc.*, 343 B.R. 444, 484 (Bankr. S.D.N.Y. 2006) ("[D]irectors of a corporation cannot be held personally liable for tortious interference with a contractual or business relationship of their own company unless such interference is caused by actions taken outside the scope of their employment."); *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 108-110 (N.Y. App. Div. 1st Dep't 2002)

---

53 F. Supp. 3d 705, 727-28 (S.D.N.Y. 2014) (holding that tortious interference with contract claim "must be dismissed because . . . the named Plaintiffs were not parties to the contracts at issue").

[24] "New York law does not recognize civil conspiracy to commit a tort as an independent cause of action."  *In re Stillwater Asset Backed Offshore Fund Ltd.*, 559 B.R. 563, 614 (Bankr. S.D.N.Y. 2016).  Even if it did, Plaintiff's conspiracy to commit tortious interference claim fails for the reasons set forth in the Ad Hoc Defendants' Memorandum.  *See* Ad Hoc Defendants' Mem. Part IV.C.

[25] The Singapore Defendants also join in the arguments advanced by the Ad Hoc Group Defendants with respect to the legal deficiencies of Counts 13 and 14, to wit: (i) Plaintiff fails adequately to allege causation; and (ii) based on Plaintiff's own allegations, the conduct Plaintiff alleges to constitute tortious interference was economically justified, thus barring Plaintiff's claims.  Ad Hoc Defendants' Mem. Part IV.A-B.

(dismissing tortious interference claims because "Plaintiff does not assert that the individual [director] defendants acted in other than a corporate capacity").  This is so because "[w]here the corporate officer/director is acting within the scope of his or her authority, the officer/director is not a third party vis-a-vis the corporation and as such can[n]ot interfere with its own contract." *Chardin*, 1998 WL 886986, at *1.  Plaintiff does not allege that the Singapore Directors acted outside the scope of their authority or for their own personal gain adverse to the Singapore Rig Owners.  As a result, the tortious interference claims should be dismissed.[26]

Additionally, Plaintiff's claim for tortious interference in the business relationship between the Rig Owners and Perforadora fails for yet another reason.  "[U]nlike a claim for tortious interference with contract, which requires a plaintiff to show no more than that the defendant intentionally and without justification procured a breach of a valid contract of which he was aware…, a claim for tortious interference with business relations requires a plaintiff to show, 'as a general rule,' that 'the defendant's conduct . . . amount[ed] to a crime or an independent tort[.]'"  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)).  While courts have recognized an exception to this rule "where a defendant engages in conduct 'for the sole purpose of inflicting intentional harm on Plaintiffs,'" that "exception is narrow."  *Id.* (quoting *Carvel Corp.*, 818 N.E.2d at 1103) (internal quotation omitted).  If a party interferes in a business relationship out of "normal economic self-interest," no claim for tortious interference with a business relationship may be stated.  *Carvel Corp.*, 818 N.E.2d at 1103-1104.

---

[26] To the extent that Plaintiff purports to bring these claims on behalf of Integradora, the claims also fail.  *See* note 23, *supra.*

Here, Plaintiff identifies no "crime" or "independent tort" by which the Singapore Directors interfered in the Singapore Rig Owners' relationship with Perforadora. Moreover, Plaintiff expressly pleads that the Singapore Directors were motivated to do so out of economic interest. Compl. ¶ 533 (alleging that the Singapore Directors acted "with the objective of taking over the Rigs and the [Pemex Drilling Contracts]"). Plaintiff therefore cannot plead a claim for tortious interference in the Singapore Rig Owners' business relationship with Perforadora.

### 4.   Plaintiff Fails To State A Claim Against The Singapore Rig Owners For Failure To Pay Reimbursable Costs (Count 17)

Count 17 is predicated upon the allegation that "[t]he Bareboat Charters are valid and enforceable contracts . . . ." *See* Compl. ¶ 548. But they are not. *See* Point IV.D.2, *supra*. In any event, this claim also fails for three additional reasons:

First, Plaintiff's allegation that the Singapore Rig Owners refused to pay the alleged Reimbursement Costs is unfounded and conclusory, since there is no allegation that a demand was made and refused. In fact, it is implicit in the Complaint that no demand was made, since the Foreign Debtors used to control the Rig Owners, *see* Compl. ¶ 131, and the Bareboat Charters specify the method of giving notices thereunder (*see*, *e.g.*, Decus Bareboat Charter § 20).

Second, through artful drafting Plaintiff misapplies Section 7.1 of the Bareboat Charters. That section specifically provides that "[Perforadora] shall bear the cost of maintaining the Vessel, her spare parts and documentation in a good state of repair . . . ." *See*, *e.g.*, Decus Bareboat Charter § 7.1. It is clear therefore that the Bareboat Charters require Perforadora to bear the costs of normal maintenance and operational condition. While the Charters require the Rig Owners to bear the costs of surveys, nowhere is there a reference to Five Year Class Certifications or Annual Certifications, the costs of which is the basis for $274,925.29 in

47

"Reimbursement Costs" sought by Plaintiff.  *See* Compl. ¶ 135.  Being a specialized contract for the charter of vessels, had these sophisticated parties intended to provide for these costs to be borne by the Singapore Rig Owners, the contract would have so provided. Courts will not read into a contract economic terms that the parties did not negotiate.  *Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby 'make a new contract for the parties under the guise of interpreting the writing'") (citations and alterations omitted); *Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 157 (N.Y. App. Div. 2d Dep't 1983) ("It is fundamental that courts enforce contracts and do not rewrite them.").

Third, Plaintiff utterly fails to allege any basis for approximately $7.5 million in Reimbursement Costs, as it is admitted that these costs were incurred prior to the commencement of the Charter Period but yet was not made part of the Charter.  Had the parties intended that the Rig Owner reimburse Perforadora for pre-Charter Period costs, again the contract should have so provided.  *Reiss*, 764 N.E.2d at 961; *Schmidt*, 97 A.D.2d at 157.

### 5. Plaintiff Has Not Stated A Prima Facie Tort Claim Against The Singapore Defendants (Count 19)

"Prima facie tort is a highly disfavored cause of action in New York."  *Katz v. Travelers*, 241 F. Supp. 3d 397, 405 (E.D.N.Y. 2017), *reconsideration denied*, 2017 WL 4180012 (E.D.N.Y. Sept. 20, 2017) (citing cases).  "The four elements for a prima facie tort in New York State are: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful."  *Id*.  However, "a set of facts giving rise to a common-law tort is fatal to a prima facie tort claim (and by analogy, to a claim for intentional tort) for 'once a traditional tort is established the cause of action for prima facie tort disappears. . . .'"  *Chen v. United States*, 854 F.2d 622, 628 (2d Cir. 1988)

(quotation omitted).  A claim for prima facie tort is only available to a plaintiff where there are no other tort causes of action available.  In other words, if a plaintiff's allegations would be able to support a common law tort claim, they cannot state a claim for prima facie tort.

Plaintiff alleges that the Singapore Defendants committed a prima facie tort by, *inter alia*, causing Pemex to force Perforadora to agree to unfavorable contract amendments, causing Pemex to terminate its contracts with Perforadora, entering into agreements to manage the oil rigs after the contracts were terminated, causing Deutsche Mexico to fail to make certain payments, causing Mexico to open criminal investigations, and causing the seizure of funds in a Mexican trust into which Pemex paid revenue under the Pemex Drilling Contracts.  Compl. ¶ 567.  Yet these allegations merely duplicate the allegations pled in support of Plaintiff's tortious interference and abuse of process claims among others.  As such, Plaintiff's allegations cannot support a claim for prima facie tort.  *Chen*, 854 F.2d at 628 (dismissing prima facie tort claim because "[t]he facts set out in Chen's complaint would give rise to at least three traditional common-law torts: malicious prosecution, intentional misrepresentation, and tortious interference with business relations.").

Moreover, Plaintiff fails to plead any particularized allegations regarding what, if any, actions were taken by any individual Rig Owner or Singapore Director that would give rise to a claim of prima facie tort.  Instead, Plaintiff merely pleads general allegations against all Defendants together, without distinguishing what conduct by what Defendant is alleged to give rise to liability against that Defendant.  *See*, *e.g.*, Compl. ¶ 567(a) ("arranging or participating in meetings and telephone conferences with" Pemex); *id.* ¶ 567(e) ("preventing Pemex from performing"); *id.* ¶ 567(f).  Such allegations cannot state a claim against the Singapore Defendants.  *In re LightSquared Inc.*, 504 B.R. 321, 356 (Bankr. S.D.N.Y. 2013) (dismissing

claims against certain defendants because plaintiff did not plead specific allegations as to tort

claims against them and also "has not pled a basis on which the DISH Defendants as a group or

individually can be held responsible for the alleged acts of Mr. Ergen and/or SPSO").[27]

### 6.    Plaintiff Has Not Stated A Negligence Claim Against The Singapore Rig Owners (Count 20)

"To establish a prima facie case of negligence, a plaintiff must demonstrate the existence

of a duty, a breach of that duty, and that the breach of such duty was the proximate cause of his

or her injuries." *Gray v. Wackenhut Servs., Inc.*, 721 F. Supp. 2d 282, 287 (S.D.N.Y. 2010),

*aff'd*, 446 F. App'x 352 (2d Cir. 2011). "The defendant must owe a duty of reasonable care to

the particular plaintiff," because "[a]bsent a duty of care, there can be no breach thereof and no

liability." *Id.*; *see also Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 177 (2d

Cir. 2006) (affirming dismissal of negligence claims because defendant owed no duty to

Plaintiff).

"Under New York law, a breach of contract will not give rise to a tort claim unless a legal

duty independent of the contract itself has been violated." *Bayerische Landesbank, New York

Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). "The independent legal

duty 'must spring from circumstances extraneous to, and not constituting elements of, the

contract, although it may be connected with and dependent upon the contract.'" *MVP Health

Plan, Inc. v. OptumInsight, Inc.*, 765 F. App'x 615, 617 (2d Cir. 2019) (quoting *Clark-

Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190 (N.Y. 1987)) (affirming dismissal of

tort claims because they "merely assert violations of duties indivisible from the contractual

---

[27] The Singapore Defendants also join the arguments advanced by the Ad Hoc Defendants that Plaintiff's claim for prima facie tort also fails because (a) Plaintiff fails to allege that Defendants acted solely out of "disinterested malevolence," and in fact pled an economic justification for Defendants' actions, (b) Plaintiff fails to plead special damages, and (c) it merely recycles their insufficiently plead tort claims. *See* Ad Hoc Defendants' Mem. Part IV.E.

obligations allegedly breached by [defendant] precluding maintenance of [plaintiff's] tort claims"). "In the absence of any independent duty, a negligence claim merges into the cause of action for breach of contract." *Calcutti v. SBU., Inc.*, 223 F. Supp. 2d 517, 522 (S.D.N.Y. 2002).

In support of the negligence claim, Plaintiff makes a conclusory assertion that the Singapore Rig Owners "owe a duty of reasonable care to Integradora and Perforadora in the collection of the Bonds and the Charter Hire." Compl. ¶ 571. But the relationship between the Singapore Rig Owners and Oro Negro sounds in contract. Plaintiff identifies no basis for any "independent duty" that the Singapore Rig Owners owed to Oro Negro. Because the Singapore Rig Owners owe no duty outside of that imposed by the contract, a claim for negligence cannot lie. As in *Clark-Fitzpatrick*, Plaintiff's claim that "defendant failed to exercise 'due care'" in performing contractual obligations "is merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract," and thus should be dismissed. *Clark-Fitzpatrick*, 516 N.E.2d at 194.[28]

### 7.    Plaintiff Has Not Stated An Unjust Enrichment Or Conspiracy To Commit Unjust Enrichment Claim Against The Singapore Rig Owners (Count 21)

"To state a claim of unjust enrichment under New York law, the plaintiff must allege '(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or [benefit] to the plaintiff.'" *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 3–4 (S.D.N.Y. 2004) (quoting *Golden Pacific Bancorp v. Federal Deposit Ins. Corp.*, 273

---

[28] Plaintiff's negligence claim is also barred by New York's economic loss doctrine because under the doctrine, a plaintiff cannot recover in tort for purely economic losses caused by a defendant's negligence. *CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 385-86 (S.D.N.Y. 2019) ("When Plaintiffs, as is the case here, allege economic loss as an injury in a tort claim the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie"); *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 291-92 (2001).

F.3d 509, 519 (2d Cir. 2001)).[29]  Generally, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery [for unjust enrichment] for events arising out of the same subject matter." *Am. Med. Assoc. v. United Healthcare Corp.*, 2007 WL 683974, at *9 (S.D.N.Y. Mar. 5, 2007) (alterations in original; quotation omitted).  "This doctrine clearly bars unjust enrichment claims when both parties to the lawsuit are also parties to the contract itself." *Id.*  "A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff." *Bazak*, 347 F. Supp. 2d at 4 (quotation omitted).

Plaintiff does not allege that the Singapore Rig Owners received anything of value that belonged to Plaintiff.  Notably, the oil rigs at issue belong to the Singapore Rig Owners, not to Plaintiff.  Moreover, even if Plaintiff did allege such facts, his unjust enrichment claim is barred by the contract between Perforadora and the Singapore Rig Owners.[30]

---

[29] This claim also fails because it duplicates the Plaintiff's other, inadequately pled tort claims. *See Ramiro Aviles v. S. & P Global, Inc.*, 380 F. Supp. 3d 221, 305 (S.D.N.Y. 2019).

[30] Plaintiff's unjust enrichment claim also should be dismissed because the Singapore Rig Owners took possession of the Rigs pursuant to an order of the *Concurso* Court. *See* Notice Pursuant to 11 U.S.C. § 1518 [Chapter 15 Docket, ECF No. 199] ("the Concurso Court presiding over the foreign main proceeding issued an order, dated May 15, 2019, requiring Perforadora to turn over to [the Rig Owners] within 24 hours the five offshore drilling platforms…. The Debtors…have complied with the Concurso Court's May 15, 2019 order"); Ad Hoc Defendants' Mem. Part IV.G.

## CONCLUSION

Plaintiff has failed to allege any viable basis for exercising personal jurisdiction over the Foreign Singapore Defendants. And, even if he did, dismissal of this case is appropriate for lack of subject matter jurisdiction, under the "act of state" doctrine, and on the basis of *forum non conveniens*. Finally, each of Plaintiff's claims against the Singapore Defendants fails to state a claim upon which relief can be granted, whether under Mexican or New York law.

The Singapore Defendants respectfully request that this Court dismiss the Complaint as against each of them in its entirety and with prejudice.

Dated: August 26, 2019
      New York, New York

Respectfully submitted,

By: */s/ Shmuel Vasser*
    Allan S. Brilliant
    Shmuel Vasser
    David A. Kotler
    Catherine Wigglesworth
    Yehuda Goor
    DECHERT LLP
    1095 Avenue of the Americas
    New York, NY  10036-6797
    allan.brilliant@dechert.com
    shmuel.vasser@dechert.com
    david.kotler@dechert.com
    catherine.wigglesworth@dechert.com
    yehuda.goor@dechert.com
    Tel:  (212) 698-3500
    Fax: (212) 698-3599

*Attorneys for Oro Negro Primus PTE. Ltd.; Oro Negro Laurus PTE. Ltd.; Oro Negro Fortius PTE Ltd.; Oro Negro Decus PTE. Ltd.; Oro Negro Impetus PTE. Ltd.; Roger Bartlett; Roger Hancock; and Hunter Cochrane, Jr.*