*Hearing Date and Time: To be determined.*
*Response Deadline: October 25, 2019*
*Reply Deadline: November 15, 2019*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: 212-373-3000
Fax: 212-757-3990
Andrew N. Rosenberg
Aidan Synnott
William A. Clareman

*Counsel for the Foreign Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT of NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PERFORADORA ORO NEGRO, S. DE R.L. DE C.V., *et al*. | Case No. 18-11094 (SCC) (Jointly Administered) |
| Debtors in a Foreign Proceeding. | |
| GONZALO GIL-WHITE, PERSONALLY AND IN HIS CAPACITY AS FOREIGN REPRESENTATIVE of PERFORADORA ORO NEGRO, S. DE R.L. DE C.V. AND INTEGRADORA DE SERVICIOS PETROLEROS ORO NEGRO, S.A.P.I. DE C.V. | Adv. Pro. No. 19-1294(SCC) |
| Plaintiff, | |
| -against- | |
| ALP ERCIL; ALTERNA CAPITAL PARTNERS, LLC; AMA CAPITAL PARTNERS, LLC; ANDRES CONSTANTIN ANTONIUS-GONZÁLEZ; ASIA RESEARCH AND CAPITAL MANAGEMENT LTD.; CQS (UK) LLP; FINTECH ADVISORY, INC.; DEUTSCHE BANK MEXICO, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE; GARCÍA GONZÁLEZ Y BARRADAS ABOGADOS, S.C.; GHL INVESTMENTS (EUROPE) LTD.; JOHN FREDRIKSEN; KRISTAN BODDEN; MARITIME FINANCE COMPANY LTD.; NOEL BLAIR HUNTER COCHRANE, JR; ORO NEGRO PRIMUS | |

PTE., LTD.; ORO NEGRO LAURUS PTE., LTD.;
ORO NEGRO FORTIUS PTE., LTD.; ORO NEGRO
DECUS PTE., LTD.; ORO NEGRO IMPETUS PTE.,
LTD.; PAUL MATISON LEAND, JR.; ROGER
ALAN BARTLETT; ROGER ARNOLD HANCOCK;
SEADRILL LIMITED; SHIP FINANCE
INTERNATIONAL LTD.; and DOES 1-100

Defendants.

**FOREIGN DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................... 1

FORUM CONTACTS ALLEGED IN THE COMPLAINT ..................................... 2

ARGUMENT ................................................... 3

   I.     Legal Standard................................................... 3

   II.    The Court Lacks General Jurisdiction over Any of the Corporate Foreign
        Defendants................................................... 6

   III.   This Court Lacks Specific Jurisdiction over the Corporate Foreign Defendants.......... 10

        A.     Plaintiffs Have Failed to Allege Sufficient Minimum Contacts with the
              United States................................................... 11

        B.     The Exercise of Personal Jurisdiction over Foreign Defendants Would
              Be Unreasonable................................................... 15

   IV.   The Court Lacks Personal Jurisdiction over Alp Ercil................................................... 18

CONCLUSION................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re: Aluminum Warehousing Antitrust Litig.*,
    90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........................................................................5

*Asahi Metal Indus. Co., Ltd.* v. *Superior Court of Cal.*,
    480 U.S. 102 (1987) ..............................................................................4, 15, 16, 17

*In re Bozel, S.A.*,
    434 B.R. 86 (Bankr. S.D.N.Y. 2010) ........................................................................5

*Bristol-Myers Squibb Co.* v. *Superior Court of Cal.*,
    137 S. Ct. 1773 (2017) ....................................................................................4, 11, 16

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016) ...............................................................................5, 6, 9

*Burger King Corp.* v. *Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................................11

*Charles Schwab Corp.* v. *Bank of Am. Corp.*,
    883 F.3d 68 (2d Cir. 2018) ........................................................................................4

*In re CIL Ltd.*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018) ......................................................................13

*Daimler AG* v. *Bauman*,
    571 U.S. 117 (2014) ................................................................................8, 12, 13, 15

*Dardana Ltd.* v. *Yugansknefteqaz*,
    No. 00 Civ. 4633, No. 00 Civ. 4633 (DAB), 2001 WL 1131987 (S.D.N.Y.
    Sept. 24, 2001), *vacated on other grounds*, 317 F. 3d 202 ......................................8

*Doe ex rel. Doe* v. *Abercrombie & Kent, Inc.*,
    No. 09 Civ. 7052 (VM), 2010 WL 286640 (S.D.N.Y. Jan. 19, 2010) ....................12

*Goodyear Dunlop Tires Operations, S.A.* v. *Brown*,
    564 U.S. 915 (2013) ..................................................................................................6

*Gucci Am., Inc.* v. *Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015) .......................................................................11

*Gucci Am., Inc.* v. *Weixing Li*,
    768 F.3d 122, 135 (2d Cir. 2014) .............................................................................8

*Hertz Corp.* v. *Friend*,
    559 U.S. 77 (2010)....................................................................................................10

*Jazini* v. *Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998)......................................................................................4

*Louros* v. *Cyr*,
    175 F. Supp. 2d 497 (S.D.N.Y. 2001).....................................................................12

*N. Grain Mktg. v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ...................................................................................14

*Nordic Bank PLC* v. *Trend Grp., Ltd.*,
    619 F. Supp. 542 (S.D.N.Y. 1985) ...........................................................................7

*Nursan Metalurji Endustrisi A.S.* v. *M/V TORM GERTRUND*,
    No. 07-CV-7687 (GBD), 2009 WL 536059 (S.D.N.Y. Feb. 27, 2009) ....................2

*In re Parmalat Secs. Litig.*,
    376 F. Supp. 2d 449 (S.D.N.Y. 2005).....................................................................18

*Penguin Grp. (USA) Inc.* v. *Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010).........................................................................................4

*Pregis Corp.* v. *Franklin Logistical Servs. Inc.*,
    No. 1:13-CV-1535, 2015 WL 4508415 (N.D.N.Y. July 23, 2015) ........................10

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017).......................................................................................18

*Retail Pipeline, LLC v. JDA Software Grp., Inc.*,
    No. 2:17-cv-00067, 2018 WL 1621508 (D. Vt. Mar. 30, 2018).............................10

*Robinson* v. *Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994).........................................................................................4

*Sherwin-Williams Co. v. C.V.*,
    No. 14 Civ. 6227, 2016 WL 354898 (S.D.N.Y. Jan. 28, 2016).........................15, 17

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*,
    Nos. 1428 (SAS), 01 Civ. 7342, 2003 WL 1807148 (S.D.N.Y. Apr. 4, 2003) ....................8, 9

*Sonera Holding B.V.* v. *Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014)....................................................................................9, 18

*SPV Osus Ltd.* v. *UBS AG*,
    882 F.3d 333 (2d Cir. 2018)....................................................................................5, 11

*SPV Osus Ltd.* v. *Unicredit Bank Austria*,
  No. 18-cv-3497 (AJN), 2019 WL 1438163 (S.D.N.Y. Mar. 30, 2019)...................................11

*St. Paul Fire and Marine Ins. Co.* v. *Scopia Windmill Fund, LP*,
  87 F. Supp. 3d 603 (S.D.N.Y. 2015).......................................................................................10

*Stormhale, Inc.* v. *Baidu.com*,
  675 F. Supp. 2d 373 (S.D.N.Y. 2009).................................................................................7, 9

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)..................................................................................................5, 6

*Tymoshenko* v. *Firtash*,
  No. 11–CV–2794 (KMW), 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013).........................7, 15

*Waldman* v. *Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016)...............................................................................................10, 11

*Wiwa* v. *Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000)..............................................................................................7, 9, 12

**OTHER AUTHORITIES**

Federal Rules of Bankruptcy Procedure Rule 7004(f)......................................................................6

Federal Rules of Bankruptcy Procedure Rule 7012(b)....................................................................1

Federal Rules of Civil Procedure Rule 12(b)(2)..............................................................................1

## PRELIMINARY STATEMENT

This action is brought by two Mexican companies—Perforadora and Integradora—and a Mexican citizen—Gonzalo Gil-White, alleging a host of what are predominantly tort claims under Mexican law. Their theory is that the "Ad Hoc Group and Mexico, including through Pemex, destroyed Oro Negro," (Compl. ¶ 2) by allegedly interfering with Oro Negro's contracts with Pemex, the Mexican state-owned oil company, and causing criminal investigations into Oro Negro's conduct to be launched in Mexico. Because the events alleged in the Complaint occurred almost entirely in Mexico, and relate to contracts and business relations with a Mexican state-owned entity and Mexican court proceedings, there is no basis for personal jurisdiction over foreign defendants.

The Complaint asserts 21 causes of action against 24 named defendants, most of whom are neither domiciled nor incorporated in the United States. Of the Ad Hoc Defendants, five are located outside of the United States and should not be subject to suit in this Court: Asia Research and Capital Management Ltd. ("ARCM"), Alp Ercil, CQS (UK) LLP ("CQS"), GHL Investments (Europe) Ltd. ("GHL"), and Ship Finance International Ltd. ("SFIL") (collectively, the "Foreign Defendants"). The Foreign Defendants have no meaningful connections to the United States other than ordinary business contacts incidental to being in a global industry, and their only connection to this matter is through their position as holders of Oro Negro Bonds, which were issued by a Singapore entity and governed by Norwegian law.

The Foreign Defendants move for an order dismissing the Complaint in its entirety as against them for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7012(b). As detailed below, it would violate long-settled notions of due process to hale the

Foreign Defendants into a U.S. court to adjudicate Plaintiffs' claims based on the Foreign

Defendants' de minimis contacts with the United States described in the Complaint.[1]

### FORUM CONTACTS ALLEGED IN THE COMPLAINT

Plaintiffs make no particularized allegations regarding personal jurisdiction over

any of the Foreign Defendants, instead making only general and conclusory assertions about the

bases for jurisdiction. (Compl. ¶ 94.)  In support of their jurisdictional claims, Plaintiffs have

identified only limited forum connections for each Foreign Defendant, which are plainly

insufficient to establish personal jurisdiction.[2]

ARCM & Alp Ercil.  ARCM is an investment manager and financial advisor that

is incorporated and has its principal place of business in Hong Kong.  (Compl. ¶ 29.)  It is not

alleged to have any affiliates, offices, or employees in the United States.  The only forum

contacts Plaintiffs plead are two types of investments in the United States, both of which are

unrelated to this case.  (*Id*. ¶¶ 30, 32, 33.)  *First*, the Complaint alleges that Cayman funds

managed by ARCM invest in the United States.  (*Id*. ¶ 32.)  *Second*, the Complaint alleges that

funds managed by ARCM raised capital in the United States through private placements.  (*Id*.

¶ 33.)  ARCM reports these investments through forms filed with the SEC.  (*Id*. ¶¶ 32-33.)

ARCM's CEO, defendant Alp Ercil, is a Turkish national residing in Hong Kong.

(*Id*. ¶ 35.)  The only forum contact Plaintiffs identify for Mr. Ercil is the conclusory allegation

that "[t]hrough ARCM and the funds that ARCM manages, Ercil conducts permanent and

substantial business in New York."  (*Id*. ¶ 36.)

---

[1]     The Foreign Defendants incorporate by reference all arguments and facts stated in the Ad Hoc Defendants'
Motion to Dismiss the Complaint ("Motion to Dismiss").

[2]     Foreign Defendants expressly do not admit to the facts alleged in the Complaint and reserve their right, as
necessary, to disprove the Complaint's jurisdictional allegations and show that no basis for personal
jurisdiction exists.

CQS.  CQS is incorporated and has its principal place of business in the United

Kingdom.  (*Id.* ¶ 37.)  Plaintiffs allege that CQS has had a subsidiary in New York since 2008

and that it conducts "permanent and substantial business through that subsidiary."  (*Id.* ¶ 38.)

CQS's U.S. affiliate is not alleged to have any connection to Oro Negro.  Plaintiffs further allege

that the United States is a "key market" for CQS,[3] and that funds managed by CQS invest in

New York and raise capital in the United States through private placements.[4]  (*Id.* ¶¶ 38, 41-42.)

GHL.  GHL is incorporated and has its principal place of business in Cyprus.  (*Id.*

¶ 45.)  The Complaint alleges that GHL is managed by Seatankers Management Company

Limited, also located in Cyprus, and that both GHL and Seatankers Management Company

Limited are ultimately owned and controlled by John Fredriksen, a Cyprus national residing in

the United Kingdom.  (*Id.* ¶¶ 46, 49, 63.)  Plaintiffs do not allege that GHL has any offices or

affiliates in the United States.

SFIL.  SFIL is incorporated and has its primary place of business in Bermuda.

(*Id.* ¶ 57.)  The only forum connections alleged are that SFIL trades on the New York Stock

Exchange ("NYSE"), engages a New York-based external auditor, previously had a New York-

based board member, and has one board member in Connecticut.  (*Id.* ¶ 60.)

## ARGUMENT

### I.    Legal Standard

As the party haling defendants into court, "plaintiff bears the burden of

demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."

---

[3]      In support of this statement, Plaintiffs allege that CQS's CEO stated that increasing penetration in the North
American market is "essential."

[4]      In examining the amounts invested and raised, the Complaint treats CQS and the funds it manages as a
single, combined entity.  The Complaint does not allege amounts invested or raised by CQS directly.

*Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (internal citations

omitted). To withstand a motion to dismiss for lack of personal jurisdiction pursuant to Rule

12(b)(2), a complaint "must make a prima facie showing that jurisdiction exists," *id.* at 35-36

(citation omitted), as to each defendant and "with respect to each claim asserted," *Charles

Schwab Corp.* v. *Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs.,

Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)). And, while pleadings generally are construed

in the light most favorable to plaintiff, when evaluating a motion to dismiss for lack of personal

jurisdiction, the Court need not "draw argumentative inferences in the plaintiff's favor,"

*Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994), or accept as true "a

legal conclusion couched as a factual allegation," *Jazini* v. *Nissan Motor Co., Ltd.*, 148 F.3d 181,

185 (2d Cir. 1998).

Principles of due process limit the power of a court to exert personal jurisdiction

to adjudicate the rights and liabilities of a non-resident defendant. *Asahi Metal Indus. Co.,

Ltd.* v. *Superior Court of Cal.*, 480 U.S. 102, 108 (1987). The Due Process Clause cabins

authority over foreign defendants to "two types of personal jurisdiction: 'general' (sometimes

called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."

*Bristol-Myers Squibb Co.* v. *Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (citing

*Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2013)). A court properly

imbued with general jurisdiction may hear *any* claim against a defendant, even if all the conduct

underlying the claim occurred outside of the forum. *Bristol-Myers Squibb*, 137 S. Ct. at 1780

(citation omitted). But due process limits the exercise of general jurisdiction to the defendant's

"home" forum. *Id.* (citing *Goodyear*, 564 U.S. at 924). "[E]xcept in a truly 'exceptional' case, a

corporate defendant may be treated as 'essentially at home' only where it is incorporated or

maintains its principal place of business." *Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 627

(2d Cir. 2016) (collecting cases).[5]

       Specific jurisdiction, by contrast, may be proper where defendant is not "at

home," but must be predicated on a substantial relationship between the forum and the discrete

claim asserted—in other words, for a court "to exercise specific jurisdiction [over a particular

defendant], 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"

*Id.* (quoting *Daimler AG* v. *Bauman*, 571 U.S. 117, 127 (2014)). The causal connection required

between defendant's forum contacts and the claims depends on the degree of forum contacts;

where a defendant "has had only limited contacts with the [forum] . . . he will be subject to suit

in that [forum] only if the plaintiff's injury was proximately caused by those contacts." *SPV*

*Osus Ltd.* v. *UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (citing *Chew* v. *Dietrich*, 143 F. 3d 24,

29 (2d Cir. 1998)). In addition, the exercise of jurisdiction must be "reasonable [under] the

circumstances" to satisfy the Due Process Clause. *In re Terrorist Attacks on September 11,*

*2001*, 714 F.3d 659, 673 (2d Cir. 2013). Specifically, defendant's conduct and connection with

the forum must be such that it "should reasonably anticipate being haled into court there." *Id.*

(quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297 (1980)). This

foreseeability requirement is satisfied where defendant "has 'purposefully directed' [its]

activities at residents of the forum," or "took 'intentional, and allegedly tortious, actions . . .

expressly aimed' at the forum." *Id.* at 674 (citations omitted). When evaluating personal

jurisdiction in a matter that is related to a bankruptcy proceeding, the relevant "forum" is the

United States as a whole. *See In re Bozel, S.A.*, 434 B.R. 86, 99 (Bankr. S.D.N.Y. 2010).

---

[5]    ARCM, GHL, and SFIL each is a foreign-incorporated limited company. Courts apply the same rules to foreign limited companies as corporations in assessing personal jurisdiction. *See, e.g., In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 230-32 (S.D.N.Y. 2015).

Application of these well-settled principles demonstrates that the Foreign Defendants are not susceptible to jurisdiction under either theory, and should be dismissed from this case.[6]

## II. The Court Lacks General Jurisdiction over Any of the Corporate Foreign Defendants

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 924 (2011). Because none of the Foreign Defendants is "at home" in the United States, this Court lacks general jurisdiction over those parties.

As noted above, aside from an "exceptional case," a corporation is "at home" "where it is incorporated or maintains its principal place of business." *Brown*, 814 F.3d at 627. The "exceptional cases" are limited to circumstances where defendant has established a "surrogate principal place of business" in the forum. *See id.* at 629 (noting that the only example of an "exceptional case" cited by the court in *Daimler* involved a company that had temporarily established a place of business within the forum as a "surrogate principal place of business). Such exceptions are "incredibly difficult to establish." *Id.* at 627 (quoting *Monkton Ins. Servs., Ltd.* v. *Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). "[M]ere contacts" with the forum, "no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'" *Id.* at 629. And no such exception applies here.

---

[6]     Under Rule 7004(f) of the Federal Rules of Bankruptcy Procedure, service on defendant is sufficient to establish personal jurisdiction "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States." Foreign Defendants accepted service subject to the reservation of all rights and defenses, including the right to contest jurisdiction. *See* Dkt. 8.

*First*, Plaintiffs fail to allege that GHL has *any* meaningful connection to the United States that would support the assertion of personal jurisdiction.  As stated in the Complaint, GHL is incorporated and has its principal place of business in Cyprus.  (Compl. ¶ 45.)  Plaintiffs have not alleged any other connections with the United States that could potentially give rise to general jurisdiction.[7]

*Second*, Plaintiffs allege that SFIL trades on the NYSE, that funds managed by ARCM and CQS invest in New York and own shares in companies listed on the NYSE, and that ARCM and CQS file quarterly reports with the SEC.  (*Id*. ¶¶ 32, 41, 60.)  But courts in this Circuit have consistently held that this type of activity is insufficient to confer personal jurisdiction over unrelated claims.  *See, e.g.*, *Wiwa* v. *Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000) ("foreign corporations [are accorded] substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings (such as making SEC filings and designating a depository for their shares) without thereby subjecting themselves to New York jurisdiction for unrelated occurrences."); *Stormhale, Inc.* v. *Baidu.com*, 675 F. Supp. 2d 373, 375-76 (S.D.N.Y. 2009) (SEC filings related to trading on a stock exchange do not allow a court to exercise personal jurisdiction).[8]

*Third*, Plaintiffs allege that funds managed by ARCM and CQS raise capital in the United States through private placements, and that SFIL has stated that it has a significant U.S.

---

[7]    Plaintiffs have alleged that the Defendants, including GHL, have agents in the District and have availed themselves of courts in this District in the context of the events giving rise to the claims.  (Compl. ¶ 94.)  These allegations speak to specific jurisdiction, and are discussed in Section III. below.

[8]    *See also Tymoshenko* v. *Firtash*, No. 11–CV–2794 (KMW), 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013) ("[S]imply receiving money from a foreign entity's United States account and investing in independent United States-based companies is not enough for the Court to assert personal jurisdiction."); *Nordic Bank PLC* v. *Trend Grp., Ltd.*, 619 F. Supp. 542, 565 (S.D.N.Y. 1985) (explaining that common stock ownership in U.S. companies is not sufficient to vest courts with personal jurisdiction over foreign companies unless the former are shown to be under the control of the latter).  Plaintiffs have not alleged that ARCM, CQS, or the funds they manage control the U.S. companies in which they invest.

shareholder base.  (Compl. ¶¶ 33, 42, 62).  But raising capital through private placements does not even amount to "continuous and systemic general business contacts," let alone a truly "exceptional" case warranting general jurisdiction.  *Dardana Ltd.* v. *Yuganskneftegaz*, No. 00 Civ. 4633, No. 00 Civ. 4633  (DAB), 2001 WL 1131987, at *4 (S.D.N.Y. Sept. 24, 2001), *vacated on other grounds*, 317 F. 3d 202.  Nor does having U.S. shareholders confer personal jurisdiction, where such shareholders do not directly control decision making – which plaintiffs do not allege.  *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, Nos. 1428 (SAS), 01 Civ. 7342, 2003 WL 1807148, at *6 n.12 (S.D.N.Y. Apr. 4, 2003) (explaining that having shareholders in a jurisdiction "in no way indicated that [defendant] is engaged in continuous and systematic business in that jurisdiction.").

> *Fourth*, Plaintiffs allege that CQS has a subsidiary in New York and that CQS "conducts permanent and substantial business through that subsidiary."[9]  (Compl. ¶ 38.)  Even where a subsidiary is "at home" in a forum, however, it does not create general jurisdiction over the parent company.  *Daimler*, 571 U.S. at 136.  Even assuming that a subsidiary's forum contacts could be attributed to a foreign parent, a "corporation may nonetheless be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state."  *Gucci Am., Inc.* v. *Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014).  Here, Plaintiffs have not alleged that CQS's U.S. affiliate is such an integral part of CQS's global activities so as to render the U.S. affiliate a "surrogate principal place of business," thus making CQS "at home" in the United States.

---

[9]    This is incorrect; the U.S. entity, CQS (US), LLC, is not a subsidiary of CQS, but is rather an affiliate with a shared parent, CQS Management Limited, a U.K. limited company.  However, even if the U.S. entity were a subsidiary, the argument here would be unchanged.

*Fifth*, Plaintiffs allege that ARCM and SFIL each "admitted that it has a significant presence in the United States" in a submission to the arbitration tribunal hearing the NAFTA claim brought by Integradora's U.S. shareholders.  (Compl. ¶¶ 34, 62.)  They allege that ARCM and SFIL respectively gave "as an example of its presence in the United States" the fact that ARCM "makes [SEC] filings in the U.S." and that SFIL has a "significant U.S. shareholder base."[10] *Id.*  Those alleged "admissions" (for which Plaintiffs provide no context) are, at best, of the unexceptional "mere contacts" that fail to render ARCM or SFIL "at home" in the United States.  *See Brown*, 814 F.3d at 628-29 (holding that a foreign defendant was not subject to general jurisdiction despite having an office in the forum and deriving millions of dollars of revenue from the U.S. location); *see also Sonera Holding B.V.* v. *Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) ("[E]ven a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum.").

*Finally*, Plaintiffs allege that SFIL's auditor and a member of its Board of Directors are based in the United States.[11]  (Compl. ¶60.)  But engaging an external auditor whose engagement can be terminated and having a board member who happens to reside in the United States, but who could resign at any time, do not render SFIL essentially "at home" in the United States.  *See Wiwa*, 226 F.3d at 95 (noting that engaging an independent contractor that is not "primarily employed by the defendant and engaged in similar services for other clients" is insufficient to establish jurisdiction).

---

[10]    As discussed *supra* pp. 7-8, neither making SEC filings nor having U.S. shareholders is sufficient to establish personal jurisdiction.  *See Wiwa*, 226 F.3d at 97; *Stormhale*, 675 F. Supp. 2d at 375-76; *In re Ski Train Fire*, Nos. 1428 (SAS), 01 Civ. 7342, 2003 WL 1807148, at *6 n.12.

[11]    Plaintiffs also allege that SFIL previously had another board member, defendant Leand, who was based in the United States.

Plaintiffs may be suggesting that SFIL has a "nerve center" in the United States. In the context of citizenship for subject matter jurisdiction, a company's principal place of business is the place where its officers direct, control, and coordinate the corporation's activities, or its "nerve-center," which is not always the same as its headquarters. *Hertz Corp.* v. *Friend*, 559 U.S. 77, 92-93 (2010). The analysis "focuses on where a corporation's high-level decisions are made, not where day-to-day activities are managed." *St. Paul Fire and Marine Ins. Co.* v. *Scopia Windmill Fund, LP*, 87 F. Supp. 3d 603, 605 (S.D.N.Y. 2015). Factors relevant to the "nerve center" test include: (1) where the directors and stockholders meet; (2) where the executives live, have their offices, and spend their time; (3) where the administrative and financial offices are located and records kept; (4) where the corporate income tax is filed; and (5) the place which is designated in the charter or other corporate documents as the official headquarters of the company. *Pregis Corp.* v. *Franklin Logistical Servs. Inc.*, No. 1:13-CV-1535 (GTS/CFH), 2015 WL 4508415, at *6-7 (N.D.N.Y. July 23, 2015). This standard has sometimes been applied in assessing general jurisdiction. *See*, *e.g.*, *Retail Pipeline, LLC* v. *JDA Software Grp., Inc.*, No. 2:17-cv-00067, 2018 WL 1621508, at *9 (D. Vt. Mar. 30, 2018). But Plaintiffs have failed to show that even a single one of these factors is met.

## III. This Court Lacks Specific Jurisdiction over the Corporate Foreign Defendants

The Due Process Clause does not permit the exercise of specific jurisdiction over the corporate Foreign Defendants in the claims asserted by Plaintiffs. "Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)). The specific jurisdiction analysis has two components: (1) the "minimum contacts" requirement; and (2) the

reasonableness analysis. *Waldman*, 835 F.3d at 331. Minimum contacts are established when defendant "purposefully direct[s] his activities at [ ] the forum" and the underlying cause of action "arise[s] out of or relate[s] to those activities." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985); *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. "When there is no such connection [between the in-forum activity and the underlying controversy], specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781.

Where, as here, a defendant has only limited contacts with the forum, specific jurisdiction should be found only where defendant's forum contacts were the proximate cause of Plaintiffs' injury. *See SPV Osus Ltd.*, 882 F.3d at 344.[12] Plaintiffs cannot meet that standard. Plaintiffs' claims are at best only tangentially related to the corporate Foreign Defendants' limited and incidental business contacts with United States. Such contacts are not a "but for" cause of Plaintiffs' injury, let alone the *proximate* cause required in this case. As such, it would be unreasonable and contrary to due process to exercise jurisdiction over these claims.

### A. Plaintiffs Have Failed to Allege Sufficient Minimum Contacts with the United States

Plaintiffs' allegations of specific jurisdiction over the corporate Foreign Defendants fail to establish sufficient relevant contacts with the United States. The only factual allegations in the Complaint allegedly connecting the United States forum, Plaintiffs' claims, and ARCM, CQS, GHL, or SFIL are (1) that the bondholders' financial advisor, AMA, is located in

---

[12]    "Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial," the court may find the exercise of personal jurisdiction to be appropriate "even though the acts within the [forum] are not the proximate cause of the plaintiff's injury." *SPV Osus Ltd.*, 82 F.3d at 344. (quoting *Chew*, 143 F.3d at 29). In such cases, courts in this District have found sufficient contacts to establish personal jurisdiction if defendant's contacts in the forum were the "but for" cause of the plaintiff's injury. *Gucci Am., Inc.* v. *Weixing Li*, 135 F. Supp. 3d 87, 98 (S.D.N.Y. 2015); *SPV Osus Ltd.* v. *Unicredit Bank Austria*, No. 18-cv-3497 (AJN), 2019 WL 1438163, at *6 (S.D.N.Y. Mar. 30, 2019).

the United States and (2) that the Ad Hoc Group, AMA, and García González y Barradas

Abogados, S.C. ("GGyB") met at Paul, Weiss's New York office at least twice in 2018.[13]

(Compl. ¶¶ 24-25, 314.)  These allegations are not sufficient to confer specific jurisdiction over

the corporate Foreign Defendants.

*First*, the presence in the United States of AMA, a financial advisor engaged by

Nordic Trustee on behalf of all holders of Oro Negro bonds, is insufficient to establish personal

jurisdiction over the Foreign Defendants.  A court may assert personal jurisdiction over a foreign

entity based on forum contacts of an agent, but "[t]he bar for a plaintiff to establish agency in the

jurisdiction context is set high."  *Doe ex rel. Doe* v. *Abercrombie & Kent, Inc.*, No. 09 Civ. 7052

(VM), 2010 WL 286640, at * 3 (S.D.N.Y. Jan. 19, 2010).  "The agent must be primarily

employed by the defendant and not engaged in similar services for other clients" in order for the

agent to establish jurisdiction over the principal under an agency theory.  *Wiwa*, 226 F.3d at

95.  Moreover, the exercise of jurisdiction only comports with due process if the agent was used

purposefully to avail the principal of the ability to conduct business within that jurisdiction.  *See*

*Daimler*, 571 U.S. at 135 n.13 ("[A] corporation can purposefully avail itself of a forum by

directing its agents or distributors to take action there."); *see also Louros* v. *Cyr,* 175 F. Supp. 2d

497, 520 (S.D.N.Y. 2001) (finding personal jurisdiction when the agents engaged in purposeful

activity within New York to further the relevant banking scheme).

Courts in this District reject the proposition that engaging legal or financial

advisors in New York is sufficient to confer specific jurisdiction.  *See*, *e.g.*, *Nursan Metalurji*

*Endustrisi A.S.* v. *M/V TORM GERTRUND*, No. 07-CV-7687 (GBD), 2009 WL 536059, at *2

---

[13]    Plaintiffs allege that the court has personal jurisdiction because of Defendants' business transactions in the United States.  (Compl. ¶ 94.)  However, that argument fails.  Plaintiffs have not even attempted to allege that these contacts are at all related to the claims alleged in the Complaint – nor are they related.

(S.D.N.Y. Feb. 27, 2009) (declining to find personal jurisdiction based on forum activities by legal counsel and an investor relations firm because these firms were "considered independent contractors for personal jurisdiction purposes."); *In re CIL Ltd.*, 582 B.R. 46, 78-79 (Bankr. S.D.N.Y. 2018).

AMA plainly does not satisfy the "agency" test to confer personal jurisdiction over any individual Foreign Defendant.  It was engaged by Nordic Trustee on behalf of all Oro Negro bondholders—not only bondholders who were members of the Ad Hoc Group—and AMA provides similar services to other clients.  The Oro Negro bonds represent only a small fraction of each corporate Foreign Defendant's portfolio.  This relationship does not meet the high bar established by *Wiwa*.

Even if AMA were an "agent" of the Foreign Defendants, its U.S. contacts would not be sufficient to confer specific personal jurisdiction because Plaintiffs have not alleged that any actions by AMA were directed at, or intended to help any of the Foreign Defendants conduct business in, the United States.  *Daimler*, 571 U.S. at 135 n.13.  To the contrary, the purpose of AMA's engagement was to advise bondholders on issues related to the Oro Negro Bonds and potential restructuring—transactions with the Mexican parent (Integradora) of a Singaporean bond issuer (Oro Negro Drilling).  And all relevant conduct alleged in the Complaint, taken as true, concerned Mexican and Singaporean companies, bonds issued pursuant to Norwegian law, business with a Mexican state-owned entity (Pemex), and proceedings in Mexican courts.  *See* Motion to Dismiss Section Statement of Facts and Section I (Plaintiffs' Claims Should Be Dismissed on Forum Non Conveniens Grounds).

*Second*, an allegation that two meetings were held between a group of bondholders and their advisors, in the offices of their legal advisor, in a city where two of their

13

advisors were located, is insufficient to establish specific jurisdiction over any of the Foreign

Defendants.  Plaintiffs have failed to allege a sufficient causal link between such meetings and

the claims.  Meetings between clients and their advisors, at a location chosen only out of

convenience, clearly do not constitute the purposeful availment required under *Burger King*; nor

can they be even a "but for" cause, let alone a proximate cause, of the claims asserted here, as

required under *SPV Osus.  See N. Grain Mktg.* v. *Greving*, 743 F.3d 487, 489 (7th Cir. 2014)

(mere presence of defendant in state to attend a meeting not with plaintiff or for purposes of

soliciting business in the state insufficient to confer specific personal jurisdiction).

   *Separately*, Plaintiffs generally allege that the court has personal jurisdiction

because Defendants have availed themselves of courts in this District in the context of the events

giving rise to the claims.  (*Id.* ¶ 94.)  To the extent that this argument refers to the New York

Litigation, brought by the Singapore Rig Owners, the Foreign Defendants have not participated

in those proceedings, and Plaintiffs do not allege otherwise.  The Foreign Defendants have also

never appeared or participated in the Chapter 15 case.  Furthermore, an action that was stayed

shortly after it was commenced, and which was subsequently voluntarily dismissed before any

decisions were rendered, cannot possibly have caused the injury giving rise to the claims asserted

here.  Plaintiffs further allege that Defendants have violated a right in the United States, referring

to Count 18, the alleged violation of a stay of the so-called "right to full possession" of the Rigs.

(*Id*. ¶¶ 94, 551–65.)  Even if there is such a "right" in the United States (and there is not), the

right could not have been violated by the Foreign Defendants because the Comity Order only

applied to "persons or property over whom/which this Court has jurisdiction."  (Clareman Decl.

Ex. 43.)  As discussed *supra*, none of the Foreign Defendants are subject to general jurisdiction

in this Court, and are thus not bound by the Comity Order.  For the reasons set forth in the

Memorandum of Law in Support of the Singapore Rig Owners' Motion to Dismiss the

Complaint, Foreign Defendants also did not violate 11 U.S.C. ¶ 1520(a).

**B. The Exercise of Personal Jurisdiction over Foreign Defendants Would Be Unreasonable**

Even if the threshold minimum contacts were established, and they are not, the

exercise of personal jurisdiction over the Foreign Defendants would still violate due process

because exercising jurisdiction would be unreasonable.  Reasonableness is evaluated on a sliding

scale:  the weaker the showing of minimum contacts, the less the defendant needs to show in

terms of unreasonableness to defeat jurisdiction.  *Tymoshenko*, 2013 WL 1234943, at *3; *see

also Sherwin-Williams Co.* v. *C.V.*, No. 14 Civ. 6227 (RA), 2016 WL 354898, at *7 (S.D.N.Y.

Jan. 28, 2016) (where "the contacts that permit the imposition of jurisdiction under a minimum

contacts analysis are weak, the importance of the reasonableness factors . . . are enhanced").

In determining the reasonableness of jurisdiction, courts consider similar factors

as the forum non conveniens analysis, including the burden on the defendant, the interest of the

forum in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and

effective relief.  *See Asahi Metal Indus. Co.* v. *Superior Court of Cal.*, 480 U.S. 102, 113 (1987).

The Supreme Court has cautioned that the courts should be particularly wary of exercising overly

broad personal jurisdiction over foreign defendants.  *See Daimler*, 134 S. Ct. at 762-63

(emphasizing the importance of international comity in assessing whether personal jurisdiction

may be exercised over a foreign defendant and warning of "the risks to international comity" that

might result from an expansive view of general jurisdiction inconsistent with due process);

*Asahi*, 480 U.S. at 115 (explaining that "[g]reat care and reserve should be exercised when

extending our notions of personal jurisdiction into the international field").

Here, all factors show that exercising jurisdiction in the United States over the Foreign Defendants would be unreasonable.

*First*, the Foreign Defendants would be significantly burdened if forced to litigate this matter in the United States, where none of them has even so much as a single employee.  Of the factors examined in assessing reasonableness, "the primary concern is the burden on the defendant."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (internal quotations omitted).  "The unique burdens placed upon one who must defend oneself in foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  *Asahi*, 480 U.S. 102 at 114.  Here, as discussed further in Section I.C.1. of the Motion to Dismiss (Private Factors Weigh in Favor of Dismissal), much of the evidence, including documents held by Oro Negro, Pemex, and Mexican prosecutors and other government authorities, is in Mexico.  Many of those documents will also require translation from Spanish into English, which is a costly and time-consuming enterprise in itself. The majority of the key witnesses from whom the Foreign Defendants will likely need to seek testimony are also in Mexico, and Foreign Defendants will not be able to compel their appearance in court even through the application of the Hague Convention on the Taking of Evidence, which only provides for deposition testimony.  And if the Foreign Defendants themselves wish to put forth representatives to testify as part of their defense, such witnesses would also have to travel great distances to do so, in some cases literally halfway around the world.

*Second*, as discussed in Section I.C.2. of the Motion to Dismiss (Public Factors Weigh in Favor of Dismissal), the United States has no legitimate interest in adjudicating a dispute concerning alleged injury to Mexican companies, due to actions taken in Mexico,

involving contracts governed by Mexican law with a Mexican state-owned company, and Mexican criminal investigations. That lack of interest is especially apparent when Plaintiffs are not United States entities, but foreign companies and individuals. *See Asahi Metal Indus. Co.*, 480 U.S. at 114 (a forum's "legitimate interests in [a] dispute have considerably diminished" when the plaintiff is not a resident of that forum). Moreover, "[w]hen the entity that may be subject to personal jurisdiction is a foreign one, courts consider the *international* judicial system's interest in efficiency and the shared interests of the *nations* in advancing substantive policies." *Sherwin-Williams*, 2016 WL at 354898, at *6 (quoting *Gucci Am., Inc.* v. *Weixing Li*, No. 10 Civ.4974, 2015 WL 5707135, at *9 (S.D.N.Y. Sept. 29, 2015)). Mexico's interest in resolving disputes about its own laws and including its own companies far outweighs whatever meagre interest the United States has in this case. And resolution of this matter would require this Court to declare invalid and illegitimate acts of the Mexican government, as discussed in Section II of the Motion to Dismiss (Plaintiffs' Claims Are Barred by the Act of State Doctrine).

*Finally*, relief would still be available to Plaintiffs should this matter be dismissed. As discussed in Section I.B. of the Motion to Dismiss (Mexico Is an Adequate Alternative Forum), Plaintiffs could bring tort and other claims in a Mexican court, and obtain substantially equivalent relief to that sought here. Indeed, the Mexican legal system – where several cases about this dispute are already pending – is a more suitable forum for Plaintiffs' claims than the United States. *Sherwin-Williams*, 2016 WL 354898, at *5 (where Mexican law "govern[s] the parties' agreement," Mexico "is undoubtedly the most suitable forum for settling contested issues of Mexican law").

In light of the minimal connection between any U.S. contacts and Plaintiffs' claims and the unreasonableness of forcing the Foreign Defendants to litigate this matter in the

United States, it would violate due process to exercise personal jurisdiction over the Foreign

Defendants.

## IV.     The Court Lacks Personal Jurisdiction over Alp Ercil

Plaintiffs have failed sufficiently to allege either general or specific jurisdiction

for Alp Ercil.

"The paradigm forum for general jurisdiction over an individual is the

individual's domicile, his home." *Sonera Holding B.V.* v. *Cukurova Holding A.S.*, 750 F.3d 221,

225 (2d Cir. 2014).  Only in a truly "exceptional case" would an individual's contacts "be so

extensive as to support general jurisdiction notwithstanding domicile elsewhere." *Reich* v.

*Lopez*, 858 F.3d 55, 63 (2d Cir. 2017).  Mr. Ercil is domiciled in Hong Kong and is plainly not

"at home" in the United States.  (Compl. ¶ 35.)  He is not amenable to general jurisdiction in the

United States.

Mr. Ercil is not alleged to have conducted any activity in or directed at the United

States related to Oro Negro.  Plaintiffs allege that, "[t]hrough ARCM, . . . [Mr.] Ercil conducts

permanent and substantial business in New York" (Compl. ¶ 36), but, as discussed below,

ARCM's business in the United States is limited and unrelated to this action.  Even if specific

jurisdiction as to ARCM were sufficiently pleaded, that would not confer specific jurisdiction

over Mr. Ercil.  *See In re Parmalat Secs. Litig.*, 376 F. Supp. 2d 449, 454-55 (S.D.N.Y. 2005)

(holding that the mere fact that defendant was a board member and control person of a company

subject to U.S. jurisdiction was not enough to establish specific jurisdiction as to the individual).

Mr. Ercil is therefore also not amenable to specific jurisdiction here.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety as

against the Foreign Defendants, with prejudice.

Dated: August 26, 2019
New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

/s/      *William A. Clareman*
Andrew N. Rosenberg
Aidan Synnott
William A. Clareman
Claudia R. Tobler
Daniel A. Crane
Christopher Hopkins
Crystal Johnson

1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel for the Foreign Defendants*