Juan P. Morillo (*pro hac vice*)
Gabriel F. Soledad
Daniel Pulecio-Boek
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
Email: juanmorillo@quinnemanuel.com
Email: gabrielsoledad@quinnemanuel.com
Email: danielpulecioboek@quinnemanuel.com

Scott C. Shelley
Samantha Gillespie (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: scottshelley@quinnemanuel.com
Email: samanthagillespie@quinnemanuel.com

Eric Winston (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: ericwinston@quinnemanuel.com

Sara C. Clark (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
711 Rusk Street, Suite 500
Houston, Texas 77002
Telephone: (713) 221-7000
Facsimile: (713) 221-7100
Email: saraclark@quinnemanuel.com

*Counsel for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PERFORADORA ORO NEGRO, S. DE R.L. DE C.V., *et al.*<br><br>Debtors in a Foreign Proceeding. | BK Case No. 18-11094 (SCC)<br>(Jointly Administered) (Chapter 15) |
| GONZALO GIL-WHITE, PERSONALLY AND IN HIS CAPACITY AS FOREIGN REPRESENTATIVE OF PERFORADORA ORO NEGRO, S. DE R.L. DE C.V. AND INTEGRADORA DE SERVICIOS PETROLEROS ORO NEGRO, S.A.P.I. DE C.V.<br>      Plaintiff,<br> -against-<br><br>ALP ERCIL; ALTERNA CAPITAL PARTNERS, LLC; AMA CAPITAL | Adversary Case No. 19-01294 (SCC) |

| |
|---|
| PARTNERS, LLC; ANDRES CONSTANTIN ANTONIUS-GONZÁLEZ; ASIA RESEARCH AND CAPITAL MANAGEMENT LTD.; CQS (UK) LLP; FINTECH ADVISORY, INC.; DEUTSCHE BANK MÉXICO, S.A.; INSTITUCIÓN DE BANCA MÚLTIPLE; GARCÍA GONZÁLEZ Y BARRADAS ABOGADOS, S.C.; GHL INVESTMENTS (EUROPE) LTD.; JOHN FREDRIKSEN; KRISTAN BODDEN; MARITIME FINANCE COMPANY LTD.; NOEL BLAIR HUNTER COCHRANE, JR; ORO NEGRO PRIMUS PTE., LTD.; ORO NEGRO LAURUS PTE., LTD.; ORO NEGRO FORTIUS PTE., LTD.; ORO NEGRO DECUS PTE., LTD.; ORO NEGRO IMPETUS PTE., LTD.; PAUL MATISON LEAND, JR.; ROGER ALAN BARTLETT; ROGER ARNOLD HANCOCK; SEADRILL LIMITED; SHIP FINANCE INTERNATIONAL LTD.; and DOES 1-100<br>                                    Defendants. |

### MOTION FOR AN ORDER AUTHORIZING ALTERNATIVE SERVICE ON DEFENDANTS DEUTSCHE BANK MÉXICO, S.A. AND ANDRES ANTONIUS

Fernando Perez Correa Camarena, in his capacity as foreign representative ("Foreign Representative") of both Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora") and Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora," and together with Integradora, the "Debtors" or "Oro Negro"), files this motion for entry of an order pursuant to Federal Rule of Civil Procedure 4, made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7004, authorizing alternative service by email to counsel, officers and directors on Deutsche Bank México, S.A., Institución de Banca Multiple ("Deutsche"), and by

2

email, WhatsApp, Facebook Messenger and text message on Andres Constantin Antonius-González ("Antonius").[1]

## I. INTRODUCTION

1. On June 6 and 7, 2019, the Foreign Representative filed two Complaints against 24 U.S. and foreign entities and individuals based on discovery obtained over the preceding 14 months, including in the Chapter 15 proceeding before this Court. The claims alleged therein, including *inter alia* tortious interference and abuse of process, are now the Debtors' most valuable asset.

2. The Foreign Representative has since effected service on 21 of the 24 Defendants. Although the Foreign Representative has delivered the Complaint and Summons to Defendants Deutsche and Antonius, they have refused to acknowledge service despite having intimate knowledge—indeed much more than sufficient notice—of this action.

3. Deutsche, which provided discovery in the Chapter 15 proceeding, has already retained counsel in connection with the Complaint, and received the Complaint and Summons via email. Antonius, the Ad-Hoc Group's Mexican lobbyist, received the Complaint and Summons via email, Facebook Messenger, WhatsApp and text message.

4. The Foreign Representative brings this motion to respectfully request that the Court recognize that the Foreign Representative, through diligent and extensive efforts, has served Deutsche and Antonius—who have refused to acknowledge service of the Complaint—and has ensured that these Defendants have received more than adequate notice of the Complaint.

---

[1] All undefined capitalized terms in this motion have the meaning provided in the Foreign Representative's Complaint. *See* ECF 9.

5.     Specifically, the Foreign Representative seeks entry of an order, substantially in the form attached hereto as **Attachment A**, authorizing alternative service on Deutsche and Antonius.

## II.    BACKGROUND

### A.    Both Defendants Provided or Were Asked to Provide Discovery That Gave Rise to the Adversarial Proceeding

6.     In September 2017, the Debtors initiated voluntary restructuring proceedings in México (the "*Concurso Mercantil*"). *See In re Perforadora Oro Negro, S. de R.L. de C.V., et al.*, No. 18-11094 (Bankr. S.D.N.Y.) (SCC) (Jointly Administered) ("Ch. 15"), ECF 3 (Del Val Decl.) ¶¶ 6–7.

7.     On March 15, 2018, the Singapore Rig Owners, acting under the purported control and direction of the Bondholders, sued Perforadora in this District ("New York Litigation").[2] *See* Complaint, *Oro Negro Decus, Pte. Ltd., et al. v. Perforadora Oro Negro, S. de R.L. de C.V.*, No. 18-cv-2301 (S.D.N.Y. Mar. 15, 2018), ECF 1. The primary purpose of the New York Litigation was for the Singapore Rig Owners to take over the Jack-Up Rigs. *See id.* ¶¶ 87–94.

8.     On April 20, 2018, the Foreign Representative commenced a Chapter 15 proceeding for this Court to (i) recognize the *Concurso Mercantil* as the foreign main proceeding (and obtain all of the protections provided under Bankruptcy Code section 1520, including a stay of the New York Litigation); and (ii) grant certain discretionary relief, including giving full force and effect to four orders issued by the *Concurso* Court[3] and authorizing the Foreign Representative to obtain discovery from the Ad-Hoc Group, AMA, Deutsche and other parties. *See* Ch. 15 ECF 2.

---

[2]    As the Foreign Representative has described to the Court, Integradora and the Bondholders are locked in a dispute over the control of the Singapore Rig Owners. *See, e.g.*, Ch. 15 ECF 3 ¶ 64. The High Court of the Republic of Singapore recently dismissed an action by the Bondholders seeking to enjoin Integradora and its representatives from acting on behalf of the Singapore Rig Owners. *See* Ch. 15 ECF 181-1. The Bondholders have appealed that ruling.

[3]    The four orders were issued on October 5, October 11, October 31 and December 29, 2017.

4

9. On May 14, 2018, Deutsche's U.S. parent company, Deutsche Bank Americas Holding, Corp. ("Deutsche U.S."), appeared in the Chapter 15 proceeding represented by attorney Israel Dahan ("Mr. Dahan") from the U.S. law firm King & Spalding LLP ("K&S"). *See* Ch. 15 ECF 48.

10. On July 11, 2018, the Court entered an order authorizing, *inter alia*, the Foreign Representative to obtain discovery from the Ad-Hoc Group, AMA, Deutsche and Deutsche U.S. in order to investigate potential claims against them. *See* Ch. 15 ECF 85. The members of the Ad-Hoc Group include SFIL and GHL, two entities owned or controlled by Defendant John Fredriksen and that accepted service on June 25, 2019. *See* ECF 9 ¶¶ 46, 58; Pulecio Decl. ¶ 6, Ex. 2.

11. K&S subsequently accepted service of Rule 2004 subpoenas on behalf of Deutsche, served responses to the Foreign Representative's requests for production on behalf of Deutsche, and produced documents on behalf of Deutsche.

12. On December 21, 2018, the Court entered an order compelling certain members of the Ad-Hoc Group and AMA to produce, *inter alia*, documents and communications regarding the Mexican criminal proceedings. *See* Ch. 15 ECF 165.

13. The discovery that the Foreign Representative obtained in the Chapter 15 proceeding provided substantial documentary and testimonial evidence indicating that the Ad-Hoc Group, and its advisors, including AMA, conspired, with the assistance of Seadrill, Fintech and others, to deprive Oro Negro of its contracts, assets and cash in order to cause its collapse. Those efforts included hiring and authorizing Mexican criminal counsel to initiate criminal proceedings against Oro Negro and its executives.

5

### B.     The Adversary Proceeding Arising from the Chapter 15 Investigation

14.    On June 6, 2019, the prior Foreign Representative commenced this adversary proceeding by filing a complaint against 24 Defendants ("Complaint"), largely based on the discovery obtained in the Chapter 15 proceeding, alleging, *inter alia*, tortious interference and abuse of process.

15.    Defendants fall into the following four categories:  (i) the "Ad-Hoc Group Defendants," which includes six members of the Ad-Hoc Group, the CEOs of two of the members of the Ad-Hoc Group, and four of the Ad-Hoc Group's advisors, AMA (the Ad-Hoc Group's financial advisor), Paul Leand (AMA's CEO), Antonius (the Ad-Hoc Group's Mexican lobbyist) and García González y Barradas Abogados, S.C. ("GGB") (the Ad-Hoc Group's Mexican criminal counsel); (ii) the "Singapore Rig Owner Defendants," which includes the five Singapore Rig Owners and their three directors; (iii) the "Seadrill/Fintech Defendants," which includes Seadrill, Fintech and Fredriksen, who owns and/or controls Seadrill; and (iv) Deutsche, the bank that manages and currently holds most of Oro Negro's cash.

### C.     Mr. Perez's Appointment as Foreign Representative

16.    On June 13, 2019, the *Concurso* Court declared Oro Negro in liquidation and, on June 17, 2019, appointed Mr. Perez as liquidator (in Spanish, *síndico*). *See* Ch. 15 ECF 214, 217. The *Concurso* Court's liquidation order followed shortly after its May 15, 2019 order directing Oro Negro to surrender the Jack-Up Rigs to the Bondholders due to Oro Negro having insufficient funds to maintain them. *See* Ch. 15 ECF 199.  On July 8, 2019, the Court recognized Mr. Perez as the Foreign Representative in this proceeding.  *See* Ch. 15 ECF 230.

6

17. The Ad-Hoc Group's and their co-conspirators' myriad efforts to deprive Oro Negro of any cash had finally yielded the intended result: taking control of the Jack-Up Rigs from Oro Negro.

18. As a consequence, the claims alleged in the Complaint are now the estate's most valuable asset. Because, as liquidator, Mr. Perez has an obligation under Mexican law to maximize the value of the estate within the shortest possible timeframe,[4] he diligently sought to serve the Summons and Complaint within days of their filing.

### D. Most Defendants Have Accepted Service

19. *The Ad-Hoc Group Defendants*. On June 11, 2019, the Foreign Representative delivered the Complaint and Summons to the Ad-Hoc Group's counsel (who at the time was also the Singapore Rig Owners' counsel) and requested that counsel accept service on behalf of all the Ad-Hoc Group Defendants and the Singapore Rig Owner Defendants. *See* Pulecio Decl. ¶ 5, Ex. 1.

20. Counsel responded on June 12, 2019 that they would accept service only on behalf of one member of the Ad-Hoc Group (Alterna), AMA and its CEO Paul Leand, but no one else. *See* Pulecio Decl. ¶ 5, Ex. 1. Additionally, counsel informed the Foreign Representative for the first time that separate attorneys would be representing the Singapore Rig Owner Defendants. *See id.*

21. From June 23 to 29, 2019, the Foreign Representative's counsel delivered the Complaint and Summons via email to Deutsche, and via email, WhatsApp, Facebook Messenger

---

[4] *See* Ley de Concursos Mercantiles, Art. 176, et seq., Diario Oficial de la Federación May 12, 2000, última reforma Aug. 9, 2019.

7

and text message to all the members of the Ad-Hoc Group, including Antonius. *See* Pulecio Decl. ¶¶ 11–19. The service attempts on Deutsche and Antonius are further described below.

22. On June 25, 2019, the Ad-Hoc Group's counsel acknowledged that the Ad-Hoc Group had received notice of the Complaint and informed the Foreign Representative that counsel would represent and accept service on behalf of all of the Ad-Hoc Group Defendants, except Antonius. *See* Pulecio Decl. ¶ 6, Ex. 2.

23. ***The Singapore Rig Owner Defendants***. On June 13, 2019, upon learning that the Singapore Rig Owner Defendants would be represented by separate counsel, the Foreign Representative requested that such counsel accept service of the Complaint and Summons on behalf of all the Singapore Rig Owner Defendants. *See* Pulecio Decl. ¶ 7, Ex. 3. Counsel merely responded that "we have not reviewed the service issues nor discussed them with our clients yet." *Id.* More than ten days later, counsel stated that it still did not have an answer about whether it would accept service on behalf of the Singapore Rig Owner Defendants. *See id.*

24. ***The Seadrill/Fintech Defendants***. On June 14, 2019, the Foreign Representative delivered the Complaint and Summons to counsel for Seadrill and Fintech. *See* Pulecio Decl. ¶ 8, Ex. 4. Counsel for Seadrill and Fintech subsequently denied that the Foreign Representative had authority to serve Defendants and refused to accept service through counsel.[5] *See id.* ¶ 9, Ex. 5.

25. The Foreign Representative's counsel also delivered the Complaint and Summons to Fredriksen through two different means.

26. <u>First</u>, the Foreign Representative caused the Complaint and Summons to be delivered to Fredriksen's principal place of business, as permitted under Article 10 of the

---

[5] The afternoon before the June 25 Hearing (defined below), counsel for Seadrill and Fintech offered to accept service, but only if Plaintiffs agreed to afford them ***three months*** to respond as well as providing them a "most favored nation" agreement whereby their time to respond would be extended to the longest time to respond provided to any other accepting defendant.

8

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention").[6]

27. <u>Second</u>, on June 23, 2019, the Foreign Representative's counsel sent the Complaint and Summons to several email addresses associated with Fredriksen—the Foreign Representative received confirmation of delivery. *See* Pulecio Decl. ¶ 4.

28. ***The June 25 Hearing***. On June 25, 2019, as a result of a conference with the Court, counsel for the Singapore Rig Owner Defendants, Seadrill and Fintech agreed to accept service. *See* ECF 8.

29. ***Fredriksen Accepts Service***. On September 4, 2019, Fredriksen's counsel, Skadden, Arps, Slate, Meagher & Flom LLP, agreed to accept service on Fredriksen's behalf and the parties agreed to a briefing schedule. *See* ECF 41.

E. **Service on Deutsche and Antonius**[7]

30. ***Deutsche***. On June 11, 2019, the Foreign Representative's counsel inquired of Mr. Dahan from K&S, counsel for Deutsche in the Chapter 15 proceeding, whether K&S would accept service on Deutsche's behalf. *See* Pulecio Decl. ¶ 10, Ex. 6. On June 28, 2019, Mr. Dahan responded that K&S would represent Deutsche in connection with the Complaint, but that

---

[6] Fredriksen's principal place of business is 15 Sloan Square, London SW1W 8ER, United Kingdom. *See* Seadrill Partners LLC, Schedule 13D (July 2, 2018), at 15, *available at* https://www.sec.gov/Archives/edgar/data/1553467/000119312518215465/d669628dsc13da.htm ("Mr. Fredriksen's principal business address is c/o Seatankers Consultancy Services (UK) Limited, 15 Sloane Square, London SW1W 8ER, United Kingdom.").

On July 11, 2019, at the request of the Foreign Representative, the Clerk of the Bankruptcy Court for this District (the "<u>Clerk</u>") served the Summons [ECF 2] and Complaint [ECF 4-1] on Fredriksen via Federal Express. *See* ECF 11. On July 12, 2019, at the request of the Foreign Representative, the Clerk also served the Subsequent Summons [ECF 10] and Re-Filed Complaint [ECF 9] on Fredriksen via Federal Express. *See* ECF 14. On July 15, 2019, Federal Express confirmed delivery of both sets of documents to Fredriksen's principal place of business. *See* Pulecio Decl. ¶ 4.

[7] This motion does not address service on GGB. The Foreign Representative reserves all rights with regard to his past or future efforts to serve GGB.

9

Deutsche had not yet authorized K&S to accept service on its behalf. *See id.* Even after the Foreign Representative informed Mr. Dahan of this motion, he maintained that K&S was still not authorized to accept service on Deutsche's behalf. *See id.*

31. Additionally, on June 28 and 29, 2019, the Foreign Representative's counsel delivered the Complaint and Summons to four Deutsche senior officers and directors via their corporate email addresses—the Foreign Representative received confirmation of delivery. *See* Pulecio Decl. ¶¶ 11–15, Ex. 7. Specifically, on June 28 and 29, 2019, the Foreign Representative's counsel delivered the Complaint and Summons to the corporate email addresses of: (i) Juan Oberhauser, Chairman of the Board and CEO; (ii) Gabriel Arroyo, Vice President of Deutsche's Corporate Trust Division; (iii) Isabel Ocaña, Deutsche's General Counsel and Chief Compliance Officer; and (iv) Gerardo Sainz, the Deutsche employee responsible for the Mexican Trust. *See id.*

32. ***Antonius***. On June 23, 2019, the Foreign Representative's counsel delivered the Complaint and Summons to Antonius via (i) Facebook Messenger;[8] (ii) email to Antonius' corporate email account,[9] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬[10] and AMA[11] —the Foreign Representative received confirmation of delivery;[12]

---

[8] Facebook allows users to send private messages to other users. Antonius' Facebook profile displays his picture, background and current employer, which makes apparent that he owns the account to which the Foreign Representative's counsel delivered the Complaint and Summons. *See* Pulecio Decl. ¶ 16, Ex. 8(a).

[9] Pulecio Decl. ¶ 17, Ex. 8(b).

[10] Redactions are in accordance with the governing protective order in the underlying Chapter 15 proceeding. *See* Ch. 15 ECF 169.

[11] *See, e.g.*, Pulecio Decl. ¶¶ 20–21, Exs. 9–10.

[12] The Foreign Representative's counsel sent the email through Outlook, Microsoft's emailing service. Outlook permits the sender to automatically obtain confirmation when the email has been delivered to the recipient. *See* Pulecio Decl. ¶ 17, Ex. 8(b).

10

(iii) WhatsApp message—Antonius received the message;[13] and (iv) text message—the message was delivered to Antonius.[14]

### III.    JURISDICTION AND VENUE

33.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Recognition of foreign proceedings and other matters under Chapter 15 of the Bankruptcy Code are expressly designated as core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in the Court pursuant to 28 U.S.C. § 1410.

### IV.    ARGUMENT

#### A.    Legal Standard

34.    Bankruptcy Rule 7004, which provides the acceptable methods of service of a summons in an adversary proceeding, largely incorporates Federal Rule of Civil Procedure 4, including its provisions regarding service of foreign individuals and entities.

35.    Rule 4(f) provides that an individual in a foreign country can be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague [Service] Convention," Fed. R. Civ. P. 4(f)(1), or alternatively "by [any] means not prohibited by international agreement, as the court orders," Fed. R. Civ. P. 4(f)(3).

---

[13]    WhatsApp is a messaging application, which users can download to their computers or mobile devices. WhatsApp is an extremely popular messaging application in Latin America. *See* https://www.businessofapps.com/data/whatsapp-statistics. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See, e.g.*, Pulecio Decl. ¶ 22, Ex. 11.

Upon delivery of a WhatsApp message, the application displays two checkmarks to indicate that the message has been delivered. Users may opt to have their checkmarks shown in blue to specifically confirm that they read the message; otherwise, the checkmarks are always gray. Antonius' WhatsApp shows that he received and read the Complaint and Summons because his checkmarks are in blue. *See* Pulecio Decl. ¶ 18, Ex. 8(c).

[14]    Text messages between Apple cellphones indicate when a text message has been delivered. The text message to Antonius indicates that the Complaint and Summons were delivered to him. *See* Pulecio Decl. ¶ 19, Ex. 8(d).

11

36. Likewise, Rule 4(h) allows service on a corporation, partnership or association "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Fed. R. Civ. P. 4(h)(2).

### B. Alternative Service Is Appropriate for Deutsche and Antonius

37. Pursuant to Rule 4(f)(3), service via a method not listed in Rule 4(f)(1) "is acceptable if it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Fisher v. Petr Konchalovsky Found.*, 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016). An alternative method of service comports with due process if it is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 366 (E.D.N.Y. 2016).

38. There is "no hierarchy among the subsections of Rule 4(f)." *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 511 (S.D.N.Y. 2013). Thus, alternative service under Rule 4(f)(3) "is neither a 'last resort' nor 'extraordinary relief,' [but] is merely one means among several which enables service of process on an international defendant." *Ehrenfeld v. Salim a Bin Mahfouz*, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005).

39. As set forth below, the Foreign Representative respectfully requests that his service of the Complaint and Summons on Deutsche and Antonius via alternative service be confirmed as valid pursuant to Rule 4(f)(3).

   1. <u>Deutsche</u>

40. To ensure adequate notice, the Foreign Representative has served Deutsche via two separate means: (i) via its U.S. counsel hired to represent Deutsche in the adversarial proceedings;

12

and (ii) via email to its senior officers. Either means of service independently satisfies the requirements for alternative service under Rule 4(f)(3).

41. *Service on K&S*. In this District, service upon domestically based attorneys is not prohibited by any applicable international agreement and thus meets the requirements of Rule 4(f)(3). *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (holding that service on U.S. counsel is not prohibited by the Hague Service Convention). As such, this District permits service of a foreign defendant through its U.S. counsel. *Prediction Co. v. Rajgarhia*, 2010 WL 1050307, at *1 (S.D.N.Y. Mar. 22, 2010) (authorizing service of an Indian defendant through his New York counsel).[15]

42. Here, Deutsche is indisputably aware of the pendency of these proceedings. Indeed, it has hired U.S. counsel, K&S, to represent it in this action—as K&S, itself, confirmed. *See* Pulecio Decl., Ex. 6 ("[W]e [K&S] are counsel to DB Mexico, but are not authorized to accept service."). As such, it cannot be seriously disputed that serving the Complaint and Summons on Deutsche via K&S will not "apprise [Deutsche] of the pendency of the action," and therefore satisfies due process. *Ferrarese*, 164 F. Supp. 3d at 366.

43. Accordingly, the Foreign Representative respectfully requests that the Court authorize as an alternative method of serving Deutsche: the Foreign Representative's delivery of the Complaint and Summons to Deutsche's U.S. counsel in this action, Mr. Dahan at K&S.

44. *Email Service*. In this District, "service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in

---

[15] *See also Fru Veg Marketing, Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182–83 (S.D. Fla. 2012) (collecting cases); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (finding that service through the defendant's attorney was proper); *BP Prod. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 265 (E.D. Va. 2005) (allowing service on a defendant though his attorney); *Forum Fin. Grp., LLC v. President & Fellows of Harvard College*, 199 F.R.D. 22, 23–24 (D. Me. 2001) (authorizing service on a defendant's attorney despite the attorney stating that he did not have authorization to accept service).

Article 10" of the Hague Service Convention. *FTC v. Pecon Software Ltd.*, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013); *see also Philip Morris USA Inc. v. Veles Ltd.*, 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007) (collecting cases authorizing email service in the absence of any international agreement prohibiting service by email).

45.     Mexico, where Deutsche is located, has not objected to service by email. *See* Hague Service Convention, at p. 9; Declarations of México regarding the Hague Service Convention. Thus, serving a Mexican defendant via email is not prohibited by any international agreement. *See United States v. Besneli*, 2015 WL 4755533, at *2 (S.D.N.Y. Aug. 12, 2015) (joining the "majority view . . . that email does not fall within 'postal channels' unless the country specifically objected to service by email or other electronic means").

46.     Here, the Foreign Representative has received confirmation that Deutsche's senior officers and directors received the email. *See supra* ¶ 31. As such, even setting aside its hiring of U.S. counsel to represent it in the adversarial action, Deutsche indisputably has notice of the Complaint.

47.     Accordingly, the Foreign Representative respectfully requests that the Court authorize as an alternative method of serving Deutsche: the Foreign Representative's delivery of the Complaint and Summons to Deutsche's senior officers and directors via email.

  2.     <u>Antonius</u>

48.     As set forth above, *supra* ¶ 45, Mexico has not objected to service via email or electronic messaging systems such as WhatsApp, text message or Facebook Messenger. Therefore, email service and service through electronic messaging systems are not prohibited. *See FTC v. PCCare247 Inc.*, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (explaining that service

14

by email and Facebook had not been explicitly rejected by India, and thus were not methods prohibited by international agreement).[16]

49.     The Foreign Representative has caused the Complaint and Summons to be delivered to Antonius via email, WhatsApp, text message and Facebook Messenger. *See supra* ¶ 32. Service on Antonius through these methods comports with due process. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See id.* He undoubtedly received and read the Complaint and Summons when he received them via WhatsApp. *See id.*

50.     There cannot be any serious dispute that communications to him through these means do not reach him. *See Fisher*, 2016 WL 1047394, at *2 ("[A]s long as the plaintiff demonstrates that the email is likely to reach the defendant, then service by email alone comports with due process." (internal quotations omitted)).

51.     Therefore, the Foreign Representative respectfully requests that the Court authorize as alternative methods of serving Antonius: the Foreign Representative's delivery of the Complaint and Summons via (i) corporate email account; (ii) WhatsApp; (iii) text message; and (iv) Facebook Messenger.

## Conclusion

52.     For the reasons set forth above, the Foreign Representative respectfully requests that the Court grant his request for alternative service on Deutsche and Antonius, as set forth in Attachment A, and grant such other relief as he Court deems just and proper.

---

[16] Service through email or text message comports with the Advisory Committee's guidance that the use of the Hague Service Convention is mandatory when documents must be transmitted abroad. *See* Fed. R. Civ. P. 4, Adv. Comm. Notes to 1993 Amendment. As is the case with service through U.S. counsel, neither emails nor text messages require documents to travel to the foreign country.

15

| | |
|---|---|
| Dated: October 10, 2019<br>New York, New York | QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP |

 /s/ *Gabriel F. Soledad*
Gabriel F. Soledad
Juan P. Morillo (*pro hac vice*)
Daniel Pulecio-Boek
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100
Email:  gabrielsoledad@quinnemanuel.com
Email:  juanmorillo@quinnemanuel.com
Email:  danielpulecioboek@quinnemanuel.com

Scott C. Shelley
Samantha Gillespie (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  212-849-7000
Facsimile:  212-849-7100
Email: scottshelley@quinnemanuel.com
Email: samanthagillespie@quinnemanuel.com

Eric Winston (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
Email:  ericwinston@quinnemanuel.com

Sara C. Clark (*pro hac vice*)
711 Rusk Street, Suite 500
Houston, Texas 77002
Telephone:  (713) 221-7000
Facsimile:  (713) 221-7100
Email:  saraclark@quinnemanuel.com

*Counsel for the Foreign Representative*