HEARING DATE AND TIME: TBD
RESPONSE DEADLINE: NOVEMBER 11, 2019
REPLY DEADLINE: DECEMBER 4, 2019

SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel.: (212) 735-3000
Jay B. Kasner
Scott D. Musoff
George A. Zimmerman

*Attorneys for Defendant John Fredriksen*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| PERFORADORA ORO NEGRO, S. DE R.L. DE C.V., *et al.*, | : | Case No. 18-11094 (SCC) (Jointly Administered) |
| Debtors in a Foreign Proceeding. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| GONZALO GIL-WHITE, PERSONALLY AND IN HIS CAPACITY AS FOREIGN REPRESENTATIVE OF PERFORADORA ORO NEGRO, S. DE R.L. DE C.V. AND INTEGRADORA DE SERVICIOS PETROLEROS ORO NEGRO, S.A.P.I. DE C.V., | : | Adv. Pro. No. 19-01294 |
| Plaintiff, | : | |
| -against- | : | |
| ALP ERCIL, *et al.*, | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JOHN FREDRIKSEN'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................1

FACTUAL BACKGROUND............................................................................4

    A.    Allegations Relevant to the Claims Against Fredriksen ............................5

    B.    Fredriksen's Alleged Forum Contacts for Jurisdictional Purposes..............6

ARGUMENT ...................................................................................................7

I.    THE COURT LACKS PERSONAL JURISDICTION OVER FREDRIKSEN......7

    A.    Plaintiff Fails To Allege That Fredriksen Had Sufficient Minimum
Contacts With the United States ...............................................................7

        1.    The Court Lacks General Jurisdiction Over Fredriksen .................8

        2.    The Court Lacks Specific Jurisdiction Over Fredriksen................12

    B.    Exercising Jurisdiction Over Fredriksen Would Be Unreasonable ...........13

II.    THE COMPLAINT SHOULD BE DISMISSED ON FORUM *NON
CONVENIENS* GROUNDS AND UNDER THE ACT OF STATE DOCTRINE 14

III.    IN ALL EVENTS, PLAINTIFF HAS FAILED TO STATE A CLAIM UPON
WHICH RELIEF MAY BE GRANTED UNDER FED. R. CIV. P. 12(B)(6)......15

    A.    As to All Counts, Plaintiff Has Failed To Meet the Pleading Requirements
of Rule 8(a) as to Fredriksen...................................................................15

    B.    Plaintiff Fails To State a Claim Against Fredriksen With Regard to All of
the Tort Claims Alleged in the Complaint ................................................17

    C.    Counts 9, 10, and 11 of the Complaint Should Be Dismissed as Against
Fredriksen ..............................................................................................17

    D.    Count 18 of the Complaint, For Alleged Violations of 11 U.S.C. §
1520(a)(1) and the Comity Order, Fails to State a Claim .........................18

    E.    This Adversary Proceeding Should Be Dismissed in Full Because It Is
Inconsistent With Chapter 15..................................................................20

CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Alkholi v. Macklowe,*
    No. 17 Civ. 16 (DAB), 2017 WL 6804076 (S.D.N.Y. Dec. 22, 2017) ................17

*In re Aluminum Warehousing Antitrust Litigation,*
    90 F. Supp. 3d 219 (S.D.N.Y. 2015)....................................................................10

*In re Ampal-American Israel Corp.,*
    502 B.R. 361 (Bankr. S.D.N.Y. 2013)..................................................................20

*Apex Maritime Co. v. OHM Enterprises, Inc.,*
    No. 10 Civ. 8119(SAS), 2011 WL 1226377 (S.D.N.Y. Mar. 31, 2011) ..............17

*Asahi Metal Industry Co. v. Superior Court of California, Solano County,*
    480 U.S. 102 (1987)..............................................................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................2, 16

*In re AstraZeneca Securities Litigation,*
    559 F. Supp. 2d 453 (S.D.N.Y. 2008), *aff'd sub nom. State Universities
    Retirement System of Illinois v. Astrazeneca PLC,* 334 F. App'x 404 (2d
    Cir. 2009) ..............................................................................................................13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................15, 16

*Boehm v. SportsMem, LLC,*
    No. 18-CV-556 (JMF), 2019 WL 3239242 (S.D.N.Y. July 18, 2019) .................15

*Bristol-Myers Squibb Co. v. Superior Court of California,*
    137 S. Ct. 1773 (2017)............................................................................................7

*Brown v. Lockheed Martin Corp.,*
    814 F.3d 619 (2d Cir. 2016)....................................................................................9

*Calder v. Jones,*
    465 U.S. 783 (1984)..............................................................................................12

*Capital Business Credit LLC v. Sharma (In re Sharma),* No. 12-14472 (SCC),
    2014 WL 5714494 (Bankr. S.D.N.Y. Nov. 4, 2014) ..............................................2

*Cedillo v. Medrano Campos*,
No. DR-14-CV-057-AM-VRG, 2014 WL 12479202 (W.D. Tex. Dec. 19, 2014), *report and recommendation adopted sub nom. Cedillo v. Campus*, Civil Action No. DR-14-CV-057-AM-VRG, 2015 WL 11438111 (W.D. Tex. Sept. 30, 2015) .......................................................................................17

*Charles Schwab Corp. v. Bank of America Corp.*,
883 F.3d 68 (2d Cir. 2018) ........................................................................7

*In re Cinque Terre Financial Group Ltd.*,
No. 16-11086 (JLG), 2017 WL 4843738 (Bankr. S.D.N.Y. Oct. 24, 2017) .........19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ...............................................................................8, 10

*Fialkov v. Alcobra Ltd.*,
No. 14 Civ. 09906 (GBD), 2016 WL 1276455 (S.D.N.Y. Mar. 30, 2016) ............9

*Gerstle v. National Credit Adjusters, LLC*,
76 F. Supp. 3d 503 (S.D.N.Y. 2015) ...........................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2013) ...............................................................................12

*Gucci America, Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) .......................................................................8

*Kolbasyuk v. Capital Management Services, LP*,
918 F.3d 236 (2d Cir. 2019) .......................................................................4

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018), *amended on reconsideration by* No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) ...........11, 12

*In re Lehman Bros. Holdings Inc.*,
602 B.R. 564 (Bankr. S.D.N.Y. 2019) ......................................................15, 16

*Lehman Bros. Special Financing Inc. v. Bank of America National Association (In re Lehman Bros. Holdings, Inc.)*,
535 B.R. 608 (Bankr. S.D.N.Y. 2015) ..................................................3, 7, 12, 13

*Lopez v. Shopify, Inc.*,
No. 16 Civ. 9761 (VEC) (AJP), 2017 WL 2229868 (S.D.N.Y. May 23, 2017), *report and recommendation adopted by* No. 16-CV-9761 (VEC)(RWL), 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018) ................................10

*Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*,
920 F.2d 183 (2d Cir. 1990) .....................................................................19

*Miller v. Mercuria Energy Trading, Inc.*,
    291 F. Supp. 3d 509 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir.
    2019) (mem.)...................................................................................................11

*In re Octaviar Administration Pty Ltd,*
    511 B.R. 361 (Bankr. S.D.N.Y. 2014)...................................................19

*In re Parmalat Securities Litigation*,
    376 F. Supp. 2d 449 (S.D.N.Y. 2005)...................................................13

*Patrico v. Voya Financial, Inc.*,
    No. 16 Civ. 7070 (LGS), 2017 WL 2684065 (S.D.N.Y. June 20, 2017)..............16

*Penguin Group (USA) Inc. v. American Buddha*,
    609 F.3d 30 (2d Cir. 2010)...................................................................7

*Powell v. Delta Airlines*,
    145 F. Supp. 3d 189 (E.D.N.Y. 2015) ...................................................10

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017).............................................................3, 8, 9

*In re Rhodia S.A. Securities Litigation*,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007)...................................................10

*Royalty Network Inc. v. Dishant.com, LLC*,
    638 F. Supp. 2d 410 (S.D.N.Y. 2009)...................................................10

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) (per curiam)............................................10

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)...........................................................3, 7, 8

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)............................................................4, 7

*In re Terrorist Attacks on Sept. 11, 2001*,
    718 F. Supp. 2d 456 (S.D.N.Y. 2010)...................................................9

*TheECheck.com, LLC v. NEMC Financial Services Group Inc.*,
    No. 16-cv-8722 (PKC), 2017 WL 2627912 (S.D.N.Y. June 16, 2017)................16

*Time, Inc. v. Simpson,*
    No. 02 Civ. 4917(MBM), 2003 WL 23018890 (S.D.N.Y. Dec. 22, 2003) ...........10

*Tymoshenko v. Firtash*,
    No. 11-CV-2794 (KMW), 2013 WL 1234943 (S.D.N.Y. March 27, 2013) .........14

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................3, 12

## STATUTES

11 U.S.C. § 362(b)(1) ................................................................................................19

11 U.S.C. § 362(k)(1) ................................................................................................19

11 U.S.C. § 1502(8) ................................................................................................18

11 U.S.C. § 1519(d) ................................................................................................19

11 U.S.C. § 1520(a)(1) ................................................................................................18

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No.
    109-8, § 305, 119 Stat. 23, 79 ................................................................................19

## RULES

Fed. R. Bankr. P. 7004 ................................................................................................2

Fed. R. Bankr. P. 7004(f) ................................................................................................3, 7

Fed. R. Civ. P. 8(a) ................................................................................................15

John Fredriksen ("Fredriksen"), through his undersigned counsel, respectfully submits this memorandum of law in support of his motion to dismiss the Adversary Complaint filed by Gonzalo Gil-White, personally and in his former capacity as the foreign representative of Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora") and Integradora De Servicios Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora" and, together with Perforadora, "Oro Negro"). For the reasons that follow, Fredriksen requests entry of an order dismissing the Complaint in its entirety, with prejudice, pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(2), and 12(b)(6), as made applicable to this Adversary Proceeding by Federal Rules of Bankruptcy Procedure 7008(a) and 7012(b).[1]

## PRELIMINARY STATEMENT

John Fredriksen is a Norwegian-born businessman and Cyprus national who currently resides in London, England ("Fredriksen"). (Compl. ¶ 63.) Plaintiff Gonzalo Gil-White ("Plaintiff"),[2] who served briefly as Oro Negro's foreign representative, accuses Fredriksen of leading a group, dubbed the "Ad Hoc Group," that conspired to drive Oro Negro out of business by engaging in tortious interference and other offenses.[3] Yet despite anointing him the Ad Hoc Group's leader, the Complaint does not even mention Fredriksen by name in the paragraphs that make up the counts against him. (*Id.* ¶¶ 446-579.) And indeed, the substantive allegations made against Fredriksen throughout the entire Complaint are scant—so scant that they occupy just a

---

[1] Fredriksen reserves all rights concerning this Court's ability to enter a final order or judgment concerning the claims asserted in the Complaint under Article III of the U.S. Constitution and does not consent to this Court's entry of such an order or judgment if it is later determined that the Court cannot do so consistent with Article III.

[2] Recent filings have indicated that Mr. Gil-White is no longer the foreign representative, having been replaced by an individual named Fernando Perez Correa Camarena.

[3] Fredriksen is included within the definition of the "Ad-Hoc Group Defendants" for pleading purposes, and thus is facing the same seventeen counts as the other individuals and entities within this group. (Compl. ¶¶ 19-67.)

handful of its 579 paragraphs. Plaintiff's central allegation, made "[o]n information and belief,"

is that Fredriksen "knew of or directed" three companies under his supposed control—Ship

Finance International Ltd. ("SFIL"), GHL Investments (Europe) Ltd. ("GHL"), and Seadrill

Limited ("Seadrill")—"to carry out the actions alleged in this Complaint." (*Id.* ¶ 67.)[4]

These "'naked assertion[s]' [are] devoid of 'further factual enhancement'" and, as such,

need not be credited. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (first alteration in original)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Capital Bus. Credit LLC*

*v. Sharma (In re Sharma)*, Case No. 12-14472 (SCC), 2014 WL 5714494, at *10 (Bankr.

S.D.N.Y. Nov. 4, 2014) (Chapman, J.) (to survive a motion to dismiss, "the factual allegations in

a complaint must be supported by more than mere conclusory statements") (citing *Twombly*, 550

U.S. at 555). And the remaining allegations leveled against Fredriksen are no better, as they

consist almost entirely of group pleading references that lump together the Ad Hoc Group

without distinguishing between its constituent members. Given all of the foregoing, the grounds

for dismissal set forth in the Ad Hoc Defendants' Motion To Dismiss the Complaint, ECF No. 29

("AH Defs. Mem."), are equally dispositive as to Fredriksen. Accordingly, Fredriksen joins and

incorporates these arguments to avoid unnecessary duplication and writes separately only to

highlight grounds for dismissal that are unique to the allegations directed at him.

As a threshold matter, Plaintiff utterly fails to allege a *prima facie* showing of personal

jurisdiction in this Court over Fredriksen. Federal Rule of Bankruptcy Procedure 7004 mandates

that a plaintiff must allege facts from which to infer that "the exercise of jurisdiction [would be]

---

[4] Although Fredriksen supposedly "knew of or directed" the actions of Seadrill (Compl. ¶ 67), one of the two
"Seamex Defendants" (*id.* at 2), the Complaint does not purport to hold him liable for Seadrill's claimed
misconduct. (*See, e.g.*, Compl. ¶¶ 454-57, 466-69 (not naming Fredriksen in counts brought solely against Seamex
Defendants).) Regardless, any claims against Seadrill must be dismissed for the reasons stated in the Seamex
Defendants' Motion To Dismiss (ECF No. 35), which Fredriksen joins and incorporates as necessary.

consistent with the Constitution and laws of the United States." Fed. R. Bankr. P. 7004(f). *See generally Lehman Bros. Special Fin. Inc. v. Bank of Am. Nat'l Ass'n (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 618 (Bankr. S.D.N.Y. 2015) (Chapman, J.). This involves a two-part inquiry into whether (i) "a defendant has certain minimum contacts with the relevant forum" (here, the United States as a whole), and (ii) "the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citation omitted).

Plaintiff fails both tests. As to minimum contacts, there is no factual basis alleged in the Complaint that would support that Fredriksen is subject to either general (i.e., all-purpose) jurisdiction or specific (i.e., suit-related) jurisdiction. "General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (citation omitted), *cert. denied*, 138 S. Ct. 282 (2017). And here, Plaintiff concedes that Fredriksen's domicile is overseas. (Compl. ¶ 63.) In the Second Circuit, such an admission is dispositive unless Plaintiff can point to "exceptional" facts. The Complaint, however, focuses almost entirely on Fredriksen's alleged indirect ownership of foreign companies—companies which themselves had insubstantial (and legally inadequate) business ties to the United States. This falls well short of Plaintiff's high burden.

Plaintiff's case for specific jurisdiction is equally flawed. To make a *prima facie* showing, Plaintiff must allege facts demonstrating that Fredriksen purposefully targeted the relevant forum with suit-related conduct that "create[d] a substantial connection" with it. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Yet Plaintiff does not identify any suit-specific behavior that Fredriksen personally directed at the United States. Instead, Plaintiff attempts to tie Fredriksen to the conduct of three entities that he purportedly controlled: Seadrill, SFIL, and GHL. These allegations are too conclusory and lacking in detail to support such an agency-based theory of

3

specific jurisdiction. And regardless, the Seamex Defendants and Foreign Defendants have amply demonstrated that Plaintiff's showing against the entities themselves is too weak to create the requisite "substantial connection." (*See* Foreign Defendants' Motion To Dismiss the Complaint For Lack of Personal Jurisdiction, ECF No. 26 ("Foreign Defs. Mem."), at 10-15; Memorandum of Law in Support of Seadrill Limited and Fintech Advisory Inc.'s Motion To Dismiss the Complaint, ECF No. 35 ("Seamex Defs. Mem."), at 48-51.) In the end, it would be unreasonable under the circumstances—and violate due process of law—to subject Fredriksen to personal jurisdiction in this Court, especially given his attenuated and insignificant connections to the United States. Principles of fair play and substantial justice demand that Fredriksen be dismissed from this case under Federal Rule of Civil Procedure 12(b)(2).

## FACTUAL BACKGROUND[5]

Many of the allegations relevant to the claims against Fredriksen are comprehensively detailed in the motions to dismiss filed by the Ad Hoc Defendants, the Foreign Defendants (as to jurisdiction-related issues), and the Seamex Defendants. (*See* AH Defs. Mem. 5-25; Foreign Defs. Mem. 2-3; Seamex Defs. Mem. 3-9.) To avoid duplication, Fredriksen refers to and incorporates these summaries. The section below focuses instead on the factual allegations that most directly bear on (i) the substantive claims against Fredriksen and (ii) the question of whether he is subject to the personal jurisdiction of this Court.

---

[5] Unless otherwise noted, all exhibits ("Ex." or "Exs.") referenced herein have been submitted as attachments to the Declaration of Scott D. Musoff dated October 11, 2019 ("Musoff Decl."). Fredriksen "assumes as true" Plaintiff's factual allegations solely for purposes of this motion, and only to the extent required by law. *See Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (enunciating standard for evaluating a motion to dismiss under Rule 12(b)(6)); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (articulating standard of review for motions to dismiss under Rule 12(b)(2)).

A.      **Allegations Relevant to the Claims Against Fredriksen**

John Fredriksen is a Norwegian-born businessman and Cyprus national who currently resides in London, England. (Compl. ¶ 63.) The Complaint alleges that he indirectly owns and controls several foreign companies, including three—SFIL, GHL, and Seadrill—that are named Defendants. (*Id.* ¶¶ 46-47, 57-62, 72-75.)

SFIL is an international ship-owning company that maintains a principal place of business in—and was established under the laws of—Bermuda. (*Id.* ¶¶ 57-59.) Fredriksen, it is claimed, "ultimately owns or controls" through several trusts a Cyprus company, Hemen Holding Limited ("Hemen"), that "owns approximately 26% of SFIL." (*Id.* ¶ 58.) Seadrill is a Bermuda-based shipping company whose shares trade on the New York Stock Exchange ("NYSE"). (*Id.* ¶¶ 32, 72-73.) The Complaint alleges that Fredriksen is Chairman of Seadrill's Board of Directors and "ultimately own[s] and control[s]" the company through an indirect interest in Hemen, which owns approximately 30% of Seadrill. (*Id.* ¶ 73.) GHL is a Cyprus company that Fredriksen supposedly controls—again indirectly—through several trusts. (*Id.* ¶¶ 45-47.) These trusts allegedly own Greenwich Holdings Limited, a Cyprus company that "indirectly owns and controls GHL." (*Id.* ¶ 47.) Both SFIL and GHL were allegedly members of the Ad Hoc Group. (*Id.* ¶ 166.)

Fredriksen is accused of leading the Ad Hoc Group (*id.* ¶ 7), yet the Complaint does not identify a single act that he personally took while serving in this apparent leadership role. Instead, Plaintiff generally proffers "[o]n information and belief" that "Fredriksen knew of or directed" three other Defendants—the aforementioned Seadrill, SFIL and GHL—"to carry out the actions alleged in this Complaint." (*Id.* ¶ 67.) The Complaint does not charge either SFIL or GHL with taking part in collusive behavior aside from joining the Ad Hoc Group itself. (*Id.* ¶¶

5

45-49, 57-62, 166.) By contrast, Plaintiff posits that Seadrill tortiously interfered with Oro Negro's contracts and reorganization, with the ostensible goal of having the company's five rigs ("Rigs") turned over to Seamex, one of Oro Negro's competitors. (*Id.* ¶¶ 450-52.) The Complaint, though, sheds no light on which of Seadrill's allegedly tortious acts Fredriksen "knew of or directed." (*Id.* ¶ 67.) As noted, Fredriksen has been named in the same seventeen Counts as the other Ad-Hoc Group Defendants. For the Court's convenience, these claims are summarized in a table attached hereto as Appendix 1.

### B.    Fredriksen's Alleged Forum Contacts for Jurisdictional Purposes

The Complaint generally contends as to personal jurisdiction that this Court may hale "each Defendant [into this District] because[] each Defendant," among other things, "has or had agents in this District, transacted business throughout the United States, including in this District; availed itself of courts in this District in the context of the events giving rise to the claims herein; [and] violated a right in the United States." (Compl. ¶ 94.) Plaintiff further asserts, again without regard to any particular Defendant, that "a substantial part of the events giving rise to the claims herein arose in this District." (*Id.*)

Regarding Fredriksen specifically, Plaintiff concedes that he is a Cyprus national who resides in London, England. (*Id.* ¶ 63.) The Complaint nevertheless maintains that Fredriksen is subject to personal jurisdiction because he "permanently and significantly invests or conducts business in New York" through what it describes as his indirect ownership and control and "close[] and direct[]" supervision of six corporate entities—five of which are foreign and domiciled overseas. (*Id.* ¶¶ 65-66.) For the Court's convenience, the table attached hereto as Appendix 2 lists each company, denotes where it is domiciled, and summarizes the main jurisdictional allegations that Plaintiff has directed at Fredriksen or the entity itself. Crucially, as discussed below, Plaintiff does not contend that Fredriksen had any direct personal connection—

6

physical or otherwise—to the United States during the relevant time period, nor does it assert that Fredriksen purposefully directed any suit-related conduct towards this country.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER FREDRIKSEN

"[P]laintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). This means that Plaintiff "must make a prima facie showing that jurisdiction exists," *id.* at 35-36 (citation omitted); *accord Lehman*, 535 B.R. at 618, and must meet this burden for each defendant and "with respect to each claim asserted," *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (citation omitted). In judging whether this threshold has been reached, courts "will not draw argumentative inferences in the plaintiff's favor," nor will they "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted).

For actions governed by Bankruptcy Rule 7004(f), the test is whether the "exercise of jurisdiction [would be] consistent with the Constitution and . . . laws of the United States." *Lehman*, 535 B.R. at 619 (quoting Fed. R. Bankr. P. 7004(f)). This inquiry has two elements: whether (i) "a defendant has certain minimum contacts with the relevant forum," and (ii) "the exercise of jurisdiction is reasonable in the circumstances." *SPV Osus Ltd.*, 882 F.3d at 343 (citation omitted). The "forum" is the United States as a whole. *See Lehman*, 535 B.R. at 619.

### A.    Plaintiff Fails To Allege That Fredriksen
### Had Sufficient Minimum Contacts With the United States

To perform a minimum contacts analysis, a court examines "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct.

1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff has not met his burden with respect to either.

### 1.    The Court Lacks General Jurisdiction Over Fredriksen

A "court's general jurisdiction . . . is based on the defendant's general business contacts with the forum," regardless of whether the subject matter of plaintiff's action relates to those contacts. *SPV Osus Ltd.*, 882 F.3d at 343 (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (*quoting Goodyear*, 564 U.S. at 924). "General jurisdiction over an individual," therefore, "comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" *Reich*, 858 F.3d at 63 (citing *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (per curiam)).

There is a strong presumption that domicile should be the dominant, if not sole, factor in deciding whether general jurisdiction exists. Indeed, as the Second Circuit recently held, only in an "exceptional case" will business contacts "be so extensive as to support general jurisdiction notwithstanding domicile elsewhere." *Reich*, 858 F.3d at 63 (citing *Daimler*, 571 U.S. at 139 n.19). That is true for both corporations and individuals alike. *Id.* (refusing to find general jurisdiction over an individual domiciled in Venezuela despite allegations that he had "relationships with New York banks and law firms" and "own[ed] an apartment in New York"); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) (applying *Daimler* to hold that court did not have general jurisdiction over foreign bank based on activities of its branch offices in the United States). Significantly, the Second Circuit "has yet to find . . . a case" that meets its criteria for exceptionalism. *Reich*, 858 F.3d at 63.

This case cannot be the first. Because Fredriksen is domiciled in London, England (Compl. ¶ 63), Plaintiff must identify truly extraordinary facts—i.e., facts which show that

8

Fredriksen's business contacts with the relevant forum were so systematic and continuous as to make this country his "surrogate" home for general jurisdiction purposes. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016). The Complaint, though, does not contend that Fredriksen personally had *any* direct contact with the United States—physical or otherwise. Instead, Plaintiff avers that Fredriksen ultimately owned, controlled, and "closely" supervised corporate entities that had their own business ties to the United States. (Compl. ¶¶ 65-67.) These generic agency allegations,[6] which focus on Fredriksen's so-called indirect ownership stakes and the "control" that purportedly flows therefrom, are not enough to meet the "exceptional case" test and override the presumption that domicile governs. *Reich*, 858 F.3d at 63 (citation omitted); *see Fialkov v. Alcobra Ltd.*, No. 14 Civ. 09906 (GBD), 2016 WL 1276455, at *5 n.2 (S.D.N.Y. Mar. 30, 2016) ("An individual's status as a shareholder is alone insufficient to establish personal jurisdiction over that individual."); *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 471 (S.D.N.Y. 2010) (refusing to impute United States business contacts of corporate entities to individuals based on allegations of control, and observing that general jurisdiction over an official "in his or her individual capacity[] must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by

---

[6] ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████████████████

the defendant in his or her corporate capacity"), *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013).[7] Put simply, *Reich* and *Daimler* are dispositive here.[8]

Further, the Complaint does not even plead adequate minimum contacts with respect to the *corporate entities themselves*. For instance, Plaintiff does not allege that two of the six companies with purported links to Fredriksen—Frontline Ltd. and Golden Ocean Group Ltd.—were domiciled in the United States; instead, he claims only that these foreign companies[9] listed their securities on the NYSE and NASDAQ, respectively. (Compl. ¶ 67.) Exchange listings, though, are not even sufficient to confer personal jurisdiction over an entity, let alone its alleged control persons. *See, e.g.*, *Sonera Holding B.V.*, 750 F.3d at 226 (no general jurisdiction where defendant sold American Depositary Shares to London underwriter, which later offered them on NYSE); *Lopez v. Shopify, Inc.*, No. 16 Civ. 9761 (VEC) (AJP), 2017 WL 2229868, at *7 (S.D.N.Y. May 23, 2017) (deeming general jurisdiction improper where "[t]he Court accept[ed]

---

[7] *See also In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 541-42 (S.D.N.Y. 2007) (dismissing foreign CEO and foreign COO and observing that "[b]eing a corporation's control person of itself does not . . . merit personal jurisdiction"); *Time, Inc. v. Simpson,* No. 02 Civ. 4917(MBM), 2003 WL 23018890, at *6 (S.D.N.Y. Dec. 22, 2003) (court could not exercise jurisdiction over "president, chairman and sole shareholder" of corporate defendant based on "conclusory" agency allegations).

[8] In *Daimler*, the Supreme Court questioned whether general jurisdiction should ever be predicated on principles of agency. There, Justice Ginsburg, writing for the Court, observed that the agency theory enunciated by the Ninth Circuit arguably "stacks the deck" in favor of plaintiffs in such a way as to confer general jurisdiction whenever a corporate parent has "an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." *Daimler*, 571 U.S. at 136. Given this criticism, it is unclear if agency is even a viable theory of general jurisdiction. *See Sonera Holding B.V.*, 750 F.3d at 225 (observing in *dicta* that *Daimler* "expressed doubts as to the usefulness of an agency analysis" in assessing general jurisdiction); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227-28 (S.D.N.Y. 2015) (recognizing that agency theory has "at the very least been called into doubt by *Daimler*").

[9] SEC filings confirm that Frontline Ltd. and Golden Ocean Group Ltd. are both domiciled in Bermuda, where they are legally organized and maintain principal places of business. (*See* Ex. 1, at 21; Ex. 2, at 19.) It is appropriate for the Court to take judicial notice of this information pursuant to Federal Rule of Evidence 201. *See Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 198 (E.D.N.Y. 2015) (judicially noticing place of incorporation); *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 421 n.7 (S.D.N.Y. 2009) (taking judicial notice of company's principal place of business, as documented in SEC filings, for purposes of resolving motion to dismiss).

as undisputed that [defendant] . . . trade[d] on the [NYSE]"), *report and recommendation adopted*, No. 16-cv-9761 (VEC) (RWL), 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018).[10]

Plaintiff's showing as to the four remaining entities is equally unpersuasive. Three of these organizations—Seadrill, SFIL, and Seamex—are domiciled overseas. And as established by other Defendants (in arguments Fredriksen joins), the Complaint fails to allege that these Defendants engaged in activity that could subject any of them to general or specific jurisdiction. (*See* Foreign Defs. Mem. 2-3, 6-17 (addressing jurisdiction for SFIL); Seamex Defs. Mem. 6-7, 44-52 (refuting jurisdictional allegations against Seadrill in relation to, *inter alia*, its ownership interest in Seamex).) As for Quintana Energy Services, Inc., the Complaint pleads only that it is "a Houston-based and NYSE-traded oil and gas company," without offering details about Fredriksen's relationship to it apart from an alleged indirect ownership stake. (Compl. ¶ 65.) Taken as a whole, these allegations—even with respect to the corporations themselves—are flimsy at best and hardly rise to a level that could even approach the "exceptional case" benchmark set by the Second Circuit in *Reich*. Accordingly, Fredriksen's foreign domicile should control and Plaintiff's general jurisdiction allegations should be rejected.[11]

---

[10] *See also Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523 n.5 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019) (mem.) (observing that foreign corporations should have "substantial latitude to list their securities on New York-based stock exchanges and to take the steps necessary to facilitate those listings" without subjecting themselves to personal jurisdiction (citation omitted)).

[11] Plaintiff also claims in the jurisdictional paragraph devoted to Fredriksen that "a New York-based law firm" advised Seadrill on the formation of Seamex. (Compl. ¶ 65.) But this allegation does not even support general jurisdiction over Seadrill, much less a foreign-domiciled individual like Fredriksen. *See, e.g.*, *LaMonica v. CEVA Grp. PLC (In re CIL Ltd.)*, 582 B.R. 46, 78 (Bankr. S.D.N.Y. 2018) ("[T]he standard requires that '[t]he agent must be primarily employed by the defendant and not engaged in similar services for other clients.'" (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000))), *amended on reconsideration*, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018). Plaintiff here fails to contend either that this "New York-based law firm" was primarily employed by Seadrill, or that it was not furnishing similar services for other clients.

## 2.    The Court Lacks Specific Jurisdiction Over Fredriksen

To exercise specific jurisdiction over a defendant, the suit must "aris[e] out of or relate[] to the defendant's contacts with the forum." *Goodyear*, 564 U.S. at 923-24 (citation omitted). The "touchstone" of this inquiry is whether "there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws.'" *Id.* at 924 (citation omitted); *see also Calder v. Jones*, 465 U.S. 783, 787 n.6, 789 (1984) (discussing "'effects' test" theory of personal jurisdiction, under which a defendant's actions are "expressly aimed" at the forum and cause effects there); *Lehman*, 535 B.R. at 620. This suit-related conduct "must create a *substantial* connection with the forum." *Walden*, 571 U.S. at 284 (emphasis added); *accord LaMonica v. CEVA Grp. PLC (In re: CIL Ltd.)*, 582 B.R. 46, 75 (Bankr. S.D.N.Y. 2018), *amended on reconsideration*, No. 13-11272-JLG, 2018 WL 3031094 (Bankr. S.D.N.Y. June 15, 2018) ("[I]t is not enough that the alleged conduct has some connection to the forum; the alleged conduct must have a substantial connection."). And crucially, this nexus "must arise out of contacts the 'defendant *himself* creates.'" *Lehman*, 535 B.R. at 620 (quoting *Walden*, 571 U.S. at 284).

Plaintiff has not met—and cannot meet—this test as to Fredriksen. As previously explained, the Complaint does not identify Fredriksen himself as having purposefully directed any conduct, tortious or otherwise, towards the United States. Instead, Plaintiff vaguely contends that Fredriksen, as the supposed leader of the Ad Hoc Group (Compl. ¶ 7), "knew of or directed Seadrill, SFIL and GHL to carry out the actions alleged in this Complaint" (Compl. ¶ 67). For the reasons set forth in the Seamex Defendants' and Foreign Defendants' respective Motions (which Fredriksen joins), the "actions" purportedly taken—even if credited for pleading purposes—are inadequate to confer specific jurisdiction on the organizations themselves. (*See* Foreign Defs. Mem. 3-8, 10-15 (examining specific jurisdiction allegations against GHL and

SFIL); Seamex Defs. Mem. 3-9, 48-51 (performing same analysis with regard to Seadrill).) This alone should end the Court's inquiry. *See Lehman*, 535 B.R. at 625 (rejecting "derivative jurisdiction" against defendant where allegations did not support jurisdiction over affiliates).

But even if Plaintiff's allegations were enough to create a "strong connection" between the forum and these corporate entities (and they are not), this fact would not justify haling *Fredriksen* into a U.S. court. Specific jurisdiction cannot be premised on opaque statements that an individual "directed" organizations to engage in tortious behavior—especially when there is no well-pled, non-conclusory basis for asserting that the individual even knew about (much less participated in) suit-related conduct directed at the United States. This lack of specificity is dispositive. *See, e.g.*, *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510-11 (S.D.N.Y. 2015) (dismissing complaint against officials, including President and part-owner, where specific jurisdiction allegations—that the individuals "'oversaw' or 'authorized' 'illegal policies'"—were "broadly worded and vague" and lacking in "factual detail"); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) (rejecting personal jurisdiction showing that was based partially on "conclusory allegations" that directors had participated in corporation's fraud directed at United States), *aff'd sub nom. State Univs. Ret. Sys. of Ill. v. Astrazeneca PLC*, 334 F. App'x 404 (2d Cir. 2009); *In re Parmalat Secs. Litig.*, 376 F. Supp. 2d 449, 454-55 (S.D.N.Y. 2005) (holding that defendant was a board member and control person of a company subject to U.S. jurisdiction was not enough to establish specific jurisdiction).

## B.    Exercising Jurisdiction Over Fredriksen Would Be Unreasonable

Finally, even if the requisite minimum contacts could be established with respect to Fredriksen (and they cannot), it would still be unreasonable—and therefore violate due process—to exercise personal jurisdiction over him. *See Lehman*, 535 B.R. at 621. In assessing reasonableness, courts consider, among other factors, the burden on the defendant, the interest of

the forum in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987); *see also Tymoshenko v. Firtash*, No. 11-CV-2794 (KMW), 2013 WL 1234943, at *5 (S.D.N.Y. March 27, 2013) (same). This inquiry "evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need[s] to show in terms of unreasonableness to defeat jurisdiction." *Tymoshenko*, 2013 WL 1234943, at *5 (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996)). As articulated by the other moving Defendants (in arguments in which Fredriksen joins), these factors cut decisively against Plaintiff. (*See* Foreign Defs. Mem. 15-18; Seamex Defs. Mem. 51-52.)

First, litigating this overwhelmingly foreign-focused proceeding would impose substantial burdens on the Defendants—including Fredriksen, a foreign national who resides overseas. (Compl. ¶ 63.) Second, the United States has no legitimate interest in adjudicating a dispute between Mexican companies regarding actions taken in Mexico in relation to contracts governed by foreign law. (*See* Foreign Defs. Mem. 16-18.) And this lack of interest is especially profound given that Plaintiff and many of the Defendants—like Fredriksen—are foreign and have, at best, insubstantial ties to the United States. (*Id.*) And third, Plaintiff has the ability to bring tort and other claims in a Mexican court and thus would not be prejudiced by the dismissal of this lawsuit. (*Id.* at 17.) Together, these factors weigh heavily in favor of dismissal under Rule 12(b)(2). And that is especially true for Fredriksen given his attenuated and minimal (at best) U.S. contacts, which reside decidedly on the weak end of the "sliding scale."

## II.    THE COMPLAINT SHOULD BE DISMISSED ON FORUM *NON CONVENIENS* GROUNDS AND UNDER THE ACT OF STATE DOCTRINE

As detailed in Section I of the Ad Hoc Defendants' Motion (*see* AH Defs. Mem. 27-41), in which Fredriksen joins, this case is quintessentially foreign in character. Brought on behalf of

14

Mexican companies by a Mexican citizen with no ties to New York, the Complaint stems from acts allegedly performed in Mexico by private citizens and Mexican government officials, in relation to contracts governed by foreign laws. Accordingly, this action should be dismissed on forum *non conveniens* grounds. In addition, for the reasons outlined in Section II of the Ad Hoc Defendants' Motion (*see id.* at 41-53), all of Plaintiff's claims against Fredriksen are barred by the act of state doctrine because they would require this Court to declare invalid numerous official acts taken by the Mexican government within its own territory. Fredriksen joins this section of the Ad Hoc Defendants' Motion as well.

## III.    IN ALL EVENTS, PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER FED. R. CIV. P. 12(B)(6)

### A.    As to All Counts, Plaintiff Has Failed To Meet the Pleading Requirements of Rule 8(a) as to Fredriksen

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . [plaintiff's] claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). This means that a plaintiff must "'provide a plausible factual basis to distinguish the conduct of each of the defendants,' and 'cannot force the various defendants to guess at the nature of [his] claims.'" *Boehm v. SportsMem, LLC*, No. 18-CV-556 (JMF), 2019 WL 3239242, at *2 (S.D.N.Y. July 18, 2019) (citation omitted). To survive a motion to dismiss, "a plaintiff's 'factual allegations must be enough to raise a right of relief above the speculative level;' [and] . . . must demonstrate more than a conceivable possibility that a defendant has acted unlawfully." *In re Lehman Bros. Holdings Inc.*, 602 B.R. 564, 589 (Bankr. S.D.N.Y. 2019) (Chapman, J.) (citation omitted). In evaluating a complaint against these standards, courts need not credit "'naked assertion[s]' devoid of 'further factual enhancement'" and "'legal conclusion[s] couched as . . . factual

allegation[s].'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (first alteration in original) (citations

omitted); *accord Lehman*, 602 B.R. at 589. Likewise, courts should reject pleadings that "lump[]

all the defendants together . . . and provid[e] no factual basis to distinguish their conduct."

*Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070 (LGS), 2017 WL 2684065, at *5 (S.D.N.Y. June 20,

2017) (citation omitted).

Disregarding these principles, Plaintiff offers only the most skeletal allegations against

Fredriksen. For instance, the centerpiece of Plaintiff's complaint against Fredriksen is that he

"led" the Ad-Hoc Group. (Compl. ¶ 7.) Yet the only claimed support for this statement is the

singular contention—made "[o]n information and belief"—that Fredriksen "knew of or directed

Seadrill, SFIL and GHL to carry out the actions alleged in this Complaint." (Compl. ¶ 67.) No

details are provided about the conduct that Fredriksen directed, how these directions were carried

out, or by whom. Indeed, this sentence, with its use of the disjunctive "or," leaves open the

possibility that Fredriksen merely "knew of" actions being performed by these separate legal

entities. Speculative allegations like these raise at best the "mere possibility of misconduct,"

*Iqbal*, 556 U.S. at 679, and thus fail to "nudge[] [Plaintiff's] claims across the line from

conceivable to plausible," *Twombly*, 550 U.S. at 570. And Plaintiff cannot overcome this defect

by including Fredriksen within dozens of group pleading references to "Defendants" and the

"Ad-Hoc Group." Rule 8(a) demands more. *See, e.g.*, *TheECheck.com, LLC v. NEMC Fin. Servs.*

*Grp. Inc.*, No. 16-cv-8722 (PKC), 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) (holding

that plaintiff had failed to plead actionable claims of conspiracy against individual defendants

where "the Complaint engage[d] in impermissible group pleading" and "d[id] not differentiate

between the five defendants"). For these reasons alone, all Counts against Fredriksen should be dismissed.[12]

### B.    Plaintiff Fails To State a Claim Against Fredriksen With Regard to All of the Tort Claims Alleged in the Complaint

The Complaint, as noted, does not accuse Fredriksen of tortious misconduct separate and apart from his alleged participation in the purportedly collusive activities of the Ad Hoc Group. (*See* Compl. ¶¶ 466-579.) As detailed in Sections III and IV of the Ad Hoc Defendants' Motion, all of the tort claims asserted in the Complaint (i) are governed by the laws of Mexico, (ii) fail to state claims under the laws of Mexico, and (iii) would be subject to dismissal even if New York law governed. (*See* AH Defs. Mem. 53-66 (examining Mexican law); *id.* at 66-83 (examining New York law).) These arguments apply equally to Fredriksen, a defined member of the "Ad-Hoc Group Defendants" for pleading purposes. (*See* Compl. at 1.) Accordingly, Fredriksen joins and incorporates by reference these sections of the Ad Hoc Defendants' Motion.[13]

### C.    Counts 9, 10, and 11 of the Complaint Should Be Dismissed as Against Fredriksen

Counts 9, 10, and 11 are claims brought by Plaintiff Gil-White for injuries he claims to have suffered in his individual capacity rather than as Oro Negro's foreign representative. As set

---

[12] In addition, the Complaint does not even begin to plead facts that would permit the Court to hold Fredriksen vicariously liable for any alleged misconduct by SFIL, Seadrill, or GHL. In this regard, it is well-established that conclusory allegations of control, under an alter ego theory or otherwise, cannot serve as the factual predicate for imputing the wrongful conduct of a corporate entity to an individual. *See, e.g., Alkholi v. Macklowe*, No. 17 Civ. 16 (DAB), 2017 WL 6804076, at *1, *4 (S.D.N.Y. Dec. 22, 2017) (granting motion to dismiss and refusing to impute liability of investment firm to its "founder, officer, majority interest holder, and principal" where plaintiffs offered only "unadorned invocation[s] of dominion and control" (citation omitted)); *Apex Mar. Co. v. OHM Enters., Inc.*, No. 10 Civ. 8119 (SAS), 2011 WL 1226377, at *4 (S.D.N.Y. Mar. 31, 2011) (deeming "insufficient" under Rule 8(a) "conclusory statements" that individual defendants dominated and controlled corporations).

[13] Also, Plaintiff has not pled facts from which to infer that Fredriksen himself acted "'illegally or against good customs,'" as required by Article 1910 of the Federal Mexican Civil Code. (*See* AH Defs. Mem. 61 (citation omitted).) As noted in Part III(A), *supra*, the Complaint's allegations against Fredriksen are too thin to support the imposition of liability under any theory. And this conclusion applies with particular force under Mexican law, which "generally does not permit the piercing of the corporate veil." *Cedillo v. Medrano Campos*, No. DR-14-CV-057-AM-VRG, 2014 WL 12479202, at *5 (W.D. Tex. Dec. 19, 2014), *report and recommendation adopted sub nom. Cedillo v. Campos*, No. DR-14-CV-057-AM-VRG, 2015 WL 11438111 (W.D. Tex. Sept. 30, 2015).

forth in the Ad Hoc Defendants' brief, the Court lacks jurisdiction over these claims. (*See* AH Defs. Mem. 83-86.) Moreover, Gil-White, as Oro Negro's *former* foreign representative, cannot act on Oro Negro's behalf. (*See* AH Defs. Mem. 88.) Fredriksen joins the Ad Hoc Defendants' arguments for dismissal here as well.

### D. Count 18 of the Complaint, For Alleged Violations of 11 U.S.C. § 1520(a)(1) and the Comity Order, Fails to State a Claim

In Count 18, Plaintiff repackages its tortious interference claims as a claim for a stay violation. More specifically, the Complaint alleges that the Ad Hoc Group's supposed interference with Oro Negro's right to possess the Rigs defied the automatic stay, as applicable under this Court's May 17, 2018 recognition order [D.I. 54] (the "Recognition Order") and 11 U.S.C. § 1520, and two orders of the Mexican *concurso* court that were granted comity under this Court's July 11, 2018 order (the "Comity Order"). (*See* Compl. ¶¶ 551-65.) Count 18, however, should be dismissed as to Fredriksen because it fails to allege any conduct by him; indeed, Fredriksen is not mentioned in relation to this Count at all. Further, Count 18 is fatally infirm for at least three additional—and equally dispositive—reasons:

First, as established at Section IV(C) of the Singapore Rig Owners' Motion to Dismiss the Complaint ("SRO Defs. Mem."), Oro Negro's supposed rights to possess the Rigs are not located "within the territorial jurisdiction of the United States." (SRO Defs. Mem. 33.) This means that such rights, if they exist at all, are not within the scope of either the automatic stay or the Comity Order. *See* 11 U.S.C. § 1520(a)(1) (applying automatic stay to "the debtor and the property of the debtor that is within the territorial jurisdiction of the United States"); *see also* 11 U.S.C. § 1502(8) (defining phrase). The situs of these possessory rights is either the situs of the

Rigs themselves (Mexico) or, alternatively, the situs of the Singapore Rig Owners (Singapore); it is plainly *not* in the United States.[14]

Second, Count 18 fails to the extent it is predicated on the Mexican criminal proceedings. As the Singapore Rig Owners explain (SRO Defs. Mem. 33-39), foreign criminal proceedings are beyond the scope of the automatic stay. *See* 11 U.S.C. § 1519(d) ("The court may not enjoin a police or regulatory act of a governmental unit, including a criminal action or proceeding, under this section."); *id.* § 362(b), (b)(1) (automatic stay "does not operate as a stay . . . of the commencement or continuation of a criminal action or proceeding against the debtor").

Third, Count 18 should be dismissed because damages under 11 U.S.C. § 362(k) are not available here.[15] The Oro Negro debtors are corporate entities, not natural persons. Section 362(k), by its terms, applies only to "an *individual* injured by any willful violation" of the stay, not corporate debtors. 11 U.S.C. § 362(k)(1) (emphasis added); *see also Maritime Asbestos Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-87 (2d Cir. 1990) ("We now hold that a bankruptcy court may impose sanctions pursuant to § 362(h) . . . only for violating a stay as to debtors who are natural persons."); *In re Cinque Terre Fin. Grp. Ltd.*, No. 16-11086 (JLG), 2017 WL 4843738, at *14 (Bankr. S.D.N.Y. Oct. 24, 2017) (Section 362(k) "applies only to individual debtors"). The fact that Plaintiff is a natural person does not cure the

---

[14] This Court's decision in *In re Octaviar Administration Pty Ltd*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014) (Chapman, J.) does not compel a different result. In *Octaviar*, the Court applied New York's "common sense" test to determine the situs of lawsuits brought by foreign representatives on behalf of an Australian debtor. *Id.* at 371. The Court ruled that under this test, the situs of the lawsuits (which were pending in U.S. courts) was the United States. The suits were brought under U.S. law against U.S. defendants to recover payments made to them in the United States, and the courts where the actions were filed had both personal and subject matter jurisdiction. *See id.* at 372. Unlike *Octaviar*, this dispute involves conduct that indisputably occurred *outside* the United States. Moreover, this Court lacks personal jurisdiction over Fredriksen, unlike the defendants in *Octaviar. See* Argument, Part I, *supra*.

[15] Section 362(k) was previously numbered as 362(h) and was renumbered by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 305, 119 Stat. 23, 79.

problem, because the injury complained of in Count 18 is injury to the Oro Negro corporate debtors, not Plaintiff in his personal capacity.[16]

### E.    This Adversary Proceeding Should Be Dismissed in Full Because It Is Inconsistent With Chapter 15

Section VI of the Ad Hoc Defendants' brief demonstrates that this Adversary Proceeding is inconsistent with Chapter 15 and, thus, should be dismissed. (*See* AH Defs. Mem. 86-90.) Fredriksen joins in these arguments.

## CONCLUSION

For all of the foregoing reasons, Fredriksen respectfully requests that the Complaint be dismissed in its entirety as against him, with prejudice.

Dated: New York, New York
   October 11, 2019

         Respectfully submitted,

         */s/ Jay B. Kasner*
         Jay B. Kasner
         Scott. D. Musoff
         George A. Zimmerman
         SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM LLP
         Four Times Square
         New York, New York 10036
         (212) 735-3000
         jay.kasner@skadden.com
         scott.musoff@skadden.com
         george.zimmerman@skadden.com

         *Attorneys for Defendant John Fredriksen*

---

[16] The Complaint includes three counts in which Plaintiff purports to assert claims in his individual capacity (Counts 9-11), but those claims are not at issue in Count 18. Even if they were, however, they would not satisfy Section 362(k) because Plaintiff does not claim in those counts to have been injured in his capacity as a creditor of the estate; indeed, he does not plead creditor status at all, and thus is not within the zone of interests protected by the statute. *See In re Ampal-American Isr. Corp.*, 502 B.R. 361, 371-72 (Bankr. S.D.N.Y. 2013) (individual movants lacked standing to assert damages claim under Section 362(k) where they had failed to allege creditor status, and where estate itself had claim arising from same conduct).

## APPENDIX 1

| Count(s) | Alleged Legal Basis | Description |
|---|---|---|
| 1, 3 | New York Law | Tortiously interfering with Oro Negro's contractual and business relations with Pemex |
| 5, 6 | Mexican Law | Intentionally or negligently interfering with Oro Negro's contractual and business relations with Pemex |
| 7, 8 | Mexican Law | Tortiously "[s]abotaging" Oro Negro's reorganization efforts |
| 9, 10, 11 | New York (Count 9) and Mexican (Counts 10, 11) Law | Abuse of process relating to the Mexican criminal investigations, purportedly brought by Plaintiff on behalf of Oro Negro and in his personal capacity |
| 13, 14 | New York Law | Tortiously interfering with Oro Negro's contractual and business relations with the Singapore Rig Owners |
| 15, 16 | Mexican Law | Intentionally or negligently interfering with Oro Negro's contractual and business relations with the Singapore Rig Owners |
| 18 | 11 U.S.C. § 1520(a)(1), Comity Order | Violating the automatic stay and this Court's order granting comity to certain orders of the Mexican *concurso* court |
| 19, 20, 21 | New York Law | Catch-all claims for prima facie tort, negligence, and unjust enrichment under New York law |

**APPENDIX 2**

| Main Jurisdictional Allegations | | |
|---|---|---|
| **Entity** | **Domicile** | **Allegations** |
| Quintana Energy Services, Inc. | Texas (Compl. ¶ 65) | Fredriksen "ultimately owns and controls approximately 20% of" this "Houston-based and NYSE-traded oil and gas company." (Compl. ¶ 65.) |
| Frontline Ltd. | Bermuda (Ex. 1) | Fredriksen "ultimately owns and controls approximately 48% of Frontline Ltd. . . ., a shipping company that trades on the NYSE." (Compl. ¶ 65.) |
| Seadrill | Bermuda (Compl. ¶ 72) | Fredriksen "ultimately owns and controls approximately 30% of Seadrill, which trades on the NYSE." (Compl. ¶ 65.)<br><br>"[T]wo of the current members of its Board of Directors are New York-based." (*Id.* ¶ 74.)<br><br>"Leand, who is also based in New York, was a member of the Board of Directors of Seadrill from 2013 to July 2018." (*Id.*)<br><br>"Seadrill conducts business in the United States through Seadrill Americas, Inc., one of Seadrill's United States-based subsidiaries, and through Sevan Drilling, Ltd., a Seadrill subsidiary that conducts significant business in the United States." (*Id.*)<br><br>"In September 2017, Seadrill commenced a Chapter 11 proceeding in the U.S. Bankruptcy Court for the Southern District of Texas . . . ." (*Id.* ¶ 75.) |
| SFIL | Bermuda (Compl. ¶ 57) | Fredriksen "ultimately owns and controls approximately 22.5% of SFIL, which trades on the NYSE." (Compl. ¶ 65.)<br><br>SFIL allegedly engaged a New York-based external auditor, previously had a New York-based board member, and has one board member in Connecticut. (*Id.* ¶ 60.) |
| Golden Ocean Group Limited | Bermuda (Ex. 2) | Fredriksen "ultimately owns and controls approximately 35% of Golden Ocean Group Limited . . ., a shipping company that trades on the NASDAQ." (Compl. ¶ 65.) |
| Seamex | Bermuda | "[T]hrough Seadrill, [Fredriksen] co-owns Seamex 50/50 with Fintech Investments." (Compl. ¶ 65.)<br><br>Seamex "is managed by New York-based Fintech Advisory." (*Id.*)<br><br>"[A] New York-based law firm[] advised Seadrill and Fintech Investments in connection with negotiating and establishing Seamex." (*Id.*) |