UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

PERFORADORA ORO NEGRO, S. DE R.L. DE C.V., *et al.*

Debtors in Foreign Proceedings.

**Chapter 15 case**

**Case No. 18-11094**
**Jointly Administered**

## SUPPLEMENTAL DECLARATION OF THOMAS STANLEY HEATHER

I, Thomas Stanley Heather, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1. I submit this Declaration ("Supplemental Declaration") to supplement the Declaration I previously provided on May 9, 2018 ("Initial Declaration") in support of the Objection filed on behalf of the Interested Parties with respect to Petitions.

2. Capitalized terms used in this Supplemental Declaration and not otherwise defined herein have the meanings set forth in my Initial Declaration.

3. I am over the age of 18 and provide this Declaration based on my own personal knowledge.

4. For more than ten years, I was an official translator authorized by the Supreme Court for the Federal District of Mexico. I am fluent in English and make this Declaration without the aid of a translator.

I. **The *Concurso Mercantil* Consists of Two Stages: Conciliation and Liquidation**

5. The *Concurso Mercantil* consists of two stages: conciliation (the "Conciliation Stage") and bankruptcy or liquidation (the "Liquidation Stage").[1] Prior to entry of

---

[1] An English translation of Article 2 of the LCM is provided below:

*Concurso mercantil* consists of two successive phase, denominated conciliation and bankruptcy.

the *Concurso* Judgment, the filing entity is not considered to be in the process of restructuring or liquidation, and only upon the *Concurso* Judgement being issued does the first stage of the *Concurso Mercantil* begin.

      6.      Petitioner suggests that a statement by Mexican Congress, in its exposition of motives prepared in connection with the 2007 amendments to the LCM, that "the Initial *Concurso* Stage *is part of* a *concurso mercantil* proceeding," should be understood as part of Mexican law.[2] I disagree, and Petitioner mischaracterizes my testimony as supporting this inference. As I stated in response to questions from Petitioner's counsel soliciting my opinion of the exposition of motives during my deposition,[3] whether I generally agree with what is said in the exposition of motives is irrelevant because the exposition of motives is a broad policy statement about why the law is being amended—it is not part of or incorporated into the law. As a result, the exposition of motives is not the substantive law of the LCM. Under Mexican law and practice, an exposition of motives by Congress related to new legislation does not serve an explanation of the law, and should not be relied upon as such. Indeed, the exposition of motives can be misused

---

[2] Omnibus Reply ¶ 30 & n.8.

[3] Heather Dep. Tr. at 173:15-23; 174:16-175:8.

> Q. In Mexico, when a statute is submitted to be voted as legislation, Congress has to prepare a document explaining the reason for that statute, yes?
>
> A. Yes.
>
> Q. You agree that the translation of that is an exposition of motives?
>
> A. Yes.
>
> . . .
>
> Q. Do you have any reason to believe that there would be something in that exposition of motives that you consider inaccurate?
>
> A. Again, they are very general principles -- they simply consider it as to a broad policy statement as to why the law is being amended.
>
> Q. You would consider uncontroversial what is in the exposition of motives?
>
> A. I would say that it should not be used as a part of the law. It may become controversial to the extent you use a paragraph and put it out of context. I've seen it done in litigation.

2

and misconstrued, especially when certain statements are taken out of context or used in litigation, as Petitioner has done here.[4]

7. The law itself, succinctly stated in LCM article 2, is clear: the initial *visita* proceeding is not one of the two enumerated stages of the *concurso mercantil*.[5] The *Visita* Proceeding is a preliminary proceeding governed by the *Ley de Concursos Mercantiles*, but it is not part of the formal *concurso mercantil*. Its purpose is to determine whether the filing entity is eligible for *concurso mercantil* at all.

8. Furthermore, the *Visita* Proceeding, which occurs before the *Concurso* Judgment and the commencement of *concurso mercantil*, is not public. It is only after the Court issues a *Concurso* Judgment that such Judgment is published to third parties.

9. Article 7 of the LCM provides, "*Concurso mercantil* proceedings are public. . . ."[6] As I stated in my Initial Declaration, the *concurso mercantil* does not commence until the court has issued a *Concurso* Judgment and declares the company in *concurso mercantil*.[7] Therefore, article 7 of the LCM means that the proceedings are public only after a court issues a *Concurso* Judgment and finds that a debtor is in *concurso mercantil*, not before.

## II. The "Creditor Plaintiff" Is Not <u>Any</u> Creditor

10. To support their assertion that "[c]reditors undoubtedly can participate in the Initial *Concurso* Stage," Petitioner relies on various articles of the LCM that relate exclusively

---

[4] Heather Dep. Tr. at 174:5-175:13.

[5] *See* Article 2 of the LCM; *see also* Initial Decl. ¶¶ 23, 48.

[6] An English translation of the relevant part of Article 7 is provided below:

> *Concurso mercantil* proceedings are public, therefore any person may request access to information on the same, through the mechanisms for access to the information that the Judicial Power of the Federation has in place.

[7] Initial Decl. ¶ 22.

3

to the rights of "creditor plaintiffs"[8] or, in other words, "the creditors . . . that have demanded [declaration of *concurso mercantil*]."[9] For example, Petitioner's expert states that "[a] debtor may only withdraw its request to initiate a *concurso mercantil* proceeding with the consent of its creditors,"[10] citing to Article 28 of the LCM.[11] But Article 28 reads, "The Merchant who has requested its declaration of *concurso mercantil* or, when applicable, **the creditors** or the Attorney General **that have demanded it**, may desist from their request or demand, provided that there is the express consent of all of them. The Merchant or the **creditor plaintiffs** will bear the expenses of the process [including] among others, the fees of the *visitador* and, when applicable, the conciliator."[12]

11. A petition for *Concurso Mercantil* in Mexico is commenced by (a) the filing entity filing a voluntary *concurso* petition (*solicitud de concurso*), (b) a creditor or other interested party filing an involuntary lawsuit (*demanda concursal*), or (c) the filing entity filing a pre-packaged voluntary petition (*solicitud con plan de reestructura previo*) with the simple majority of its creditors.

12. Where the LCM refers to "creditor plaintiffs," it refers to "[t]he creditor who demands the declaration of a *concurso mercantil* of a Merchant."[13] The term, "creditor

---

[8] Omnibus Reply, Appendix A at 2-4 (citing Articles 25, 28, 29, & 41 of the LCM); Lopez Melih Supp. Decl. ¶ 8(d), n.14 (citing Article 41).

[9] Lopez Melih Supp. Decl. ¶ 8(c), n.13 (citing Article 28 of the LCM); ¶ 8(d), n.14 (citing Article 41 of the LCM).

[10] Lopez Melih Supp. Decl. ¶ 8(c).

[11] Lopez Melih Supp. Decl. ¶ 8(c), n.13.

[12] Omnibus Reply, Appendix A at 3 (quoting Article 28 of the LCM) (emphasis added).

[13] *See* Omnibus Reply, Appendix A at 2-4 (citing Articles 28, 29, & 41 of the LCM).
   An English translation of the relevant part of Article 25 of the LCM is provided below:
   > The creditor who demands the declaration of *concurso mercantil* of a Merchant, may request of the judge the adoption of precautionary measures or, as the case may be, the modification of those that have been

4

plaintiff" only refers to the creditor that has filed an involuntary lawsuit. It does not apply to all creditors in any type of *concurso mercantil*.

13. A creditor, other than a "creditor plaintiff," cannot participate in the *Visita* Proceeding or challenge measures taken by the *Concurso* Court during the *Visita* Proceeding other than provisional measures directed at the creditor. A creditor, other than a "creditor plaintiff," does not receive notice of the filing of a Voluntary Petition, a copy of the Mexican *Concurso* Court's decision (if any) to admit the Voluntary Petition to the *Visita* Proceeding, or a copy of the Examiner's report. To note, the requirement that a *concurso* petitioner provide a list of creditors with its petition does not mean that creditors, other than the creditor plaintiff, are involved or affected during the initial, pre-declaration *Visita* Proceeding.

14. A creditor, other than a creditor plaintiff, must wait until the *Concurso* Court issues a *Concurso* Judgment, finding the debtor in *Concurso Mercantil*. Then, and only then, may a creditor engage in the *concurso* proceedings.[14]

---

    adopted. The constitution, modification or lifting of said orders will be governed by the provisions of the Commercial Code.

[14] *Registro No. 173 075; Localización: [J]; 9a. Época; T.C.C.; S.J.F. y su Gaceta; Tomo XXV, Marzo de 2007; Pág. 1508. I.3o.C. J/35* ("MERCANTILE CONCURSO. MOMENT IN WHICH THE GENERIC CREDITORS OF THE MERCHANT MAY INTERVENE IN THE RESPECTIVE PROCEDURE. In accordance with the provisions of articles 1o., 3o., 4o., paragraph II, 9o., First paragraph, 20, first paragraph, and 21, first paragraph, all of the Commercial Bankruptcy Law, only the merchant subject to the proceeding, and, if it's the case, the creditors or the General Attorney's Office if they are demanding the concurso. With respect to generic creditors of the person subject to concurso, they may only intervene in the proceeding until the judgment in which the mercantile concurso of its debtor is declared, because only at this point in time, any ruling may affect them.").

    An English translation of the relevant part of Article 49 of the LCM is provided below:

> The judgment that denies the commercial bankruptcy may be appealed; this appeal suspends the procedure and has remanding effects. The judgement that declares the commercial bankruptcy may also be appealed; this appeal only has remanding effects.
>
> The merchant, the inspector, the plaintiff creditors and the plaintiff Public Prosecutor's Office may file the appeal.

5

### III. Petitioner Misrepresents the Meaning of Heather Deposition Exhibit 6

15. In 2017, only as a matter of intellectual curiosity, not intended to be used in any professional capacity and not connected to this matter, I prepared a chart, which was marked as Exhibit 6 at my deposition,[15] that compared certain provisions of the UNCITRAL Model Law ("Model Law") concerning recognition of a foreign proceeding and relief in a court of the enacting state to provisions of the LCM concerning recognition of a foreign proceeding in a Mexican court. This meaning of my chart is obvious when read in the context of the cited provisions of the Model Law, all of which relate to recognition of a foreign proceeding in a court of the enacting state, and of the LCM, all of which relate to recognition of a foreign proceeding in a Mexican court.[16] The chart does not, as Petitioner claims, in any way concern the ability of a purported debtor in a Mexican *concurso* proceeding to seek recognition of that proceeding in a foreign country (such as the United States),[17] regardless of where the debtor is in the *concurso mercantil* process.

16. In the left-hand column of the chart, I noted what is provided under the Model Law. In the right-hand column of the chart, I noted how Mexican law <u>differed</u> from the Model Law.

---

[15] *See* Soledad Decl., Ex. 2-T.

[16] *See* UNICTRAL Model Law on Cross-Border Insolvency articles 15, 17, 19, 20, and 23, attached hereto as Exhibit 1.

An English translation of the relevant part of Article 298 of the LCM is provided below (emphasis added):

> From the presentation of a request for recognition up to when that request is determined, the judge may—*at the request of the visitador, conciliador, or síndico*, all of whom act at the request of the Foreign Representative, and when the relevant measures are necessary and urgent to protect the goods of the Merchant or the interests of the creditors—grant injunctive relief and precautionary measures. . . .

An English translation of the relevant part of Article 300 of the LCM is provided below (emphasis added):

> Commencing from the recognition of a Foreign Procedure, if it were necessary to protect the property of the Merchant or the interests of the creditors, *the Foreign Representative may urge the visitador, conciliador, or the síndico, so that they may request all appropriate relief from the judge*. . . .

Petitioner's counsel never solicited answers in my deposition as to the meaning of the chart or how, if at all, it would apply to the facts of this case.

[17] *See* Omnibus Reply ¶ 36.

6

17. In the second row of the chart, I noted (in the left-hand column) that under the Model Law, "[f]rom the time of application for recognition, the Foreign Representative can request the adoption of provisional measures."[18] Mexico did not adopt this provision of the Model Law (as shown in the right-hand column). Instead, under Mexican law, the *visitador*, *conciliador*, or *síndico* must request the adoption of provisional measures. Importantly, I added, "at the moment of requesting recognition, there is no [*visitador*, *conciliador*, or *síndico*] appointed."[19]

18. The "recognition" discussed in this row relates to a request for recognition of a foreign proceeding made in a Mexican court of a foreign main proceeding. It does not relate to a debtor seeking recognition in a foreign country (like the United States). It does not relate to Chapter 15 recognition.[20]

19. Notably, under Mexican law, a foreign representative of a foreign main proceeding may not obtain injunctive relief or precautionary measures. Rather, as my chart indicates, under Articles 298 and 300 of the LCM, any such relief must be requested by a court-appointed *visitador*, *conciliador*, or *síndico*.[21] Further, as my chart reflects, at the point when a foreign representative requests recognition of a foreign main proceeding, no *visitador*, *conciliador*, or *síndico* has been appointed.

**IV. The May 2 Order**

20. On May 2, the *Concurso* Court held that the motion by Oro Negro Drilling and the Singapore Entities to revoke Mr. Guerra's power of attorney was not effective because it

---

[18] *Id.*

[19] *Id.*

[20] Although there is a handwritten notation, "Chapter 15," this chart does not relate to or reflect in any way my understanding of proceedings under Chapter 15 of the U.S. Bankruptcy Code.

[21] *Id.*

7

was not notarized by a Mexican Notary Public.[22] The *Concurso* Court did not rule that Mr. Guerra has exclusive power of attorney over the Singapore Entities.

21. The *Concurso* Court did not rule that Mr. Ruiz did not represent the Singapore Entities. In fact, the *Concurso* Court expressly recognized that Mr. Ruiz represents the Singapore Entities,[23] and noted that Mr. Ruiz had been granted power of attorney before a Notary Public in the Republic of Singapore.[24]

Dated: May 16, 2018                     Signature: _____
                                                   Thomas S. Heather

---

[22] Initial Decl., Ex. 6-T at 593 ("In effect, each of the testimonies specifies that the power granted abroad in the presence of a Notary of the Republic of Singapore was notarized; nevertheless, it does not contain any public instrument that evidences the revocation of power of Jesus Angel Guerra Mendez as the representative that brought forward the subsequent declaration of insolvency, for, while they contain the translation of the written resolutions by the businessmen's Board of Directors on October 9, 2017 where they agreed to rescind all powers granted by the enterprises, there is no evidence the proceedings were carried out before a public notary that could verify whether the signatories were authorized and thus, it could be considered a public instrument, as required by writ of October 20th, 2017. The public notary only certified that a true copy of the original resolution was attached to the power, but there is no element that allow to presume with any validity that the resolution was made through a public instrument in order to pin down the scope and effectiveness of the action; therefore, **it does not proceed to declare as concluded the revocation and notification to Jesus Angel Guerra Mendez, the revocation of the power he holds.**") (emphasis in original).

[23] *Id*. at 591-92 ("In compliance with the aforementioned . . . , Manuel Ruiz de Chavez Gutierrez de Velasco, **legal representative of Oro Negro Drilling Pte. Ltd., Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd. and Oro Negro Impetus Pte. Ltd.**") (emphasis added).

[24] *Id*. at 592 ("The documents wherein have full probative value in terms of articles 1237, 1248 and 1292 of the Commercial Code, of the supplementary petition to the Insolvency Law and **prove the legalization of power given before Public Notary in Singapore in favour of Manuel Ruiz de Chavez Gutierrez de Velasco**, and other natural persons; however, the testimonials do not include a diverse public instrument whereby the revocation of power of Jesus Angel Guerra Mendez was evident.") (emphasis added).

8