## **EXHIBIT 1**

IFECOM's October 28 Order

JUZGADO SEGUNDO
DE DISTRITO EN
MATERIA CIVIL

2019 OCT 30 A 9 00

$I753/2$

**IFEC(**
Concursos Me

EN LA CIUDAD DE MÉXICO
"*2019, Año del Caudillo del Sur, Emiliano Zapata*"

020468

IFECOM/DG/1256/2019
Ciudad de México, 28 de octubre de 2019

Perforadora Oro Negro, Sociedad de
Responsabilidad Limitada de Capital
Variable e Integradora de Servicios
Petroleros de Oro Negro, Sociedad
Promotora de Inversión de Capital
Variable
Concurso mercantil 345/2017-I

C. Juez Segundo de Distrito en Materia
Civil en la Ciudad de México

Edgar Manuel Bonilla del Ángel en mi carácter de Director General del
Instituto, con la personalidad que tengo debidamente acreditada en
autos del juicio citado al rubro, en términos de lo dispuesto por los
artículos 324, fracciones ll y lll de la Ley de Concursos Mercantiles y 17,
fracciones V y XXII, del Reglamento Interior del Instituto Federal de
Especialistas de Concursos Mercantiles, con relación al auto de catorce
de octubre de dos mil diecinueve, transcrito en el oficio 17935/2019-C,
le comunico que, en sesión ordinaria del día de hoy, la Junta Directiva,
emitió el siguiente:

"ACUERDO: La Junta Directiva del Instituto Federal de Especialistas de
Concursos Mercantiles, con fundamento en el artículo 321, fracción VII, de la Ley
de Concursos Mercantiles, en relación con los diversos 328, 329 y demás relativos
del mismo ordenamiento; y i) en atención al oficio 17935/2019-C, donde se
transcribe el auto de catorce de octubre de dos mil diecinueve, dictado por el Juez
Segundo de Distrito en Materia Civil en la Ciudad de México, en el concurso
mercantil 345/2017-I, seguido a las concursadas Perforadora Oro Negro, Sociedad
de Responsabilidad Limitada de Capital Variable e Integradora de Servicios de
Petroleros de Oro Negro, Sociedad Anónima, Promotora de Inversión de Capital
Variable, recibido el quince de octubre del año en curso; y ii) a los escritos del

Scanned with CamScanner





**IFECOM**

Concursos Merca...

PODER JUDICIAL DE LA FEDERACIÓN

síndico Fernando Pérez-Correa Camarena, y anexos que acompaña, este Institu...
manifiesta:

En lo conducente, en el acuerdo remitido por el juez federal, se acordó lo que se
transcribe enseguida:

> *"Por otra parte, con el escrito 18413, Alberto Villarruel Briones, interventor designado*
> *por Oro Negro Drilling Pte. Ltd., solicita que de conformidad con los dispuesto*
> *por el artículo 329 de la Ley de Concursos Mercantiles, dicho escrito se*
> *remita al Instituto Federal de Especialistas de Concursos Mercantiles, a*
> *efecto de que sustituya al síndico Fernando Pérez Correa Camarena, po...*
> *considerar se encuentra impedido para ejercer el cargo.*
>
> *Así las cosas, previa copia certificada que del escrito 18413, obre agregada en*
> *autos, para constancia legal, se orden remitir el mencionado escrito y anexos*
> *descritos en la certificación décimo octava a fin de que provea lo que en*
> *derecho corresponda.*
>
> *Atentamente se le solicita tenga a bien remitir acuse de recibo correspondiente.'*
>
> **(Énfasis añadido)**

Al efecto, acúsese recibo de la promoción número 18413, a la que
el juez federal acompañó los documentos que describió de la
siguiente forma:

1. Impresión del comunicado por el cual "Se informa de la contratación de
   asesoría legal por parte del despacho Solórzano, Carvajal, González y Pérez
   Correa, Sociedad Civil" suscrito el veintisiete de junio de dos mil
   diecinueve, por Fernando Pérez Correa Camarena.

2. Impresión de la página de internet del despacho del síndico Fernando Pérez
   Correa Camarena, "Solórzano, Carvajal, González y Pérez Correa, Sociedad
   Civil".

3. Impresión del comunicado por el cual "Se solicita el examen físico y/o
   expedición de copias a costa de Oro Negro Drilling Pte. Ltd. de la
   información señalada en términos de lo dispuesto por el artículo 64
   fracción II de la Ley de Concursos Mercantiles" suscrito el catorce de agosto
   de dos mil diecinueve, por Antonio Alberto Villarruel Briones.

4. Copia de la promoción 16257 suscrita el diez de septiembre de dos mil
   diecinueve, por Antonio Alberto Villarruel Briones, en el presente concurso
   mercantil 345/2017-I con sus anexos.

**Scanned with CamScanner**

# IFECOM
**Concursos Mercantiles**

357



5. Copia de la promoción 12709 suscrita el diez de julio de dos mil diecinueve, por Fernando Pérez Correa Camarena, en el presente concurso mercantil 345/2017-I.

6. Copia del comunicado del doce de julio de dos mil diecinueve suscrita por Roberto García, dirigida a Fernando Pérez Correa Camarena.

7. Copia de la promoción 13784 suscrita el uno de agosto de dos mil diecinueve por Fernando Pérez Correa Camarena, en el presente concurso mercantil 345/2017-I.

8. Copia del proveído de cinco de agosto de dos mil diecinueve, dictado en el presente concurso mercantil 345/2017-I.

9. Copia de la promoción 14933 suscrita el diecinueve de agosto de dos mil diecinueve, por Fernando Pérez Correa Camarena en el presente concurso mercantil 345/2017-I y de sus anexos.

10. Copia de la promoción 16340 suscrita el diez de septiembre de dos mil diecinueve, por Fernando Pérez Correa Camarena en el presente concurso mercantil 345/2017-I.

11. Copia de la promoción 16717 suscrita el diecisiete de septiembre de dos mil diecinueve, suscrita por Fernando Pérez Correa Camarena en el presente concurso mercantil 345/2017-I.

12. Copia de la promoción 13106 suscrita el diecisiete de julio de dos mil diecinueve, por Fernando Pérez Correa Camarena en el presente concurso mercantil 345/2017-I.

13. Copia del correo electrónico de veintiséis de septiembre de dos mil diecinueve.

14. Copia de la promoción 11525 suscrita el veinticinco de junio de dos mil diecinueve, por Fernando Pérez Correa Camarena en el presente concurso mercantil 345/2017-I.

15. Impresión de la síntesis del proveído de cuatro de julio de dos mil diecinueve, del expediente 71/2018.

16. Copia de la demanda suscrita por Fernando Pérez Correa Camarena en representación de Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable e Jose Antonio Cañedo White; Carlos Wiliamson Nasi; Gonzalo Gil White y Miguel ángel Villegas Vargas, en contra de Asia Research and Capital Management Ltd; GHL Investments (Europe) Ltd.; Oro Negro Primus Pte. Ltd.; Oro Negro Laurus Pte. Ltd.; Oro Negro Fortius Pte. Ltd.; Oro Negro Decus Pte. Ltd.; Oro Negro Impetus Pte. Ltd.; Ship Finance International Ltd ante el Tribunal de Quiebras del Distrito Sur de Nueva York.

Scanned with CamScanner





17. Impresión del documento denominado *"conciliation fees and expenses payment agreement"* de cuatro de marzo de dos mil diecinueve con su traducción.

18. Impresión del documento denominado *"Payment requeriment of conciliation fees"* de veintinueve de mayo de dos mil diecinueve, con su traducción.

19. Impresión de la traducción de doce de septiembre de dos mil diecinueve, del documento denominado *"Payment requeriment of conciliation fees and expenses"* de veinticinco de junio de dos mil diecinueve.

20. Impresión de diversos correos electrónicos con su traducción.

21. Impresión de diversos correos electrónicos.

22. Copia del documento denominado *"Letter of Engagement"*, de treinta de agosto de dos mil diecisiete, con su traducción al español.

23. Copia de la promoción 16551 suscrita el doce de septiembre de dos mil diecinueve, por Fernando Pérez Correa Camarena en el presente concurso mercantil 345/2017-I, con sus anexos.

24. Copia de la promoción 11523 suscrita el veinticinco de junio de dos mil diecinueve, por Fernando Pérez Correa Camarena del presente concurso mercantil 345/2017-I, con sus anexos.

25. Copia del documento denominado *"Motion of foreign representative for order pursuant to bankruptcy code sections 105(a), 362, 363, 1520 (a)(2), 1520 (a)(3) and 1521 (a)(7) authorizing entry into litigation interest agreement and granting related relief"* de siete de junio de dos mil diecinueve con su traducción al español.

26. Copia de traslado.

Ahora bien, en el escrito que remitió el Juez Federal, el interventor hace valer que se actualizan varios impedimentos en relación al Síndico designado en el concurso mercantil de que se trata, concretamente, los previstos las fracciones III, V y VI del artículo 328 de la Ley de Concursos Mercantiles; y, por tal razón, con fundamento en el artículo 329 del mismo ordenamiento, por conducto del juez, solicita la remisión del escrito de referencia a este Instituto, para solicitar la sustitución del especialista.

El interventor designado por Oro Negro Drilling Pte. Ltd., solicita la sustitución del síndico, con base en los hechos que resume en la aclaración preliminar y tabla de contenido del escrito remitido en que, de manera general, se sintetizan como sigue:

Scanned with CamScanner

**IFECOM**
Concursos Mercantiles

358

El síndico en una quiebra requiere ser y permanecer neutral/e imparcial respecto de las comerciantes concursadas y los acreedores reconocidos, sin dicha neutralidad e imparcialidad todos los mecanismos previstos en la ley para intervenir, <u>inventariar</u> y liquidar una empresa quebrada fallan; ya que en lugar de que el síndico identifique, tome control de los activos, los valores y obtenga el mayor producto posible para su venta en beneficio de todos los acreedores reconocidos, el síndico sirve a los intereses de la comerciante, de otros acreedores o, inclusive, sus propios intereses, haciendo que la quiebra su negocio personal en perjuicio de la masa concursada.

· Indica que el interventor ha encontrado evidencia de que el síndico ha dejado de ser neutral e imparcial, ya que, después de su nombramiento, se han actualizado varios impedimentos previstos en las fracciones III, V y VI del artículo 328 de la Ley de Concursos Mercantiles.

· Señala que los conflictos de interés que aquejan al síndico ya están causando afectaciones a la masa concursal y a los acreedores reconocidos, a grado tal, que **el síndico se ha dado a la tarea de favorecer a su propia firma de abogados,** a determinados acreedores no reconocidos, así como los anteriores administradores y accionistas de las comerciantes en perjuicio de la masa concursal y en perjuicio de todos los acreedores reconocidos.

· Afirma que **el síndico está actuando como abogado de la comerciante con un pretendido acuerdo de honorarios a cargo de la masa concursal** *"que nada tiene que ver con el honorario dispuesto en las Reglas Generales de la Ley de Concursos Mercantiles expedida por el Instituto Federal de Especialistas de Concursos Mercantiles, que lo coloca en una situación de interés directo o indirecto en el concurso mercantil y de sociedad respecto del comerciante"* y enemistad contra los acreedores reconocidos de las comerciantes.

· Sostiene que el síndico impulsó una nueva acción en contra de Nordic Trustee A.S, ante el Juzgado Décimo Tercero de Distrito en Materia Civil en esta Ciudad; no obstante que a dicho acreedor le reconoció un crédito y sus garantías, en la lista definitiva de acreedores que elaboró como conciliador.

Scanned with CamScanner





**PODER JUDICIAL DE LA FEDERACIÓN**
CONSEJO DE LA JUDICATURA FEDERAL

IFECOM
Concursos Mercan...

- Menciona que *"hace unos días"* el síndico intentó nuevamente accionar legales en contra de acreedores reconocidos; con lo que se acredita su enemistad manifiesta y parcialidad en contra de éstos.

- Aduce que la enemistad también es manifiesta, por el hecho de que el síndico ha omitido devolver un monto millonario que recibió debido a que calculó mal sus honorarios al momento de que ya actuaba como síndico, al amparo del acuerdo de honorarios suscrito por dicho especialista concursal, la comerciante y Nordic Trustee AS.

- Informa que el síndico está defendiendo como gastos ordinarios de los comerciantes pagos en fraude de acreedores, en violación de medidas cautelares dictadas por el juez concursal, a favor de la firma de investigadores privados Black Cube, contratada por las comerciantes con la finalidad de investigar a los acreedores reconocidos, así como a funcionarios del gobierno federal, lo que, al margen de otras faltas, indica que también evidencia la manifiesta enemistad en contra de los acreedores reconocidos.

- Asevera que existe amistad cercana con acreedores, y supuestos acreedores de las comerciantes, y con la comerciante, respecto de los cuales el síndico asumió la posición de defender un pago hecho en fraude de acreedores a favor del despacho de abogados norteamericanos, instruido y contratado por el otrora gerente general de Perforadora y del consejero de Integradora, Gonzalo Gil White, pues, adicionalmente, reconoce al despacho de abogados en comento un crédito por $92'000,000.00 (*noventa y dos millones de pesos 00/100 M.N.*) en lo que *"él califica como la lista definitiva de acreedores"*; no obstante que dicho despacho no aparece ni siquiera como acreedor en la sentencia de reconocimiento, graduación y prelación de créditos.

- Refiere que es afán del síndico violar los principios de publicidad y transparencia que deben regir su actuación, en beneficio del despacho en comento, e igualmente evidencian la cercana amistad con el supuesto acreedor de las comerciantes.

- Afirma que el síndico está coaligando como representante de la quebrada, Perforadora Oro Negro S. de R.L. de C.V.; y con los accionistas y miembros

**Scanned with CamScanner**

## IFECOM

**Concursos Mercantiles**

359

del consejo de administración de Integradora de Servicios Petroleros Oro Negro S.A. P.I. de C.V.

• Que han existido situaciones calificadas por el especialista, como amenazas hacia su persona, así como manifestaciones denostativas o instigantes hacia las Comerciantes y Acreedores.

Así también, los días veintidós y veintiocho de octubre de dos mil diecinueve, se recibió en este Instituto diversos escritos del especialista **Fernando Pérez-Correa Camarena, mediante los cuales: (i) presenta pruebas y formula alegatos y (ii) formula una ampliación de sus alegatos, en relación con la solicitud de sustitución** remitida por el juez del proceso.

Finalmente, en relación al oficio remitido por el juez federal, escrito y anexos que acompaña; así como los escritos del especialista, referente a las causas de impedimento, con fundamento en el artículo 329 de la Ley de Concursos Mercantiles, esta Junta Directiva procede en consecuencia.

### ANTECEDENTES

PRIMERO. **Solicitud de concurso mercantil.** El cinco de octubre de dos mil diecisiete, el Juez Segundo de Distrito en Materia Civil en la Ciudad de México, admitió la solicitud de concurso mercantil 345/2017-I, incoado por Perforadora Oro Negro, Sociedad de Responsabilidad Limitada de Capital Variable *(el cual se solicitó tramitar acumuladamente con diversos concursos, tramitado incidentalmente según acuerdo de la misma fecha)*.

SEGUNDO. **Designación de visitador.** El once de octubre de dos mil diecisiete, este Instituto designó como visitador al especialista Enrique Estrella Menéndez.

TERCERO. El once de septiembre de dos mi dieciocho, el juez Concursal dictó sentencia que declaró el concurso mercantil de que se trata.

CUARTO. **Designación de Conciliador.** El diecinueve de septiembre de dos mil dieciocho, este Instituto designó como Conciliador en el concurso de mérito, al licenciado Fernando Pérez-Correa Camarena.

**Scanned with CamScanner**



**Concursos Mercantiles**

PODER JUDICIAL DE LA FEDERACIÓN

**QUINTO. Sentencia de quiebra.** El trece de junio de dos mil diecinueve, el juez de los autos dictó sentencia que declaró en estado de quiebra.

**SEXTO. Designación de Síndico.** El catorce de junio siguiente, la Junta Directiva de este Instituto designó como Síndico en el concurso de mérito, al licenciado Fernando Pérez-Correa Camarena.

**SÉPTIMO. Solicitud de sustitución del Síndico.** El catorce de octubre de dos mil diecinueve, el Juez concursal remitió el acuerdo, escrito y anexos con que el Interventor solicitó la sustitución del síndico, con fundamento en los artículos 328 y 329 de la Ley de Concursos Mercantiles.

**OCTAVO. Escrito de presentación de pruebas y alegatos del Síndico.** Los días veintidós y veintiocho de octubre de dos mil diecinueve, el especialista presentó: (i) escrito de pruebas y alegatos, y (ii) escrito de ampliación de alegatos, en relación a la solicitud de sustitución formulada por el Interventor, con el ocurso remitido por el Juez Federal.

Así las cosas, con apego a los derechos fundamentales reconocidos en el artículo 1°, 14, 16 y demás relativos y aplicables de la Constitución Federal, esta Junta Directiva acuerda en relación a la solicitud de sustitución, conforme a las siguientes

## CONSIDERACIONES

**PRIMERA. (Derechos Fundamentales).** Los artículos 1°, 14, 16 y demás relativos de la Constitución Federal establecen las obligaciones para las autoridades en materia de derechos humanos, fundamentación y motivación de sus resoluciones, dentro de los ámbitos que la interpretación de tales preceptos han emitido los Tribunales Federales.[1]

---

[1] Véase: Décima Época Registro: 2007573 Instancia: Segunda Sala Tipo de Tesis: Aislado Fuente: Gaceta del Semanario Judicial de la Federación Libro 11, Octubre de 2014, Tomo I Materia(s): Constitucional Tesis: 2a. CIV/2014 (10a.) Página: 1097 CONTROL CONSTITUCIONAL CONCENTRADO O DIFUSO. LAS AUTORIDADES ADMINISTRATIVAS NO ESTÁN FACULTADAS PARA REALIZARLO. El artículo 1o. de la Constitución Política de los Estados Unidos Mexicanos establece que todas las autoridades, en el ámbito de sus competencias, deben cumplir con una serie de obligaciones en materia de derechos humanos. Sin embargo, en términos de la tesis P. LXIX/2011 (9a.) (*), del Tribunal Pleno de la Suprema Corte de Justicia de la Nación, las autoridades administrativas no están facultadas para realizar algún tipo de control constitucional, sea concentrado o difuso; es decir, no pueden declarar la invalidez de un determinado precepto e inaplicarlo, ni siquiera bajo el argumento de una reparación de derechos humanos, ya que ello implicaría desatender los requisitos de procedencia señalados por las leyes para interponer un medio de defensa, y que deben cumplirse de manera previa a un pronunciamiento de fondo del asunto. En todo caso, han de interpretar las disposiciones... Página 8 de 100

Scanned with CamScanner

**IFECOM**
Concursos Mercantiles

360

SEGUNDA. (Instituto Federal de Especialistas de Concursos Mercantiles) Conforme al artículo 311 de la Ley de Concursos Mercantiles, el Instituto Federal de Especialistas de Concursos Mercantiles es un órgano auxiliar del Consejo de la Judicatura Federal, con autonomía técnica y operativa que cuenta, entre otras atribuciones, con la de autorizar la inscripción en el registro correspondiente a las personas que acrediten cubrir los requisitos necesarios para la realización de las funciones de visitador, conciliador y síndico en los procedimientos de concurso mercantil; constituir y mantener los registros de visitadores, conciliadores y síndicos; designar a las personas que desempeñarán las funciones de visitador, conciliador y síndico en cada concurso mercantil, de entre las inscritas en los registros correspondientes; establecer mediante disposiciones de aplicación general, los procedimientos aleatorios para la designación de los visitadores, conciliadores o síndicos; supervisar la prestación de los servicios que realicen los visitadores, conciliadores y síndicos, en los procedimientos de concurso mercantil; fungir como órgano consultivo del visitador, del conciliador y del síndico, en su carácter de órgano del concurso mercantil y, en su caso, de los órganos jurisdiccionales encargados de la aplicación de la Ley de la Materia, en lo relativo a los criterios de interpretación y aplicación de sus disposiciones, siempre con el propósito de lograr la consecución de los fines establecidos en el segundo párrafo del artículo 1o. del mismo ordenamiento, cuyas opiniones no tendrán carácter obligatorio.

El Instituto Federal de Especialistas de Concursos Mercantiles es el órgano auxiliar del Consejo de la Judicatura Federal responsable de generar la cultura concursal mercantil y de administrar el Registro de Especialistas, integrado de profesionales seleccionados conforme a criterios que responden a niveles relevantes de solvencia moral, conocimientos y experiencia, para asegurar que los procesos de concurso mercantil, judiciales y extrajudiciales cuenten con expertos que produzcan

jurídicos en el sentido más favorable a las personas, pero sin que ello llegue a descuidar las facultades y funciones que deben desempeñar en atención a sus ámbitos competenciales. Aceptar lo contrario, generaría incertidumbre jurídica en franca contravención a otros derechos humanos como los de legalidad, debido proceso y seguridad jurídica, previstos en los artículos 14 y 16 constitucionales. Amparo directo en revisión 1640/2014. Ramón Enrique Luque Félix. 13 de agosto de 2014. Unanimidad de cuatro votos de los Ministros Alberto Pérez Dayán, José Fernando Franco González Salas, Margarita Beatriz Luna Ramos y Luis María Aguilar Morales. Ausente: Sergio A. Valls Hernández. Ponente: José Fernando Franco González Salas. Secretarios: Maura Angélica Sanabria Martínez y Everardo Maya Arias. Nota: (*) La tesis aislada P. LXIX/2011 (9a.) citada, aparece publicada en el Semanario Judicial de la Federación y su Gaceta, Décima Época, Libro III, Tomo 1, diciembre de 2011, página 552, con el rubro: "PASOS A SEGUIR EN EL CONTROL DE CONSTITUCIONALIDAD Y CONVENCIONALIDAD EX OFFICIO EN MATERIA DE DERECHOS HUMANOS." Esta tesis se publicó ... de 2014 a las 09:30 horas en el Semanario Judicial de la Federación.
Página 9 de 106

Scanned with CamScanner



resultados inmediatos y reales en la solución de los problemas de las empresas en crisis, preservar su valor social y fortalecer con ello, el desarrollo económico social.

Como Órgano Auxiliar del Consejo de la Judicatura Federal, el Instituto Federal de Especialistas de Concursos Mercantiles debe conducir sus acciones con profesionalismo, transparencia y confiabilidad a la administración del Registro de Especialistas, integrado por profesionales cuyo desempeño como órganos del concurso mercantil se desarrolle con ética, eficacia y eficiencia; así como a la generación de la cultura concursal mercantil, que contribuyan de manera ascendente a la protección del interés público que tutela la Ley de Concursos Mercantiles.

**TERCERA. SUBSTANCIACIÓN** (*de plano con el oficio del juez federal con que remitió el escrito de impedimento y sus anexos, así como el escrito del Síndico en que compareció, aportó pruebas y formuló alegatos*).

Conforme a los artículos 329, en relación con el diverso 328 y demás relativos de la Ley de Concursos Mercantiles, los visitadores, conciliadores o síndicos que se encuentren en alguno de los supuestos previstos en el artículo últimamente mencionado, deberán excusarse; de lo contrario quedarán sujetos a las sanciones administrativas que resulten aplicables de conformidad con la presente Ley y de aquellas que al efecto determine el Instituto.

Lo anterior, sin perjuicio de que el juez de oficio, o bien el Comerciante o cualquier acreedor o interventor por conducto del juez, puedan solicitar al Instituto la sustitución en el cargo, desde el momento en que tengan conocimiento del hecho, independientemente de la responsabilidad penal en que puedan incurrir los visitadores, conciliadores o síndicos.

Así también, los artículos 330 y 331 del ordenamiento legal en cita, disponen:

"*Artículo 330.- En el evento de que iniciado el procedimiento se diera un impedimento superveniente, el visitador, conciliador o síndico deberá hacerlo del conocimiento inmediato del Instituto; en caso contrario, le serán aplicables las sanciones jurídicas a que se refiere el artículo anterior.*

*En todo caso el visitador, conciliador o síndico que se ubique en el supuesto previsto en el párrafo anterior, deberá permanecer en el ejercicio de sus funciones hasta en tanto se designa, en su caso, a quien deba sustituirlo, debiendo hacer entrega de la información y documentos a los que haya tenido acceso y de los bienes del Comerciante que haya tenido en su poder con motivo de sus funciones.*

*Artículo 331.- El visitador, conciliador y síndico sólo podrán excusarse de su designación cuando exista impedimento legal o medie causa suficiente a juicio*

Scanned with CamScanner



IFECOM
Concursos Mercantiles

361

*del Instituto quien deberá resolver de inmediato a fin de evitar daño al procedimiento concursal."*

De la interpretación de los preceptos que anteceden, se advierte que la medida solicitada debe ser acordada de inmediato, a fin de evitar el daño al procedimiento concursal.

Conforme a lo anterior, es de destacar que la resolución del asunto debe tramitarse de inmediato (*sin substanciación y de plano*).[2]

CUARTA. **Competencia para conocer del impedimento.** En el escrito presentado por el especialista, mediante el cual ofrece pruebas y formula alegatos hace valer, en síntesis, que este Instituto carece de competencia para conocer y resolver de la causa de impedimento planteada, ya que esa es una atribución del juez concursal, según resulta de los artículos 7, 60, 267, 311, 328 y 329, todos de la Ley de Concursos Mercantiles.

Los reclamos del especialista sobre la incompetencia de este Instituto para resolver sobre la solicitud de sustitución planteada, son infundados.

En efecto, el artículo 329 de la Ley de Concursos Mercantiles establece que los visitadores, conciliadores o síndicos que se encuentren en alguno de los supuestos previstos en el artículo 328 del mismo ordenamiento,[3] deberán excusarse; de lo

---

[1] No obstante ello, se estima que en el caso se han respetado, además, las formalidades esenciales del procedimiento, en tanto el especialista estuvo en aptitud de conocer el escrito de solicitud de sustitución, por virtud del acuerdo dictado en el procedimiento concursal; y, en atención a ello, compareció ante este Instituto, mediante el escrito por el que aportó pruebas y formuló alegados. De ahí que, en conclusión, se estiman satisfechas las formalidades esenciales en respeto de los derechos humanos del especialista, en virtud de que estuvo en aptitud de conocer el escrito con las causas de impedimento, ofreció pruebas, alegó y, en consecuencia (aun la resolución de plano del asunto), se respetaron las formalidades esenciales del procedimiento, reconocidas como derechos fundamentales en el Pacto Federal y los tratados internacionales al respecto.

[2] Artículo 328.- No podrán actuar como visitadores, conciliadores o síndicos en el procedimiento de concurso mercantil de que se trate, las personas que se encuentren en alguno de los siguientes supuestos:
I. Ser cónyuge, concubina o concubinario o pariente dentro del cuarto grado por consanguinidad o segundo por afinidad, del Comerciante sujeto a concurso mercantil, de alguno de sus acreedores o del juez ante el cual se desarrolle el procedimiento;
II. Estar en la misma situación a que se refiere la fracción anterior respecto de los miembros de los órganos de administración, cuando el Comerciante sea una persona moral y, en su caso, de los socios ilimitadamente responsables;
III. Ser abogado, apoderado o persona autorizada, del Comerciante o de cualquiera de sus acreedores, en algún juicio pendiente;
IV. Mantener o haber mantenido durante los seis meses inmediatos anteriores a su designación, relación laboral con el Comerciante o alguno de los acreedores, o prestarle o haberle prestado durante el mismo periodo, servicios profesionales independientes siempre que éstos impliquen subordinación; en el proceso al cual se le designe, o
V. Ser socio, arrendador o inquilino del Comerciante o alguno de sus acreedores, en el proceso al cual se le designe, o
VI. Tener interés directo o indirecto en el concurso mercantil o ser amigo cercano o enemigo manifiesto del Comerciante [...] acreedores.

Página 11 de 106

**Scanned with CamScanner**




**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

contrario quedarán sujetos a las sanciones administrativas que resulten aplicables de conformidad con la presente Ley de la Materia y de aquellas que al efecto determine el Instituto. Lo anterior, sin perjuicio que el juez de oficio, o bien el Comerciante o cualquier acreedor o interventor por conducto del juez, puedan solicitar al Instituto la sustitución en el cargo, desde el momento en que tengan conocimiento del hecho, independientemente de la responsabilidad penal en que puedan incurrir los visitadores, conciliadores o síndicos.

Así también, conviene insertar las consideraciones de la Primera Sala de la Suprema Corte de Justicia de la Nación, al resolver el amparo en revisión 485/2008, bajo la ponencia del ministro **José de Jesús Gudiño Pelayo**, resuelto el veintidós de octubre de dos mil ocho; que, en lo relevante para esta sentencia, se transcribe.

"...
Expuesto lo anterior, se procede al estudio del diverso argumento donde el quejoso sostiene que el artículo 337, fracción V, de la Ley de Concursos Mercantiles contraviene la garantía de seguridad jurídica establecida en el artículo 17 constitucional, porque deja al arbitrio del Instituto Federal de Concursos Mercantiles la calificación de suficiencia de la causa por la cual un especialista rehúse el desempeño de las funciones que le sean asignadas en algún concurso mercantil.

Primero, cabe aclarar que es impreciso lo manifestado por el quejoso, en el sentido de que la garantía de seguridad jurídica se encuentra en el artículo 17 Constitucional, toda vez que dicha garantía está contenida en el artículo 16 de nuestra Carta Magna.

Lo anterior, no es obstáculo para continuar con el estudio de sus argumentos, pues el quejoso se refirió a la garantía de seguridad jurídica independientemente del equívoco en cuanto a la cita del precepto constitucional.

Para estar en aptitud de responder el argumento expuesto se considera necesario transcribir el contenido del artículo 337, fracción V, de la Ley de Concursos Mercantiles, que al efecto establece:

"Artículo 337.- El Instituto podrá determinar la cancelación del registro de visitadores, conciliadores o síndicos, cuando:
V. Rehúsen el desempeño de las funciones que le sean asignadas en términos de esta Ley en algún concurso mercantil al que hayan sido asignados sin que medie causa suficiente a juicio del Instituto, o ...".

El numeral antes transcrito, establece tal y como lo considera el quejoso que corresponderá al Instituto de Concursos Mercantiles calificar la suficiencia de la causa por la cual los visitadores, conciliadores o síndicos rehúsen el desempeño de sus funciones que le sean asignadas en términos de esta Ley en algún concurso mercantil al que hayan sido asignados.

Ahora bien, contrario a lo manifestado por el quejoso, esta atribución no es ilimitada, pues este diverso artículo no se debe analizar de manera aislada sino en relación a los diversos preceptos contenidos en la Ley de Concursos Mercantiles.

Al respecto, debemos atender el contenido de los numerales 328, 329, 330 y 331 de la Ley de Concursos Mercantiles, que establecen:
"Artículo 328.- (SE TRANSCRIBE)
Artículo 329.- (SE TRANSCRIBE)
Artículo 330.- En el evento de que iniciado el procedimiento se diera un impedimento superveniente, el visitador, conciliador o

La incompatibilidad a que se refiere la fracción VI, será de libre apreciación judicial.

Página 12 de 108

Scanned with CamScanner

**IFECOM**
Concursos Mercantiles

362

*síndico deberá hacerlo del conocimiento inmediato del Instituto, en caso contrario, le serán aplicables las sanciones jurídicas a que se refiere el artículo anterior.*

*En todo caso el visitador, conciliador o síndico que se ubique en el supuesto previsto en el párrafo anterior, deberá permanecer en el ejercicio de sus funciones hasta en tanto se designa, en su caso, a quien deba sustituirlo, debiendo hacer entrega de la información y documentos a los que haya tenido acceso y de los bienes del Comerciante que haya tenido en su poder con motivo de sus funciones.*

*Artículo 331.- El visitador, conciliador y síndico sólo podrán excusarse de su designación cuando exista impedimento legal o medie causa suficiente a juicio del Instituto quien deberá resolver de inmediato a fin de evitar daño al procedimiento concursal."*

De la lectura de los artículos transcritos se advierte que el artículo 328 de la ley en cuestión establece las causas por las cuales se encuentran impedidos para actuar en algún concurso mercantil, los visitadores, conciliadores o síndicos.

Por su parte, el artículo 329 impone la obligación a los visitadores, conciliadores o síndicos, que consideren se encuentren inmersos en una causa de impedimento, plantear la excusa respectiva ante el Instituto Federal de Concursos Mercantiles. Además, dicho precepto también contempla la posibilidad de que sea el Juez de oficio, o bien el Comerciante o cualquier acreedor o interventor por conducto del Juez, quienes puedan solicitar al Instituto la sustitución en el cargo de visitadores, conciliadores o síndicos, desde el momento en que tengan conocimiento de la causa de impedimento.

Por último, el artículo 331 de la Ley de Concursos Mercantiles establece que el visitador, conciliador y síndico sólo podrán excusarse de su designación cuando exista impedimento legal o medie causa suficiente a juicio del Instituto, quien deberá resolver de inmediato a fin de evitar daño al procedimiento concursal.

Este precepto no sólo establece que son dos las causas por las cuales el visitador, conciliador y síndico podrán plantear la excusa para el conocimiento del asunto, sino a saber por causa de impedimento o causa suficiente a juicio del Instituto, sino también <u>la obligación del Instituto de calificar de inmediato la excusa propuesta.</u>

Ahora bien, se deben entender por causa suficiente para efectos del artículo 331 de la Ley de Concursos Mercantiles, todas aquellas situaciones no previstas expresamente como causa de impedimento, pero que podrán llevar a crear convicción en el Instituto sobre la imposibilidad que tiene quien planteó la excusa para desempeñarse como visitador, conciliador o síndico, por ejemplo, enfermedad, accidente, etc.

Recapitulando, se debe decir que de la lectura de los preceptos transcritos se advierte que existen dos formas por las cuales un visitador, conciliador o síndico se puede abstener de realizar la función para la cual fue designado, estas son:

1) Que el Instituto califique de legal la excusa por él planteada o,
2) Que a petición del Juez, ya sea de oficio o a solicitud del comerciante o cualquier acreedor o interventor el Instituto determine la sustitución en el cargo. ..."

Ahora, en esa tesitura, es claro que el precepto impugnado de inconstitucional al establecer que el Instituto podrá determinar la cancelación del registro de visitadores, conciliadores o síndicos, cuando se rehúsen al desempeño de las funciones que le sean asignadas en términos de esta Ley en algún concurso mercantil al que hayan sido asignados sin que medie causa suficiente a juicio del instituto, no deja en estado de inseguridad jurídica a quien se le va a aplicar la sanción, pues en realidad, el numeral impugnado se debe interpretar en el sentido de que sólo son causa suficientes para abstenerse de realizar su función <u>aquellas que hayan sido decretadas previamente por el Instituto</u>, ya sea por haberse calificado de legal el impedimento planteado por quien fue designado para desempeñar el cargo, o a solicitud del Juez que se haya sustituido de su encargo.

Por tanto, contrario a lo sostenido por el quejoso, el artículo impugnado no es violatorio de la garantía de seguridad jurídica, pues el artículo no deja al arbitrio

Página 13 de 106

Scanned with CamScanner





PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

*del Instituto de Concursos Mercantiles las causas suficientes por las cuales no se puede determinar la cancelación del registro de visitador, conciliador o síndico, cuando se hayan rehúsado al desempeño de las funciones que le hayan sido asignadas en algún concurso mercantil.*

*Pues el artículo 337, fracción V, de la ley de Concursos Mercantiles, debe entenderse en el sentido de que se aplicará la sanción de cancelación de registro, cuando entre otras causas, se rehúsen al desempeño de funciones que le sean asignadas en términos de la ley en algún concurso mercantil a que haya sido asignado, sin que el Instituto haya calificado de legal la excusa planteada o por petición del Juez lo haya substituido en su encargo.*

*Por tanto, la frase "sin que medie causa suficiente a juicio del Instituto" contenida en el precepto reclamado, debe entenderse en el sentido de que <u>la causa suficiente o justificada a juicio del Instituto, es que este último declare fundada la excusa planteada o la solicitud del Juez de substitución de la persona que haya sido nombrada para realizar las funciones de visitador, conciliador o síndico....</u>"*

(Énfasis añadido)

De lo recién transcrito puede observarse que, al interpretar el artículo 337 de la Ley de Concursos Mercantiles, en correlación con los demás preceptos del mismo ordenamiento, **el Alto Tribunal concluyó que el Instituto Federal de Especialistas de Concursos Mercantiles <u>es quien debe pronunciarse sobre la causa de impedimento del especialista</u>.**

Al efecto, como se puede observar, la Primera Sala de la Suprema Corte de Justicia de la Nación consideró que de la lectura de los preceptos transcritos 328 a 331 y 337 de la Ley de Concursos Mercantiles, se advierte que existen dos formas por las cuales un visitador, conciliador o síndico se puede abstener de realizar la función para la cual fue designado:

1)    Que el Instituto califique de legal la excusa por él planteada; o,

2)    Que a petición del Juez, ya sea de oficio o a solicitud del comerciante o cualquier acreedor o interventor el Instituto determine la sustitución en el cargo.

En esa tesitura, el Máximo Tribunal de la Nación concluyó que, la interpretación de los preceptos en comento, entre ellos los artículo 328 y 329 de la Ley de Concursos Mercantiles, **sólo son causas suficientes para que los especialistas se abstengan de realizar su función, <u>aquellas que hayan sido decretadas previamente por el Instituto</u>,** ya sea por haberse calificado de legal el impedimento planteado por quien fue designado para desempeñar el cargo, o a solicitud del Juez que se haya substituido de su encargo.

Scanned with CamScanner

**IFECOM**

Concursos Mercantiles

363

En consecuencia, la Suprema Corte de Justicia de la Nación resolvió que la fracción V, del artículo 337 de la Ley impugnada, no viola la garantía de seguridad jurídica; aunado a que la frase *"sin que medie causa suficiente a juicio del Instituto"* contenida en el precepto reclamado, *"debe entenderse en el sentido de que la causa suficiente o justificada* __a juicio del Instituto__, __es que este último__ __declare fundada la excusa planteada o la solicitud del Juez de__ __substitución__ *de la persona que haya sido nombrada para realizar las funciones de visitador, conciliador o síndico."*

En este orden de ideas, según consideró la Suprema Corte de Justicia de la Nación, este Instituto tiene competencia para declarar la excusa o la sustitución del especialista, en los términos de los artículos que el propio Tribunal interpretó.

Consecuentemente, ante lo infundado de la incompetencia planteada por el especialista, procede continuar con el análisis del asunto.

QUINTA: (*Quiebra y obligaciones del síndico*). La declaración de estado de quiebra suspende la capacidad de ejercicio del Comerciante sobre los bienes y derechos que integran la Masa, salvo que esta suspensión se haya decretado con anterioridad; por lo se debe ordenar al Comerciante, sus administradores, gerentes y dependientes de entregar al síndico la posesión y administración de los bienes y derechos que integran la Masa,[4] con excepción de los inalienables, inembargables e imprescriptibles.

Asimismo, se debe ordenar a las personas que tengan en su posesión bienes del Comerciante (*salvo los que estén afectos a ejecución de una sentencia ejecutoria para el cumplimiento de obligaciones anteriores al concurso mercantil*), que los entreguen al síndico.

Tiene como consecuencia la prohibición a los deudores del Comerciante de pagarle o entregarle bienes sin autorización del síndico, con apercibimiento de doble pago en caso de desobediencia.

Así también, en la sentencia que declare el estado de quiebra se debe ordenar al Instituto para que ratifique al conciliador como síndico, en un plazo de cinco días,

---

[4] Para Rivera el debate sobre la naturaleza jurídica es irrelevante y destaca que el desapoderamiento no implica la privación de la propiedad; que la pérdida de la posesión de los bienes se da mediante la incautación; el síndico tendrá los bienes bajo su poder para administrarlos y participar de los actos de conservación; y que el fallido no es un incapaz sino que pierde la disponibilidad jurídica y material de su patrimonio, poderes que se transfieren a los órganos de la quiebra.

Scanned with CamScanner





**PODER JUDICIAL DE LA FEDERACIÓN**
CONSEJO DE LA JUDICATURA FEDERAL

o en caso contrario designe síndico; entre tanto, quien se encuentre a cargo de la administración de la empresa del Comerciante tendrá las obligaciones de los depositarios respecto de los bienes y derechos que integran la Masa.

De igual forma, la sentencia de quiebra deberá contener, además de las menciones a que se refiere este artículo, las señaladas en las fracciones I, II y XV del artículo 43 de la Ley.

Conforme al procedimiento previsto por la Ley de Concursos Mercantiles (*artículos 167 a 175*), al momento de declararse la quiebra el juez ordenará al Instituto que, en un plazo de cinco días ratifique al conciliador como síndico o, en caso contrario y de conformidad con las disposiciones generales que al efecto emita, lo designe, salvo que ya se esté en alguna de las situaciones previstas en el artículo 174.

Al día siguiente de la designación del síndico, el Instituto lo hará del conocimiento del juez. El síndico deberá comunicar al juez, dentro de los cinco días siguientes a su designación, el nombre de las personas de las que se auxiliará para el desempeño de sus funciones, sin perjuicio de que desde su designación inicie inmediatamente su encargo.

El síndico deberá inscribir la sentencia de quiebra y publicar un extracto de la misma en términos de lo previsto en el artículo 45 de este ordenamiento.

El síndico deberá hacer del conocimiento de los acreedores su nombramiento y señalar un domicilio, dentro de la jurisdicción del juez que conozca del concurso mercantil, para el cumplimiento de las obligaciones que esta Ley le impone, dentro de los tres días siguientes a aquel en que se le dé a conocer su designación.

En su caso, el conciliador prestará al síndico todo el apoyo necesario para que tome posesión de su encargo, y le entregará toda la información sobre el Comerciante que haya obtenido en el ejercicio de sus funciones y, en su caso los bienes del Comerciante que haya administrado.

El conciliador deberá proporcionar al síndico un listado actualizado de todas las acciones promovidas y los juicios seguidos por el Comerciante, y las promovidas y los seguidos contra él, a que hace referencia el artículo 84 de la Ley.

**Scanned with CamScanner**



**IFECOM**
Concursos Mercantiles

384

El síndico designado en términos de lo ya mencionado podrá ser sustituido cuando el Comerciante y los Acreedores Reconocidos que representen al menos la mitad del monto total reconocido, soliciten al Instituto por conducto del juez, la sustitución del síndico por aquel que ellos propongan en forma razonada de entre los registrados ante el Instituto; o cuando el Comerciante y un grupo de Acreedores Reconocidos que representen al menos la mitad del monto total reconocido designen de común acuerdo a persona física o moral que no figure en el registro del Instituto y que deseen que funja como síndico, en cuyo caso deberán convenir con él sus honorarios, sin que los acreedores subordinados a los que se refiere la fracción II del artículo 222 Bis, incluyendo a las personas a que se refieren los artículos 15, fracción I, y 117, fracción II, no participarán en la votación antes mencionada.

En tal supuesto, el Juez lo hará del conocimiento del Instituto al día siguiente quedando sin efecto la designación hecha por el Instituto. El síndico así designado adquirirá todos los derechos y las obligaciones que esta Ley atribuye a los síndicos.

En caso de sustitución del síndico, el sustituido deberá observar lo dispuesto para el conciliador en el artículo 173 de la Ley de Concursos Mercantiles.

**Sexta** (*Interventores y sus facultades –legitimación–*). En relación a los interventores, los artículos 62 a 64 de la Ley de Concursos Mercantiles establecen que representarán los intereses de los acreedores y tendrán a su cargo la vigilancia de la actuación del conciliador y del síndico así como de los actos realizados por el Comerciante en la administración de su empresa.

Cualquier acreedor o grupo de acreedores que representen por lo menos el diez por ciento del monto de los créditos a cargo del Comerciante, de conformidad con la lista provisional de créditos; por lo menos el diez por ciento del pasivo a cargo del Comerciante conforme a la lista definitiva de reconocimiento de créditos, o bien, conforme a la sentencia de reconocimiento, graduación y prelación de créditos, tendrán derecho a solicitar al juez el nombramiento de un interventor, cuyos honorarios serán a costa de quien o quienes lo soliciten. Para ser interventor no se requiere ser acreedor, bastará con ser persona física o jurídica con capacidad legal.

El acreedor o grupo de acreedores deberán dirigir sus solicitudes al juez a efecto de que éste haga el nombramiento correspondiente de plano, sin dar vista a las partes

**Scanned with CamScanner**





**IFECOM**

*Concursos Merca...*

PODER JUDICIAL DE LA FEDERACIÓN

y dentro del término de tres días siguientes a la presentación de la solicitud. Los interventores podrán ser sustituidos o removidos por quienes los hayan designado, cumpliendo con lo dispuesto en este párrafo.

Los interventores tendrán facultades para gestionar la notificación y publicación de la sentencia de concurso mercantil; solicitar directamente al Comerciante, al conciliador o al síndico el examen físico de algún libro, o documento, así como cualquier otro medio de almacenamiento de datos del Comerciante sujeto a concurso mercantil, respecto de las cuestiones que a su juicio puedan afectar los intereses de los acreedores, pudiendo solicitar copia a su costa de la documentación soporte y materia del examen, misma que deberá ser tratada como confidencial; solicitar directamente al Comerciante, al conciliador o al síndico información por escrito sobre las cuestiones relativas a la administración de la Masa y de la empresa, que a su juicio puedan afectar los intereses de los acreedores, así como los informes que se mencionan en el artículo 59 de la Ley, pudiendo solicitar copia a su costa de la documentación soporte y materia de la consulta, misma que deberá ser tratada como confidencial; intervenir como interlocutor de los acreedores que lo hayan designado y de otros acreedores que así lo soliciten, frente al Comerciante, conciliador y síndico, y las demás que la Ley de la Materia establece.

Conforme a lo anterior, se tiene por acreditada la legitimación del Interventor, atento a que el Juez del Concurso Mercantil le reconoció dicho carácter, lo que reiteró en el oficio con que remitió el escrito respectivo.

SÉPTIMA (*Casos en que los especialistas de concursos mercantiles no podrán actuar en el procedimiento de concurso mercantil – impedimento o incompatibilidad–*). Conforme al artículo 328 de le Ley de Concursos Mercantiles, no podrán actuar como visitadores, conciliadores o síndicos en el procedimiento de concurso mercantil de que se trate, quien sea cónyuge, concubina o concubinario o pariente dentro del cuarto grado por consanguinidad o segundo por afinidad, del Comerciante sujeto a concurso mercantil, de alguno de sus acreedores o del juez ante el cual se desarrolle el procedimiento; esté en la misma situación a respecto de los miembros de los órganos de administración, cuando el Comerciante sea una persona moral y, en su caso, de los socios ilimitadamente responsables; sea abogado, apoderado o persona autorizada, del Comerciante o de cualquiera de sus acreedores, en algún juicio pendiente; mantenga o haya mantenido durante los seis meses inmediatos

Página 18 de 100

**Scanned with CamScanner**

**IFECOM**
Concursos Mercantiles

365

anteriores a su designación, relación laboral con el Comerciante o alguno de los acreedores, o prestarle o haberle prestado durante el mismo periodo, servicios profesionales independientes siempre que éstos impliquen subordinación; sea socio, arrendador o inquilino del Comerciante o alguno de sus acreedores, en el proceso al cual se le designe, o tenga interés directo o indirecto en el concurso mercantil o ser amigo cercano o enemigo manifiesto del Comerciante o de alguno de sus acreedores, cuya incompatibilidad será de libre apreciación judicial.

Así también, el artículo 330 de la Ley de Concursos Mercantiles prevé el supuesto en que una vez iniciado el procedimiento se diera un impedimento superveniente, en cuyo caso, el visitador, conciliador o síndico deberá hacerlo del conocimiento inmediato del Instituto; o de lo contrario, le serán aplicables las sanciones jurídicas que la Ley prevé.

En todo caso el visitador, conciliador o síndico que se ubique en el supuesto de impedimento superveniente, deberá permanecer en el ejercicio de sus funciones hasta en tanto se designa, en su caso, a quien deba sustituirlo, debiendo hacer entrega de la información y documentos a los que haya tenido acceso y de los bienes del Comerciante que haya tenido en su poder con motivo de sus funciones.

Finalmente, conforme al artículo 331 del mismo ordenamiento, el visitador, conciliador y síndico sólo podrán excusarse de su designación cuando exista impedimento legal o medie causa suficiente a juicio del Instituto quien deberá resolver de inmediato a fin de evitar daño al procedimiento concursal.

Los preceptos referidos establecen las causas por las que los visitadores, conciliadores o síndicos, se encuentran impedidos para actuar en algún concurso mercantil. De tal forma, que es obligatorio para quien sea designado para ejercer alguna de esas funciones, que consideren se encuentren en alguna de esas causas, plantear la excusa respectiva; sin perjuicio de que sea el Juez de oficio, o bien el Comerciante o cualquier acreedor o interventor por conducto del Juez, quienes puedan solicitar al Instituto la sustitución en el cargo de visitadores, conciliadores o síndicos, desde el momento en que tengan conocimiento de la causa de impedimento.

Al respecto, es necesario distinguir entre las causas de impedimento, por alguna de las que la Ley establece a efecto de evitar cualquier interés, directo o indirecto (y por ello, un *conflicto de intereses*) en relación con el concurso de que se trate, de

Scanned with CamScanner

... 



**IFECOM**
Concursos Mercantiles

aquellas causas que atañen al desempeño de las funciones del síndico derivadas de la Ley.

Sobre este aspecto, es importante mencionar que el artículo 60 de la Ley de Concursos Mercantiles dispone también que el Comerciante, el Ministerio Público demandante, los interventores y los propios acreedores, de manera individual, podrán denunciar ante el juez los actos u omisiones del visitador, del conciliador y del síndico que no se apeguen a lo dispuesto por esta Ley; en cuyo caso el juez dictará las medidas de apremio que estime convenientes y, en su caso, podrá solicitar al Instituto la sustitución del visitador, conciliador o síndico a fin de evitar daños a la Masa.

Además, cuando por sentencia firme se condene a algún especialista al pago de daños y perjuicios, el juez deberá enviar copia de la misma al Instituto para que pueda determinar la cancelación del registro del especialista, cuando haya sido condenado por sentencia ejecutoriada al pago de daños y perjuicios derivados de algún concurso mercantil al que hayan sido asignados (*artículo 337, fracción VI de la Ley Concursal*).

**Conforme a lo expuesto, puede afirmarse que en esta instancia no pueden ser materia de análisis las imputaciones del interventor que atañen al incumplimiento de las actividades y obligaciones del Síndico en términos de ley** (*reconocimiento de créditos, toma de posesión, control de la contabilidad, pago a acreedores, representación legal, y demás semejantes que prevé la Ley de la Materia*). **Sino únicamente las que importan para efectos del impedimento que hace valer.**

En consecuencia, el análisis de las causas de impedimento, según se dijo, debe centrarse en la actualización de alguno de los supuestos del artículo 328 ya referido.

Así también, es importante destacar que, en términos generales, los distintos supuestos del artículo recién mencionado sobre los impedimentos del Especialista pueden ser analizados y acreditados mediante la aportación y valoración de pruebas directas (por ejemplo, actas del registro civil en los casos que se refieren al parentesco); sin embargo, es de reconocer igualmente que no están exentos de ser demostrados a través de pruebas indirectas (como *testimoniales*).

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

360

Finalmente, en apego a los derechos fundamentales, particularmente el de legalidad, la demostración de los extremos que la ley establece no puede ser arbitraria, sino que está sujeta a los límites que el propio ordenamiento señala. De ahí que el estándar probatorio resulta más intenso en algunos casos que en otros.

OCTAVA *(Valores de los Especialistas de Concursos Mercantiles).* La Suprema Corte de Justicia de la Nación emitió el Código de Ética del Poder Judicial de la Federación, en el que reconoció las innovadoras transformaciones que vive cada día la sociedad mexicana, es natural que los juzgadores en su interrelación cotidiana se involucren en esta dinámica, como acontece en otros sectores, dando ocasión a la generación de ligas de interés que podrían afectar su libre conciencia y papel esencial en la impartición de justicia, por lo que resulta de gran utilidad que existan referentes que identifiquen los valores y principios relativos al ejercicio de la función jurisdiccional.[5]

En sintonía con lo anterior, dado que este Instituto forma parte del Poder Judicial de la Federación, se estima que algunos de los valores del especialista de concursos mercantiles exigibles en su actuación son:

**Imparcialidad.** Un especialista es un facilitador del proceso en apoyo al órgano jurisdiccional, por lo que no puede tomar partido a favor de ninguna de las partes involucradas en el concurso, ni actuar con sujeción a alguna de las partes.

**Profesionalismo.** El especialista actúa aplicando su experiencia, conocimientos, habilidades y actitudes como experto que es, en la materia concursal; se mantiene actualizado en los avances que se dan en el mundo concursal. **Excelencia.** El especialista hace las cosas buscando la perfección en desempeño, manejo del tiempo y resultados.

**Confidencialidad.** El especialista hace llegar la información relevante para el proceso concursal a quienes tienen derecho a ella y conserva, respecto a todas las demás, el respeto de sigilo que merecen los asuntos concursales.



**Scanned with CamScanner**





**Honestidad.** El especialista se distingue por la rectitud en su conducta, obteniendo para sí, y para otros, tan sólo el provecho que la propia ley le reconoce por su actividad.[6]

Específicamente, al igual que el Máximo Tribunal de la Nación, en relación con el Código de ética mencionado arriba, los valores del especialista aspiran al reconocimiento de que la ética en el ejercicio de sus actividades y se instituyó como un documento no sólo informativo sino formativo, a tal punto que su práctica reiterada se convierta en la pauta cotidiana de conducta del especialista, que dé contenido, claridad y sistematización a tales postulados.

La aspiración de tales valores no obedece a que los especialistas desconozcan o sean ajenos a estos principios, sino a la necesidad de plasmar en un documento, de manera sencilla, las directrices que constituyen un referente institucional para incentivar y facilitar la reflexión crítica de cada especialista sobre su conducta

**NOVENA. (Estudio).** En primer lugar, se analizan las causas de impedimento que el interventor afirma que las acciones del especialista lo ubican en el supuesto de ser abogado de las partes y, por lo tanto, está impedido para el desempeño de sus funciones.

**A) Impedimento fundado en que el especialista es abogado de las partes que refiere el interventor.**

Al respecto, el Interventor hace valer que ha encontrado evidencia de que el síndico ha dejado de ser neutral e imparcial ya que, posterior a su nombramiento han surgido conflictos de interés que causan afectaciones a la masa concursal.

Lo anterior, porque ha favorecido a su propia firma de abogados, a determinados acreedores no reconocidos, a anteriores administradores y accionistas de las comerciantes, en perjuicio de la masa concursal y de los acreedores reconocidos.

[6] Consultables en la página:
https://www.ifecom.cjf.gob.mx/resources/PDF/codigoValores/valoresEspecialista11.pdf

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

367

Señala que el síndico está actuando como abogado de la Comerciante, con un pretendido acuerdo de honorarios a cargo de la Masa Concursal que nada tiene que ver con el honorario dispuesto en las Reglas Generales de la Ley de Concursos Mercantiles expedidas por el Instituto, que lo coloca en una situación e interés directo o indirecto en el concurso mercantil y de sociedad respecto del comerciante.

Como evidencia de ello, el Interventor afirma que ante la negativa del despacho Guerra González y Asociados, S.C., el Síndico propuso de continuar con la representación de la comerciante en los diferentes procedimientos legales en que es parte, a través de la firma de abogados Solórzano, Carvajal, González y Pérez Correa, S.C. ("Solcargo"), de la que es socio el síndico, la cual aceptaba hacerse cargo de inmediato de los diversos procedimientos judiciales con un porcentaje del 65% inferior a lo ofertado al despacho Guerra González y Asociados.

El Interventor asevera que los hechos narrados se acreditan con la copia certificada de la carta de 27 de junio de 2019, que el Síndico dirigió al representante legal de Nordic Trustee AS., así como de la página de internet cuya impresión acompañó, consultable en la dirección "https://solcargo.mx/Perez.html" en la cual se advierte que el síndico es socio de la ya referida firma de abogados "Solcargo".

Conforme a lo anterior, el denunciante del impedimento del especialista afirma que hay una contradicción entre las funciones del síndico y de un abogado. El primero busca liquidar o vender los activos lo más rápido y mejor posible en beneficio de los acreedores. El abogado de las comerciantes busca defender un derecho cuestionando, durante el tiempo que sea necesario, en beneficio de las comerciantes.

Scanned with CamScanner





**IFECOM**
*Concursos Mercantiles*

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

Para sustentar lo anterior, el promovente aportó, entre otros elementos, la copia certificada del documento que se inserta enseguida.

Ciudad de México, 2...

Lic. Vicente Bañuelos Rim
Representante legal de Nordic Trustee AS.
*Presente.*

**Asunto:** Se informa de la contratación de Ase...
parte del despacho Solórzano, Carvajal, González y Pérez
Correa, S.C.

Estimado Lic. Bañuelos:

El suscrito en mi carácter de Síndico designado por la Junta Directiva del Instituto Federal de Especialistas de Concursos Mercantiles (IFECOM) en el concurso mercantil de las comerciantes PERFORADORA ORO NEGRO, S. DE R.L. DE C.V. ("Perforadora") e INTEGRADORA DE SERVICIOS PETROLEROS ORO NEGRO, S.A.P.I. DE C.V. ("Integradora") (en su conjunto las "Comerciantes" o "Quebradas"), tramitado ante el 11. Juzgado Segundo de Distrito en Materia Civil de la Ciudad de México (el "Juez Concursal"), expediente 345/2017 (el "Concurso"), le informo lo siguiente:

Los integrantes del despacho *Guerra González y Asociados, S.C.* ("Guerra SC"), quien hasta ahora había patrocinado a las Comerciantes tanto en el Concurso como en los procedimientos derivados de, o relacionados con, el mismo, me han informado, a través de Jesús Ángel Guerra Méndez, que han decidido no continuar prestando sus servicios a las Comerciantes durante la fase de quiebra, en atención a que no aceptaron la oferta de servicios que el suscrito les hice llegar (la cual a mi juicio era atractiva y competitiva en términos de mercado).

Al respecto, le informo que a la sindicatura no le ha sido posible hasta ahora encontrar algún despacho de abogados que (i) no tenga un existente o potencial conflicto de interés en este asunto, y (ii) al mismo tiempo, cuente con la estructura, experiencia y capacidad necesaria para asumir de inmediato la representación de las Comerciantes en la totalidad de los asuntos judiciales que están en curso, y demás acciones que deban de interponerse en defensa de la masa concursal.

Por lo anterior, y tomando en consideración la gravedad que implica desatender los asuntos judiciales en que las Comerciantes son parte, me dirijo a ustedes para averiguar si tendrían alguna objeción para que el Síndico contrate al equipo de *litigio* del despacho *Solórzano, Carvajal, González y Pérez Castro, S.C.* ("Solcargo"), del cual soy socio, para que a la brevedad dicho equipo se encargue de atender los procedimientos judiciales en los que las Quebradas son y puedan llegar a ser parte.

Considero conveniente la ruta que se indica en esta carta debido a que dichos litigantes tienen conocimiento de los procedimientos judiciales en los que las Quebradas son parte, por lo que tendrían la capacidad inmediata de tomar dichos asuntos, sin la necesidad de hacer una larga y tardada revisión del gran universo de expedientes.

Igualmente, destaco que es una práctica usual en los Estados Unidos que el liquidador o *Trustee* (normalmente un abogado) asigne la defensa en los procedimientos judiciales de la empresa en concurso a la firma de abogados a la que pertenece dicha *litigador*, esta práctica que ha sido avalada, por ejemplo, en los siguientes precedentes: *In re Tetravesti*, 317 B.R. 51 (E.D.N.Y.2004), *In re Caren KOHL*, 421 B.R. 115 (S.D.N.Y.2009), *In re JMW AUTOSALES*, 494 B.R. 877 (S.D.Texas.2013), *In re Erik Stephen BROUS a/k/a Erik Brous*, 370 B.R. 563, (S.D.N.Y.2007).

Página 1 de 2

**Scanned with CamScanner**



**Concursos Mercantiles** 368

*Finalmente, destaco que el área del litigio del Solcargo acepta tomar la repres... procedimientos referidos bajo condiciones más favorables para la masa a las ofre... Guerra S.C.: en concreto, Solcargo aceptaría recibir un máximo del 66% de lo ofrecido... Guerra SC. En ese tenor, mucho le agradecería responder a esta carta lo más pronto posib... poder estar en condiciones de contar con litigantes que atiendan los procedimientos en los cuales las Comerciantes son parte, en beneficio de la masa concursal.*

Sin más por el momento, quedo a sus órdenes.
Atentamente.

FERNANDO PÉREZ CORREA CAMARENA
Síndico en el concurso mercantil de
PERFORADORA ORO NEGRO, S. DE R.L. DE C.V. e INTEGRADORA DE SERVICIOS PETROLEROS
ORO NEGRO, S.A.P.I. DE C.V.

Al respecto, se deben hacer las siguientes consideraciones.

**MARCO SOBRE LA IMPOSIBILIDAD DEL ESPECIALISTA PARA AUTO-CONTRATAR LOS SERVICIOS DEL DESPACHO DE ABOGADOS DEL QUE ES SOCIO O TITULAR.**

Importa agregar a todo lo anterior, las razones que se insertan a continuación, a efecto de enfatizar que el interés a que se refiere la causa de improcedencia en trata está orientada a evitar una inclinación y certeza en cuanto a la serenidad de ánimo del síndico para no favorecer o perjudicar con su actuación los valores que le han sido encomendados.

**Ética de la empresa.**

En el ámbito de las relaciones entre ética, economía y empresa,[7] existen expresiones estrechamente conectadas entre sí: ética económica, ética empresarial y ética de los negocios. Ésta última se centra en la concepción de la empresa como una organización económica y como una institución social, es decir, como un tipo de organización de que desarrolla una peculiar actividad, en la que resulta fundamental la función directiva y el proceso de toma de decisiones.

7 ... ALCOBERRO, Ramón. et al. *Ética, economía y empresa: La dimensión moral de la economía. 2007.*

Página 25 de 106

**Scanned with CamScanner**





IFECOM
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

La ética de los negocios es un modo de resolver moralmente los conflictos de acción. Concierne tanto a las relaciones externas de las empresas o de los profesionales independientes con sus clientes proveedores con los poderes públicos, etcétera, como a las relaciones internas entre personas en la empresa incluyendo a sus directivos.

En ella se trata de destacar los valores positivos que permiten optar por un modelo de cooperación frente a un modelo de conflicto, donde, como se dijo, cobran importancia los códigos de conducta o de ética en las empresas y todo tipo de instituciones y actividades. (*hospitales, administración pública, iniciativa privada, prensa, colegios entre otros*)

La ética empresarial, en el contexto de una ética de las instituciones (*para autores como García Echeverría*[8]) la ética empresarial debe contar con elementos que indiquen un sistema de valores con potenciales de convertirse en una cultura corporativa para identificar valores de lo ético (*como una exigencia de los sistemas abiertos*). El hombre necesita normas de comportamiento que descansen en los valores de la empresa y tales normas componen una cultura empresarial.[9]

Estos valores no son ajenos al derecho, pues son intrínsecos de la persona para el respeto de su dignidad, donde no se vea a las personas como un medio para conseguir un fin.

## Interés y conflicto de intereses.

En esta resolución se asumió la literalidad del concepto interés para efectos de la causa de impedimento de que se trata, de manera amplia, en su acepción de «*inclinación del ánimo hacia un objeto, una persona o una narración*»

En este sentido, se puede apreciar que la materia de discusión versa, claramente, sobre la adopción de conductas y actitudes públicas y privadas relacionadas con el objeto del concurso mercantil y las partes.

Así, el interés a que se refiere la norma es aquél que razonablemente hacer pensar que el especialista a quien se imputa el impedimento, aun involuntaria o

[a] En este sentido: ECHEVARRÍA, Santiago García. Introducción a la economía de la empresa. Ediciones Díaz de Santos, 1994.
[9] CORTINA, Adela; CONILL, Jesús. Ética de la empresa. Madrid: Trotta, 1996.

Scanned with CamScanner



IFECOM
Concursos Mercantiles

369

inconscientemente, muestra inclinación de ánimo a favor de una de las partes en conflicto, la concursada.

Ello, porque las conductas imputadas, concretamente la de promover la contratación del despacho del que es socio o titular, **y pedir anuencia para ello a uno de los acreedores,** lo ubica en una posición en la que puede carecer de la necesaria serenidad de ánimo y neutralidad exigible, y al objeto de evitar la persistente sospecha de actuación subjetiva o parcial y despejar cualquier duda sobre la objetividad e imparcialidad que debe imperar en dicho procedimiento.

En este sentido, lo que pretende la norma es prevenir el riesgo en que se ubique el especialista cuando se vea amenazada su imparcialidad; lo cual robustece al considerar que, si esa hubiera sido la intención del legislador, entonces la norma habría indicado que el impedimento se actualice por aquél que resulte beneficiado económicamente por la relación que guarde con las partes o terceros con los que tenga vínculos (*de parentesco, amistad o enemistad*). Es decir, que la norma guarda coherencia y congruencia porque, al igual que las demás causas, no se indica que el especialista deba obtener un beneficio, sino que basta la sola existencia de ese riesgo para que el impedimento se materialice, debiendo agregar que, aun cuando dicha causa sea de libre apreciación de quien deba calificarla, en el caso existen bases objetivas por las manifestaciones del síndico en el sentido de que sí llevó a cabo la promoción del despacho jurídico con el que tiene lazos de sociedad.

Los estudiosos del tema (*ya desde la década de los ochentas, del siglo pasado, basados en un estudio de The Conference Board*) perfilaron algunos de los aspectos que constituyen problemas éticos para los gerentes: conflictos de interés de los empleados, regalos inapropiados, acoso sexual, pagos no autorizados, acción positiva (*también conocida como discriminación positiva*), privacidad o intimidad de los empleados y cuestiones ambientales (*Berenbeim, 1987*).

Según los estudiosos, los temas específicos que constituían problemas éticos se centran, principalmente, en capital de aportación: sueldos ejecutivos, valor comparable, precio de los productos; derechos: proceso corporativo legal, privacidad, acoso sexual, acción positiva/igualdad de oportunidades de empleo; honestidad: conflictos de interés de los empleados, seguridad de los expedientes del personal, regalos inapropiados, pagos no autorizados a funcionarios, contenido

**Scanned with CamScanner**





IFECOM
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN

de la publicidad; ejercicio del poder corporativo: comités de acción política, prevención de riesgos en el lugar de trabajo y seguridad de los productos, cuestiones relativas con el ambiente, desinversiones, aportaciones corporativas, cierres/recortes de personal.

Es decir, los problemas éticos más comunes son el conflicto de intereses, la confidencialidad en las relaciones de la organización, la honradez, la justicia y la integridad de las actividades de comunicación de la empresa. La conducta de los directivos durante la toma de decisiones éticas refleja los principios morales con los que se rigen. Las ciencias morales, como la teología, la deontología y el relativismo, son los principios o reglas que rigen a los directivos cuando deciden qué está bien o mal.

En la legislación es posible identificar las normas que prevén la existencia de un conflicto de intereses, reconocidos (*de manera palmaria*), cuando surja una oposición entre un interés superior y un interés personal.

Así, para identificar si hay o no un conflicto de intereses, será preciso verificar la existencia de esa contraposición de intereses, y para ello, es indispensable determinar con claridad cuándo se está en presencia de uno u otro interés; y, en su caso, cuáles son los distintos intereses que lo integran.

Finalmente, es preciso señalar que en un esquema de valores, como marco de referencia ético para la toma de decisiones, destaca la cultura organizacional.

Las empresas, como contexto social y laboral más restringido, cuentan con sistemas de valores implícitos y explícitos de características singulares, con frecuencia expresados de alguna manera en códigos de ética, conducta, responsabilidad social o conflicto de intereses. En la mayoría de estos códigos formales se ostentan las conductas esperadas de parte de empleados y directivos dentro de un alto nivel de cumplimiento de las leyes y las expectativas de los grupos de interés.

En general, a los trabajadores se les prohíbe anteponer sus propios intereses a los de la empresa, no sólo en su interacción con los distintos actores de la cadena de suministro, sino en sus relaciones interpersonales dentro y fuera de los límites de

Página 28 de 100

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

370

la organización. De hecho, los directivos exitosos son valorados a menudo por colocar como primera prioridad su trabajo y empresa, incluso sobre sus responsabilidades y obligaciones personales, familiares y con la comunidad.10

Sobre estas bases, autoridades en la materia, a nivel nacional e internacional, han coincidido en lo esencial sobre la definición del conflicto de intereses, es cuando un interés (*laboral, personal, profesional, familiar, económico, moral en negocios de la persona encargada de una responsabilidad*) pueda afectar el desempeño imparcial, objetivo de sus funciones.

### Normativa.

Como se dijo, a efecto también de ejemplificar, el sistema normativo prohíbe la actuación de ciertos agentes sobre asuntos en los que pueda estar involucrado un interés personal que lo aparte de la función para la que ha sido instituido.

Dichas normas son las siguientes:

### Código Civil Federal

"ARTÍCULO 8º.- *Los actos ejecutados contra el tenor de las leyes prohibitivas o de interés público serán nulos, excepto en los casos en que la ley ordene lo contrario.*

*ARTÍCULO 2,276.- Los magistrados, los jueces, el ministerio público, los defensores oficiales, los abogados, los procuradores y los peritos no pueden comprar los bienes que son objeto de los juicios en que intervengan. Tampoco podrán ser cesionarios de los derechos que se tengan sobre los citados bienes.*

*ARTÍCULO 2,280.- No pueden comprar los bienes de cuya venta o administración se hallen encargados:*
*I.- Los tutores y curadores;*
*II.- Los mandatarios;*
*III.- Los ejecutores testamentarios y los que fueren nombrados en caso de intestado;*
*IV.- Los interventores nombrados por el testador o por los herederos;*
*V.- Los representantes, administradores e interventores en caso de ausencia;*
*VI.- Los empleados públicos.*

*ARTÍCULO 2,281.- Los peritos y los corredores no pueden comprar los bienes en cuya venta han intervenido.*

PINEDA, Eduardo Soto; CÁRDENAS, José Antonio. Ética en las organizaciones. McGraw-Hill, 2007.

Scanned with CamScanner





IFECOM
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACION
CONSEJO DE LA JUDICATURA FEDERAL

ARTÍCULO 2,282.- Las compras hechas en contravención a lo dispuesto en este Capítulo, serán nulas, ya se hayan hecho directamente o por interpósita persona.

ARTÍCULO 2,404.- Se prohíbe a los Magistrados, a los Jueces y a cualesquiera otros empleados públicos, tomar en arrendamiento, por sí o por interpósita persona, los bienes que deban arrendarse en los negocios en que intervengan.

ARTÍCULO 2,405.- Se prohíbe a los encargados de los establecimientos públicos y a los funcionarios y empleados públicos, tomar en arrendamiento los bienes que con los expresados caracteres administren.

ARTÍCULO 2,585.- No pueden ser procuradores en juicio:
I.- Los incapacitados;
II.- Los jueces, magistrados y demás funcionarios y empleados de la administración de justicia, en ejercicio, dentro de los límites de su jurisdicción;
III.- Los empleados de la Hacienda Pública, en cualquiera causa en que puedan intervenir de oficio, dentro de los límites de sus respectivos distritos.

ARTÍCULO 2,970.- Dentro de los ocho días siguientes a la celebración de la junta en que se hubiere aprobado el convenio, los acreedores disidentes y los que no hubieren concurrido a la junta podrán oponerse a la aprobación del mismo.

ARTÍCULO 2,971.- Las únicas causas en que podrá fundarse la oposición al convenio serán:

I.- Defectos en las formas prescritas para la convocación, celebración y deliberación de la junta;

II.- Falta de personalidad o representación en alguno de los votantes, siempre que su voto decida la mayoría en número o en cantidad;

III.- Inteligencias fraudulentas entre el deudor y uno o más acreedores, o de los acreedores entre sí, para votar a favor del convenio;

IV.- Exageración fraudulenta de créditos para procurar la mayoría de cantidad;

V.- La inexactitud fraudulenta en el inventario de los bienes del deudor o en los informes de los síndicos, para facilitar la admisión de las proposiciones del deudor.

Scanned with CamScanner



**IFECOM**     371
Concursos Mercantiles

Ley Reglamentaria del Artículo 5o. Constitucional, relativo al ejercicio de las profesiones en la Ciudad de México."

*"ARTÍCULO 6°.- En caso de conflicto entre los intereses individuales de los profesionistas y los de la sociedad, la presente Ley será interpretada en favor de esta última, si no hubiere precepto expreso para resolver el conflicto. Por lo que se refiere a las profesiones que implican el ejercicio de una función pública, se sujetarán a esta Ley, y a las leyes que regulen su actividad, en lo que no se oponga a este ordenamiento.*

*ARTÍCULO 7°.- Las disposiciones de esta ley regirán en la Ciudad de México en asuntos de orden común, y en toda la República en asuntos de orden federal."*

N. DE E. A CONTINUACION SE TRANSCRIBEN LOS ARTICULOS TRANSITORIOS DE LOS DECRETOS DE REFORMAS A LA PRESENTE LEY. D.O.F. 2 DE ENERO DE 1974. PRIMERO.- El presente decreto entrará en vigor a los quince días siguientes al de la fecha de su publicación en el "Diario Oficial" de la Federación. SEGUNDO.- En tanto se expidan las leyes a que se refiere el artículo 2o. reformado, las profesiones que en sus diversas ramas necesitan título para su ejercicio son las siguientes: Actuario Arquitecto Bacteriólogo Biólogo Cirujano dentista Contador Corredor Enfermera Enfermera y partera Ingeniero Licenciado en Derecho Licenciado en Economía Marino Médico. Médico veterinario. Metalúrgico. Notario. Piloto aviador. Profesor de educación preescolar. Profesor de educación primaria. Profesor de educación secundaria. Química. Trabajador social. D.O.F. 23 DE DICIEMBRE DE 1974. ARTICULO UNICO.- El presente Decreto entrará en vigor noventa días después de su publicación en el "Diario Oficial" de la Federación. D.O.F. 22 DE DICIEMBRE DE 1993. SE TRANSCRIBEN UNICAMENTE LOS TRANSITORIOS DEL DECRETO DE REFORMAS QUE SE RELACIONAN CON LA LEY. PRIMERO.- El presente Decreto entrará en vigor el 1o. de enero de 1994. ... D.O.F. 19 DE AGOSTO DE 2010. Primero.- El presente Decreto entrará en vigor al día siguiente de su publicación en el Diario Oficial de la Federación. Segundo.- Las acciones que, en su caso, deba realizar la Secretaría de Educación Pública para dar cumplimiento a lo dispuesto por el presente Decreto, deberán cubrirse en función de los ingresos disponibles conforme a la Ley de Ingresos de la Federación y sujetarse a la disponibilidad presupuestaria que se apruebe para dichos fines en el Presupuesto de Egresos de la Federación y las disposiciones de la Ley Federal de Presupuesto y Responsabilidad Hacendaria. D.O.F. 19 DE ENERO DE 2018. [N. DE E. TRANSITORIO DEL ARTÍCULO PRIMERO DEL "DECRETO POR EL QUE SE REFORMAN DIVERSAS DISPOSICIONES DE LA LEY REGLAMENTARIA DEL ARTÍCULO 5o. CONSTITUCIONAL RELATIVO AL EJERCICIO DE LAS PROFESIONES EN EL DISTRITO FEDERAL, LA LEY DEL SISTEMA NACIONAL DE INFORMACIÓN ESTADÍSTICA Y GEOGRÁFICA, LA LEY GENERAL PARA PREVENIR Y SANCIONAR LOS DELITOS EN MATERIA DE SECUESTRO, REGLAMENTARIA DE LA FRACCIÓN XXI DEL ARTÍCULO 73 DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS, LA LEY GENERAL PARA PREVENIR, SANCIONAR Y ERRADICAR LOS DELITOS EN MATERIA DE TRATA DE PERSONAS Y PARA LA PROTECCIÓN Y ASISTENCIA A LAS VÍCTIMAS DE ESTOS DELITOS, LA LEY GENERAL EN MATERIA DE DELITOS ELECTORALES, LA LEY GENERAL DEL SISTEMA DE MEDIOS DE IMPUGNACIÓN EN MATERIA ELECTORAL, LA LEY GENERAL DE EDUCACIÓN, LA LEY GENERAL DEL SERVICIO PROFESIONAL DOCENTE, LA LEY GENERAL DE LA INFRAESTRUCTURA FÍSICA EDUCATIVA, LA LEY GENERAL DE BIBLIOTECAS, LA LEY GENERAL DE CONTABILIDAD GUBERNAMENTAL, LA LEY GENERAL DEL EQUILIBRIO ECOLÓGICO Y LA PROTECCIÓN AL AMBIENTE, LA LEY GENERAL DE DESARROLLO FORESTAL SUSTENTABLE, LA LEY GENERAL DE VIDA SILVESTRE, LA LEY GENERAL PARA LA PREVENCIÓN Y GESTIÓN INTEGRAL DE LOS RESIDUOS, LA LEY GENERAL DE CAMBIO CLIMÁTICO, LA LEY GENERAL DE PESCA Y ACUACULTURA SUSTENTABLES, LA LEY GENERAL DE CULTURA FÍSICA Y DEPORTE, LA LEY GENERAL DE SOCIEDADES COOPERATIVAS, LA LEY FEDERAL SOBRE MONUMENTOS Y ZONAS ARQUEOLÓGICOS, ARTÍSTICOS E HISTÓRICOS, LA LEY DE FOMENTO PARA LA LECTURA Y EL LIBRO, Y LA LEY FEDERAL DE ARCHIVOS, EN MATERIA DE RECONOCIMIENTO DE LA CIUDAD DE MÉXICO COMO ENTIDAD FEDERATIVA, SUSTITUCIÓN DEL NOMBRE DE DISTRITO FEDERAL Y DEFINICIÓN, EN SU CASO, DE LAS FACULTADES CONCURRENTES PARA LAS DEMARCACIONES TERRITORIALES".] Único.- El presente Decreto entrará en vigor el día siguiente de su publicación en el Diario Oficial de la Federación.



**Scanned with CamScanner**



PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL



IFECOM
Concursos Mercantiles

Ley de Concursos Mercantiles.

(ADICIONADO CON LOS ARTÍCULOS QUE LO INTEGRAN, D.O.F. 10 DE ENERO DE 2014)

TÍTULO DÉCIMO BIS

Responsabilidad de los administradores

(ADICIONADO, D.O.F. 10 DE ENERO DE 2014)
Artículo 270 Bis.- Los miembros del consejo de administración, así como los empleados relevantes del Comerciante, serán susceptibles de la responsabilidad consistente en indemnizar los daños y perjuicios ocasionados al Comerciante, cuando le hayan causado un daño patrimonial y el Comerciante se encuentre en incumplimiento generalizado en el pago de sus obligaciones a que se refieren los artículos 10, 11 y 20 Bis de esta Ley, en virtud de actualizarse alguno de los supuestos siguientes:

I. Voten en las sesiones del consejo de administración o tomen determinaciones relacionadas con el patrimonio del Comerciante, con conflicto de interés;

II. Favorezcan, a sabiendas, a un determinado accionista o grupo de accionistas del Comerciante, en detrimento o perjuicio de los demás accionistas;

III. Cuando, sin causa legítima, por virtud de su empleo, cargo o comisión, obtengan beneficios económicos para sí o los procuren en favor de terceros, incluyendo a un determinado accionista o grupo de accionistas;

IV. Generen, difundan, publiquen, proporcionen u ordenen información, a sabiendas de que es falsa;

V. Ordenen u ocasionen que se omita el registro de operaciones efectuadas por el Comerciante, así como alteren u ordenen alterar los registros para ocultar la verdadera naturaleza de las operaciones celebradas, afectando cualquier concepto de los estados financieros;

VI. Ordenen o acepten que se inscriban datos falsos en la contabilidad del Comerciante. Se presumirá, salvo prueba en contrario, que los datos incluidos en la contabilidad son falsos cuando las autoridades, en ejercicio de sus facultades, requieran información relacionada con los registros contables y el Comerciante no cuente con ella, y no se pueda acreditar la información que sustente los registros contables;

VII. Destruyan, modifiquen u ordenen que se destruyan o modifiquen, total o parcialmente, los sistemas o registros contables o la documentación que dé origen a los asientos contables del Comerciante, con anterioridad al vencimiento de los plazos legales de conservación y con el propósito de ocultar su registro o evidencia;

VIII. Alteren u ordenen que se modifiquen las cuentas activas o pasivas o las condiciones de los contratos, hacer u ordenar que se registren operaciones o gastos inexistentes, exagerar los reales o realizar intencionalmente cualquier acto

Scanned with CamScanner

## IFECOM

**Concursos Mercantiles**

372

u operación ilícita o prohibida por la ley, generando en cualquiera de dichos supuestos una deuda, quebranto o daño en el patrimonio del Comerciante, en beneficio económico propio, ya sea directamente o a través de un tercero, o de terceros, incluyendo el registro de pasivos a favor de las personas señaladas en los artículos 116 y 117 de esta Ley, o

IX. En general, realicen actos dolosos o de mala fe, o bien, ilícitos conforme a esta Ley u otras leyes.

La responsabilidad consistente en indemnizar los daños y perjuicios ocasionados con motivo de los actos, hechos u omisiones a que hacen referencia las fracciones anteriores de este artículo, será solidaria entre los culpables que hayan adoptado la decisión y será exigible como consecuencia de los daños o perjuicios ocasionados. La indemnización que corresponda deberá cubrir los daños y perjuicios causados al Comerciante y, en todo caso, se procederá a la remoción del cargo de los culpables.

El Comerciante afectado, en ningún caso, podrá pactar, ni prever en sus estatutos sociales, prestaciones, beneficios o excluyentes de responsabilidad, que limiten, liberen, sustituyan o compensen las obligaciones por la responsabilidad a que se refiere este precepto legal; únicamente podrán contratar seguros, fianzas o cauciones que cubran el monto de la indemnización por los daños y perjuicios ocasionados, salvo que se trate de actos dolosos o de mala fe, o bien ilícitos conforme a esta Ley u otras disposiciones aplicables.

Para los efectos de este artículo, se entenderá por empleados relevantes, el director general de una sociedad sujeta a esta Ley, así como las personas físicas que ocupando un empleo, cargo o comisión en ésta, con conocimiento, adopten, ordenen o ejecuten los actos, omisiones o conductas de que se trate.

(ADICIONADO, D.O.F. 10 DE ENERO DE 2014)
Artículo 270 Bis-1.- La acción de responsabilidad consistente en indemnizar los daños y perjuicios que derive de los actos, omisiones o conductas a que se refiere el artículo anterior, será exclusivamente en favor del Comerciante que se ubique en los supuestos previstos en el artículo 10 de esta Ley y, en consecuencia, de la Masa. Lo que antecede será sin perjuicio de la posible acción penal por los delitos en su caso cometidos.

La acción de responsabilidad podrá ser ejercida:

I. Por el Comerciante, y

II. Por los accionistas de la sociedad de que se trate que, en lo individual o en su conjunto, tengan la titularidad de acciones con derecho a voto, incluso limitado o restringido, o sin derecho a voto, que representen el veinticinco por ciento o más del capital social de la sociedad.

El demandante podrá transigir en juicio el monto de la indemnización por daños y perjuicios, siempre que previamente someta a aprobación del conciliador o síndico, según corresponda, los términos y condiciones del convenio judicial correspondiente. La falta de dicha formalidad será causa de nulidad relativa.

El ejercicio de las acciones a que se refiere este artículo no estará sujeto al cumplimiento de los requisitos establecidos en los artículos 161 y 163 de la Ley

**Scanned with CamScanner**





General de Sociedades Mercantiles. En todo caso, dichas acciones deberán comprender el monto total de las responsabilidades en favor del Comerciante y no únicamente el interés personal del o los demandantes.

Las acciones que tengan por objeto exigir responsabilidad en términos de este artículo, prescribirán en cinco años contados a partir del día en que se hubiere actualizado el supuesto de que se trate, de los que se refiere el artículo 270 Bis, que haya causado el daño patrimonial correspondiente.

En todo caso, las personas que a juicio del juez hayan ejercido la acción a que se refiere este precepto, con temeridad o mala fe, serán condenadas al pago de costas en términos de lo establecido en el Código de Comercio.

(ADICIONADO, D.O.F. 10 DE ENERO DE 2014)
Artículo 270 Bis-2.- Los miembros del consejo de administración y los empleados relevantes no incurrirán, individualmente o en su conjunto, en responsabilidad por los daños o perjuicios que ocasionen al Comerciante cuando le hayan causado un daño patrimonial, derivados de los actos, omisiones o conductas que ejecuten o las decisiones que adopten, cuando actuando de buena fe, se actualice cualquiera de las excluyentes de responsabilidad siguientes:

I. Den cumplimiento a los requisitos que la ley aplicable o los estatutos sociales establezcan para la aprobación de los asuntos que competa conocer al consejo de administración;

II. Tomen decisiones o voten en las sesiones del consejo de administración con base en información proporcionada por empleados relevantes, la persona moral que brinde los servicios de auditoría externa o expertos independientes, cuya capacidad y credibilidad no ofrezcan motivo de duda razonable;

III. Hayan seleccionado la alternativa más adecuada, a su leal saber y entender, o bien, el posible daño patrimonial al Comerciante no haya sido previsible, en ambos casos, con base en la información disponible al momento de la decisión, o

IV. Cumplan los acuerdos de la asamblea de accionistas, siempre y cuando éstos no sean violatorios de la ley.

TÍTULO DÉCIMO PRIMERO
Aspectos penales del concurso mercantil

Capítulo Único
De los delitos en situación de concurso mercantil

Artículo 271.- El Comerciante declarado en concurso mercantil por sentencia firme será sancionado con pena de tres a doce años de prisión por cualquier acto o conducta dolosos realizados antes o después de la declaración del concurso mercantil que cause o agrave el incumplimiento generalizado en el pago de sus obligaciones.

Se presumirá, salvo prueba en contrario, que el Comerciante ha causado o agravado dolosamente el incumplimiento generalizado en el pago de sus obligaciones cuando lleve su contabilidad en forma que no permita conocer su verdadera situación financiera; o la altere, falsifique o destruya.



Scanned with CamScanner



# IFECOM

### Concursos Mercantiles    373

El juez tendrá en cuenta, para individualizar la pena, la cuantía del perjuicio inferido a los acreedores y su número.

Artículo 271 Bis.- Cuando el Comerciante haya sido declarado, por sentencia firme, en concurso mercantil, se impondrá de tres a doce años de prisión, a los miembros del consejo de administración, administrador único, director general, empleados relevantes a que se refiere el artículo 270 Bis, o representantes legales del Comerciante que, mediante la modificación de las condiciones de los contratos hagan u ordenen que se registren operaciones de las condiciones de los contratos hagan u ordenen que se registren operaciones o gastos inexistentes con conocimiento de dicha circunstancia, o que dolosamente realicen cualquier acto u operación ilícita o prohibida por la ley, generando en cualquiera de dichos supuestos un daño en el patrimonio del Comerciante de que se trate, en beneficio económico propio, ya sea directamente o a través de interpósita persona, o en beneficio de terceros, incluyendo el registro de pasivos a favor de cualquiera de las personas señaladas en los artículos 116 y 117 de esta Ley.

La pena a que se refiere este artículo será de uno a tres años de prisión cuando se acredite haber reparado el daño y resarcido el perjuicio ocasionado al Comerciante.

No se procederá penalmente por el delito previsto en este artículo, cuando las personas actúen en términos de lo establecido por el artículo 270 Bis-2 de esta Ley, así como en cumplimiento de las leyes que regulen los actos o conductas a que se refiere el primer párrafo de este artículo.

Artículo 272.- El Comerciante contra el cual se siga un procedimiento de concurso mercantil será sancionado con pena de uno a tres años de prisión cuando requerido por el juez del concurso mercantil, no ponga su contabilidad, dentro del plazo que para ello el juez concursal le hubiere concedido, a disposición de la persona que el juez designe, salvo que el Comerciante demuestre que le fue imposible presentarla por causas de fuerza mayor o caso fortuito.

Artículo 273.- Cuando el Comerciante sea una persona moral, la responsabilidad penal recaerá sobre los miembros del consejo de administración, los administradores, directores, gerentes o liquidadores de la misma que sean autores o partícipes del delito.

Artículo 274.- El que por sí o por medio de otra persona solicite en el concurso mercantil el reconocimiento de un crédito inexistente o simulado será sancionado con pena de uno a nueve años de prisión.

Artículo 275.- Los delitos en situación de concurso mercantil se perseguirán por querella. Tendrán derecho a querellarse el Comerciante y cada uno de sus acreedores, estos últimos aun en el caso de que algún otro acreedor hubiese desistido de su querella o hubiere concedido el perdón.

Artículo 276.- En los delitos en situación de concurso mercantil, el juez penal no conocerá de la reparación del daño, materia que corresponde al juez del concurso mercantil.

Artículo 277.- Los delitos en situación de concurso mercantil, cometidos por el Comerciante, por personas que hayan actuado en su nombre o por terceros,

Página 35 de 106

Scanned with CamScanner





IFECOM
Concursos Mercantiles

podrán perseguirse sin esperar a la conclusión del concurso mercantil y sin perjuicio de la continuación de éste.
Las decisiones del juez que conoce del concurso mercantil no vinculan a la jurisdicción penal. No será necesaria calificación para perseguir estos delitos.

Estas disposiciones revelan la importancia a las relaciones donde la imparcialidad, derivada de un interés personal (directo o indirecto, de índole económica o no), se vea comprometida en el ejercicio de la función encomendada; incluso a nivel profesional ante la existencia de un conflicto de interés, todo lo cual se exige con mayor intensidad al especialista.

Incluso, el ordenamiento prevé la posibilidad de sancionar a los comerciantes y a los administradores en los casos de los artículos transcritos, lo que revela la importancia que el legislador confirió a los actos que sean contrarios al propósito y bienes que protege la Ley Concursal, todo lo cual tomó en cuenta el legislador, según puede advertirse de la exposición de motivos, que se transcribe en la parte que interesa, como sigue.

> "Los órganos de la quiebra no se han integrado o no han funcionado en la forma prevista en la ley. Se consideró con especial atención, por juzgarlo el más delicado, el de la sindicatura. La Comisión redactora pensó que encargándolo a las cámaras de comercio o de industria o a las instituciones de crédito es una medida excelente en teoría, pero que, hasta ahora, ha fracasado en la práctica. Se considera, en abstracto, que ésta era una la solución óptima, pues si la quiebra interesa a la generalidad del comercio, nada mejor que encomendar la sindicatura a la institución que tiene la función de representar sus intereses generales, es decir, a las mencionadas cámaras; pero la organización y estructura de la mayoría de ellas no permite, en la actualidad, que atiendan adecuadamente las complejas funciones de una sindicatura. Sólo en contados casos han aceptado la sindicatura las cámaras y las instituciones de crédito han aceptado la sindicatura y, por esa falta de interés, han tendido a delegar esta importante responsabilidad en terceras personas, que son quienes en realidad han desempeñado las sindicaturas. Actualmente, se carece de un sistema que asegure una sindicatura profesional, competente y con la colaboración humana y económica adecuadas para resolver la crisis de la empresa fallida.
>
> Según las fases del procedimiento concursal, la Iniciativa atribuye facultades a tres clases de especialistas: los visitadores, conciliadores y síndicos. Las atribuciones de los especialistas son importantes y delicadas. _Los especialistas deben tener solvencia moral_, conocimientos y experiencia en el ramo de la actividad que corresponde a sus atribuciones. Los profesionistas cuya preparación les permite atender estas funciones forman un grupo en donde fácilmente pueden reclutarse estos especialistas, tales son los licenciados en derecho, los licenciados en administración de empresas, los licenciados en economía, los contadores y los especialistas en ingeniería financiera. Tales profesionistas son los más

Página 36 de 106

Scanned with CamScanner

## IFECOM
### Concursos Mercantiles

374

*indicados, en la actual situación de nuestra sociedad, para que acepten y desempeñen las funciones que típicamente se han reservado a las sindicaturas, más aquéllas que les atribuye la Iniciativa"*

Lo antes inserto revela el propósito del legislador, en cuanto a considerar la solvencia moral del especialista como una directiva de comportamiento, y no sólo como una inspiración vacía de contenido. Fundamentalmente, porque entre los requisitos para ser especialista se encuentra la de ser de reconocida probidad, como dispone el artículo de la Ley de Concursos Mercantiles que se transcribe a continuación:

*"Artículo 326.- Para ser registrado como visitador, conciliador o síndico, las personas interesadas deberán presentar por escrito su solicitud al Instituto, con los documentos que acrediten el cumplimiento de los requisitos establecidos en las fracciones siguientes:*

*I. Tener experiencia relevante de cuando menos cinco años, en materia de administración de empresas, de asesoría financiera, jurídica o contable;*

*II. No desempeñar empleo, cargo o comisión en la Administración Pública, ni ser parte de los Poderes Legislativo o Judicial, en cualquiera de los tres ámbitos de gobierno;*

*III. Ser de reconocida probidad;*

*IV. Cumplir con los procedimientos de selección que le aplique el Instituto, así como los procedimientos de actualización que determine el mismo, y*

*V. No haber sido condenado mediante sentencia ejecutoriada, por delito intencional que merezca pena corporal, ni inhabilitado para empleo, cargo o comisión en el servicio público, el sistema financiero, o para ejercer el comercio."*

Estas directrices han sido consideradas por organismos internacionales también como una exigencia, más allá de consideraciones morales, sino como expresión concreta de las medidas para prevenir incluso delitos, conforme a lo siguiente.

### Importancia de un desempeño empresarial ético, como pauta de conducta (incluso como factor de prevención delictiva)

Como se tiene visto, la legislación regula los casos en que debe existir una prohibición para encargados de ciertas responsabilidades, de las que pueda derivar un conflicto de intereses (administradores, juzgadores, profesionistas, entre otros).

Scanned with CamScanner





**IFECOM**
Concursos Mercantiles

Tratándose de los administradores concursales, las prohibiciones por razones de su cargo se refieren, derivado de su cargo a la de adquirir bienes o derechos que integren la masa del concurso, sea personalmente sea por medio de tercera persona interpuesta, y cualquiera que sea el modo en que se instrumente la operación; y la ley regula también desde distintos ámbitos la conducta violatoria, que va desde la ineficacia del negocio jurídico y la imposición de sanciones.

Tales prohibiciones son la previsión legislativa de la prohibición de auto-contratar, que tiene varios ejemplos concretos, pero que carece de una regulación de carácter general, específico o determinado exactamente en la Ley de Concursos Mercantiles; no obstante ello, es posible su reconstrucción, debido a las previsiones de otras normas que le son igualmente aplicables al especialista.

El aspecto de honestidad, transparencia y rendición de cuentas que se espera de las empresas mediante una conducta ética de sus miembros, tanto al interior como en sus relaciones con terceros, se intensifica tratándose del concurso mercantil.

Ello es así, porque se trata del interés público que el legislador le asignó al fenómeno de la insolvencia, al grado de que, según se indicó, tipifica conductas delictivas en contra de los comerciantes que cometan actos fraudulentos. Ergo, el especialista, en este caso el síndico, debe actuar con mayor transparencia, ética y honestidad de la que es exigida regularmente a todos los miembros de las empresas, principalmente a sus administradores.

En este sentido, es claro que la legislación regula y ve la conducta de quien gestiona asuntos de otro con desconfianza en el caso de que se vean involucrados los intereses personales del gestor, sobre todo si la actividad es de naturaleza patrimonial y comprende la posibilidad de realizar actos de administración y de disposición de bienes o derechos ajenos.

El motivo que origina la prohibición o que -al menos- pone condiciones a la realización del acto es, en todos los casos la existencia de un conflicto de intereses entre el administrador y el administrado, pues todo aquel que gestiona asuntos ajenos adquiere la obligación de hacerlo diligentemente en beneficio del titular del objeto gestionado, pero al mismo tiempo, es lógico presumir que actuará procurando el propio interés.

Scanned with CamScanner

## IFECOM
### Concursos Mercantiles

375

Sobre estas bases, es posible deducir que, por ejemplo, en un negocio jurídico de intercambio (como ejemplo paradigmático, una compraventa), donde se involucran intereses económicos, un aumento en la satisfacción de una de las partes conllevará casi siempre una disminución en el valor del interés de la otra. Siendo así, resulta difícil tutelar ambos intereses cuando se trata del interés particular de un individuo, administrador y, en este caso, el síndico, frente a las demás partes del concurso mercantil, pues se traduce en la práctica en un doble riesgo. En primer lugar, el riesgo sobre las condiciones del negocio, consistente en que el administrador contrate en condiciones más beneficiosas de las que obtendría en el mercado. En segundo lugar, el que podría denominarse riesgo temporal, o posibilidad de que el conflicto de intereses le impulse a enajenar el bien en contra de los intereses del administrado o a transmitir un bien o un derecho en un momento en que no era conveniente.

La administración concursal involucra, evidentemente a la masa, y el síndico se ubica en una posición donde administra los intereses de unos sujetos que se han visto legalmente compelidos a unirse en un procedimiento colectivo, sacrificando la posibilidad de perseguir individualmente la propia satisfacción de sus créditos el patrimonio concursal tiene un único destino y aquéllos con pretensiones contra el deudor nacidas con anterioridad a la apertura del concurso.

Además, el órgano concursal, al administrar y liquidar la masa, repartiendo el dividendo entre los acreedores afecta directamente e patrimonio de cada acreedor extinguiendo su crédito, cuando menos de manera parcial.

En la administración del patrimonio concursal esos riesgos tienden a acentuarse y a complicarse. La pluralidad de partes interesadas (deudor, acreedores concursales, acreedores de la masa, trabajadores, etcétera), que en ocasiones, tendrán intereses enfrentados, la inserción de la actividad de administración en un procedimiento judicial hace que la actuación del administrador trascienda el simple interés privado de alguno de los sujetos afectados (acentuando la necesidad de una apariencia de legalidad).

Ante estos riesgos derivados del conflicto de intereses, es necesario recordar que en el procedimiento concursal la mayoría de las personas que pueden resultar dañadas por la auto-entrada del órgano no han elegido voluntariamente que unos terceros gestionen sus intereses sino que se han visto compelidos por el principio de universalidad del concurso.



**Scanned with CamScanner**

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL



IFECOM
Concursos Mercantiles

Por todo ello, la prohibición debe concebirse, además, como un instrumento para permitir el correcto desarrollo de la función concursal por parte de uno de los órganos del procedimiento y, lo que es más importante debe ser interpretada de forma armónica con el resto de las normas que regulan la competencia de la administración concursal.

La regulación de la autocontratación de cualquier gestor de intereses ajenos depende de la naturaleza de la gestión y de las circunstancias que la rodean. Por ello, a fin de conocer los perfiles jurídicos de la prohibición que analizamos, es necesario determinar previamente las características fundamentales y los límites de las facultades de administración y disposición de la administración concursal.[12]

Estos aspectos cobran mayor importancia aún, cuando se miran en un contexto de los esfuerzos internacionales que resaltan su prevención también como medida para evitar actos de corrupción.

Así resulta, por ejemplo, de la Convención de las Naciones Unidas contra la corrupción (CNUCC), en cuyo artículo 12.2 dispone:

> "*Artículo 12.2. – Sector privado Las medidas para lograr estos fines pueden incluir, entre otras:*
> *...*
> *(b) Promover el desarrollo de normas y procedimientos diseñados para salvaguardar la integridad de las entidades privadas relevantes, incluyendo códigos de conducta para el cumplimiento correcto, honesto y apropiado de las actividades comerciales y de todas la profesiones relevantes*, así como también para prevenir conflictos de interés y promover la aplicación de buenas prácticas comerciales entre las empresas y en las relaciones contractuales de las empresas con el Estado;*
>
> *(c) Promover la transparencia entre las entidades privadas*, incluyendo, cuando corresponda, medidas relacionadas con la identidad de personas naturales y jurídicas involucradas en el establecimiento y gerencia de personas jurídicas;*
>
> *(d) Prevenir el mal uso de los procedimientos que regulan a las entidades privadas, incluyendo procedimientos relacionados con subsidios y licencias otorgados por las autoridades públicas para actividades comerciales;*
>
> *(e) Evitar los conflictos de interés imponiendo restricciones, cuando corresponda y durante un tiempo razonable, a las actividades*

---

[12] SÁNCHEZ, Emilio M. Beltrán; MARTÍ, Ignacio Tirado. *La prohibición de autocontratación de los administradores concursales*. Anuario de derecho concursal, 2004, no 1, p. 87-126.
https://repositorioinstitucional.ceu.es/bitstream/10637/244/1/articulo.pdf



Scanned with CamScanner

profesionales de exfuncionarios públicos, o al empleo de funcionarios públicos por parte del sector privado después de su renuncia o retiro, cuando dichas actividades o empleo se relacionen directamente con las funciones realizadas o supervisadas por dichos funcionarios durante el desempeño de su cargo público;

(f) Asegurar que las empresas privadas, de acuerdo con su estructura y tamaño, tengan suficientes controles de auditoría interna para ayudar a prevenir y detectar actos de corrupción y que las cuentas y estados financieros de dichas empresas estén sujetos a una auditoría apropiada y a procedimientos de certificación."[3]

Otros elementos de prevención han sido incluidos como parte los esfuerzos que derivaron en la "Ética Anticorrupción y Elementos de Cumplimiento Manual para Empresas" donde se incluye lo siguiente:

Principios empresariales para contrarrestar el soborno: 5. Alcance del programa: El programa debe abordar las formas de soborno más usuales y relevantes para la empresa, pero debe cubrir como mínimo las siguientes áreas: 5.1. Conflictos de interés 5.1.1. La empresa debe establecer políticas y procedimientos para identificar, monitorear y gestionar conflictos de interés que puedan traducirse en un riesgo de soborno real, potencial o subjetivo, incluyendo los conflictos de interés de directores, funcionarios, empleados y contratistas tales como agentes, cabilderos y otros intermediarios. 5.2 Sobornos 5.2.1 La empresa debe prohibir todas las formas de soborno, ya sean directas o efectuadas a través de terceros. 5.2.2 La empresa debe prohibir a sus empleados que soliciten, dispongan o acepten sobornos a beneficio del empleado, su familia, amigos, asociados o conocidos.

Reglas de la CCI para combatir la corrupción:

"Artículo 7: Conflictos de interés: los conflictos de interés pueden surgir cuando los intereses privados de una persona o de sus parientes cercanos, amigos o contactos comerciales divergen de aquellos de la empresa u organización a la cual pertenece la persona. Estas situaciones deben ser reveladas y, cuando sea posible, evitadas porque pueden afectar el buen juicio de un individuo en el cumplimiento de sus funciones y responsabilidades. Las empresas deben monitorear de cerca y regular los conflictos de interés reales o potenciales, o los que parezcan posibles, de sus directores, funcionarios, empleados y agentes y no debe aprovecharse de los conflictos de interés de otros. Si su actividad contemplada o el empleo se relaciona directamente con las funciones realizadas o supervisadas durante el ejercicio de su cargo, no se debe emplear ni vincular exfuncionarios públicos en ninguna capacidad antes de que transcurra un tiempo razonable desde que dejara su cargo. Cuando corresponda, se deben observar las restricciones impuestas por la legislación nacional."

Scanned with CamScanner



**PODER JUDICIAL DE LA FEDERACIÓN**
CONSEJO DE LA JUDICATURA FEDERAL



**IFECOM**
Concursos Mercantiles

Estas directrices han sido analizadas también en el caso de México a fin de comprender las limitaciones y requerimientos de una política y un diseño organizacional e institucional que enfrente exitosamente los dilemas del control de los conflictos de interés.[14]

Así, sumado a las razones ya expuestas en esta resolución, conviene agregar las específicas que resultan en relación a la actualización del impedimento, por una inclinación en el ánimo del síndico, en beneficio propio, de terceros con los que tiene relación (*el despacho de abogados del que es socio o titular*); o por los actos que comprometen su imparcialidad frente a las partes en el procedimiento concursal.

## I. HECHO A DEMOSTRAR.

Como se tiene dicho, la causa de pedir del Interventor es que el Especialista es abogado de las partes que señala del concurso mercantil de que se trata; en consecuencia, este es el hecho a demostrar.

Teniendo en cuenta esto (para efectos epistemológicos) los elementos para demostrar la existencia de una relación abogado-cliente, precisa d) que una de las partes tenga el carácter de abogado; y ii) la contratación de los servicios profesionales.

## II. ELEMENTOS PROBATORIOS Y SU VALORACIÓN.,

### 1) Profesión de licenciado en derecho.

Constitucionalmente, a ninguna persona podrá impedirse que se dedique a la profesión, industria, comercio o trabajo que le acomode, siendo lícitos, cuyo ejercicio de tal libertad sólo podrá vedarse por determinación judicial (*cuando se ataquen los derechos de tercero, o por resolución gubernativa, dictada en los términos que marque la ley, cuando se ofendan los derechos de la sociedad*); sin que nadie pueda ser privado del producto de su trabajo, sino por resolución judicial.

---

[14] ARELLANO GAULT, David; ZAMUDIO GONZÁLEZ, Laura. Dilemas organizacionales e institucionales de las regulaciones para contener los conflictos de interés en una democracia: una aproximación comparativa entre Canadá, EUA y México. Convergencia, 2009, vol. 16, no 49, p. 145-173.
http://www.scielo.org.mx/scielo.php?pid=S1405-14352009000100006&script=sci_arttext&tlng=es

**Scanned with CamScanner**

**IFECOM**

Concursos Mercantiles

377

Al efecto, la ley determinará en cada entidad federativa, cuáles son las profesiones que necesitan título para su ejercicio, las condiciones que deban llenarse para obtenerlo y las autoridades que han de expedirlo.

En este sentido, la Ley de Profesiones establece que la de licenciado en derecho es de las que requieren la acreditación de estudios y expedición de título correspondiente por las autoridades a las que la ley otorga tal facultad.

**1) Valoración.**

En el caso, el Interventor no aportó elementos de los cuales pueda advertirse si el Especialista es licenciado en derecho.

No obstante lo anterior, en el expediente del Síndico de que se trata *(clave 6-09-025218, parte 1)* obra constancia del cotejo del duplicado de la cédula profesional (1726515) que lo acredita como Licenciado en Derecho, lo cual se invoca como un hecho notorio, en términos del artículo 88 del Código Federal de Procedimientos Civiles, de aplicación supletoria a la Ley de Concursos Mercantiles, como establece el artículo 8° de la Ley en cita.[15]

Conforme a lo expuesto, está demostrado fehacientemente el primer elemento, ya que el Síndico efectivamente es licenciado en derecho.

**2) Prestación de servicios profesionales.**

La contratación de los servicios profesionales suele llevarse a cabo mediante la celebración del contrato respectivo, en términos del Código Civil Federal. Dicho contrato es de naturaleza bilateral, ente el que presta los servicios y el que los recibe, quienes pueden fijar, de común acuerdo, retribución debida por ellos.[16]

---

[15] Artículo 8o.- Son de aplicación supletoria a este ordenamiento, en el orden siguiente:. - - - I. El Código de Comercio; - - - II. La legislación mercantil;. - - - III. Los usos mercantiles especiales y generales;. - - - IV. El Código Federal de Procedimientos Civiles, y. - - - V. El Código Civil en materia federal.
[16] De la prestación de servicios profesionales. - - - Artículo 2,606.- El que presta y el que recibe los servicios profesionales, pueden fijar, de común acuerdo, retribución debida por ellos.- - - Cuando se trate de profesionistas que estuvieren sindicalizados, se observarán las disposiciones relativas establecidas en el respectivo contrato colectivo de trabajo.- - - Artículo 2,607.- Cuando no hubiere habido convenio, los honorarios se regularán atendiendo juntamente a las costumbre del lugar, a la importancia de los trabajos prestados, a la del asunto o caso en que se prestaren, a las facultades pecuniarias del que recibe el servicio y a la reputación profesional que tenga adquirida el que lo ha prestado. Si los servicios prestados estuvieren regulados por arancel, éste servirá de norma para fijar el importe de los honorarios reclamados.

Scanned with CamScanner





PODER JUDICIAL DE LA FEDERACIÓN
CONSTRUYE LA BIBLIOTECA FEDERAL

**IFECOM**
Concursos Mercantiles

En consecuencia, la forma idónea de demostración en cuanto a la contratación de tales servicios es mediante la acreditación del acuerdo de voluntades en la celebración de tal contrato, ya sea de manera escrita o verbal, al tratarse de un contrato que no requiere forma para su celebración.[17]

### a) Valoración.

En la especie, el Interventor aportó el documento que se dice fue suscrito por el Especialista, dirigido a Nordic Trustee AS, inserto páginas atrás. Sin embargo, del mismo no puede derivarse que, en efecto, exista la celebración del contrato de prestación de servicios como abogado de las partes, según se explica.

En primer lugar, es de destacar que la Ley de Concursos Mercantiles no establece las reglas de valoración probatoria; por lo tanto, cobra aplicación de manera supletoria el Código Federal de Procedimientos Civiles.

En este sentido, es indispensable indicar que de los documentos anexos al escrito del impedimento que se analiza, por sus características, corresponden a: i) copias simples; ii) copias certificadas; y iii) documentos con firmas y sellos originales, los cuales procede valorar conforme a sus características específicas.

### i) Documentos públicos.

Conforme a los artículos 93, 129 y 202 del Código Federal de Procedimientos Civiles, de aplicación supletoria a la Materia Concursal,[18] copia certificada de la

---

[17] *Artículo 1,832.- En los contratos civiles cada uno se obliga en la manera y términos que aparezca que quiso obligarse, sin que para la validez del contrato se requieran formalidades determinadas, fuera de los casos expresamente designados por la ley.*

[18] *Artículo 93.- La ley reconoce como medios de prueba:- - - I.- La confesión;- - - II.- Los documentos públicos;- - - III.- Los documentos privados;- - - IV.- Los dictámenes periciales;- - - V.- El reconocimiento o inspección judicial;- - - VI.- Los testigos;- - - VII.- Las fotografías, escritos y notas taquigráficas, y, en general, todos aquellos elementos aportados por los descubrimientos de la ciencia; y- - - VIII.- Las presunciones.*
*Artículo 129.- Son documentos públicos aquellos cuya formación está encomendada por la ley, dentro de los límites de su competencia, a un funcionario público revestido de la fe pública, y los expedidos por funcionarios públicos, en el ejercicio de sus funciones. - - - La calidad de públicos se demuestra por la existencia regular, sobre los documentos, de los sellos, firmas u otros signos exteriores que, en su caso, prevengan las leyes.*
*Artículo 202.- Los documentos públicos hacen prueba plena de los hechos legalmente afirmados por la autoridad de que aquéllos procedan; pero, si en ellos se contienen declaraciones de verdad o manifestaciones de hechos de particulares, los documentos sólo prueban plenamente que, ante la autoridad que los expidió, se hicieron tales declaraciones o manifestaciones; pero no prueban la verdad de lo declarado o manifestado. - - - Las declaraciones o manifestaciones de que se trata prueban plenamente contra quienes los hicieron o asistieron al acto en que fueron hechas, y se manifestaran conformes con ellas. Pierden su valor en el caso de que judicialmente se declare su simulación. - - - También harán prueba plena las certificaciones judiciales o notariales de las constancias de los libros parroquiales, relativos a los actos*

Página 44 de 106

**Scanned with CamScanner**



**IFECOM**
Concursos Mercantiles    378

carta de 27 de junio de 2019, que se dice atribuida al Síndico, dirigida al representante legal de Nordic Trustee AS, tiene valor probatorio pleno, debiendo hacer las siguientes consideraciones:

1) El valor que le corresponde a las copias certificadas es el que les otorga el Código Federal de Procedimientos Civiles, de aplicación supletoria a la Ley de Concursos Mercantiles, en el sentido de que hacen prueba plena.

2) Lo anterior significa que debe tenerse por probado plenamente que el documento que se certifica fue puesto a la vista del fedatario.

3) Sin embargo, no ocurre lo mismo en relación a lo que se contiene en el documento, pues el fedatario público no dio fe del acto.

4) En este sentido, no puede tenerse por cierto el contenido de lo declarado ni aun la suscripción de las partes a quien se tribuye, ya que no se advierte que el notario que expidió la copia certificada hubiera presenciado el acto para dar fe del mismo.

5) Por último (incluso así) las declaraciones de verdad o manifestaciones de derechos de particulares acreditaría que se hicieron tales declaraciones; pero no prueban la verdad de lo declarado.

**ii) Documentos privados y copias simples.**

El Interventor acompañó otros documentos, como son el anexo 16 (*documento en inglés con firma original*); anexos 18 y 19 (*copias simples de dos cartas en inglés, fechadas el 29 de mayo y 25 de junio, respectivamente, ambas de 2019, con traducción en firma original*); anexos 20 y 21 (*impresión en copia simples de correos electrónicos, con traducción en original*); anexo 25 (*documento en copia simple en inglés y traducción con sello en copia simple*).

Los documentos antes señalados no son aptos para la causa de impedimento alegada.

del estado civil de las personas, siempre que se refieran a época anterior al establecimiento del Registro Civil. Igual prueba harán cuando no existan los libros de registro, original y duplicado, y cuando, existiendo, estén rotas o borradas las hojas en que se encontraba el acta. - - - En caso de estar contradicho su contenido por otras pruebas, su valor queda a la libre apreciación del tribunal.

Página 45 de 106
Página 57 de 106

**Scanned with CamScanner**



PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL



IFECOM
Concursos Mercantiles

Lo precedente es así, en primer lugar, porque los documentos que se presenten en copia simple carecen de valor probatorio, si no están robustecidos por otros medios que adminiculadamente lleven a concluir suficientemente que lo ahí asentado ocurrió así efectivamente.

En segundo lugar, los documentos que se presenten en el procedimiento deben constar en idioma español;[19] por lo que aquéllos que no vengan acompañados de la traducción correspondiente, carecen de valor probatorio.

En tercer lugar, la traducción de los documentos debe ser realizada por perito oficial autorizado por el tribunal para tal efecto; y, aun cuando así sea, sólo dan cuenta de lo que consta en idioma extranjero, pero no crean certeza en relación a lo que ahí se haya declarado, fundamentalmente porque se refiere a documentos privados[20] y, al respecto, no crean convicción suficiente sobre la autenticidad de lo ahí escrito.[21]

---

[19] Artículo 271.- Las actuaciones judiciales y promociones deben escribirse en lengua española. Lo que se presente escrito en idioma extranjero se acompañará de la correspondiente traducción al castellano. Artículo 132.- De la traducción de los documentos que se presenten en idioma extranjero se mandará dar vista a la parte contraria, para que, dentro de tres días, manifieste si está conforme. Si lo estuviere o no contestare la vista, se pasará por la traducción; en caso contrario, el tribunal nombrará traductor.

[20] Artículo 133.- Son documentos privados los que no reúnen las condiciones previstas por el artículo 129.

[21] Artículo 203.- El documento privado forma prueba de los hechos mencionados por su autor, sólo en cuanto sean contrarios a los intereses de su autor, cuando la ley no disponga otra cosa. El documento proveniente de un tercero sólo prueba en favor de la parte que quiere beneficiarse con él y contra su colitigante, cuando éste no lo objeta. En caso contrario, la verdad de su contenido debe demostrarse por otras pruebas. - - (F. DE E., D.O.F. 13 DE MARZO DE 1943).- - El escrito privado que contenga una declaración de verdad, hace fe de la existencia de la declaración; más no de los hechos declarados. Es aplicable al caso lo dispuesto en el párrafo segundo del artículo 202.- - - Se considera como autor del documento a aquél por cuya cuenta ha sido formado.- - - Artículo 204.- Se reputa autor de un documento privado al que lo suscribe, salva la excepción de que trata el artículo 206.- - - Se entiende por suscripción la colocación, al pie del escrito, de las palabras que, con respecto al destino del mismo, sean idóneas para identificar a la persona que suscribe.- - - La suscripción hace plena fe de la formación del documento por cuenta del suscriptor, aun cuando el texto no haya sido escrito ni en todo ni en parte por él, excepto por lo que se refiere a agregados interlineales o marginales, concelaciones o cualesquiera otras modificaciones contenidas en él, las cuales no se reputan provenientes del autor, si no están escritas por su mano, o no se ha hecho mención de ellas antes de la subscripción.- - - Artículo 205.- Si la parte contra la cual se presenta un escrito privado subscrito, no objeta, dentro del término señalado por el artículo 142, que la subscripción o la fecha haya sido puesta por ella, ni declara no reconocer que haya sido puesta por el que aparece como subscriptor, si éste es un tercero, se tendrán la subscripción y la fecha por reconocidas. En caso contrario, la verdad de la subscripción y de la fecha debe demostrarse por medio de prueba directa para tal objeto, de conformidad con las capítulos anteriores.- - - Si la subscripción o la fecha está certificada por notario o por cualquier otro funcionario revestido de la fe pública, tendrá el mismo valor que un documento público indubitado.- - - Artículo 206.- Se considera autor de los libros de comercio, registrados domésticos y demás documentos que no se acostumbra subscribir, a aquél que los haya formado o por cuya cuenta se hicieren.- - - Si la parte contra la cual se propone un documento de esta naturaleza no objeta, dentro del término fijado por el artículo 142, ser su autor, ni declara no reconocer como tal al tercero indicado por quien lo presentó, se tendrá al autor por reconocido. En caso contrario, la verdad del hecho de que el documento haya sido escrito por cuenta de la persona indicada, debe demostrarse por prueba directa, de acuerdo con los capítulos anteriores de este título.- - - (F. DE E., D.O.F. 13 DE MARZO DE 1943).- - En los casos de este artículo y en los del anterior, no tendrá valor probatorio el documento no objetado, si el juicio se ha seguido en rebeldía, pues entonces es necesario el reconocimiento del documento, el que se practicará con sujeción a las disposiciones sobre confesión, y surtirá sus mismos efectos, y, si el documento es de un tercero, la verdad de su contenido debe demostrarse por otras pruebas.- - - Artículo 207.- Las copias hacen fe de la existencia de los originales.

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

379

Así también, de manera particular, obviando que el anexo 17 es un documento en inglés con su traducción (*ambos en copia simple*), en la copia simple del documento escrito en idioma inglés, se advierten dos firmas atribuidas -según se ve en la propia copia-, una firma atribuida al Síndico, así como otra en el espacio (*ante firma*) atribuida al representante de Nordic Trustee AS.

En este sentido, si el documento lo ofrece el interventor, de quien no aparece firma en la copia simple de referencia, es claro que el documento se atribuye a un tercero distinto del oferente. En consecuencia, su valor probatorio es insuficiente ya que -a más de que obra en copia simple-, el oferente no intervino en su elaboración y; por lo tanto, no es apto para los efectos que propuso el denunciante del impedimento.

Por último, como se anticipó al inicio de este apartado, el celebración del contrato de prestación de servicios es bilateral, de modo que para su demostración no bastan los indicios débiles en cuanto a su eficacia probatoria, que se refieren a una sola de las partes; pues para tener por acreditada la pretendida relación, es necesaria la evidencia suficientemente convincente de que la otra parte aceptó la prestación de los servicios profesionales y, sobre este aspecto, no se ofreció prueba alguna. Además, tampoco fue acreditado que la actuación del despacho SOLCARGO haya sido efectiva en algún procedimiento judicial o administrativo; es decir, que en efecto haya actuado como abogado de la concursada.

En apoyo a lo anterior, por analogía y en lo conducente, se cita la tesis que se inserta.

*"AUTORIZADO EN LOS AMPLIOS TÉRMINOS DEL ARTÍCULO 27 DE LA LEY DE AMPARO. ES NECESARIO QUE ACEPTE Y PROTESTE EL CARGO PARA QUE SE LE RECONOZCA ESE CARÁCTER. Aunque es cierto que el citado precepto, en su párrafo segundo, establece que en las materias civil, mercantil o administrativa, los autorizados que las partes designen deberán acreditar que están legalmente facultados para ejercer la profesión de abogado, también lo es que dicha figura constituye un verdadero mandato judicial cuando se nombra en los amplios*

conformes a las reglas precedentes; pero si se pone en duda su exactitud, deberá ordenarse su cotejo con los originales de que se tomaron.- - - Artículo 208.- Los escritos privados hacen fe de su fecha, en cuanto ésta indique un hecho contrario a los intereses de su autor.- - - Artículo 209.- Si un documento privado contiene distintos uno o más hechos contrarios a los intereses de su autor, y uno o más hechos favorables al mismo, la verdad de los primeros no puede aceptarse sin aceptar, al propio tiempo, la verdad de los segundos, en los límites dentro de los cuales los hechos favorables suministren, a aquel contra el cual está -producido el documento, una excepción o defensa- contra la prestación que apoyan los hechos que le son contrarios.- - - Artículo 210.- El documento privado que un litigante presenta, prueba plenamente en su contra, de acuerdo con los artículos anteriores.

Página 47 de 106



**Scanned with CamScanner**



**IFECOM**
*Concursos Mercantiles*

PODER JUDICIAL DE LA FEDERACION
CONSEJO DE LA JUDICATURA FEDERAL

*términos de dicho artículo, de suerte que le son aplicables las reglas contenidas en el Código Civil Federal, cuyo dispositivo legal 2547 es categórico en establecer que el mandato se reputa perfecto con la aceptación del mandatario, la que puede ser expresa o tácita. De ahí que resulte imperativo que aquel que sea designado autorizado en los términos mencionados, acepte y proteste el cargo conferido a fin de que el órgano de control constitucional le reconozca ese carácter. Además, en la medida en que los abogados acepten y protesten ese cargo, quedan protegidos tanto ellos como los que los nombran, puesto que puede suceder que una de las partes en el amparo designe a un autorizado sin que éste se entere y, por ende, que jamás participe en el asunto. Luego, si en el manejo del procedimiento constitucional hubiera negligencia, sería factible que al autorizado le finquen responsabilidades civiles, penales o administrativas, lo que no sería justo dado que no tuvo la oportunidad de comparecer al amparo; como tampoco lo sería el hecho de que, sin aportar nada al juicio, un autorizado reclamara el pago de honorarios por el solo hecho de habérsele investido como tal. Así mismo, es posible que una de las partes en el juicio de garantías tenga conocimiento que algún Juez o Magistrado se encuentra impedido para conocer de los asuntos en que participe o intervenga algún abogado litigante y, aprovechándose de esa situación, designe al profesionista como autorizado -sin que éste se entere- sólo para conseguir el impedimento del funcionario. Situaciones que se evitarán si los profesionistas del derecho aceptan y protestan el aludido cargo.*

En cuanto a los demás documentos anexos al escrito remitido por el juez federal, es de señalar que se trata de copias simples, por lo que su valor es el que le corresponde a este tipo de prueba, en tanto no sean adminiculadas o robustecidas con otros medios probatorios.

Se cita en apoyo a lo anterior, la jurisprudencia que se inserta.

*"DOCUMENTOS PRIVADOS ORIGINALES Y COPIAS FOTOSTÁTICAS SIMPLES. SU VALOR PROBATORIO EN LOS JUICIOS MERCANTILES. En el artículo 1296 del Código de Comercio, de contenido idéntico al numeral 1241 del mismo ordenamiento, el legislador estableció que si los documentos privados presentados en original en los juicios mercantiles -en términos del artículo 1205 del Código invocado-, no son objetados por la parte contraria, se tendrán por admitidos y surtirán sus efectos como si se hubieran reconocido expresamente. Al respecto, este último numeral establece, después de un listado enunciativo en el que contempla a los documentos privados, que también será admisible como prueba "en general cualquier otra similar u objeto que sirva para averiguar la verdad", entre los cuales están las copias simples. Ahora bien, los*

⁷⁷ Novena Época. Registro: 165604. Instancia: Tribunales Colegiados de Circuito. Tipo de Tesis: Aislada. Fuente: Semanario Judicial de la Federación y su Gaceta. Tomo XXXI, Enero de 2010. Materia(s): Común. Tesis: III.5o.C.29 K. Página: 2014. QUINTO TRIBUNAL COLEGIADO EN MATERIA CIVIL DEL TERCER CIRCUITO. Reclamación 16/2009. Mario Alberto Estrada Zepeda. 5 de noviembre de 2009. Unanimidad de votos. Ponente: Enrique Dueñas Sarabia. Secretario: César Augusto Vera Guerrero.

Scanned with CamScanner

# IFECOM
**Concursos Mercantiles**

380

*documentos originales y las copias fotostáticas no son lo mismo, pues éstas son simples reproducciones de documentos originales que pueden alterarse o modificarse en el proceso de reproducción, de modo que no correspondan al documento que supuestamente reproducen y, por ello, constituyen elementos de convicción distintos regidos por diferentes normas y con diferente valor probatorio; de ahí que conforme al indicado artículo 1296, las copias simples no pueden tenerse por reconocidas ante la falta de objeción, como sucede con los documentos privados exhibidos en original. Así, para determinar el valor probatorio de las copias fotostáticas simples en un procedimiento mercantil, ante la falta de disposición expresa en el Código de Comercio, debe aplicarse supletoriamente el artículo 217 del Código Federal de Procedimientos Civiles, el cual ha sido interpretado por este alto tribunal en el sentido de que las copias fotostáticas simples deben ser valoradas como indicios y adminicularse con los demás elementos probatorios que obren en autos, según el prudente arbitrio judicial."[3]*

Conforme a lo expuesto, resulta infundada la causa alegada por el interventor, que sustentó en la fracción III, del artículo 328 de la Ley de Concursos Mercantiles, al estimar que el Especialista es abogado de las partes a quienes atribuyó esa relación.

Dado el estudio de que antecede, al declarar infundada la causa de impedimento, se hace innecesario pronunciarse sobre los argumentos del especialista en los cuales sostiene que no se actualiza la causa examinada.

**B) Impedimento fundado en que el especialista tiene la calidad de socio de las partes que refiere el interventor.**

Al respecto, el interventor hace valer que se actualiza la fracción V, del artículo 328 de la Ley de Concursos Mercantiles *(porque el Síndico es socio de alguna de las partes).*

El interventor sostiene que el síndico se auto-contrató como abogado, al haber pactado algún *"porcentaje al [o de] éxito"* en la contratación, por lo que, de facto se convierte en socio, pues cualquier beneficio que pueda obtener le permitirá compartirlo con los comerciantes.

---

*Época: Décima Época  Registro: 2002783  Instancia: Primera Sala  Tipo de Tesis: Jurisprudencia  Fuente: Semanario Judicial de la Federación y su Gaceta  Libro XVII, Febrero de 2013, Tomo 1  Materia(s): Civil  Tesis: 1a./J. 126/2012 (10a.)  Página: 622  Contradicción de tesis 459/2011. Suscitada entre el Primer Tribunal Colegiado de Circuito del Centro Auxiliar de la Octava Región, en apoyo del Tribunal Colegiado del Trigésimo Primer Circuito y el Tercer Tribunal Colegiado en Materia Civil del Primer Circuito. 10 de octubre de 2012. La votación se dividió en dos partes: mayoría de cuatro votos por lo que se refiere a la competencia. Disidente: José Ramón Cossío Díaz. Unanimidad de cinco votos en cuanto al fondo. Ponente: Olga Sánchez Cordero de García Villegas. Secretaria: Constanza Tort San Román. Tesis de Jurisprudencia 126/2012 (10a.). Aprobada por la Primera Sala de este Alto Tribunal, en sesión de fecha veinticuatro de octubre de dos mil doce.*

Página 49 de 106

**Scanned with CamScanner**





**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

El interventor sostiene que ha requerido al síndico para que le proporcione diversa información en relación a los contratos de prestación de servicios profesionales que la sindicatura hubiera celebrado o ratificado, a lo cual el especialista se opuso ente el juzgado concursal, como se advierte del acuerdo de 26 de septiembre de 2019.

Ante la falta de certeza documental el interventor lleva a cabo manifestaciones a través de las cuales y con los elementos ya relatados, infiere de la existencia de los contratos con el despacho "Solcargo".

## I. HECHOS A DEMOSTRAR.

### 1) Argumentos del Interventor sobre la calidad de socio del especialista de las partes que refiere.

El Interventor sostiene, en términos generales, que los actos llevados a cabo por el Síndico revelan que es, materialmente, socio de las partes que refiere. Ello, en razón de que, al prestar los servicios de abogado del despacho del que es socio y cobrar un porcentaje por esa actividad, también participa entonces de los beneficios de su contratante; además de los perjuicios que causa a la Masa concursal en perjuicio de los acreedores; así como todos aquellos actos que, en su opinión, demuestran esa relación.

### 2) Calidad de socios a que se refiere la fracción V, del artículo 328 de la Ley de Concursos Mercantiles.

En principio, es indispensable señalar que la fracción V del artículo 328 de la Ley de Concursos Mercantiles, se refiere a los socios de empresas comerciales (*Incluidos los pequeños comerciantes cuando acepten someterse voluntariamente y por escrito a la aplicación de la presente Ley en trata, cuyas obligaciones vigentes y vencidas, en conjunto, no excedan el equivalente de 400 mil UDIs al momento de la solicitud o demanda y las empresas de participación estatal constituidas como sociedades mercantiles y/o las mayoritarias*).

Siendo así, la expresión de socio en la fracción en trata, debe ser entendida en su acepción jurídica y formal, de las previstas por la Ley General de Sociedades Mercantiles; es decir, de las reconocidas por el artículo 1º de dicho

Página 50 de 106

Scanned with CamScanner



**IFECOM**

Concursos Mercantiles    381

ordenamiento.[24] Por lo que la prueba idónea para acreditar tal extremo es aquella que demuestre que el Especialista, formalmente, tiene ese carácter según el tipo de sociedad de que se trate.[25]

## II. ELEMENTOS PROBATORIOS Y SU VALORACIÓN.

Para acreditar su dicho, el denunciante presentó, por conducto del juzgado que conoce del concurso mercantil, los medios de prueba ya descritos al inicio de esta resolución, a lo que se remite en obvio de repeticiones innecesarias.

### a) Valoración.

Entre los documentos aportados por el Interventor no obra alguno del que pueda advertirse el carácter de socio, en los términos a que se refiere la Ley de Concursos Mercantiles, que el interventor atribuye al especialista, en relación con alguna de las partes a quienes dice está favoreciendo el síndico.

Lo anterior sin desconocer la existencia de sociedades irregulares[26] ya que, en todo caso, para que ello fuera posible, es precisa la existencia de elementos que

---

[24] Artículo 1°.- Esta Ley reconoce las siguientes especies de sociedades mercantiles: - - - I.- Sociedad en nombre colectivo; - - - II.- Sociedad en comandita simple; - - - III.- Sociedad de responsabilidad limitada; - - - IV.- Sociedad anónima; - - - [N. DE E. EN RELACIÓN CON LA ENTRADA EN VIGOR DE LA PRESENTE FRACCIÓN, VÉASE TRANSITORIO ÚNICO DEL DECRETO QUE MODIFICA ESTE ORDENAMIENTO.] - - - [REFORMADA, D.O.F. 14 DE MARZO DE 2016) - - - V.- Sociedad en comandita por acciones; - - - [N. DE E. EN RELACIÓN CON LA ENTRADA EN VIGOR DE LA PRESENTE FRACCIÓN, VÉASE TRANSITORIO ÚNICO DEL DECRETO QUE MODIFICA ESTE ORDENAMIENTO.] - - - [REFORMADA, D.O.F. 14 DE MARZO DE 2016) - - - VI.- Sociedad cooperativa, y - - - [N. DE E. EN RELACIÓN CON LA ENTRADA EN VIGOR DE LA PRESENTE FRACCIÓN, VÉASE TRANSITORIO ÚNICO DEL DECRETO QUE MODIFICA ESTE ORDENAMIENTO.] - - - [ADICIONADA, D.O.F. 14 DE MARZO DE 2016) - - - VII.- Sociedad por acciones simplificada. - - - [N. DE E. EN RELACIÓN CON LA ENTRADA EN VIGOR DEL PRESENTE PÁRRAFO, VÉASE TRANSITORIO ÚNICO DEL DECRETO QUE MODIFICA ESTE ORDENAMIENTO.] - - - [REFORMADO, D.O.F. 14 DE MARZO DE 2016) - - - Cualquiera de las sociedades a que se refieren las fracciones I a V, y VII de este artículo podrá constituirse como sociedad de capital variable, observándose entonces las disposiciones del Capítulo VIII de esta Ley.

[25] Ya porque conste directamente en el acta constitutiva, un acto posterior por el que se convierta en socio; o alguna otra forma fehaciente de demostración, por ejemplo, en términos del artículo 73 de la Ley General de Sociedades Mercantiles, que establece:

Artículo 73.- La sociedad llevará un libro especial de los socios, en el cual se inscribirá el nombre y el domicilio de cada uno, con indicación de sus aportaciones, y la transmisión de las partes sociales. Esta no surtirá efectos respecto de terceros sino después de la inscripción.- - - [ADICIONADO, D.O.F. 14 DE JUNIO DE 2018) - De la inscripción o que se refiere el párrafo anterior deberá publicarse un aviso en el sistema electrónico establecido por la Secretaría de Economía conforme a lo dispuesto en el artículo 50 Bis del Código de Comercio y las disposiciones para su operación.- - - [REFORMADO, D.O.F. 14 DE JUNIO DE 2018) - - - Cualquiera persona que compruebe un interés legítimo tendrá la facultad de consultar este libro, que estará al cuidado de los administradores, quienes responderán personal y solidariamente de su existencia regular y de la exactitud de sus datos.

[26] Artículo 2°.- Las sociedades mercantiles inscritas en el Registro Público de Comercio, tienen personalidad jurídica distinta de la de los socios. - - - Salvo el caso previsto en el artículo siguiente, no podrán ser declaradas nulas las sociedades inscritas en el Registro Público de Comercio. - - - Las sociedades no inscritas en el Registro Público de Comercio que se hayan exteriorizado como tales, frente a terceros consten o no en escritura pública, tendrán personalidad jurídica. - - - Las relaciones internas de las sociedades irregulares se

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

adminiculados unos con otros lleven a concluir lógica, razonada y de manera consistente que el especialista, en efecto, es socio, formal o incluso de manera irregular, de alguna de las partes que el Interventor indica.

Ello es así porque, de las documentales aportadas por el interesado, las cuales ya han sido valoradas en el apartado que antecede, corresponden a copias simples; copias certificadas; copias con sellos y firmas autógrafas; y documentos privados; cuyo valor es el que la ley les atribuye a los de su especie, sin que de alguno de ellos pueda advertirse que el Síndico figure como socio de las partes que refiere.

Así las cosas, en conclusión sobre el aspecto que se analiza, esta Junta Directiva considera que no está acreditado que el especialista sea socio de las partes que el Interventor refiere; por lo tanto, no se acredita la causa de impedimento en trata.

Agotado el análisis de las causas de impedimento tratadas con antelación, conviene señalar que, en lo que se refiere a las previstas por la fracción VI del artículo 328 de la Ley de Concursos Mercantiles, la última parte del mismo precepto establece, en cuanto a su valoración, que serán de libre apreciación judicial.

Así las cosas, se estima de importancia capital hacer las siguientes consideraciones:

### Libre apreciación judicial.

Doctrinalmente, la discrecionalidad se ha entendido como una facultad de libre apreciación que el derecho otorga a los funcionarios públicos para que actúen o no, se dirijan en un sentido o en otro, según el límite que se les ha otorgado de libertad.

Tal atribución se divide en:

    i)    Discrecionalidad (*libertad*) absoluta; y,

---

*regirán por el contrato social respectivo, y, en su defecto, por las disposiciones generales y por las especiales de esta ley, según la clase de sociedad de que se trate. - - - [N. DE E. EN RELACIÓN CON LA ENTRADA EN VIGOR DEL PRESENTE PÁRRAFO, VÉASE TRANSITORIO ÚNICO DEL DECRETO QUE MODIFICA ESTE ORDENAMIENTO.] - - - (ADICIONADO, D.O.F. 14 DE MARZO DE 2016) - - - Tratándose de la sociedad por acciones simplificada, para que surta efectos ante terceros deberá inscribirse en el registro mencionado. - - - Los que realicen actos jurídicos como representantes o mandatarios de una sociedad irregular, responderán del cumplimiento de los mismos frente a terceros, subsidiaria, solitaria (sic) e ilimitadamente, sin perjuicio de la responsabilidad penal, en que hubiere incurrido, cuando los terceros resultaren perjudicados. - - - Los socios no culpables de la irregularidad, podrán exigir daños y perjuicios a los culpables y a los que actuaren como representantes o mandatarios de la sociedad irregular.*

**Scanned with CamScanner**

# IFECOM
**Concursos Mercantiles**   382

ii) Discrecionalidad (*libertad*) relativa (*donde la ley no prevé sea atacada cuando carece de fundamentación o motivación y, por ende, la autoridad no ha justificado el acto*), en que el acto reglado comprende que una norma jurídica predetermina en forma concreta una conducta que el administrador debe seguir.

Dentro de las diferencias principales entre ambos aspectos, se ha destacado que, tratándose de la facultad reglada, para la emisión del acto deben concurrir los requisitos de hecho o de derecho establecidos previamente en la normatividad correspondiente, sin permitir que la autoridad discierna sobre si lo emite o no.

En cambio en la libertad discrecional, el acto puede ser o no emitido, ya que su emisión depende de la apreciación subjetiva del órgano encargado de actuar.

Al respecto, la Suprema Corte de Justicia de la Nación ha sostenido,[27] refiriéndose a la actividad administrativa, que puede obrar de dos maneras:

i) **Por facultad reglada**, donde la actuación de la autoridad administrativa debe ceñirse al marco legal fijado por la norma jurídica que señala la conducta específica que debe seguirse ante la actualización de la hipótesis que la disposición legal prevé; y,

ii) **Por facultad discrecional**, la ley le otorga a la autoridad, dentro de un marco legal un margen de libre apreciación para determinar la forma de su actuar, lo cual permite, que la administración haga una apreciación técnica de los elementos que concurren en un determinado caso.

De este modo, se está en presencia de facultades regladas, cuando la autoridad en virtud de las leyes que rigen su competencia, o con motivo de una instancia o recurso de los particulares, deba pronunciarse al respecto, esto es, existe obligación de hacer; mientras que (*las del inciso ii*) parten de que existe discrecionalidad cuando la ley otorga a la autoridad un amplio campo de aplicación para decidir si debe obrar o debe abstenerse, para



---

*Contradicción de tesis 123/2005-SS, fallada por unanimidad de votos de la Segunda Sala de esta Suprema Corte de Justicia de la Nación, en sesión de treinta de septiembre de dos mil cinco.*

**Scanned with CamScanner**





**IFECOM**

*Concursos Mercantiles*

PODER JUDICIAL DE LA FEDERACION
CONSEJO DE LA JUDICATURA FEDERAL

resolver cuándo y cómo debe obrar, o aun para determinar libremente el contenido de su posible actuación, ha de entenderse que la base toral de este tipo de atribuciones es la libertad de apreciación que la norma concede a las autoridades para actuar o abstenerse, con el propósito de lograr la finalidad que la propia ley señala y, su ejercicio implica, necesariamente, la posibilidad de optar, o de elegir, entre dos o más decisiones, sin que ello represente arbitrariedad.

Estos razonamientos son aplicables, en lo conducente, a la función e importancia de la valoración de la prueba, para efectos de la demostración de los hechos.

Conforme a las bases apuntadas, se estima que la previsión del artículo 328, fracción VI, y el último párrafo de dicho precepto de la Ley de Concursos Mercantiles constituye un supuesto de libre apreciación, a diferencia de las demás fracciones que no contienen una previsión de tal naturaleza.

Esto es así porque, como se tiene visto, si bien el artículo 329 de la Ley Concursal, establece que los Especialistas que se encuentren en alguno de los supuestos previstos en diverso artículo 328 del mismo ordenamiento, deberán excusarse; o, de lo contrario, quedarán sujetos a las sanciones administrativas que resulten aplicables de conformidad con la Ley de la Materia; y de aquéllas que al efecto determine el Instituto. Que, sin perjuicio de lo anterior, el juez de oficio, o bien el Comerciante o cualquier acreedor o interventor por conducto del juez, puedan solicitar al Instituto la sustitución en el cargo, desde el momento en que tengan conocimiento del hecho, independientemente de la responsabilidad penal en que puedan incurrir los especialistas. Y que el estándar de valoración de pruebas es aplicable para aquéllos casos distintos en que el legislador otorgó libertad de apreciación (*interés directo o indirecto; o amistad o enemistad con alguna de las partes que la ley señala*).

En este contexto, conviene señalar algunos de los principales mecanismos de apreciación de la prueba, que son:

1) Sistema legal o de la prueba tasada (*cuando la ley señala por anticipado cuál es el grado de eficacia que el órgano debe atribuir a determinado medio probatorio*);

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

353

2) Sistema de la prueba libre (*cuando el órgano puede apreciar las pruebas ofrecidas, admitidas y desahogadas sin traba legal alguna, de manera que pueda formarse su convicción libremente, haciendo la valoración según su sentir personal, racional, moral, o en conciencia, sin impedimentos de alguna especie y menos de orden jurídico*);

3) **Sistema de libre apreciación**, razonada o de la sana crítica (*cuando el órgano tiene la facultad para determinar en forma concreta la eficacia de cada uno de los elementos que obren en autos, de acuerdo con las reglas de la lógica y las máximas de la experiencia, considerándose como un sistema intermedio entre los anteriores*); y

4) Sistema mixto (*aquel que combina algunos de los sistemas que anteceden*).[28]

En general, la apreciación de la prueba debe ser una actividad intelectual del funcionario encargado de la solución del asunto, lo cual requiere un examen cuidadoso, imparcial y cuidadoso. Lo anterior, como acto de voluntad continua para no dejarse llevar por las primeras impresiones ni por ideas preconcebidas, antipatías o simpatías; y para no aplicar un criterio rigurosamente personal o aislado de la realidad social.[29]

Teniendo en cuenta estas directrices, lo siguiente es la valoración de las pruebas en los términos apuntados.

C) Impedimento del Síndico por ser amigo o enemigo de alguna de las partes.

i) Manifestaciones del Interventor en relación a que el Síndico es amigo de algunas partes del concurso mercantil, y enemigo de otras.

Sobre este tema, el denunciante del impedimento hace valer que el síndico ha manifestado su enemistad para con los dos Acreedores reconocidos que representan aproximadamente el 97% de los créditos a cargo de las comerciantes.

---

[28] Orozco Henríquez, Jesús, *Justicia electoral y garantismo jurídico*, México, Porrúa, 2006, p. 121. Véase Ovalle Favela, José, *Teoría general del proceso*, México, Oxford, 2001, p. 312; y; Varela, Casimiro, op. cit., p. 52.

[29] Sirvent Gutiérrez, Consuelo, "*Sistemas de valoración de la prueba en el proceso civil*", en *Cuadernos Procesales*, Facultad de Derecho de la UNAM, núm. 13, p. 49.

**Scanned with CamScanner**





IFECOM

*Concursos Mercantiles*

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

Las razones que expone el interventor, se basan en las manifestaciones del síndico Fernando Pérez Correa Camarena en el procedimiento del Capítulo 15 seguido ante la juez de Nueva York, Estados Unidos de América de que ha recibido *"amenazas a su persona"* de representantes o asesores legales de los acreedores, lo cual considera el interventor evidencia que tiene un sentimiento de enemistad manifiesta hacia los acreedores reconocidos de las comerciantes, mismos que representan el 97% de los pasivos de éstas.

Así mismo, hace referencia a lo manifestado por el síndico en relación a lo ocurrido en una reunión con los acreedores de la comerciante, en la que consideró que con las manifestaciones del abogado de dichos acreedores, el dio a entender se trataba de una amenaza, para lo cual exhibe escrito de 10 de julio de 2019, presentado ante el Juez Segundo de Distrito en Materia Civil en esta Ciudad, juez del concurso.

Con posterioridad y ante lo manifestado por el síndico en el escrito de 10 de julio de 2019, la Representante de Oro Negro Drilling Pte. Ltd., envió una carta de su representante legal en la que da contestación a las manifestaciones del síndico. Por lo que al margen de que no existió una amenaza, según afirma, lo ocurrido pone de manifiesto la enemistad que tiene el especialista con uno de los principales acreedores reconocidos.

Así como los hechos anteriores, también hace referencia al escrito diverso en que el síndico hace del conocimiento del juez (*escrito de 31 de julio de 2019*), lo que consideró fue una amenaza a uno de sus auxiliares por parte de un representante de Nordic Trustee AS, escrito al que recayó acuerdo del juez del concurso (*05 de agosto de 2019*), en el que exhorta a las partes para que se abstengan de incurrir en manifestaciones denostativas o instigantes.

Con tales hechos, los que además se hicieron constar por el síndico en su primer informe de labores, dice el interventor, constituyen una calumnia del síndico al afirmarlo en un expediente judicial, por lo que **considera que dicha calumnia denota una enemistad manifiesta.**

Con relación a la enemistad manifiesta, el interventor dice que el síndico, en lugar de proteger los intereses de los acreedores y buscar liquidar los activos concursales para realizar el pago en favor de los acreedores reconocidos, se ha concentrado en demandarlos y en incrementar los pasivos concursales indiscriminada e ilegalmente, utilizando los mismos abogados en el extranjero que los accionistas y

**Scanned with CamScanner**

384



IFECOM

**Concursos Mercantiles**

administradores de la quebrada, generando créditos contra la masa que jamás existieron.

Así también trae a cuenta una serie de promociones, escritos, de los que destaca el lenguaje utilizado por el síndico al referirse a los referidos acreedores Nordic Trustee AS, y Oro Negro Drilling Pte. Ltd., y que sostiene el interventor son denostativas por lo que "*SON LA MANIFESTACIÓN DEL SENTIMIENTO DE ENEMISTAD*" que el síndico tiene con tale acreedores, de tal manera que el síndico evidencia, de manera manifiesta, una ENEMISTAD que justifica su destitución.

En el mismo tenor de la enemistad manifiesta sostiene que: "*El síndico persigue el desconocimiento de los derechos de Nordic Trustee, AS, que él mismo ya había reconocido como conciliador en la Lista Definitiva de Créditos, lo que demuestra su enemistad en contra de dicho acreedor*", refiriendo lo siguiente:

Que el especialista, como conciliador en el concurso mercantil y ahora síndico, Fernando Pérez Correa Camarena, suscribió la lista definitiva de créditos en la que fue imputado como acreedor Nordic Trustee AS, así como reconocido en la sentencia de reconocimiento, graduación y prelación de créditos, no impugnada por el especialista.

No obstante lo anterior el interventor considera que se advierte enemistad del síndico en contra de Nordic Trustee AS, en atención a un recurso de revocación (25 de junio de 2019) presentado por el síndico Fernando Pérez Correa Camarena, con el que busca invalidar, ante el mismo juez concursal, los derechos de crédito que ya había éste reconocido por causas que sostiene ya habían hecho valer las comerciantes al momento de presentar su objeciones a la lista provisional.

Lo que afirma, acredita la cercana amistad del síndico con la anterior administración de la comerciante y los abogados que éstos contrataron y de la manifiesta enemistad que tiene el síndico con el principal acreedor Nordic Trustee, AS, al cuestionar lo realizado por el conciliador en este caso su propia labor y no aplicar la sentencia de reconocimiento que el mismo consintió.

Por lo tanto, afirma que la manifiesta enemistad que el síndico tiene con Nordic Trustee AS., está afectando la labor diaria del síndico al arrogarse funciones para

**Scanned with CamScanner**



**IFECOM**
Concursos Mercantiles

perjudicar y desconocer derechos de crédito del mencionado acreedor reconocido.
Por lo que al desconocer actos propios actúa de mala fe.

Así mismo, sostiene que: *"El Síndico impulsó una nueva acción en contra de Nordic Trustee, AS ante el Juzgado Décimo Tercero de Distrito en Materia Civil, no obstante que él reconoció a dicho acreedor y sus garantías en la Lista Definitiva de Créditos que elaboró como Conciliador".*

El interventor considera que el especialista, al presentar la referida demanda y llevar a cabo los actos procesales para que fuese admitida en contra de un acreedor reconocido, implica una manifiesta animadversión o parcialidad manifiesta. Demanda en la que esencialmente solicitaban la declaración judicial como actos ilícitos, nulos los ejecutados por los representantes de Oro Negro Drilling Pte Ltd, Oro Negro Primus Pte. Ltd., Oro Negro Laurus Pte.Ltd, Oro Negro Fortius Pte. Ltd., Oro Negro Decus Pte. Ltd. Y Oro Negro Impetus Pte. Ltd. Actos que según lo transcrito por el interventor han puesto en grave riesgo la viabilidad y economía de las comerciantes.

El interventor considera que el especialista, al haberse desempeñado también como conciliador en el mismo concurso y reconociendo en dicha etapa como acreedor a los acreedores demandados, es indebido que al asumir el cargo de síndico hubiese continuado con los trámites necesarios ante el juzgado a efecto de que fuese admitida la demanda en trámite. Lo que para el promovente implica una manifiesta enemistad que está afectando la labor diaria del síndico.

El interventor continua manifestando en cuanto a la enemistad manifiesta diciendo que: *"Hace unos días, el Síndico intentó nuevamente acciones legales en contra de Acreedores Reconocidos, con lo que se acredita su enemistad manifiesta y parcialidad en contra de éstos".*

El promovente del impedimento refiere que el 26 de septiembre de 2019 el síndico presentó una nueva demanda ante los Tribunales de Nueva York, en la que demanda a Asia Research and Capital Management Ltd; GHL Investments (*Europe*) Ltd; and Ship Finance International Ltd, quienes el síndico califica como tenedoras de bonos garantizados por Integradora. Demanda en la que el síndico - actuando como representante extranjero de Perforadora- demanda: daños, incluidos los daños punitivos, adjudicar honorarios y gastos; intereses previos a la sentencia con la tasa legal máxima, obligar a los demandados a cumplir con los

Scanned with CamScanner



335

finiquitos de 2016 y prohibirles permanentemente cualquier acción adicional en violación a los finiquitos de 2016; y otorgar cualquier alivio adicional que el Tribunal considere justo y apropiado.

Dice que se alió con el Consejo de Administración de las comerciantes y tomando en cuenta que la demanda se suscribe a través del mismo despacho de abogados Quinn Emanuel Urquhart &Sullivan LLP, considera es un ejemplo de la cercana amistad del síndico con dichas personas; que dentro de las funciones del síndico no se encuentran las de iniciar acciones totalmente nuevas en contra de acreedores reconocidos sino las de identificar los activos, tomar control de los mismos, inventariarlos, valuarlos y venderlos con el fin de hacer pago a los acreedores reconocidos.

El Interventor acusa una falta de neutralidad e imparcialidad y que además no presenta estudio que justifique la nueva acción en términos del artículo 20 de la LCM, ni transparentado la contratación de servicios legales. Sigue diciendo el interventor en su escrito: *"La enemistad también es manifiesta, por el hecho de que el Síndico ha omitido devolver un monto Millonario que recibió debido a que calculó mal sus honorarios, al momento en que ya actuaba como Síndico y al amparo del acuerdo de honorarios suscrito por dicho especialista concursal, la comerciante y Nordic Trustee AS."*

Al respecto, el Interventor manifiesta que el síndico, Nordic Trustee AS. y Oro Negro Drilling Pte. Ltd. acordaron un régimen distinto de honorarios y de gastos, para lo cual suscribieron un convenio *(4 de marzo de 2019)*, del que se advierten los siguientes elementos relevantes:

Asientan como fundamento del convenio la regla 41 de las Reglas Generales de la Ley de Concursos Mercantiles.

Así también, el interventor agrega que el comerciante y un grupo de acreedores que representen al menos el 75% de la cantidad de créditos reconocidos pueden acordar un régimen diferente de honorarios y gastos.

Toman en cuenta que las actividades desarrolladas están más allá de los deberes ordinarios y que existen condiciones especiales en esa conciliación por lo que acuerdan establecer un régimen diverso de pago de los honorarios y gastos del

**Scanned with CamScanner**

IFECOM
Concursos Mercantiles

conciliador (se detallan los montos y forma de pago respecto de las actividades de mediación que lleve a cabo en los Estados Unidos de América).

En cuanto a la conciliación bajo la Ley de Concursos Mercantiles, el conciliador sólo recibirá honorarios y montos previstos en las reglas de la LCM y que solo esos pagos se considerarán créditos contra la masa. Los honorarios y gastos se considerarán gastos de mantenimiento verificado conforme al contrato de paralización y Financiamiento ("SFA") y se pagarán de acuerdo a la prioridad establecida en el referido "SAF", que, de conformidad con la Regla 41, el conciliador deberá presentar este contrato al Instituto Federal de Especialistas de Concursos Mercantiles para su consentimiento y que el mismo no se presentara por cuestiones de confidencialidad ante ningún juzgado incluyendo el Segundo de Distrito en Materia Civil en la Ciudad de México y no formara parte del expediente del concurso. No utilizar este contrato para ningún otro propósito que no sea con el único propósito de pagar al conciliador.

Con base en lo anterior, el interventor sostiene que, aunque el síndico desarrolló una mediación transfronteriza y habría de recibir montos específicos, por lo que respecta a honorarios, éste únicamente recibiría lo que disponen las Reglas Generales de la Ley de Concursos Mercantiles.

El interventor señala que el síndico requirió el pago de honorarios generados durante la conciliación sin solicitar previamente la revisión y aprobación del Instituto Federal de Especialistas de Concursos Mercantiles, por lo que al eludir la supervisión del Instituto, ello le permitió cobrar montos de dinero en exceso que aceptó devolver pero que no ha devuelto, además de no emitir la factura respectiva y no cobrar el Impuesto al Valor Agregado correspondiente lo que implica violación a la Regla 46 de las Reglas Generales de la L.C.M. Es decir, que el síndico envió una primera cuenta de fecha 29 de mayo de 2019 en la que requirió el pago de 766,415.53 UDIs, y posteriormente envió una segunda cuenta de fecha 25 de junio de 2019, en la que requirió el pago de 577,644.65 UDIs, más $133,316.15 pesos por gastos de viaje a Nueva York, pero cuando envió la cuenta corregida, ya Nordic Trustee AS había hecho la transferencia electrónica por el equivalente de 766,415.53 UDIs, sin que a la fecha se hubiese realizado la devolución, existiendo una diferencia considerando un valor UDI de 6.298689 pesos por UDI; resultando $1,055,692.92 M.N. cantidad que adeuda al principal acreedor reconocido Nordic Trustee AS, aunque sostiene ya pasaron más de dos meses desde que se comprometió a devolver el monto recibido en exceso, atribuyendo el interventor

Página 60 de 106

Scanned with CamScanner

356



IFECOM
Concursos Mercantiles

que no reintegra la cantidad por el pago hecho en exceso debido a la enemistad que tiene con los acreedores reconocidos.

El denunciante afirma que lo anterior pone de manifiesto la falta de parcialidad y neutralidad del síndico quien dice hace lo posible por defender los intereses de los despachos de abogados de las comerciantes, de los anteriores miembros del Consejo de Administración de Integradora y Accionistas de las comerciantes, reteniendo una devolución millonaria. Alude que por faltas similares, pero de menor gravedad el Instituto Federal de Especialistas de Concursos Mercantiles sancionó a un especialista en el concurso mercantil 130/2006 tramitado ante el Juzgado Décimo de Distrito en Materia Civil en esta Ciudad.

Sobre el mismo tema el interventor señala que *"El Síndico está defendiendo como gastos ordinarios de los Comerciantes pagos en fraude de acreedores y en violación de medidas cautelares dictadas por el Juez Concursal, que se hicieron a la firma de investigadores privados Black Cube contratada por las Comerciantes con la finalidad de investigar a los Acreedores Reconocidos"* (así como a funcionarios del gobierno federal), lo que, al margen de otras faltas, también evidencia la manifiesta enemistad en contra de los acreedores reconocidos.

Refiere que en escrito de 17 de septiembre de 2019, el síndico defiende los pagos hechos a Quinn Emmanuel Urquhart & SullivanLLP, al que acompaña el contrato de las comerciantes celebrado con Quinn, así como el contrato que Quinn, dice que avalado por las propias quebradas, celebraron con la firma de investigación, Black Cube (*B.C. Strategy UK Ltd*) de fecha 30 de agosto de 2017.

Del contrato celebrado entre Quinn y Black Cube, destaca: que los Grupos de Objetivos: Funcionarios de Pemex [*Director General, Director de Finanzas, Director Administrativo, Director Operativo; otros funcionarios y otros ex empleados*].; y Tenedores de Bonos. [*se enuncian*]. Se pretendería identificar las entidades y canales a través de los cuales los objetivos han orquestado su "*conspiración contra el cliente*" (comerciantes). Identificar canales de financiación y canales de medios de comunicación. El proveedor durante la duración del proyecto, Black Cube asignará un equipo de inteligencia expertos, lo que incluyen expertos en seguridad cibernética. El costo del proyecto se valora en 100,000 GBP mensuales hasta 300,000 GPB en total, y para el caso de que el cliente utilizara la información producto de inteligencia se le pagaría de manera adicional 180,000 GBP, en caso de ser utilizada y como resultado logre con éxito un acuerdo con

Scanned with CamScanner





**IFECOM**

Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACION
CONSEJO DE LA JUDICATURA FEDERAL

Pemex o bien con los tenedores de bonos, recibiría una tarifa de éxito de 1,000,000 GBP. Para el caso de que con la información decidiera iniciar un litigio recibiría una tarifa de éxito del 3% de los fondos recompensados al cliente.

Dice el interventor que el síndico está avalando y defendiendo pagos que hicieron las comerciantes en la etapa de conciliación en fraude de acreedores y en violación a las medidas cautelares para actividades que cataloga de ilícitas (*violación del secreto bancario, hackers, extorsión*).

Al haber exhibido el propio síndico el referido contrato para tratar de acreditar la licitud de los pagos hechos a Quinn, dice, pone de manifiesto la enemistad que el síndico tiene con los acreedores reconocidos, pues con esto se advierte que el síndico está dispuesto a solapar pagos para financiar actos presumiblemente ilícitos en contra de los tenedores de bonos, por lo que debe sustituirse al síndico.

A manera de Conclusión, el interventor recapitula lo expresado en el cuerpo de su escrito de solicitud de sustitución, respecto a la enemistad manifiesta del síndico hacia los acreedores, destacando: Los falsos señalamientos de amenazas a su persona, al lenguaje utilizado por el especialista en diversos escritos al referirse a las acreedoras Oro negro Drilling Pte. Ltd y a Nordic Trustee AB. Finalmente lanza una serie de preguntas a los integrantes de la Junta Directiva del Instituto Federal de Especialistas de Concursos Mercantiles, a las que el promovente da respuesta en sentido afirmativo, para concluir que si el síndico ha manifestado su enemistad hacia los referidos acreedores, justifica su remoción ante el impedimento consistente en enemistad manifiesta previsto en la fracción VI del artículo 328 de la Ley de Concursos Mercantiles. Enemistad que, según el interventor, se hace manifiesta también en el hecho de querer coercionar a los acreedores para obtener una mejor oferta de adquisición de los activos al ejercitar recursos y acciones en contra de los acreedores ya reconocidos que ahora pretende desconocer. Pretendiendo, además, avalar pagos que se hicieron en fraude de acreedores y en violación a las medidas cautelares de dictó el juez concursal. Refiere que el síndico se ha aliado con los anteriores miembros del Consejo de Administración y Accionistas de Integradora, a efecto de utilizar información obtenida en una investigación ilícita para presionar una reestructura de los tenedores de bonos.

En cuanto a la amistad cercana con acreedores y supuestos acreedores de las Comerciantes, y con la Comerciante, el interventor afirma, en esencia, que la conducta observada por el síndico se adecua al supuesto de impedimento

Scanned with CamScanner

387

**IFECOM**
Concursos Mercantiles

establecido en la fracción VI del artículo 328 de la Ley de Concursos Mercantiles, por las siguientes razones: Dice al respecto *"El síndico asumió la posición de defender un pago hecho en fraude de acreedores de acreedores a favor de despacho de abogados norteamericano instruido y contratado por el otro Gerente de Perforadora y Consejero de Integradora, Gonzalo Gil White, y adicionalmente, reconoce a dicho despacho de abogados un crédito de $92 millones de pesos en lo que él califica como lista definitiva de acreedores, no obstante que dicho despacho no aparece siquiera como acreedor en la Sentencia de Reconocimiento, Graduación y Prelación de Créditos."*

Refiere que en el primer informe del síndico y en el reporte a que hace referencia el artículo 190 de la Ley de Concursos Mercantiles incluye una relación de pasivos en la que se encuentra como acreedor Quinn Emmanuel Urquhart & Sullivan LLP., por créditos contra la masa generados durante la fase de conciliación, y acota que es el despacho que representa los intereses del anterior Gerente General de Perforadora y Consejero de Integradora, en al menos dos litigios en Nueva York.

El interventor sostiene que este crédito no fue reportado en la etapa de conciliación por el conciliador (*ahora síndico*), sostiene que sin acudir a solicitar el reconocimiento de crédito se trata de un crédito *"que por arte de magia"* fue reconocido (*monto cercano a los cinco millones de dólares*), actuando incluso dice, en contra de las constancias del propio concurso mercantil, ya que en resolución de 27 de diciembre de 2018, el juez del concurso ya se pronunció en el sentido de que los honorarios de abogados no son créditos contra la masa, que no tienen privilegio y deben ser considerados como créditos comunes.

El denunciante afirma que el despacho Quinn Emmanuel Urquhart & Sullivan LLP, a quien le reconoce como acreedor en los términos mencionados, es justamente quien promovió una demanda hace unos días en contra de tenedores de bonos cuyos créditos ya fueron reconocidos, lo que afirma el interventor *"¡no puede haber mayor conflicto de intereses!".*

El interventor hace referencia al incidente promovido por Oro Negro Drilling Pte. Ltd, quien presentó en la vía incidental demanda para recuperar las cantidades pagadas por la comerciante a Quinn Emmanuel Urquhart & Sullivan LLP en fraude de acreedores y violación de las providencias precautorias, y la manera en que contesta el citado incidente el síndico, en el sentido de ser pagos legítimos que el despacho referido no debe retornar.

Scanned with CamScanner



**IFECOM**

Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

Al respecto, el mismo denunciante del impedimento que se atiene, expone que se trata de pagos hechos en fraude de acreedores para cubrir de manera anticipada servicios y facturas que todavía no se habían prestado, en violación de la fracción V del artículo 114 de la Ley de Concursos Mercantiles y refiere que en el informe presentado por el síndico al Juez del concurso mediante escrito de 25 de junio de 2019 se contiene una tabla de pagos realizados al despacho Quinn Emmanuel Urquhart & Sullivan LLP, resultando que el referido despacho recibió pagos anticipados de servicios que prestaría en el futuro y que ni siquiera estaban facturados, es decir llevó a cabo pagos de deudas no vencidas relacionadas con servicios no prestados, inexistentes a la fecha de pago, dentro del periodo de retroacción de la sentencia concursal, por lo que se hicieron en fraude de acreedores, en términos de los artículos 112 y 114 de la Ley de Concursos Mercantiles.

Señala que del referido informe se deprende que $4,915,607.46 (cuatro millones novecientos quince mil seiscientos siete dólares 46/100 moneda de curso legal en los Estados Unidos de América), fueron recibidos antes de que se emitiera la factura respectiva, y de que fueran prestados, por lo tanto antes de que fuese exigible.

Informe que, además desde el auto admisorio de 05 de octubre de 2017, se decretó que Perforadora tenía la prohibición de realizar transferencias de recursos a terceros o valores a favor de terceros y en consecuencia los siete millones de dólares que recibió representaron un pago hecho en fraude de acreedores.

Indica que está favoreciendo al despacho Quinn Emmanuel Urquhart & Sullivan LLP, al reconocer crédito a su favor cuando el citado despacho estuvo en aptitud de que al menos $3,494,134.35 de los cinco millones de dólares que el síndico ha reconocido, pudo haber solicitado su reconocimiento mediante recurso de apelación en contra de la sentencia de reconocimiento que venció el 14 de febrero de 2019. [Enlista las facturas desde el 10 de octubre de 2018 y hasta el 14 de febrero de 2019, sostiene pudo reclamar su reconocimiento].

Sostiene que con tales hechos se advierte que pretende favorecer al referido despacho en franca violación al artículo 122 de la Ley de Concursos Mercantiles, intento de fraude de acreedores que se agrava al pretender ser realizado por el síndico.

Página 64 de 106


Scanned with CamScanner

338

## IFECOM
### Concursos Mercantiles

Continua exponiendo las razones: *"El afán de violar los principios de publicidad y transparencia que debe regir su actuación, en beneficio del Despacho de GGW, igualmente evidencian la cercana amistad con dicho supuesto acreedor de las Comerciantes".*

Asevera que el síndico violó en favor del despacho Quinn Emmanuel Urquhart & Sullivan LLP los principios de publicidad transparencia que se establecen en el artículo 197 de la Ley de Concursos Mercantiles. Que el 7 de junio de 2019 el despacho Quinn Emmanuel Urquhart & Sullivan LLP, en representación de Gonzalo Gil White, en su carácter de representante extranjero de Integradora y Perforadora , presentó dentro del expediente relativo al procedimiento Capítulo 15, Caso Nº. 18-11094 radicado en la Corte de Bancarrota del Distrito del Sureste de Nueva York de los Estado Unidos, una solicitud de aprobación de una orden por la cual se autorice a Perforadora e Integradora la celebración de un contrato de Compraventa a Plazo Pagado Anticipadamente, esto es una compraventa de intereses litigiosos.

Considera que aunque el referido despacho hizo parecer la referida operación como un mero refinanciamiento, no obstante que realmente se trata de una compraventa, el síndico dio su apoyo y compareció ante la Juez de Nueva York para defender dicho convenio, lo que dice a la fecha, no ha sido dado a conocer al juez del concurso ni a los acreedores reconocidos los términos y condiciones del referido contrato. Que por el contrario el síndico pretendió que se mantuviera sellado o confidencial, y que el especialista incluso llegó a realizar afirmaciones falsas y tergiversar el contenido de resoluciones dictadas por el Juez Concursal ante el Juez del Capítulo 15, faltando a su deber de probidad, resaltando que el síndico fue insistente en que fuera aprobada tanto por el juez del concurso como por la Juez del capítulo 15 dicho acuerdo de voluntades que dice resultaba violatorio de la Ley Concursal.

El interventor expresa que las afirmaciones falsas se advierten del escrito de 16 de julio de 2019, en que el síndico tácitamente negó que la compraventa de Derechos Litigiosos se tratara de una venta de derechos litigiosos de las comerciantes quebradas como activos de las mismas, sino que lo catalogó como un acuerdo de voluntades celebrado entre las quebradas, sus abogados y una empresa fondeadora de recursos.

Scanned with CamScanner



IFECOM

Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

Refiere que en audiencia de 16 de julio de 2019 respecto de la solicitud de sellado la principal conclusión a la que llegó la juzgadora del capítulo 15 es que la compraventa de derechos litigiosos constituye una solicitud formulada en términos de los dispuesto por la sección 363 del Código de Bancarrota de Nueva York, lo cual implica necesariamente que se trata de una solicitud de venta de activos de las comerciantes, manifestándose también respecto de la idoneidad y preferencia que tenía el Juzgado Concursal para resolver respecto de la venta de cualquier activo de las comerciantes. De tal manera que, según el denunciante, lo manifestado por el síndico ante el juez concursal es contradictorio, y que suponiendo se tratara de un financiamiento como lo afirmó el síndico, el mismo tenía como objetivo pagar honorarios legales de abogados los cuales no son gastos ordinarios de comerciantes quebradas, por lo que estaría violando lo expresamente resuelto por el juez concursal en auto de 27 de diciembre de 2018, así como lo dispuesto en los artículos 223 y 224 de la Ley de Concursos Mercantiles, ya que se estaría dando un pago anticipado de honorarios legales.

**La opacidad en perjuicio de la Masa en beneficio del despacho Quinn Emmanuel Urquhart & Sullivan LLP, dice el interventor, es un elemento de prueba adicional que permite acreditar la cercana amistad entre éstos lo que justifica su sustitución.**

Continúa manifestando que: *"El Síndico esta colitigando como representante de la Quebrada Perforadora Oro negro, S. de R.L de C.V., con los accionistas y miembros del Consejo de Administración de Integradora de Servicios Petroleros Oro Negro, S.A.P.I de C.V."*

El interventor insiste en que, como se advierte de la demanda que adjunta como "anexo 16" al escrito de solicitud de sustitución, el síndico tomó la decisión de colitigar con los accionistas y miembros del Consejo de Administración de Integradora de Servicios Petroleros Oro Negro, S.A.P.I de C.V. en contra de tenedores de bonos, lo que acusa una cercana amistad con dichas personas y una manifiesta enemistad hacia los tenedores de bonos.

Reitera que el especialista actúa como un abogado más del despacho Quinn Emmanuel Urquhart & Sullivan LLP, o un accionista en lugar de desarrollar su función, ya que, que en lugar de liquidar activos litiga en beneficio de amigos y en contra de los acreedores reconocidos, sin que de la demanda se desprenda que tiene como objetivo la enajenación de los bienes de la quebrada ni que sea

Scanned with CamScanner

**IFECOM**
Concursos Mercantiles

339

beneficio para la masa concursal y que al utilizar los servicios del despacho Quinn Emmanuel Urquhart & Sullivan LLP, el cual tiene un claro conflicto de interés al representar a los anteriores administradores de las quebradas y representar al síndico, ello en evidente perjuicio de la masa concursal.

Que al no presentar ningún estudio que justifique la nueva acción que intentó en términos del artículo 210 de la Ley de Concursos Mercantiles ni transparentado ante el interventor la contratación de servicios legales acusa una falta de neutralidad e imparcialidad.

El Interventor concluye que el síndico favorece de manera ilegal a un supuesto acreedor de la comerciante reconociendo créditos y pagos cuando no son, que esconde al juez concursal y acreedores un convenio que sirve a intereses de los accionistas de la concursada y miembros del consejo de administración de Integradora, lo que denota una amistad cercana; falta de neutralidad e imparcialidad y dice no debiera permitirse que continúe en su encargo.

**I. HECHO A DEMOSTRAR.**

**1) Amistad o enemistad del síndico con alguna de las partes.**

Ante todo, es importante recordar que la materia de este impedimento se centra en los supuestos que prevé el artículo 328 de la Ley de Concursos Mercantiles, sin que sea posible el análisis de elementos que atañen las obligaciones del especialista, como la rendición, contenido y forma de presentación de los informes, actividades que por ley le son propias.

Así, la materia de estudio en este apartado se constriñe, al análisis de las causas por las que el interventor denuncia la pretendida amistad o enemistad del síndico con las partes.

**a) Valoración.**

Ante todo, cabe enfatizar que la amistad o enemistad entre las personas es un aspecto subjetivo, por lo que representa dificultades importantes desde el punto de vista epistemológico para su apreciación.



**Scanned with CamScanner**





**PODER JUDICIAL DE LA FEDERACIÓN**
CONSEJO DE LA JUDICATURA FEDERAL

No obstante, es de señalar que existen elementos cuya exteriorización permite advertir la empatía o animadversión de alguna de las partes respecto de la otra; y, sin embargo, precisamente por la subjetividad apuntada, su comprobación ha de ser de un estándar probatorio más restrictivo.

Se afirma lo anterior porque, en los contextos sociales, por ejemplo, las reglas de trato social cambian según el ámbito en que se desarrollen los distintos tipos de relaciones. Siendo así, no significan lo mismo para todas las personas en todos los entornos los comportamientos y trato entre las personas de un entorno específico, frente a otros donde las costumbres son distintas.

Las máximas de la experiencia permiten afirmar que en algunos círculos existen prácticas donde las palabras indecentes son signos de un carácter, no necesariamente de enemistad; y, en cambio, existen ciertos ámbitos en los que el mismo comportamiento envía mensajes de confianza.

De esta índole, estos mismos mensajes, con el mismo vocabulario fuera de contexto en donde se emitieron, darían lugar a un amplio espectro de interpretaciones, según las costumbres de quienes los valoren.

En otros casos, la amabilidad, el lenguaje altisonante, un trato cortés, respetuoso educado y amable son la pauta de conducta que se procura en entornos refinados; incluso se regula que sean, al menos respetuosos, en los procesos judiciales.[30]

Aun así, reconociendo que ya de por sí los litigios significan el enfrentamiento de posturas de las partes, derivado de los intereses en conflicto, las personas no están exentas de exaltarse y comunicar al juez su sentir respecto de las actuaciones de los demás involucrados en el procedimiento, mediante juicios de valor que evidencian sobresalto.

Cabe agregar que, incluso, estos comportamientos han sido catalogados por los estudiosos de la materia como argumentos *ad hominem* (atacan a la persona[31]),

---

[30] *Artículo 54.- Los jueces, magistrados y ministros tienen el deber de mantener el buen orden, y de exigir que se les guarde el respeto y consideración debidos, tanto por parte de los litigantes y personas que ocurran a los tribunales, como por parte de los funcionarios y empleados de éstos, y sancionarán inmediatamente, con correcciones disciplinarias, cualquier acto que contravenga este precepto. Si algún acto llegare a constituir delito, se levantará acta circunstanciada para consignarla al Ministerio Público. ... La imposición de la corrección disciplinaria se decretará en cuaderno por separado.*
[31] *Véase Los argumentos jurídicos y las falacias. Jaime Cárdenas García. p. 153 y sigs. https://archivos.juridicas.unam.mx/www/bjv/libros/8/3983/14.pdf*

**Scanned with CamScanner**

390

**IFECOM**

Concursos Mercantiles

cuando califican positiva o negativamente el comportamiento de alguno de los interlocutores

Finalmente, la realización de actividades del especialista en el procedimiento es, de por sí, la forma en que desarrolla su función, de donde resultaría riesgoso sostener que por determinada actuación existe amistad o enemistad entre las partes, cuando la conducta o actuación del especialista no necesariamente obedezca a la empatía o enemistad respecto de unos y otros en el procedimiento.

En definitiva, las manifestaciones que atacan la calidad de las personas en un procedimiento, aunque subjetivas, cobran relevancia para efectos de la actualización de la causa de impedimento que prevé la Ley de Concursos Mercantiles; y, sin embargo, no se actualiza, por regla general, cuando una de las partes en el proceso formula manifestaciones ofensivas contra otra ya que, si bien es cierto que se trata de expresiones que atentan contra la dignidad de las partes, también lo es que su existencia no implica desconocer que las partes en el juicio deben conducirse con respeto hacia quienes formen parte de la relación procesal, es decir, no significa que puedan proferir ofensas, pues las conductas que impidan mantener el orden y exigir el respeto pueden dar lugar a la imposición de medidas disciplinarias.

Se cita en apoyo a lo anterior, en lo conducente y por analogía, la tesis que se inserta.

> "**IMPEDIMENTO. LAS MANIFESTACIONES OFENSIVAS EXPRESADAS POR ALGUNA DE LAS PARTES EN EL JUICIO DE AMPARO CONTRA EL JUZGADOR NO CONSTITUYEN, POR REGLA GENERAL, UN ELEMENTO OBJETIVO DEL QUE PUEDA DERIVARSE EL RIESGO DE PÉRDIDA DE IMPARCIALIDAD A QUE SE REFIERE LA FRACCIÓN VIII DEL ARTÍCULO 51 DE LA LEY DE AMPARO.** Esa disposición legal prevé que los Ministros de la Suprema Corte de Justicia de la Nación, los Magistrados de Circuito, los Jueces de Distrito, así como las autoridades que conozcan de los juicios de amparo deberán excusarse cuando ocurra, entre otras causas de impedimento, la relativa a que se encuentren en una situación diversa a las especificadas en el propio precepto, que implique elementos objetivos de los que pudiera derivar el riesgo de pérdida de imparcialidad. Ahora bien, ese supuesto normativo no se actualiza, por regla general, cuando una de las partes en el proceso formula manifestaciones ofensivas contra el juzgador de amparo, ya que si bien es cierto que se trata de expresiones que atentan contra su dignidad, también lo es que como rector del proceso, aquél desempeña una función pública, la jurisdiccional, que ejerce exclusivamente con base en el expediente que le toca resolver y en el derecho; pero sobre todo, su posición se debe distinguir por la templanza,





**Scanned with CamScanner**





PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

IFECOM
Concursos Mercantiles

*así como por la moderación de las pasiones y los sentimientos, lo que le permite decidir el juicio ajeno a los intereses de las partes y a toda situación que altere la prudencia con la que debe valorar la causa sometida a su conocimiento, y es esto lo que impide poner en riesgo la imparcialidad que debe imperar en la administración de justicia. Esta conclusión no implica desconocer que las partes en el juicio de amparo deben conducirse con respeto hacia quienes formen parte de la relación procesal, es decir, no significa que puedan proferir ofensas, pues las conductas que impidan mantener el orden y exigir el respeto pueden dar lugar a la imposición de medidas disciplinarias, en términos del artículo 236 de la Ley de Amparo".[32]*

Sobre las bases apuntadas, se aprecia que, dada la dificultad para comprobar un comportamiento subjetivo respecto de un tercero -se insiste-, es exigible un estándar de prueba intenso, a efecto de no errar en el juicio sobre la conducta desplegada y que ésta signifique necesariamente evidencia de amistad o enemistad, debido a que, por regla general, la realización de actos procesales no puede revelar por sí misma la empatía o enemistad con alguna de las partes.

Es pertinente agregar que, en caso de que la manifestación sobre la empatía o enemistad con alguna de las partes proviene de la parte que se ubica en una posición asimétrica (*esto es, porque sea la parte con poder de decisión, para resolver o, de alguna manera, para actuar y definir el asunto de que se trate*), el estándar probatorio es menos intenso, pues se trata de la conducta exigida a quien tiene el poder de decisión sobre un asunto, cuyo sustento está en las exigencias éticas propias del cargo.

Por estas razones, basta que un juzgador, por ejemplo, manifieste encontrarse impedido para conocer de un asunto, pues tal proceder resulta absolutamente compatible y exigible por la conducta que de él se espera, en aras de la independencia judicial. No obstante ello, el impedimento debe ser calificado por

---

[32] *Décima Época Registro: 2018067 Instancia: Segunda Sala Tipo de Tesis: Jurisprudencia Fuente: Gaceta del Semanario Judicial de la Federación Libro 59, Octubre de 2018, Tomo I Materia(s): Común Tesis: 2a./J. 100/2018 (10a.) Página: 991 Contradicción de tesis 401/2016. Entre los sustentados por los Tribunales Colegiados Quinto en Materia Administrativa y Quinto en Materia Civil, ambos del Tercer Circuito, Primero en Materia Civil del Segundo Circuito y Tercero en Materia Administrativa del Cuarto Circuito. 22 de agosto de 2018. Cinco votos de los Ministros Alberto Pérez Dayán, Javier Laynez Potisek, José Fernando Franco González Salas, Margarita Beatriz Luna Ramos y Eduardo Medina Mora I. Ponente: Alberto Pérez Dayán. Secretaria: Guadalupe de la Paz Varela Domínguez. Criterios contendientes: El sustentado por el Quinto Tribunal Colegiado en Materia Administrativa del Tercer Circuito, al resolver el impedimento 6/2015, y el diverso sustentado por el Quinto Tribunal Colegiado en Materia Civil del Tercer Circuito, al resolver los impedimentos 10/2015 y 11/2015.Tesis de jurisprudencia 100/2018 (10a.). Aprobada por la Segunda Sala de este Alto Tribunal, en sesión privada del cinco de septiembre de dos mil dieciocho. Esta tesis se publicó el viernes 05 de octubre de 2018 a las 10:15 horas en el Semanario Judicial de la Federación y, por ende, se considera de aplicación obligatoria a partir del lunes 08 de octubre de 2018, para los efectos previstos en el punto séptimo del Acuerdo General Plenario 19/2013.*



**Scanned with CamScanner**

391



**IFECOM**

Concursos Mercantiles

un tercero, porque sólo así se puede garantizar un grado más objetivo de valoración.

Por último, es fácil advertir que esta calificación por un tercero, en beneficio de la objetividad, garantiza también que el impedido (que deba excusarse), no utilice esa posibilidad como herramienta para evadir el cumplimiento de sus deberes.

Con base en las consideraciones precedentes, hecha la valoración de las pruebas aportadas por el denunciante, efectuada páginas atrás en este mismo acuerdo (consistentes en copias certificadas, documentos privados y copias simples, a los que se remite en obvio de repeticiones innecesarias), no queda acreditada la existencia de amistad o enemistad del especialista con relación con alguna de las partes ya que, como se anunció, por una parte, aquéllas que se refieren al cumplimiento o incumplimiento de los deberes del especialista con motivo de su cargo, no pueden ser materia de análisis en relación al impedimento en trata. Por otra parte, las actuaciones efectuadas por el síndico no revelan, bajo un estándar de prueba rígido, la existencia clara de amistad o enemistad con alguna de las partes; a lo anterior se suma que, con independencia de las manifestaciones de las partes en el procedimiento, de ellas tampoco se sigue, bajo el estándar de prueba anunciado (aunado a la valoración de las pruebas aportadas), la existencia de amistad o enemistad que afecte la imparcialidad del especialista, por las razones aquí analizadas.

En este sentido, en conclusión, de la valoración de las documentales aportadas, se concluye que no está demostrada la causa de impedimento del especialista por tener amistad o enemistad con alguna de las partes.

En lo conducente y aplicable por analogía, se cita la tesis que se inserta.

"IMPEDIMENTO. AMISTAD ESTRECHA COMO CAUSAL DE. NO SE PRUEBA CON LA CERTIFICACION EMITIDA POR NOTARIO PUBLICO. La causal de impedimento prevista por la fracción VI del artículo 66 de la Ley de Amparo, no se prueba con la certificación emitida por notario público respecto a que ante él dos particulares ratificaron el escrito privado en que manifiestan haber escuchado al abogado de la contraparte del alegante en el juicio de amparo, jactarse de llevar buena amistad con el magistrado contra el que formula, pues tal certificación, conforme al artículo 202 del Código Federal de Procedimientos Civiles, de



**Scanned with CamScanner**





PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

**IFECOM**
Concursos Mercantiles

*aplicación supletoria, sólo prueba que ante el notario público se ratificaron las manifestaciones de referencia, mas no la verdad de las mismas."*[13]

En consecuencia, al declarar infundada la causa de impedimento, se hace innecesario pronunciarse sobre los argumentos del especialista en los cuales sostiene que no se actualiza la causa examinada.

Finalmente, corresponde ahora ocuparse de los reclamos del interventor, por cuanto hace al **interés directo o indirecto del especialista en el concurso mercantil en que fue designado.**

### D) Interés directo o indirecto del especialista en el concurso mercantil.

En obvio de repeticiones, se remite a las manifestaciones del denunciante, resumidas en los apartados anteriores, de donde interesa analizar, concretamente, aquéllas en que el interventor hace valer actos que, a su parecer, evidencian el interés del especialista en el asunto. Fundamentalmente, por aquéllos actos del síndico con los que ha intentado obtener la contratación del despacho de abogados del que es socio.

Así también, conforme a lo anunciado, se procede a la valoración de dicha causa bajo el método de libre apreciación, al que se hizo referencia.

### I. HECHOS A DEMOSTRAR

El denunciante del impedimento sostiene que las pruebas aportadas reflejan que el especialista tiene interés en el asunto; y, por lo tanto, un conflicto de intereses, fundamentalmente, porque el especialista **propuso al despacho de abogados del que es socio, para que atendiera los asuntos de las partes en el concurso mercantil.**

---

[13] *Época: Octava Época Registro: 207378 Instancia: Tercera Sala Tipo de Tesis: Aislada Fuente: Semanario Judicial de la Federación Tomo III, Primera Parte, Enero-Junio de 1989 Materia(s): Común Tesis: IX/89 página: 327 Impedimento 202/88. Plácido Ocaños Rodríguez. 1o. de febrero de 1989. Unanimidad de cuatro votos. Ponente: Mariano Azuela Güitrón. Secretaria: María Estela Ferrer Mac Gregor Poisot. Nota: En el informe de 1989, esta tesis aparece bajo el rubro: "IMPEDIMENTO. LA CAUSAL DE AMISTAD ESTRECHA NO SE PRUEBA CON LA CERTIFICACIÓN EMITIDA POR NOTARIO PÚBLICO RESPECTO A QUE ANTE EL DOS PARTICULARES MANIFESTARON HABER ESCUCHADO AL ABOGADO DE LA CONTRAPARTE DEL ALEGANTE, JACTARSE DE LLEVAR BUENA AMISTAD CON EL MAGISTRADO.".*

Scanned with CamScanner

Concursos Merc.....

Al respecto, cabe adelantar, el estándar probatorio resulta menos intenso, debido a los principios e intereses involucrados en el concurso mercantil la conducta exigible al especialista (*profesionalismo, imparcialidad, independencia, transparencia*), en relación con los bienes de la empresa que, conforme a la Ley de la Materia, son de interés público.

Pues bien, el artículo 328 de la Ley de Concursos Mercantiles, según se tiene dicho, establece que no podrán actuar como visitadores, conciliadores o síndicos en el procedimiento de concurso mercantil de que se trate, las personas que se encuentren en alguno de los supuestos que el propio precepto señala, entre los que se encuentran los de la fracción VI, según la cual, el especialista " *[tenga] interés directo o indirecto en el concurso mercantil o ser amigo cercano o enemigo manifiesto del Comerciante o de alguno de sus acreedores.*"

Así, como primer paso, importa establecer el tipo de interés a que se refiere la porción normativa en comento.

1) Interés

Ante todo, es necesario indicar el significado de la palabra interés, según el Diccionario de la Lengua, de la Real Academia Española, como sigue:

Del lat. *interesse* 'importar'.

1. m. Provecho, utilidad, ganancia.

2. m. Valor de algo.

3. m. Lucro producido por el capital.

4. m. Inclinación del ánimo hacia un objeto, una persona, una narración, etc.

5. m. pl. bienes.

6. m. pl. **Conveniencia o beneficio en el orden <u>moral o material</u>.**[34]

*(Énfasis añadido)*

Según se ve, el interés (*directo o indirecto*) puede ser de cualquier índole: económico (*material*) o moral (*intangible*).

Ciertamente, el interés económico es el más común; sin embargo, se estima que la ley no se refiere únicamente a éste, sino a cualquier otro motivo que lleve al

---

[34] Consultable en: https://dle.rae.es/?id=LtqQXGI

Scanned with CamScanner





**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

especialista a tomar o a impulsar una decisión en cierto sentido, aun las que están fuera de las funciones formales que le son propias en el concurso mercantil; pues la sola existencia de ese interés rompe con la imparcialidad y tiende a afectar los demás principios que rigen la materia concursal y la actuación que de él se espera.

Conforme a lo anterior, es posible sostener que el interés a que se refiere la fracción VI del artículo 328 de la Ley de Concursos Mercantiles, como causa de impedimento, es cuando el especialista busca obtener un provecho, utilidad o ganancia, económica o moral; perceptible si se ve alguna inclinación del ánimo hacia un objeto, una persona o una finalidad.

De esta índole el interés **directo** del especialista resulta de los actos por los que busque la obtención de tal beneficio para sí; o bien, será **indirecto** si se trata de ese beneficio a favor de terceros con los que tenga relación.

En contrapartida, los actos del especialista encaminados a obstaculizar la intervención de las demás partes en el concurso mercantil, podría significar la intención de obtener beneficios para sí o para terceros con los que tenga relación, a partir de un trato adverso, parcial, respecto de aquéllos con las que no tiene relación, o no significan beneficio alguno para sus intereses personales.

**2) Estándar probatorio.**

Si bien la causal es bastante amplia, en cuanto subsume cualquier tipo de interés, ya sea directo o indirecto, lo cierto es que dicho interés debe aparecer como algo real, serio, debe estar en relación inmediata con el objeto mismo del asunto a decidir (*en este caso sobre la actuación del especialista en el concurso mercantil*); debe ser de tal trascendencia que, teniendo en cuenta el caso concreto, implique un verdadero trastorno en la imparcialidad y pueda afectar su capacidad, ya sea de juzgamiento; o en el desempeño eficaz y ajustado a derecho respecto de la labor que se desempeña, en este caso, del síndico.

En cualquier caso, **las causas de impedimento previstas por la Ley de Concursos Mercantiles en relación a los especialistas tienen como propósito el evitar un conflicto de intereses**, en este caso, entre el síndico en el concurso mercantil y aquéllos de los que pueda resultar beneficiado él mismo o alguna de las personas con las que tenga relación y que por ello sean afectadas la objetividad de sus decisiones.

Página 74 de 106

Scanned with CamScanner

**IFECOM**
**Concursos Mercantiles**

393

Al respecto conviene abundar para efectos de explicitar la motivación de esta decisión.

### 3) Conflicto de intereses.

Los conflictos de intereses son problemas éticos (*muy generalizados*) que, precisamente por esta razón, merecen una atención especial, tanto desde el punto de vista legal como del de la ética aplicada a las organizaciones y profesiones. Están presentes en numerosas decisiones de la vida de profesionales, directivos y empleados, así como de las empresas y organizaciones, públicas o privadas. No todos ellos son necesariamente actuaciones inmorales; pero todos ellos potencialmente pueden serlo y son, por lo tanto, una vez identificados, es preciso prevenir los conflictos de intereses.

Un conflicto de intereses tiene lugar en cualquier situación en que un interés interfiere o puede interferir con la capacidad de una persona, organización o institución para actuar de acuerdo con el interés de otra parte, siempre que aquella persona, organización o institución tenga una obligación (*legal, convencional, fiduciaria o ética*) de actuar de acuerdo con el interés de la otra parte. Sus características son el que una persona, organización o institución (*empresa, oficina pública, gobierno, ONG, etc. en adelante "agente"*) que tiene una obligación o deber legal, contractual, convencional, profesional o fiduciario (*y, por tanto, ético*), o que ocupa una posición de confianza, de actuar de acuerdo con los intereses de otra parte (*persona, organización o institución*); en donde el agente tiene otro interés, que desea promover o dificultar; ya sea un interés personal (*económico o no*) del propio agente, de otra persona o institución (*parientes, amigos, comunidad religiosa o étnica, empresa, ONG, sindicato, partido político, etc.*), incluyendo un deber contractual, convencional o profesional con esa otra persona o institución, respecto del cual resulta incompatible total o parcialmente, con el interés principal de la función de que se trata; de modo que imposibilita o dificulta, o puede (*o se teme que pueda*) imposibilitar o dificultar, el cumplimiento de aquel deber del agente, en esta caso del especialista, con el interés principal de su función (*para con las partes en el concurso mercantil*).

En suma, el conflicto de intereses es la posible afectación del desempeño imparcial y objetivo de las funciones, ya sea de los Servidores Públicos o empleados del sector privado, la academia y la sociedad civil en general, **ocasionando la**

**Scanned with CamScanner**




**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

intervención por motivo de su empleo, cargo o comisión en cualquier forma, en la atención, tramitación o resolución de asuntos, en los cuales tenga intereses personales, familiares o de negocios, o contravengan lo establecido en la Ley.

De esta manera, es claro que el conflicto de intereses trasciende al ámbito de los involucrados en el concurso mercantil y atañe a aspectos fundamentales de transparencia (*incluso para evitar fenómenos que puedan derivar en actos de corrupción*).

Como se puede observar, aun cuando el concepto *"conflicto de interés"* está conformado por elementos identificables, éste no deja de abarcar algunos aspectos abstractos (*en cierto modo, indeterminados*), respecto de los cuales es importante hacer los siguientes apuntes, con el propósito de motivar su actualización en el caso en estudio.

### 4) Conceptos indeterminados.

Definir un concepto jurídico indeterminado puede ser complejo y requerir de una especial valoración, sobre todo cuando el lenguaje empleado en su redacción implique conceptos científicos, tecnológicos, axiológicos, económicos, políticos, sociológicos o de otras disciplinas, pues de suyo requiere acudir a ellas.

Frente a tal caso es menester acudir a valores, principios e intereses que resulten compatibles con el fin de esclarecer el contenido y alcance de dichos conceptos. Lo anterior a efecto de que, si bien la subsunción en el caso donde se aplique puede ser discutible y opinable; su actualización no por ello implica estar en zonas de incertidumbre decisoria o probabilidad que, necesariamente, conducen a una discrecionalidad (*cognitiva o de juicio*).

Así, a través de un razonamiento motivado, tales imprecisiones y vaguedad en la apreciación intelectiva y cognoscitiva de un concepto indeterminado, adquiere claridad, en lugar de aparecer como un amplio espectro de discrecionalidad y apreciaciones subjetivas.

Efectivamente, al tenor de la intelección de los fines de la norma, aunado a la estimación de valores, políticas, principios e intereses en conflicto, todo ello

Scanned with CamScanner

394

**IFECOM**
Concursos Mercantiles

situado en su contexto e interactuando, se obtiene que la autoridad debe encontrar una solución o respuesta en el caso concreto.

Para completar la idea conviene distinguir que los conceptos jurídicos indeterminados pueden ser:

a) Conceptos de experiencia que consisten en apreciar hechos.

b) Conceptos de valor donde, además de apreciar los hechos, se implican juicios de valor que pueden ser técnicos.

Ante este escenario se exige un proceso argumentativo que implica valoraciones político-morales vigentes en el medio social, pues sólo así es posible adscribir un significado a los conceptos indeterminados frente a la situación prevaleciente.

Este ejercicio es exigible para la autoridad que debe motivar cómo es que valoró y connotó, hecho y derecho, ya que a pesar de las apariencias se trata de un esquema condicional en el que se debe aplicar la regla a través de la subsunción y asignación de las consecuencias que el fin de la norma exige atender -intención y propósito del sistema normativo-.

En definitiva (*conforme a la teoría de los conceptos jurídicos indeterminados*) es posible reducir la discrecionalidad administrativa, eliminando la arbitrariedad de todo aquello que deba ser juzgado en términos de legalidad o justicia, pues la interpretación del concepto no necesariamente deriva del texto de la disposición que lo establece, sino del sentido contextual del ordenamiento.35

3) **Análisis de los elementos para calificar los conflictos de interés en materia concursal.**

La primer herramienta para advertir los elementos según los cuales puede existir un conflicto de interés tratándose del concurso mercantil, se encuentra en la

---

35 *Vease. Época: Novena Época Registro: 177342 Instancia: Tribunales Colegiados de Circuito Tipo de Tesis: Aislada Fuente: Semanario Judicial de la Federación y su Gaceta Tomo XXII, Septiembre de 2005 Materia(s): (A) Tesis: I.4o.A.59 K Página: 1431 CONCEPTOS JURÍDICOS INDETERMINADOS. LA FORMA DE ACTUALIZARLOS AL CASO CONCRETO EXIGE UN PROCESO ARGUMENTATIVO QUE DEBE REDUCIR LA DISCRECIONALIDAD Y LAS APRECIACIONES SUBJETIVAS, ELIMINANDO LA ARBITRARIEDAD.CUARTO TRIBUNAL COLEGIADO EN MATERIA ADMINISTRATIVA DEL PRIMER CIRCUITO. Revisión fiscal 49/2005. Administrador de lo Contencioso de Grandes Contribuyentes en representación del Secretario de Hacienda y Crédito Público, del Jefe del Servicio de Administración Tributaria y de la autoridad demandada. 13 de abril de 2005. Unanimidad de votos. Ponente: Jean Claude Tron Petit. Secretaria: Claudia Patricia Peraza Espinoza.*

Scanned with CamScanner





PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

exposición de motivos, pues en ella se contienen algunos de los principios y aspectos que el legislador tuvo en cuenta y propuso con la expedición de la Ley, de la que destacan, en lo conducente, los siguientes apartados.

## a) Exposición de motivos.

"...

*Para que la legislación concursal resulte eficaz es necesario que se caracterice por ser predecible equitativa y transparente. La predecibilidad se consigue estableciendo reglas claras y precisas que permitan su aplicación de manera consistente y por lo tanto, ofrezcan certeza y desincentiven los litigios. La equidad, por su parte no se alcanza dando un trato igual a los distintos acreedores, sino reconociendo las diferencias y, sobre todo, evitando el fraude y el favoritismo. Por, último la transparencia obliga a proveer de información suficiente a los diferentes participantes para que todos puedan ejercer sus derechos, y obliga también a que los procedimientos judiciales sean abiertos y que las decisiones se fundamenten y se hagan del conocimiento del público.*

*Las características anteriores permiten establecer los incentivos apropiados para que acreedores y deudores potenciales puedan tomar las mejores decisiones y éstas contribuyan a elevar la eficiencia del sistema productivo. Además, una vez que la empresa ha incurrido en incumplimiento generalizado de sus obligaciones, la ley debe contribuir a que las partes puedan alcanzar acuerdos privados con la menor participación del Estado o si ello no es posible, se ejecute y expedita y ordenadamente los derechos, en las mejores condiciones posibles. Consecuentemente. los criterios más importantes que orientaron el desarrollo de la Iniciativa fueron los siguientes:*

*a) Maximizar el valor social de la empresa;*

*b) Conservar el equilibrio entre deudor y acreedores, para que ambos sean plenamente respetados;*

*c) Inducir el flujo de información relevante que permita a los interesados participar constructivamente;*

*d) Respetar en lo posible las relaciones contractuales preexistentes.*

*e) Adecuar los incentivos para facilitar un arreglo voluntario entre los deudores y acreedores;*

*f) Propiciar las soluciones extrajudiciales;*

*g) Apoyar a los jueces en aspectos técnicos y administrativos del procedimiento, para que puedan enfocar sus esfuerzos a las tareas jurisdiccionales y*

*h) Simplificar los trámites judiciales y procedimientos administrativos para hacerlos más transparentes y expeditos, reduciendo oportunidades e incentivos para litigios frívolos.*

*Descripción de la Iniciativa de Ley de Concursos Mercantiles*

*A continuación se presenta una descripción de los principales elementos de la Ley de Concursos Mercantiles que se somete a la consideración del H. Congreso de la Unión.*

*...*

*Una preocupación de la Comisión redactora de la Iniciativa fue la de reorganizar las funciones del juez, del síndico y de la intervención de tal manera que éstas se puedan desarrollar en forma más independiente, disponiendo cada uno de los órganos de plazos determinados para el desempeño de sus funciones, con el*

Página 78 de 106

Scanned with CamScanner

395

**IFECOM**

Concursos Mercantiles

*objeto de dar mayor transparencia a los procedimientos concursales y evitar que se prolonguen demasiado tiempo.*

*...*

*Para asegurar que se contara con las personas que tienen los requisitos necesarios para llevar a cabo su tarea con competencia y honestidad, así como la transparencia en su designación la Iniciativa propone la creación del Instituto Federal de Especialistas de Concursos Mercantiles, como un órgano dependiente del Consejo de la Judicatura Federal y cuya función principal será la de autorizar a las personas que acreditan cubrir los requisitos necesarios, para prestar servicios de visitadores, conciliadores o síndicos. También, entre otras funciones, tendrá la de la solicitud del juez del concurso, designar por sorteo de entre las personas acreditadas, a quienes prestarán las funciones de visitadores, conciliadores y síndicos. De esta manera se prevé contar con un medio transparente de selección de los especialistas que actuarán en los procedimientos concursales. Se atribuye así a dicho Instituto la concentración de las listas de síndicos, y de los legajos de cada una de las personas que en ellas figuren, para centralizar los datos de toda la República, y facilitar la depuración de las listas, así como la publicidad de ellas y de algunos de los actos que conciernan a las funciones que la Iniciativa les encomienda.*

*Con esta reforma se procura aliviar la tarea del juez en los procedimientos concursales sin privarlo de su función primordial, y permitir que la labor de los especialistas produzca resultados inmediatos y reales en la solución de los problemas de una empresa en crisis.*

*Por otro lado, atendiendo a la intención de que todo el procedimiento concursal sea transparente y confiable, se reconoce que la enajenación de la masa puede ser vulnerable a abusos y prácticas irregulares, por lo que es necesario establecer en la Ley los incentivos y controles necesarios para asegurar que nadie se aproveche indebidamente del procedimiento, propiciando la participación constructiva y la vigilancia mutua de todos los interesados.*

*La solución adoptada por la Comisión consiste en permitir al síndico proponer al juez cualquier mecanismo de enajenación consistente con su mandato de lograr el máximo valor, explicando y justificando debidamente su propuesta, que se hace del conocimiento del comerciante y sus acreedores. Si, pasado un plazo razonable, no manifiestan su desacuerdo con la propuesta el comerciante o una proporción significativa de los acreedores, el juez autoriza al síndico a proceder conforme a la misma. Si la propuesta es objetada, la enajenación del conjunto de bienes de que se trate se realiza mediante un mecanismo de subasta pública, cuidadosamente regulado en la propia Ley.*

*De esta manera, se permite al síndico la oportunidad de convencer a los interesados de proceder conforme a un mecanismo de enajenación ad hoc. En caso de persistir cualquier causa de desconfianza, se recurre necesariamente al sistema preestablecido que asegura la transparencia y minimiza la posibilidad de sospechas e impugnaciones.*

*..."*

*Lo anterior, como se puede observar, constituye los lineamientos que consideró el legislador como pautas rectoras del concurso mercantil.*

**Scanned with CamScanner**



**IFECOM**

Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN

### b) Interpretación de la Ley. (resoluciones jurisdiccionales al respecto)

El siguiente elemento para dar contenido al concepto de *"conflicto de intereses"* en materia concursal, son las resoluciones de los tribunales federales, al interpretar la Ley de la Materia, de la que interesan las consideraciones del siguiente precedente que se inserta a continuación.

> *"...*
>
> *114. Por su parte, los preceptos del 181 al 196 [de la Ley de Concursos Mercantiles] ponen en evidencia que [el síndico] no goza de facultades de autoridad unilaterales, sino que, como se dijo en párrafos precedentes, se sustituye en la persona del comerciante como un mandatario para la conservación de la empresa, a través de la toma de posesión de la administración y bienes de la concursada.*
>
> *115. Inclusive, conforme al precepto 191, segundo párrafo, <u>al tomar posesión de los bienes y derechos sobre la masa, su situación será la de un depositario judicial, lo que permite concluir que no tiene facultades unilaterales como de las que goza una autoridad para efectos del amparo, sino únicamente de auxiliar del juzgador.</u>*
>
> *116. De esa manera, es entendible que el artículo 185, le permita enajenar rápidamente bienes por su naturaleza o los títulos valor prontos a su vencimiento, al igual que las facultades para abrir sin presencia o autorización del comerciante, toda correspondencia que llegue al domicilio de la empresa, pues se presume que es relativa a sus operaciones (artículo 194); así como se requiere la presencia de aquél, quedando obligado a presentarse ante el síndico (artículo 195).*
>
> *117. Todo lo anterior, pues se parte de la base que se sustituye como si se tratara del órgano máximo de administración de la empresa concursada, lo que, se reitera, es lógico a fin de salvaguardar su conservación, pero no implica que se trate de una autoridad sino, por el contrario, pone aún más en evidencia que está en un plano de <u>subordinación respecto al juzgador rector del proceso.</u>*
>
> *118. Dentro de esa etapa, por orden del Juez, el síndico convocará a la subasta, podrá enajenar bienes de la masa cuando requieran inmediata venta, porque no puedan conservarse sin que se deterioren o corrompan, de lo cual sólo informará al Juez y a las partes del procedimiento; podrá solicitar peritajes, avalúos y demás estudios que estime necesarios para la satisfacción de sus obligaciones y deberá presentar cada mes un informe al Juez del estado que guarden las inversiones que existieran (artículos 207, 208, 210 y 215).*
>
> *119. En esos términos, es evidente la subordinación del síndico a las facultades legales decisorias definitivas que le confiere la ley al juzgador, por lo que <u>debe considerarse que únicamente se trata de un auxiliar, mas no así de una autoridad ejecutora,</u> aun cuando el artículo 166 de la Ley de Concursos Mercantiles confiere el carácter de "órganos del concurso mercantil" al visitador, al conciliador y/o al síndico, dado que su actuación está supeditada a la aprobación, revisión y decisión definitiva del Juez.*
>
> *120. Partiendo de la base de todo lo anterior, aun cuando en el caso en estudio se trata del Servicio de Administración y Enajenación de Bienes quien fungirá como*

Página 80 de 106

Scanned with CamScanner

**IFECOM**   396

Concursos Mercantiles

*...izador, conciliador y síndico, se concluye que no ejerce una autoridad propia o delegada, pues, como se explicó, se abstrae de las facultades que ordinariamente le confiere la ley que rige su actuación, para adoptar aquellas establecidas en la Ley de Concursos Mercantiles.*

*121. Así, conforme a ésta no goza de la representación del poder público dentro de por autoridad debe entenderse toda persona investida por la ley para dictar, según su propio criterio y bajo su responsabilidad, determinaciones de cumplimiento obligatorio y para cumplir o hacer cumplir esas mismas determinaciones, en el caso que nos ocupa, el síndico sólo tiene facultades de administración y de dominio sobre los bienes del concursado, pero equiparables a las de un mandatario, de un administrador, de un depositario judicial, e inclusive, similares a las de un interventor con cargo a la caja, todo ello sujeto a la aprobación, revisión y decisión final del rector del procedimiento.*

*122. Luego, no puede sostenerse que unilateralmente imponga una determinación con base en una facultad exclusiva que le confiera la ley, aun en contra de la voluntad de las partes del concurso, creando, modificando o extinguiendo situaciones de hecho y/o derecho, sino que en realidad quien sí lo hace es el juzgador.*

*123. En cambio, el Servicio de Administración y Enajenación de Bienes, al actuar como visitador, conciliador y síndico en un concurso mercantil, se abstrae de su carácter de organismo descentralizado de la administración pública federal, con personalidad jurídica y patrimonio propios, y fundamentalmente, de las atribuciones que como tal le confiere la Ley Federal para la Administración y Enajenación de Bienes del Sector Público, para pasar a ser dentro del proceso concursal, un auxiliar del Juez que conoce de este último.*

*124. Además, la relación del síndico respecto a las partes, no es de supra a subordinación, al ser administrador, depositario judicial, e inclusive equipararse a un mandatario, sujetos sus actos a la aprobación y revisión del juzgador, de ahí que tenga el carácter de auxiliar de la justicia y no de autoridad ordenadora y/o ejecutora, al carecer de atribuciones decisorias y de ejecución que atribuidas en forma absoluta e irrestricta.*

*125. De no considerarse en esa manera, sería tanto como concluir que los interventores con cargo a la caja, los administradores, los depositarios judiciales, e inclusive, a los mandatarios, que actúan en otros procedimientos como los de carácter fiscal y/o civil, cuyas funciones son análogas al caso concreto, deben reputarse como autoridades para efectos del amparo.*

*126. De esta forma, los efectos de los actos reclamados en los juicios de donde derivó la presente contradicción de tesis, no conllevan la necesidad de considerar al Servicio de Administración y Enajenación de Bienes como autoridad para efectos del amparo, al actuar como síndico en concursos mercantiles, pues carece de facultades legales para desplegar actos unilaterales o en ejecución, a través de los cuales extinga alguna situación jurídica derivada del procedimiento, dado que su actuación, se reitera, está sujeta a aprobación y revisión del rector del proceso, y la calidad con la que participa en él sólo es de auxiliar en la administración de justicia.*

**Scanned with CamScanner**





**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

127. *En otras palabras, la actuación de ese organismo como síndico en el concurso mercantil, ya sea respecto a la resolución que declaró el concurso mercantil o respecto de las medidas precautorias dictadas por el Juez concursal, no es de autoridad ordenadora ni ejecutora, sino como mero auxiliar de la justicia, pues todo lo que lleve a cabo en relación con esos actos reclamados, queda sujeto a autorización y revisión final de la autoridad judicial.*[36]

[36] *Así se consideró en la jurisprudencia de la Décima Época Registro: 2011403 Instancia: Plenos de Circuito Tipo de Tesis: Jurisprudencia Fuente: Gaceta del Semanario Judicial de la Federación Libro 29, Abril de 2016, Tomo II Materia(s): Común, Civil Tesis: PC.I.C. J/24 C (10a.) Página: 1545 CONCURSO MERCANTIL. EL SERVICIO DE ADMINISTRACIÓN Y ENAJENACIÓN DE BIENES, AL ACTUAR COMO SÍNDICO, NO TIENE LA CALIDAD DE AUTORIDAD PARA EFECTOS DEL JUICIO DE AMPARO. Acorde con el artículo 76 de la Ley Federal para la Administración y Enajenación de Bienes del Sector Público, el Servicio de Administración y Enajenación de Bienes, es un organismo descentralizado de la administración pública federal, con personalidad jurídica y patrimonio propios, cuyo objeto es la administración, enajenación y destino de los bienes señalados en el artículo 1 de esa ley, así como el cumplimiento de las atribuciones establecidas en el artículo 78 de la misma legislación, entre las cuales tiene facultades para fungir como visitador, conciliador y síndico en concursos mercantiles y quiebras, de conformidad con la ley que regula esa materia, debiendo recaer invariablemente tales designaciones en ese ente, invariablemente, tratándose de empresas aseguradas. Sin embargo, cuando actúa con alguno de esos caracteres, se abstrae de las atribuciones que regularmente le confiere la ley que lo rige y se sujeta al marco jurídico del concurso mercantil, respecto del cual, la Ley de Concursos Mercantiles, en su artículo 7o., indica que el Juez es el rector del procedimiento y tendrá las facultades necesarias para dar cumplimiento a lo que ese ordenamiento prevé, aun que se pueda modificar cualquier plazo o término que éste fije salvo que lo faculte expresamente para hacerlo, siendo responsable, inclusive, del incumplimiento de sus facultades legales. Por su parte, de acuerdo con los derechos y obligaciones que este último ordenamiento contiene respecto del síndico, se obtiene que su actuar queda subordinado a las facultades decisorias definitivas que le confiere la ley al juzgador, por lo que debe considerarse que únicamente se trata de un auxiliar, mas no de una autoridad, en virtud de que sus actos son como administrador, depositario judicial e inclusive se equiparan a los de un mandatario, sujetos a la aprobación y revisión del rector del proceso. Así, el Servicio de Administración y Enajenación de Bienes al actuar con facultades de síndico, no ejerce una facultad propia o delegada, ni goza de la representación del poder público dentro de su actuar en el procedimiento de concurso, por lo que tampoco impone unilateralmente una determinación con base en una facultad exclusiva que le confiere la ley, aun en contra de la voluntad de las partes del concurso, creando, modificando o extinguiendo situaciones de hecho y/o derecho. Además, su relación no es de supra a subordinación al ser administrador, depositario judicial e inclusive equipararse a un mandatario, quedando sujetos sus actos a la aprobación y revisión del juzgador, de ahí que no tenga el carácter de auxiliar de la justicia y no de autoridad ordenadora y/o ejecutora para efectos del juicio de amparo. PLENO EN MATERIA CIVIL DEL PRIMER CIRCUITO. Contradicción de tesis 14/2015. Entre las sustentadas por los Tribunales Colegiados Tercero y Noveno, ambos en Materia Civil del Primer Circuito. 2 de febrero de 2016. Mayoría de doce votos de los Magistrados María del Carmen Aurora Arroyo Moreno, Jaime Aurelio Serret Álvarez, Ethel Lizette del Carmen Rodríguez Arteaga, Eliseo Puga Cervantes, Carlos Manuel Padilla Pérez Vertti, Adalberto Eduardo Herrera González, Ma. del Refugio González Tamayo, Marco Polo Rosas Baqueiro, Fernando Rangel Ramírez, Alejandro Sánchez López, Arturo Ramírez Sánchez y Carlos Arellano Hobelsberger. Ausente: Martha Gabriela Sánchez Alonso. Disidente: Víctor Francisco Mota Cienfuegos. Ponente: Indolfer Infante Gonzales. Encargado del engrose: Fernando Rangel Ramírez. Secretario: Tomás Zurita García. Tesis contendientes: Tesis I.3o.C.213 C (10a.), de título y subtítulo: "CONCURSO MERCANTIL ESPECIAL. EL SÍNDICO DE LA EMPRESA CONCURSADA AL TENER FUNCIONES REGULADAS EN UNA NORMA GENERAL, TIENE EL CARÁCTER DE AUTORIDAD RESPONSABLE, PARA EFECTOS DEL JUICIO DE AMPARO.", aprobada por el Tercer Tribunal Colegiado en Materia Civil del Primer Circuito y publicada en el Semanario Judicial de la Federación del viernes 12 de junio de 2015 a las 9:30 horas, y en la Gaceta del Semanario Judicial de la Federación, Décima Época, Libro III, junio de 2015, página 1970, y Tesis I.9o.C.26 C (10a.), de título y subtítulo: "CONCURSO MERCANTIL. EL SERVICIO DE ADMINISTRACIÓN Y ENAJENACIÓN DE BIENES, NO TIENE EL CARÁCTER DE AUTORIDAD RESPONSABLE EJECUTORA, PARA EFECTOS DEL JUICIO DE AMPARO.", aprobada por el Noveno Tribunal Colegiado en Materia Civil del Primer Circuito y publicada en el Semanario Judicial de la Federación del viernes 30 de octubre de 2015 a las 11:30 horas, y en la Gaceta del Semanario Judicial de la Federación, Décima Época, Libro 23, Tomo IV, octubre de 2015, página 3886. Esta tesis se publicó el viernes 08 de abril de 2016 a las 10:08 horas en el Semanario Judicial de la Federación y, por ende, se considera de aplicación obligatoria a partir del lunes 11 de abril de 2016, para los efectos previstos en el punto séptimo del Acuerdo General Plenario 19/2013.*



Scanned with CamScanner

397



**IFECOM**
Concursos Mercantiles

### c) Principios para la eficiencia de los procedimientos de insolvencia.
(Código de ética y conductas exigibles al especialista)

Conforme a lo hasta aquí expuesto, es razonable afirmar que el especialista de concursos mercantiles debe actuar conforme a los principios que hagan eficiente el concurso mercantil; y, que de tales principios destacan de manera relevante el de profesionalidad e integridad de los especialistas, pues deben ser competentes para ejercer las funciones a ellos conferidos y deben actuar con transparencia, profesionalismo, imparcialidad, independencia, honradez y honestidad.

Siendo así, la actuación de los especialistas debe estar regida por actos que la hagan **transparente**, pues ello constituye un elemento clave, central, de su responsabilidad. Por lo tanto, deben abstenerse de llevar a cabo actos con el ánimo de influenciar las decisiones o interferir en la independencia del juez y conservar el equilibrio entre las partes, sin pretender inclinar sus actos en favor de alguna de ellas, o en perjuicio de otra.

El especialista debe saber distinguir entre los actos que deben ser disponibles al público, y los registros del tribunal deben estar disponibles para su inspección y copia, de aquellos actos que debe realizar con sujeción a las reglas de confidencialidad. Tal transparencia permite al público formarse opiniones respecto del sistema de insolvencia a través de los medios de comunicación y de otros canales. Los síndicos deben ser independientes y actuar estándares que reflejen los requerimientos de la legislación y las expectativas públicas de justicia, imparcialidad, transparencia y responsabilidad.

En cuanto a su actuación, el Instituto Federal de Especialistas de Concursos Mercantiles, es un ente constituido de manera independiente y distinto del especialista, que sólo actúa como regulador y supervisor de la actuación de los especialistas con miras, en su caso, a revocar su autorización.

El **profesionalismo** e integridad exigidos al especialista emanan de las facultades sobre el deudor y sus bienes; por lo tanto, tiene el deber de proteger tales bienes y su valor, lo cual está regulado en la ley, así como por los mecanismos para asegurar su correcto cumplimiento.

Conforme a la naturaleza de los deberes del especialista, su perfil resulta muy variado; ya que pueden no estar inmersos exclusivamente en trabajos de

**Scanned with CamScanner**





**IFECOM**
Concursos Mercantiles

insolvencia, de modo que pueden ser abogados o contadores, generalmente pero no necesariamente miembros de una rama concreta para administrar la insolvencia (*como un título en economía o derecho; o tener una especialización particular, tal como la administración comercial o de propiedades; o no poseer una calificación especial pero haber sido designados en base a su experiencia*).

No obstante lo anterior, en todos los casos, sus facultades de administración y toma de decisiones en relación a los bienes está sujeta a revisión y aprobación.

Es cierto que la función del síndico implica negociar y acordar con los acreedores, reunir y disponer de los bienes, iniciar acciones legales para recuperar bienes, contratar a los profesionales necesarios para asistir al administrador en llevar a cabo sus responsabilidades, etc; y, sin embargo, por esas mismas razones no le está permitido actuar por cuenta propia ocultando información; sino que, por el contrario, se le exige que sea transparente.

En este sentido, con esas cualidades se busca garantizar que cualquiera sea el tipo de insolvencia, la actuación de especialista se desarrolle conforme a los más altos estándares profesionales y éticos, pues resultan de capital importancia; no sólo los intereses de aquellos involucrados en la insolvencia, sino el interés general sobre los intereses privados.

Tomando en cuenta todo lo antes indicado, es posible señalar algunas de las pautas bajo las cuales debe actuar el especialista, las cuales dan contenido, en primer lugar, a las normas de conducta que debe observar en sus actos y al cumplir con sus funciones; y, en segundo lugar, a explicitar algunas de las directrices que permitan identificar si actúa con apego a los principios que sean compatibles con la responsabilidad que se le ha encomendado.

**d) Contenido, desarrollo, significado e implicaciones de los Valores del Especialista de Concursos Mercantiles, en cuanto a su conducta y desempeño.**

Al ser un facilitador del proceso en auxiliar al órgano jurisdiccional, no puede tomar partido por alguna de las partes involucradas en el concurso mercantil o actuar con sujeción o algún agente externo. Es decir, debe ser **imparcial**.

**Scanned with CamScanner**

398

**IFECOM**
Concursos Mercantiles

El valor en trata se traduce en la actitud del Especialista frente a influencias extrañas a su función, provenientes de las partes en los procesos de concursos mercantiles donde ha sido designado y a ningún otro agente externo. Consiste en actuar con ausencia absoluta de designio anticipado o de prevención a favor o en contra de alguna de las partes y, por lo tanto, evita el conceder ventajas o privilegios ilegales a cualquiera de las partes.

El especialista debe rechazar cualquier dádiva que provenga de alguna de las partes o de terceros; evitar hacer o aceptar invitaciones de las partes en las que el propio especialista considere que se verá comprometida su imparcialidad; abstenerse de citar a las partes o personas vinculadas con ellas de manera oculta, o sin dar cuenta de ello o de emitir cualquier opinión que implique comprometer las funciones para las que fue designado en el concurso mercantil; y mantener una actitud firme, inalterable por influencias extrañas a su función, provenientes incluso del sistema social, para actuar desde la perspectiva de sus propias funciones y no a partir de presiones o intereses extraños.

Por las mismas razones, el especialista debe rechazar cualquier recomendación que tienda a influir en la tramitación o resolución de los asuntos que se sometan a su potestad; pues lo contrario se traduciría en violar el deber de cumplir con rectitud el ejercicio de su función; por lo que debe actuar denunciando cualquier acto que tienda a vulnerar su independencia; y evitar involucrarse en actividades o situaciones que puedan directa o indirectamente afectar su independencia.

El especialista, se insiste, debe abstenerse de recomendar, insinuar o sugerir –incluso si lo hiciera con un fin legítimo–, en beneficio propio, por conducto de terceros o para aquéllos con quienes mantenga vínculos que afecten su imparcialidad e independencia, el uso de información que tienda a generar conflictos de interés en la función que desempeña.

En cuanto al **profesionalismo**, el especialista actúa aplicando su experiencia, conocimientos, habilidades y aptitudes, como experto que es en la materia concursal y se mantiene actualizado en ella. Este valor se traduce en que el especialista debe mostrar disposición para ejercer sus funciones de manera responsable y seria, con capacidad y aplicación relevantes. Por lo tanto, el

Scanned with CamScanner





**IFECOM**

Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

especialista debe abstenerse de cualquier acto que pueda afectar la respetabilidad propia de su cargo, tanto en el ámbito público como en el privado.

Todo especialista tiene el deber de actualizarse permanentemente en sus conocimientos; por lo que se capacita en el perfeccionamiento de los adquiridos, así como la obtención de conocimientos nuevos para efectos de su función. Procura constantemente acrecentar su cultura en las ciencias auxiliares sobre los asuntos que se le han encomendado. Estudia con acuciosidad los asuntos en que deba intervenir. Acepta sus errores y aprende de ellos para mejorar su desempeño, además de que guarda celosamente el secreto profesional.

El especialista está obligado a actuar a todas las partes del concurso mercantil con respeto, consideración y amabilidad.

El especialista encomendado a ello, administra con diligencia, esmero la empresa de la que se haga responsable por razones de su cargo. Cumple puntualmente con las obligaciones encomendadas, en tiempo y forma, de manera pulcra y ordenada; y con sus obligaciones hasta el límite de sus posibilidades, y sabe cuándo separarse de su cargo, cuando su estado de salud u otros motivos personales, no le permitan desempeñar eficientemente sus funciones, de manera ejemplar para que los demás lo hagan de la misma manera en que les corresponda.

**Acorde con estas exigencias, el especialista debe buscar con afán que sus acciones reflejen la credibilidad y confianza propias de su responsabilidad.**

Por cuanto hace a la **excelencia**, el especialista debe hacer las cosas buscando la perfección en el desempeño, el manejo de los tiempos y los resultados. El significado de este valor acarrea que el Especialista se perfecciona cada día para desarrollar sus funciones; es decir, que el especialista sabe actuar con prudencia en la labor encomendada y en las relaciones con las partes del proceso. Asume plenamente las consecuencias de sus actos, resultado de las decisiones que toma.

En situaciones adversas, el especialista debe resistir las influencias nocivas, soporta las molestias y se entrega con valentía para vencer las dificultades y cumplir con su función; y aceptar con lealtad los vínculos implícitos en su adhesión a la Institución a la que pertenece, de tal modo que refuerza y protege, en su trabajo cotidiano, el conjunto de valores que aquélla representa. Mantiene la

**Scanned with CamScanner**

399



**IFECOM**
Concursos Mercantiles

adecuada organización y planificación en el trabajo a su cargo; y se abstiene de lesionar los derechos y dignidad de los demás.

El especialista debe cuidar que su comportamiento habitual tanto en su vida pública como privada, esté en concordancia con el cargo y función que desempeña.

En definitiva, la conducta exigida a un especialista es que cumpla diligentemente sus obligaciones; y, una vez tomada una decisión, lleva a cabo los actos necesarios para su cumplimiento, aunque surjan dificultades externas o internas.

Adicionalmente, el especialista debe ser sabedor de sus insuficiencias, para poder superarlas, y también reconoce sus cualidades y capacidades que aprovecha para desempeñar de la mejor manera posible su trabajo.

En el despeño de la función del especialista, cobra también una importancia capital el valor **honestidad**. Conforme a este valor, el especialista se debe distinguir por la rectitud de su conducta obteniendo para sí y para otros tan solo el provecho que la propia ley le reconoce. Es decir, que observa un comportamiento probo, recto y honrado.[37]

Con base en todo lo hasta aquí expuesto, es posible sostener que el estándar de prueba, en relación con la posible existencia de un interés, del que derive también un conflictos de interés del especialista, es menos intenso, en razón de la conducta que le es exigible, así como por la naturaleza de la materia concursal, de interés público, aunado a la función de supervisión del Instituto en la materia.

**F)** Valoración de pruebas sobre la existencia de un posible interés del especialista en el concurso mercantil en que fue designado.

1). Documental pública (copia certificada de la carta de 27 de junio de 2019, que el Síndico dirigió al representante legal de Nordic Trustee AS.).

---

Scanned with CamScanner





**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACION
CONSEJO DE LA JUDICATURA FEDERAL

En el documento ya referido (*en relación al conflicto de intereses y no de que el síndico sea abogado de alguna de las partes*); se afirma que, ante la negativa del despacho Guerra González y Asociados, S.C., el **Síndico propuso de continuar con la representación de la comerciante en los diferentes procedimientos legales en que es parte, a través de la firma de abogados Solórzano, Carvajal, González y Pérez Correa, S.C. ("*Solcargo*"), de la que es socio el síndico, la cual aceptaba hacerse cargo de inmediato de los diversos procedimientos judiciales con un porcentaje del 66% inferior a lo ofertado al despacho Guerra González y Asociados.**

Como se dijo al analizar la diversa causa de impedimento (*fundada en que el especialista es abogado de alguna de las partes*), dicho documento no es apto para acreditar tal relación cliente-abogado.

No obstante lo anterior, el contenido de dicho escrito es relevante para efectos de prueba en relación al interés del especialista en el asunto concursal en que interviene, por las siguientes razones.

a) Es cierto que la copia certificada del escrito en estudio hace prueba plena de que fue presentado ante el fedatario; pero no de su contenido.

b) Es cierto también que el oferente no intervino en su elaboración por lo que su valoración corresponde a los de esa especie (certificación de documentos privados provenientes de terceros).

c) No obstante ello, del escrito en comento se advierte que:

   i) El especialista proporcionó el nombre del despacho de abogados del que es socio "*Solcargo*", para efecto de que se hicieran cargo de los asuntos legales en relación al concurso mercantil.

   ii) El especialista refirió que, por la contratación de esos servicios se aceptó un pago 66% menor en comparación del despacho de abogados que anteriormente llevaba los asuntos.

Página 88 de 106



**Scanned with CamScanner**



**IFECOM**
Concursos Mercantiles

400

**2). Hechos notorios para este Instituto (expediente del especialista)**

En los registros que obran en este Instituto, los cuales se invocan como hechos notorios que obran en el expediente del especialista de que se trata (*tomos I y II*), interesa hacer referencia a la información siguiente:

a) El currículo donde el especialista mencionó ser **socio del despacho** Solórzano, Carvajal, González y Pérez Correa, S.C. en calidad de socio desde 1998.

b) La carta del especialista, fechada el 2 de diciembre de 2004, al Director de este Instituto, en que manifestó ser "*titular*" del mismo despacho que se menciona en el inciso anterior.

c) Impresión de correo electrónico fechado el 27 de octubre de 2014, con el logo e información de que **pertenece al despacho "SOLCARGO"**, por virtud del cual el especialista actualizó sus datos.

En este sentido, dado que los documentos en comento provienen del especialista, hacen prueba plena en su contra.[38]

Conforme a lo anterior, debe tenerse por probado que el especialista es socio o titular del despacho **SOLCARGO, por así haberlo manifestado ante este Instituto.**

**3). Escrito del especialista (documento privado suscrito por el oferente).**

En el escrito por el cual el especialista compareció a aportar pruebas y formular alegatos, se lee lo que se inserta a continuación:

---

[38] En términos del Código Federal de Procedimientos Civiles, de aplicación supletoria. Artículo 203.- El documento privado forma prueba de los hechos mencionados en él, sólo en cuanto sean contrarios a los intereses de su autor, cuando la ley no disponga otra cosa. ...

Scanned with CamScanner





**PODER JUDICIAL DE LA FEDERACIÓN**
CONSEJO DE LA JUDICATURA FEDERAL

3.3.  En consecuencia, los abogados de la firma de Solcargo jamás han recibido pago alguno de honorarios por servicios legales de las Quebradas o por cualquier otro concepto.

3.4.  Las Quebradas no han recibido servicios de litigio o asesoría de Solcargo, Las Quebradas no tienen adeudo alguno con Solcargo por servicios legales. La Masa Concursal no ha sufrido ningún cargo o costo al respecto.

3.5.  Se arroja la carga de la prueba al Interventor para que acredite sus gratuitas y afirmaciones relativas a que el Síndico se hubiera "auto-contratado" como abogado litigante de las Quebradas, a través de la firma de Solcargo o de cualquier otra firma de abogados, o que dicha firma hubiera de alguna forma actuado en algún juicio en representación de las Quebradas, patrocinando sus litigios o reclamos.

4.    Se niega que mediante la carta de fecha 27 de junio de 2019 el Síndico se hubiera "auto-contratado" como abogado de las Comerciantes.

4.1.  La carta de ninguna forma acredita que el Síndico hubiera formalizado la contratación d  la firma de Solcargo para que actuaran como abogados de las Quebradas en los procedimientos judiciales que se siguen en México y el Extranjero.

4.2.  La carta del 27 de septiembre referida representaba únicamente *la posibilidad de que* el Síndico contratara a los abogados litigantes de Solcargo para patrocinar a las Quebradas en sus reclamos a terceras personas, porque, como ya se dijo, en ese momento se presentaba una coyuntura de suma urgencia a partir del inicio de esta Sindicatura:

(i)    Ciertos acreedores de las Quebradas exigieron, incluso por escrito, que se despidiera al Despacho Guerra.

(ii)   El Despacho Guerra, que patrocinaba los distintos litigios comerciales en que participaban las Quebradas (principalmente los juicios seguidos contra PEMEX), había manifestado la posibilidad real e inmediata de no continuar prestando sus servicios a las Comerciantes debido a que no había aceptado la oferta de honorarios que le formuló el Síndico [7]

(iii)  Aunado a ello, el Síndico no había logrado identificar algún despacho que tuviera la *estructura, experiencia y capacidad necesaria* para tomar el patrocinio de los asuntos; siendo que los despachos que fueron considerados tenían algún conflicto de interés insuperable  al tener ya algún vínculo con el Juicio Concursal. [8]

[7] Ver carta del 27 de junio de 2019 suscrita por el Síndico, segundo párrafo.
[8] Ídem, tercer párrafo.

Página 15 de 82

Scanned with CamScanner

401



**IFECOM**
Concursos Mercantiles

(iv) En consecuencia, se presentaba un grave riesgo de *"desatender los asuntos judiciales en que las Comerciantes son parte"*.

(v) Por lo anterior, el Síndico, con el pleno conocimiento, consentimiento y acuerdo de los acreedores de las Quebradas que pedían el despido del Despacho Guerra, y dado el contexto y coyuntura de ese momento, se encontró que no tenía una mejor opción para evitar que se perdieran los reclamos judiciales perseguidos por las Quebradas (que constituyen uno de sus activos más importantes) que asignar la promoción de dichos reclamos a los litigantes de Solcargo, en tanto que estimaba de forma justificada que dicha firma *"tenía la capacidad inmediata de tomar los asuntos"*. Como ya se dijo, esa cuestión se encontraba conforme con precedentes internacionales y nacionales (el concurso de FICREA).

13. Después de mucho meditarlo, ante la buena noticia de que el Despacho Guerra reconsideró su postura y decidió no renunciar al patrocinio de los reclamos de las Quebradas, incluso sin celebrar un contrato nuevo con el suscrito Síndico, y finalmente, ante la posibilidad de que sucediera precisamente lo que hoy sucede (que se argumente que la contratación de Solcargo era indebida), el Síndico decidió mantener al Despacho Guerra como el despacho litigante para la defensa de los juicios de las Quebradas. Todo lo anterior queda evidenciado con lo siguiente:

(i) Mediante correo de fecha 1 de julio de 2019, el Síndico comunicó al Licenciado Vicente Bañuelos Rizo (el "Lic. Bañuelos") que Guerra SC habría recapacitado y se quedaría con el patrocinio de los litigios de las Quebradas. Se agrega como Anexo 1, la cadena de correos intercambiada entre el suscrito y el Lic. Bañuelos, y en la que se copia a los abogados de los honistas, Daniel Díaz Álvarez y Santiago García Luque.

(ii) Para efecto de que Guerra SC continuara con el patrocinio de las Quebradas durante la etapa de quiebra en los juicios seguidos en México, se adoptaron las siguientes gestiones:

a En el juicio iniciado por Perforadora en contra de Pemex Perforación y Servicios, Petróleos Mexicanos y Pemex Exploración y Perforación radicado ante el C. Juez Quinto Distrito en Materia Civil en la Ciudad de México bajo el número de expediente 446/2017, el Síndico otorgó una autorización el día 22 de julio de 2019 a los abogados de Guerra SC para que *"continúen ejerciendo los poderes que les fueron otorgados y continúen representando"* a las Quebradas en dicho procedimiento, misma autorización que se agrega en copia a la presente como Anexo 2

Página 16 de 82





Scanned with CamScanner





**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

b. En el diverso juicio ordinario mercantil iniciado por las Quebradas en contra de Roger Arnold Hancock y otros, radicado ante el C. Juez Décimo Tercero de Distrito en Materia Civil en la Ciudad de México bajo el número de expediente 71/2018, el Síndico con fecha 17 de julio de 2019 igualmente autorizó expresamente a los abogados de Guerra SC para que "*continúen ejerciendo los poderes que les fueron otorgados y continúen representado*" a las Quebradas en dicho procedimiento, misma autorización que se agrega en copia a la presente como **Anexo 3**

5.   El Contador Villarruel actúa de manera temeraria al afirmar que la sala emisión de la carta el 27 de junio de 2019 representaría un impedimento para que el suscrito continúe actuando como Síndico en el Juicio Concursal. Veamos.

5.1.   El Interventor, dada su actuación y conocimiento de los autos del Concurso Oro Negro, sabe perfectamente bien que su representada y Nordic Trustee han expresado en autos su desacuerdo con que el Despacho Guerra y Quinn Emanuel sigan patrocinando a las Quebradas. Así, sabe perfectamente que Solcargo NO patrocina a las Quebradas en los litigios que tienen, es muy reprobable que oculte esa información a los miembros de esta H. Junta Directiva. Lo anterior se desprende del escrito firmado por el representante de Nordic Trustee el 4 de julio de 2019 en donde se queja de lo mismo: de que el suscrito no ha corrido a los despachos Guerra y Quinn Emanuel, mismo que se exhibe como **Anexo 4**

5.2.   Es ciertamente desafortunado que el Sr. Villarruel haya decido ocultar esa información a esta H. Junta Directiva, así como también ocultar que el Acreedor Nordic Trustee expresamente otorgó su consentimiento para que el suscrito contratara los servicios del despacho Solcargo:

(i)   Como se estableció en la carta 27 de junio de 2019, el Síndico solicitó los bonistas, por conducto de su representada (el Lic. Bañuelos), que expresaran "*tendrían un alguna objeción para que el Síndico contrate al equipo de litigio de del despacho de Solorzano, Carvajal, González y Pérez Correa, S.C. ("Solcargo") del cual soy socio*".

(ii)   En respuesta a lo anterior, y ante el temor de que el despacho de Guerra SC habría "recapacitado" para continuar con la representación de las Quebradas, mediante correo de 1 de julio de 2019,[19] el Lic. Bañuelos expresó su plena conformidad para que "*Solcargo tomara el control de los asuntos*", pues ello representaba una

[19] Que se agrega a la presente como Anexo 1.

"*solución equilibrada y de mercado*". Por su importancia, nos permitimos insertar aquí el texto de la comunicación del Lic. Bañuelos:

**[Se inserta imagen del mensaje que refiere]**

Scanned with CamScanner





**IFECOM**
Concursos Mercantiles

402

(iii) *Cabe recordar que Nordic Trustee había solicitado del Síndico muy recientemente por carta de 24 de junio de 2019 (suscrita por el Lic. Bañuelos), que se prescindiera de los servicios del Despacho Guerra, en tanto que dicha firma tendría conflicto de interés para representar a las Comerciantes, y por tanto no podrían "ser designados para continuar los procedimientos que iniciaron".* La carta referida se agrega a la presente como **Anexo 5.**

(iv) Lo anterior indica claramente que dichos acreedores tenían un interés muy particular de que Solcargo asumiera la representación de las Comerciantes, para así deshacerse del equipo de litigantes del Despacho Guerra que había atendido los muy numerosos litigios iniciados en los últimos 2 años.

5.3. Aún más grave, es que se pretenda usar información parcial e incompleta para desvirtuar y desprestigiar al Síndico:

(i) Primero sus abogados expresaron al Síndico que no veían oposición alguna a que el despacho Solcargo asumiera la representación de los asuntos judiciales en curso, en tanto que el Lic. Bañuelos manifestó en el correo de 1 de julio de 2019 que la propuesta formulada constituía una *"solución equilibrada y de mercado, que beneficia a la masa concursal."*; misma postura que incluso fue respaldada por los abogados Daniel Díaz Álvarez y Santiago García Luque.

(ii) Ahora los bonistas se contradicen abiertamente con lo expresado a principios de julio de 2019, expresando (por conducto de su Interventor) ahora que el Síndico no podría contratar al despacho de Solcargo en tanto que las *"funciones*





Scanned with CamScanner





**IFECOM**
Concursos Mercantiles

*de síndico y del abogado son contradictorias*",[11] lo que implicaría un supuesto conflicto de interés; y todo ello, mientras en juicio se han manifestado su desagrado ante el Juez Concursal, de que el Síndico continúe con el Despacho Guerra y Quinn Emanuel como abogados litigantes!

**5.4. Conclusión:** el motivo de sustitución del Interventor tiene que ser desestimado debido a que: (i) los bonistas acusan motivos de sustitución basados en una situación (perfectamente legal) que ellos mismos habrían alentado y consentido, siendo que como ha establecido la Suprema Corte de Justicia de la Nación, "*quien se contradice no debe ser oído en juicio*".[12] En todo caso, y crucialmente, la premisa de este motivo de sustitución del Síndico—que haya contratado a Solcargo como litigante para patrocinar los juicios y reclamos de las Quebradas—es falso pues nunca ocurrió dicha contratación, algo que el Sr. Villarruel sabe perfectamente pues consta en autos que Guerra sigue patrocinando a las Quebradas, pero desafortunadamente dicho Interventor decidió omitir esa información a esta H. Junta Directiva.

*(Fin de la inserción de imágenes)*

Así también, en el escrito de referencia, el especialista reitera que la contratación de los servicios del despacho Solcargo, del que es socio, cobrará un porcentaje menor que el de los abogados a sustituir.

Pues bien, lo recién inserto corresponde a un escrito privado,[39] suscrito por la parte oferente. En consecuencia, **forma prueba de los hechos mencionados en él, sólo en cuanto sean contrarios a los intereses de su autor, cuando la ley no disponga otra cosa,** atento a que se considera al **especialista** como autor del documento, al haber sido firmado por éste.[40]

En este sentido, se tienen por demostradas (*en grado de confesión*) las manifestaciones del especialista en la parte que son contrarias a sus intereses. Esto es:

---

[39] *CFPC. Artículo 133.- Son documentos privados los que no reúnen las condiciones previstas por el artículo 129.*
[40] *CFPC. Artículo 203.- El documento privado forma prueba de los hechos mencionados en él, sólo en cuanto sean contrarios a los intereses de su autor, cuando la ley no disponga otra cosa. El documento proveniente de un tercero sólo prueba en favor de la parte que quiere beneficiarse con él y contra su colitigante, cuando éste no lo objeta. En caso contrario, la verdad de su contenido debe demostrarse por otras pruebas. El escrito privado que contenga una declaración de verdad, hace fe de la existencia de la declaración; más no de los hechos declarados. Es aplicable al caso lo dispuesto en el párrafo segundo del artículo 202. Se considera como autor del documento a aquél por cuya cuenta ha sido formado.*

**Scanned with CamScanner**

403

# IFECOM
**Concursos Mercantiles**

1) En que la sustitución de los abogados obedeció a las **propuestas de los acreedores.**

2) Que, ante esa situación, el especialista se dio a la tarea de buscar otros despachos que atendieran los asuntos legales y, sin embargo, no tuvo éxito en ello.

3) Que reconoce la carta fechada el 27 de junio (*no septiembre*) de 2019, y que "*representaba únicamente la posibilidad de que el síndico contratara a los abogados litigantes de Solcargo*".

4) Que la contratación del despacho sería con un costo menor al que generaban los abogados a sustituir (*revocar*).

Cabe mencionar que no se opone a las consideraciones precedentes lo aducido por el especialista en relación al diverso concurso mercantil de Ficrea.

Lo anterior es así porque, por una parte, en este impedimento no se está tratando sobre alguna causa que deba influir en un diverso concurso mercantil; derivado de lo anterior, los hechos materia del presente incidente interesan para efectos del concurso en que se actúa; y, por último, para el análisis de la causa de impedimento alegada importa el hecho de que el especialista **acepta haber accedido a las peticiones de los acreedores y demás partes en el concurso mercantil** para la sustitución de los abogados que ya se ocupaban de los asuntos de la concursada; a más de que esa conducta para acceder a lo solicitado por los acreedores **NO PODÍA RECAER EN EL DESPACHO DE ABOGADOS DEL QUE EL ESPECIALISTA ES SOCIO.**

Ciertamente, según se expuso ampliamente en las consideraciones previas de esta resolución, el interés que recae en el especialista de manera directa o indirecta resulta evidente si, por virtud de la información obtenida con motivo de su cargo, sugiere, propone, e incluso acepta la propuesta de los acreedores para esa contratación.

Lo anterior, de suyo, conforma el supuesto en que un especialista tenga interés en el asunto, aun cuando este sea posterior a su designación, pues la propia ley prevé el caso en que la causa de impedimento sobrevenga.

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

En este sentido, incluso sobre las manifestaciones del síndico de que los acreedores fueron quienes le solicitaron tal contratación, **el especialista debió rechazar firmemente esas recomendaciones**; pues lo contrario significaría comprometer su imparcialidad en el asunto, derivado –precisamente– del interés que tiene por la relación de socio o titular con el despacho de abogados Solcargo - se insiste-, aun cuando ésta no se haya concretado. Pues la Ley Concursal no establece que el especialista haya recibido un beneficio económico por su actuación en perjuicio de la Masa, es decir, que el impedimento no se funda en la materialización de ese beneficio (*para ello la ley lo responsabiliza por los daños que pudiera causar en el ámbito civil, incluso, penal*). En cambio, la existencia del interés del especialista, según se mencionó, puede ser incluso de carácter moral o inmaterial.

De lo anterior se sigue que, aun cuando la contratación de los servicios no se hubiera concretado o materializado, el conflicto de intereses afecta igualmente la imparcialidad del especialista con motivo de ese rechazo esperado.

Finalmente, las demás pruebas aportadas por el síndico no son aptas para crear convicción a este Instituto, en el sentido de desvirtuar la conducta que es apta para tener por acreditado el interés a que se refiere la fracción VI del artículo 328 de la Ley de Concursos Mercantiles, en los términos ya examinados.

### 4). Adminiculación de pruebas

Conforme a lo precedente, la copia certificada de la carta atribuida al especialista, donde se menciona que es socio del despacho "*Solcargo*", adminiculada con las documentales que obran en el expediente del síndico, concatenadas unas con otras llevan a concluir que: i) el especialista, en efecto, es socio del despacho SOLCARGO (*en calidad de socio o titular*); ii) la copia certificada de la carta en comento menciona esta misma circunstancia en cuanto a que el especialista es socio del despacho SOLCARGO; iii) en dicha carta se menciona la contratación de los servicios del mismo despacho para la atención de los asuntos relacionados con el concurso mercantil en que fue designado el especialista.

Esta correlación es importante en el sentido de que la copia certificada del escrito en mención (*valorada de forma aislada no demuestra la contratación de los servicios*), pues de su adminiculación con la información del expediente personal del especialista, demuestran la relación del especialista con el despacho de

Página 96 de 106

**Scanned with CamScanner**

404

## IFECOM
**Concursos Mercantiles**

abogados que se menciona, debido a que ese dato puede ser corroborado con los documentos que obran en el expediente del síndico, en su calidad de socio o titular del despacho de abogados en comento.

Así, las demás manifestaciones en la carta certificada, en el sentido de que el especialista propuso la contratación del despacho SOLCARGO, del que es socio o titular para atender los asuntos legales derivados del concurso mercantil, con un pago del 66% inferior al que venía cobrando el despacho de abogados que se ocupaba de esos asuntos, **se configura a consideración de esta Junta Directiva, según la relación lógica y natural de las cosas, fundamentalmente que:**

i)  El especialista tiene alguna relación con el despacho de abogados SOLCARGO (*acreditada con los documentos que obran en su expediente*).

ii) El síndico propuso a una de las partes la contratación de los servicios del ya mencionado despacho de abogados con el que tiene relación, para ocuparse de los asuntos derivados del concurso mercantil donde fue designado, por lo tanto;

iii) Existen elementos en grado de suficientes (*dada la naturaleza de la función del especialista, el interés público en la materia concursal y, por tanto, el estándar probatorio menos intenso, aplicando también el método de libre apreciación*) para advertir la existencia de un interés (*y por lo tanto un conflicto de intereses*) respecto del síndico, en términos del artículo 328, fracción VI, de la Ley de Concursos Mercantiles (*la cual es de libre apreciación, en el estándar probatorio que este Instituto estima aplicable*).

No obsta a lo anterior el hecho de que no esté acreditada la aceptación de la propuesta sobre la prestación de los servicios por parte del despacho de abogados con el que el especialista tiene relación pues, para efectos del interés que ahora se examina (*económico o moral*), bastan los indicios en grado de suficiente para declarar fundado el impedimento del especialista, debido a que la sola mención, en cuanto a la propuesta del despacho de abogados, representa un conflicto de interés, derivado del posible beneficio para el síndico, o para terceros con los que tenga relación, mediante el uso de la información que le es propia, por el ejercicio

**Scanned with CamScanner**





**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

de funciones y demás atribuciones en el concurso mercantil en que fue designado. Máxime cuando, por lo que el mismo especialista indicó, si a su vez el acreedor también ya le había propuesto la contratación del despacho del cual es socio, evidencia que el especialista se prestó a acuerdos privados.

Cabe agregar que tal situación de latencia de un interés no implica por sí misma un delito; sin embargo, ello no autoriza ignorar ese conflicto, **pues quien continúa actuando en el cargo, podría hacerlo con parcialidad, afectando** (*deliberadamente o no*) **a alguna de las partes**, o bien que el manejo de esa información influya en ciertas decisiones, las conductas, acciones u omisiones (*no el conflicto en sí*) que puedan configurar otras conductas violatorias de la ley.

Conforme a lo anterior, se estima de gran importancia abundar para poder discernir entre el interés y el conflicto de intereses que provoca, en atención a la o las conductas que se busca prevenir.

Como se dijo, un interés se refiere a cualquier otro motivo que lleve al especialista a tomar o a impulsar una decisión en cierto sentido, aun las que están fuera de las funciones formales que le son propias en el concurso mercantil, pues la sola existencia de ese interés rompe con la imparcialidad y tiende a afectar los demás principios que rigen la materia concursal y la actuación que de él se espera.

Derivado de lo anterior, un conflicto de interés surge cuando una persona se ubica en una posición por razones de su cargo para tener la oportunidad de obtener beneficios para sí o para terceros con los que tenga relación, **con la sola posibilidad de anteponer sus intereses privados a sus deberes profesionales.**[41]

En cambio, la materialización de tal beneficio se vuelve un acto reprochable a partir del daño que cause efectivamente (*daño o responsabilidad, civil o penal*).

De este modo, para efectos de evaluar la existencia de un interés, es preciso señalar sus elementos.

---

[41] Es importante comentar que la OCDE, señala que hay conflicto de interés cuando la labor de un funcionario (obligada a observar cierta conducta) se vea comprometida por sus intereses personales (aplicable en el caso a estudio al especialista). Igualmente que el artículo 3 fracción VI de la Ley General de Responsabilidades Administrativas define que "VI. Conflicto de Interés: La posible afectación del desempeño imparcial y objetivo de las funciones de los Servidores Públicos en razón de intereses personales, familiares o de negocios";

Página 98 de 106

Scanned with CamScanner

405



**IFECOM**
**Concursos Mercantiles**

1. Una persona obligada a una conducta por razones de su cargo (*público o privado*).

En el caso, este elemento está satisfecho, pues la conducta se atribuye al especialista, como el obligado a mantener una situación de imparcialidad respecto del concurso en el que haya sido designado.

2. Un tercero.

Este elemento también se actualiza en el caso, ya que existen pruebas sobre la oferta de la prestación de servicios a una de las partes en el concurso mercantil.

3. Un deber del obligado a observar la conducta en aras de un interés general.

Este elemento también está acreditado pues, como se indicó al inicio de estas consideraciones, el síndico está obligado a observar una conducta imparcial, transparente, profesional y honrada en su actuación dentro (*y fuera*) del concurso mercantil en que fue designado.

4. Un elemento material, constituido por **el riesgo** de que el interés general quede subordinado a intereses particulares.

Este elemento también se encuentra satisfecho en el presente asunto, debido a la existencia del indicio de la carta en que se hace referencia a la prestación de servicios legales a cargo del despacho de abogados del que el especialista es parte (*socio o titular*), a cambio de una contraprestación por un precio menor en comparación a los servicios que se venían prestando, revela la existencia de ese interés, por la sola razón de haber ofrecido y comunicado la prestación de tales servicios.

5. La (*sola*) situación de riesgo en sí misma supone un quebranto del interés general.

Por su naturaleza, la existencia del interés del especialista (*económico o de otra índole*) en los asuntos en los que interviene, **no precisa de su materialización, pues la sola existencia de ese riesgo es suficiente para la actualización de tal causa de impedimento.**

Scanned with CamScanner



**IFECOM**
Concursos Mercantiles

PODER JUDICIAL DE LA FEDERACIÓN
CONSEJO DE LA JUDICATURA FEDERAL

**6.** Un elemento causal, representado por un ánimo de provecho privado, consistente en el lucro pecuniario, en especie o de contenido inmaterial (*moral*).

Este último aspecto se actualiza en el caso a estudio, pues existe prueba fehaciente para advertir que el Síndico procuró la prestación de servicios legales del despacho de abogados del que es socio o titular respecto de los asuntos del concurso mercantil en el que fue designado, **lo que evidencia ese nexo causal, para la contratación incluso con un porcentaje menor al que cobraban los abogados anteriores.**

En este sentido, dado que el interés del especialista, directo o indirecto, en el concurso mercantil de que se trate, y su implementación como causa de impedimento del especialista para evitar conflictos de intereses, resulta eminentemente preventiva; y al mismo tiempo, dicha medida pretende salvaguardar los principios de legalidad, honradez, lealtad, imparcialidad y eficiencia que rigen en la materia concursal.

En definitiva, las causales de impedimento están previstas para que el especialista se separe del conocimiento del asunto, con el fin de garantizar la imparcialidad en la resolución del conflicto, cuando tenga interés directo o indirecto en el mismo o cuando el interés radique en terceros con quienes tenga relación; en este caso, como **quedó acreditado fehacientemente, por la relación de socio o titular del despacho de abogados SOLCARGO.**

Se cita en apoyo a lo anterior, por identidad jurídica sustancial, en lo conducente, la siguiente tesis.

*IMPEDIMENTO DE MAGISTRADOS DE TRIBUNALES COLEGIADOS DE CIRCUITO POR AMISTAD ÍNTIMA CON EL ABOGADO DE UNA DE LAS PARTES. SUBSISTE AUNQUE CON POSTERIORIDAD SE RETIRE EL PODER. La fracción VI del artículo 66 de la Ley de Amparo dispone que el impedimento a que se refiere se engendra cuando el funcionario tiene amistad estrecha o enemistad manifiesta con alguna de las partes o sus abogados o representantes. Al respecto se considera que, <u>aunque en autos se dicte auto por el que se reconoce que fue retirado el mandato al abogado con el que el funcionario lleva amistad íntima, debe estimarse subsistente el impedimento de carácter subjetivo que alega, porque puede</u>*

Scanned with CamScanner



**Concursos Mercantiles**

406

*influir en el ánimo del Magistrado a la hora de resolver el negocio planteado por el postulante.[42]*

En suma, en el presente asunto, ha quedado establecido que el síndico y las partes del concurso mercantil propusieron la prestación de los servicios profesionales del despacho de abogados Solcargo del cual el especialista es socio o titular.

Ello tiene como antecedente, según el dicho del interventor y del propio especialista, las peticiones de las partes para sustituir a la firma de abogados (Guerra) que estaban representando a la concursada en diversos juicios.

Es importante mencionar que la firma de abogados a remover, figura entre los acreedores de la concursada.

Lo anterior significa que su pago debe efectuarse con la masa concursal.

Ahora bien, el hecho de la sustitución propuesta para que el despacho del cual es socio llevara asuntos en representación de la quebrada, significa también el de la sustitución de uno de los acreedores de la masa.

Así también, la prestación de los servicios profesionales del despacho de abogados propuesto, Solcargo, representa erogaciones a cargo de la masa.

De ahí que, si el especialista tiene el carácter de síndico en el concurso mercantil, es claro que a él le corresponderá la contratación y pago de la prestación de los servicios del despacho de abogados del que también forma parte.

Esta circunstancia revela la existencia del conflicto de intereses y, por lo tanto, la necesidad de separar al especialista del cargo, al haberse actualizado la existencia de un interés, directo o indirecto, económico o moral ya que, no obstante los argumentos del especialista en el sentido de que la contratación no fue verificada, lo cierto es que, para efectos de la solicitud de sustitución de que se trata, basta lo mismo para estimar que se acreditó el supuesto previsto por la fracción VI del artículo 328 de la Ley de Concursos Mercantiles; pues de ella no se deriva que deba existir una materialización de algún beneficio económico, aunado a que, según el

[42] Séptima Época Registro: 238794 Instancia: Segunda Sala Tipo de Tesis: Aislada Fuente: Semanario Judicial de la Federación Volumen 39, Tercera Parte Materia(s): Común Tesis: Página: 27 Impedimento 79/71. Magistrado Guillermo Guzmán Orozco. 23 de marzo de 1972. Cinco votos. Ponente: Jorge Iñárritu.

Scanned with CamScanner



# IFECOM
### Concursos Mercantiles

**PODER JUDICIAL DE LA FEDERACIÓN**
CONSEJO DE LA JUDICATURA FEDERAL

extenso marco de las consideraciones vertidas en esta resolución, queda evidenciado que basta la confesión del especialista en cuanto a la intención de haber propuesto la contratación de los servicios del despacho jurídico con el que tiene relación.

Cabe puntualizar enfáticamente, por último, que tampoco puede ignorarse que, inclusive, el riesgo de una conducta parcial contraria a los intereses de la parte o partes que hayan impedido, no autorizado o no tolerado la pretendida contratación del despacho del cual es socio, es manifiesto; lo que a la postre se develó con la solicitud de sustitución que hace valer el interventor por estimar que sobrevinieron además diversos hechos (*argumentando un cobro de honorarios excesivo no devuelto por el especialista por un lapso de cinco meses y la diversa acción que éste intentó en conjunto con los Miembros del Consejo (accionistas) de la quebrada en cortes de Estados Unidos, contra el acreedor a quien hizo la referida propuesta de contratar a su despacho*), que sugieren una posible inclinación de ánimo ahora del especialista para favorecer a los Miembros del Consejo (*accionistas*) de la quebrada, al firmar la demanda conjuntamente con ellos, como codemandante, en un mismo escrito y bajo una misma representación legal, reclamando prestaciones (*daños*) que sólo pudieran interesar a dichos Miembros del Consejo (*accionistas*), bajo el pretendido legítimo interés de actuar en beneficio de la Masa, sin que fuere estrictamente necesario que para hacerlo, firmara en conjunto con dichos accionistas, la referida demanda; lo anterior, porque se insiste, existen elementos fehacientes para establecer la existencia de un riesgo de falta de imparcialidad; como se pondrá de manifiesto.

## Honorarios.

A estas consideraciones debe adicionarse lo manifestado por el especialista con relación a la devolución de cantidades pagadas en exceso por concepto de honorarios, en los términos que refiere en el escrito de contestación.

De dicha contestación, se puede advertir que el propio síndico señala (*en contestación al punto 45*) que las cantidades que le fueron pagadas en exceso por concepto de honorarios se debió a un error de cálculo, y que la disputa con motivo del requerimiento de devolución, según la cronología que indica, permaneció desde el 29 de mayo y hasta el 21 de octubre, ambos del año que transcurre.


Scanned with CamScanner

407

# IFECOM
### Concursos Mercantiles

Esto es que, independientemente de las causas narradas por el especialista, correcta o incorrectamente, en cuanto a: i) el error en la solicitud de los honorarios y su pago en exceso; ii) el requerimiento de devolución por las cantidades requeridas (*por Nordic que indica por $1'048,969.26 M.N.*); iii) las instrucciones para ocupar dichas cantidades para el pago de adeudos diversos; y, iv) lo relativo a la cuenta de enrutamiento para su devolución; lo relevante es que entre aquella fecha de requerimiento de pago de honorarios (*29 de mayo*) y su devolución (*21 de octubre*), mediaron casi cinco meses.

Es decir que, con independencia de las causas por las que se haya cometido el error en la cuantificación de los honorarios, su pago, las distintas propuestas para aplicar el excedente a otros conceptos, solicitados por la acreedora y rechazadas por el especialista y lo relativo a la cuenta de enrutamiento, lo único que revelan es que el especialista retuvo cantidades pagadas en exceso, por casi cinco meses.

Esta circunstancia cobra mayor relevancia, debido a que en ese lapso se emitió la carta de 27 de junio de 2019, referente a la contratación de los servicios del despacho de abogados del que el especialista es socio o titular, aunado a que el Código Civil Federal establece la forma en que ha de proceder quien reciba el pago de lo indebido, conforme a los siguientes preceptos.

*Artículo 1,886.- Si el tercero a quien se enajena la cosa la adquiere de buena fe, sólo podrá reivindicarse si la enajenación se hizo a título gratuito.*

*Artículo 1,887.- El que de buena fe hubiere aceptado un pago indebido de cosa cierta y determinada, sólo responderá de los menoscabos o pérdidas de ésta y de sus accesiones, en cuanto por ellos se hubiere enriquecido. Si la hubiere enajenado, restituirá el precio o cederá la acción para hacerlo efectivo.*

*Artículo 1,888.- Si el que recibió de buena fe una cosa dada en pago indebido, la hubiere donado, no subsistirá la donación y se aplicará al donatario lo dispuesto en el artículo anterior.*

*Artículo 1,889.- El que de buena fe hubiere aceptado un pago indebido, tiene derecho a que se le abonen los gastos necesarios y a retirar las mejoras útiles, si con la separación no sufre detrimento la cosa dada en pago. Si sufre, tiene derecho a que se le pague una cantidad equivalente al aumento de valor que recibió la cosa con la mejora hecha.*

*Artículo 1,890.- Queda libre de la obligación de restituir el que, creyendo de buena fe que se hacía el pago por cuenta de un crédito legítimo y subsistente, hubiese inutilizado el título, dejado prescribir la acción, abandonando las prendas, o cancelado las garantías de su derecho. El que paga indebidamente sólo podrá dirigirse contra el verdadero deudor o los fiadores, respecto de los cuales la acción estuviese viva.*

*Artículo 1,891.- La prueba del pago incumbe al que pretende haberlo hecho. También corre a su cargo la del error con que lo realizó, a menos que el demandado negare haber recibido la cosa que se le reclama. En este caso,*

Scanned with CamScanner





IFECOM
Concursos Mercantiles

*justificada la entrega por el demandante, queda relevado de toda otra prueba. Esto no limita el derecho del demandado para acreditar que le era debido lo que recibió.*

*Artículo 1,892.- Se presume que hubo error en el pago, cuando se entrega cosa que no se debía o que ya estaba pagada; pero aquel a quien se pide la devolución puede probar que la entrega se hizo a título de liberalidad o por cualquiera otra causa justa."*

Así pues, el cálculo erróneo de los honorarios aunado a la carta de ofrecimiento de los servicios legales del despacho de abogados del que el especialista es socio, viene a mermar la transparencia e imparcialidad del especialista, debido a que existe un potencial ánimo de inclinar su actuación hacia su propio interés, o el de alguna de las partes.

Finalmente, cobran relevancia también las manifestaciones del especialista con relación a la demanda y honorarios que indica con motivo de las demandas presentadas. Particularmente por el proceso en Nueva York.

**Demandas.**

Sobre este tema, al dar contestación a los hechos 63 y siguiente (*sobre las demandas presentadas en la Corte de Nueva York*), el síndico señala que celebró contrato de derechos litigiosos el 6 de junio de 2019; y que ante esa autoridad extranjera se presentó la solicitud de autorización del contrato de derechos litigiosos que, a decir del síndico, quedó a la condición suspensiva de que la jueza Chapman autorizara el contrato, así como la solicitud de confidencialidad de ciertas cláusulas del contrato; igualmente señala la intervención de los bonistas para fondear los costos de una firma independiente de abogados para asesorar al síndico, en lo relacionado con la aprobación del contrato de derechos litigiosos.

Así también, el síndico indica que la Jueza de los Estados Unidos de América no aprobó el convenio al estimar que violaba la legislación mexicana.

De lo anterior, el especialista concluye que el contrato de derechos litigiosos no fue aprobado y, finalmente, fue retirado, así como la oferta de fondear a las quebradas para financiar el primer reclamo de Nueva York.

Al respecto, del mismo modo que sucedió sobre el relato de los honorarios, la cronología sobre la demanda y fondeo de las quebradas para atender los asuntos

Página 104 de 106

**Scanned with CamScanner**

408



**IFECOM**
Concursos Mercantiles

tramitados en el extranjero son coetáneos a la carta de ofrecimiento de pago de los honorarios.

Visto así, independientemente de las causas por las cuales haya sido aprobado o no el convenio (*presentado en la Corte Norteamericana*), lo cierto es que la posibilidad y participación de los demás interesados en la representación de la quebrada en aquella corte, no hacen sino agravar la circunstancia de una posible inclinación del especialista, derivado de su posición como síndico y ante el escenario de haber aceptado, que ofertó los servicios del despacho de abogados del que es socio o titular, en detrimento de su imparcialidad y transparencia.

Finalmente, las mismas consideraciones son aplicables -por cuanto hace a la inclinación de ánimo del especialista-, en virtud de la demanda suscrita también con los miembros del Consejo (*accionistas*) de la concursada; ya que, si bien por ley le corresponde representar a la fallida:

i. el antecedente que el propio síndico narró sobre el ofrecimiento para contratar al despacho de abogados al que pertenece,

ii. aunado a las vicisitudes en relación a la devolución del excedente que atribuye a un cálculo equivocado de honorarios y su retención por casi cinco meses, lo que hacen es colocar en situación de riesgo su imparcialidad. Ello, porque la propia demanda que suscribe con los Miembros del Consejo (*accionistas*), sumado a los adeudos por honorarios del síndico a una de las acreedoras, evidencian el riesgo de una situación de inclinación del síndico hacia alguna de las partes en el concurso mercantil, ya para favorecer a algunas; o bien, para obstaculizar o afectar a otras.

En conclusión, los elementos apuntados, a consideración de esta Junta Directiva, llevan a concluir que se actualiza la causa de impedimento aquí analizada.

En las relatadas consideraciones, lo procedente es declarar fundado el impedimento y, en consecuencia, la sustitución del especialista de que se trata.

Conforme a todo lo anterior, esta Junta Directiva **acuerda:**

**Scanned with CamScanner**





IFECOM
Concursos Mercantiles

**Primero**. Este Instituto es competente para determinar la actualización de las causas de impedimento alegadas por el Interventor en el Concurso Mercantil de que se trata.

**Segundo**. El especialista estuvo en aptitud de conocer la sustitución formulada por el Interventor denunciante, compareció ante este Instituto a aportar pruebas y formular alegatos.

**Tercero**. Se declaran infundadas las causas de impedimento identificadas con los incisos A), B) y C) de la consideración novena de esta determinación.

**Cuarto**. Se declara fundada la causa de impedimento identificada en el inciso D) consistente en el *"interés directo e indirecto del especialista en el concurso mercantil"* de la consideración novena de esta determinación.

**Quinto**. Es procedente la solicitud de sustitución del síndico en el concurso mercantil 345/2017-I, seguido a las concursadas Perforadora de Oro Negro, Sociedad Anónima de Responsabilidad Limitada de Capital Variable e Integradora de Servicios Petroleros de Oro Negro, Sociedad Promotora de Inversión de Capital Variable, y en consecuencia, se procede a efectuar de inmediato la designación en sustitución del síndico Fernando Pérez Correa Camarena, bajo el procedimiento aleatorio de designación.

..."

Por lo expuesto, solicito:

**Único**. Tener por emitida la opinión de este Instituto, en atención a la solicitud de sustitución del síndico.

Atentamente

Edgar Manuel Bonilla del Ángel
Director General

Scanned with CamScanner